# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | **:** | |
| | **:** | Chapter 11 |
| **INSILCO TECHNOLOGIES, INC.,** *et al.,*[1] | **:** | Case No. 02-13672 (KJC) |
| Debtors | **:** | |
| | **:** | (Jointly Administered) |
| _____ | **:** | |
| | **:** | |
| **CHAD J. SHANDLER, CREDITOR** | **:** | |
| **TRUSTEE OF INSILCO TECHNOLOGIES,** | **:** | |
| **INC.,** *et al.* | **:** | |
| Plaintiff | **:** | |
| | **:** | |
| v. | **:** | |
| | **:** | |
| **DLJ MERCHANT BANKING, INC. n/k/a** | **:** | Adv. Pro. No. 04-57950 (KJC) |
| **CREDIT SUISSE FIRST BOSTON,** *et al.* | **:** | |
| Defendants | **:** | |
| _____ | **:** | |

## OPINION[2]

### BY: KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE

On December 15, 2004, Chad J. Shandler, the trustee for the creditors' trust[3] (the

"Liquidating Trustee") of Insilco Technologies, Inc., *et al.*, ("Insilco" or the "Debtor")

---

[1]The debtors in these jointly administered chapter 11 proceedings are Insilco Technologies, Inc.,
Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg.
Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart
Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

[2]This Opinion constitutes the findings of fact and conclusions of law required by Fed. R. Bankr.
P. 7052. The Court has jurisdiction to decide the motions pursuant to 28 U.S.C. § 1334 and §157(a).

[3]The Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (the
"Plan")(docket no. 1019) was confirmed by order dated June 10, 2004. Section 7.2 of the Plan provided
for the creation of a "Creditor Trust." Section 7.3 of the Plan provided for the appointment of trustees to
carry out the obligations and exercise the rights of the Creditor Trust in accordance with the Plan and
order confirming the Plan.

commenced this adversary proceeding by filing a complaint against DLJ Merchant Banking, Inc. n/k/a Credit Suisse First Boston ("DLJMB") and several other defendants, including affiliates of DLJMB,[4] members of the Insilco Board of Directors,[5] and McDonald Investments, Inc.  The Liquidating Trustee filed an amended complaint on February 17, 2005 (the "Amended Complaint").  In this action, the Liquidating Trustee seeks to redress the harm that he alleges the defendants inflicted upon the Debtor and its creditors "by wrongfully exercising their control over the company and taking unfair and harmful actions to advance their own interests, while compromising, prejudicing, and adversely affecting the Debtors' interests."  (Amended Complaint, ¶1).

On March 18, 2005, the DLJ-related defendants filed a motion to dismiss the Amended Complaint.[6]  Other individual defendants also filed motions to dismiss the Amended Complaint, including David Howe, James Ashton, and Randall Curran.[7]  On April 27, 2005, the Liquidating Trustee filed a memorandum of law in opposition to all of the motions to dismiss.  Each defendant filed a reply to the Liquidating Trustee's memorandum of law in opposition to

---

[4]The DLJMB affiliated defendants are (i) DLJ Merchant Banking Partners, L.P., (ii)  Donaldson, Lufkin & Jenrette Securities Corp, (iii) Donaldson, Lufkin & Jenrette, Inc., (iv) DLJ Capital Funding, Inc. (v) MBP II Plan Investors, L.P., (vi) DLJ Offshore Partners II, C.V., (vii)  DLJ Millennium Partners-A, L.P., (viii) DLJ Millennium Partners, L.P., (ix) DLJ ESC, II, L.P., (x) DLJ EAB, Partners, L.P., (xi) DLJ Merchant Banking Partners II-A, L.P., (xii) DLJ Merchant Banking Partners II, L.P., (xiii) DLJ Diversified Partners, L.P., (xiv) DLJ Diversified Partners-A, L.P. (the foregoing, together with DLJMB, are jointly referred to herein as the "DLJ Affiliates").

[5]The individual defendants are William F. Dawson, Jr., Thompson Dean, John F. Fort, III, George A. Peinado, Keith Palumbo, Randall Curran, David Howe, and James Ashton.

[6]The "DLJ-related Defendants" consist of the DLJ Affiliates and the "DLJ-affiliated Directors," who are defined in the motion as Thompson Dean, William F. Dawson, Jr., George A. Peinado, and Keith Palumbo.

[7]The individual defendants' motions to dismiss were filed on April 1, 2005, April 6, 2005 and April 20, 2005, respectively.

motions to dismiss.[8]   Oral argument was heard on the pending motions to dismiss on June 29, 2005.

For the reasons set forth below, I conclude that the Bankruptcy Court lacks jurisdiction to hear and determine the Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Claims for Relief set forth in the Amended Complaint.  Furthermore, the Liquidating Trustee shall have until December 1, 2005 to amend the Amended Complaint to provide more detail about the alleged preferential and fraudulent transfers set forth in the First and Second Claims for Relief. Finally, the Seventh Claim for Relief will be dismissed, although the Liquidating Trustee may conduct discovery to determine whether to amend the complaint to bring this claim against any other party.

## FACTUAL ALLEGATIONS

The following facts are alleged by the Liquidating Trustee in the Amended Complaint (the "Amend. Compl.").  DLJ acquired control of Insilco through a merger transaction that closed in August of 1998.[9]  (Amend. Compl. ¶ 45.)  Since its acquisition in 1998, DLJMB controlled and dominated Insilco's ownership and management, in part, by installing its designees as a majority of the Insilco Board of Directors.  (Amend. Compl. ¶ 51.)  By 1999, four of the seven Insilco Directors were DLJ insiders, including William F. Dawson, Jr., Thompson Dean, John F. Fort, III, and Keith Palumbo.  Id.  Consequently, DLJMB exercised control and domination over Insilco's affairs to advance DLJ's own portfolio strategy for its own benefit.

---

[8]Randall Curran filed a reply on May 20, 2005.  DLJ-related Defendants filed a reply on May 20, 2005.  James Ashton filed a reply on May 24, 2005.  David Howe filed a reply on June 3, 2005.

[9]In the Amended Complaint, the Liquidating Trustee defines "DLJ" as the entities described in n. 4, supra., as the "DLJ Affiliates."  See Amend. Compl. ¶1.

(Amend. Compl. ¶ 46.)  Specifically, DLJMB caused Insilco to pursue an aggressive acquisition and divestiture strategy with the goal of preparing Insilco for a successful public offering. (Amend. Compl. ¶ 48.)  As part of this strategy, DLJMB caused Insilco to sell off its publishing business and to pursue strategies to increase Insilco's technology and automotive businesses by acquiring their market competitors.  Id.

Throughout its relationship, DLJMB exercised its control to require and cause Insilco to employ DLJ as Insilco's financial advisor on multiple proposed and actual transactions. (Amend. Compl. ¶ 57.)  In all, Insilco paid $15 million in fees to DLJ between 1998 and 2002. Id.

Furthermore, DLJMB induced Insilco to sell its valuable automotive business to DLJ. (Amend. Compl. ¶¶ 64-73.)  On July 5, 2000, the Board adopted a resolution, which appointed James Ashton to the Board, created a special committee to review, evaluate and negotiate the terms of the proposed sale to DLJ and appointed Mr. Ashton as the sole member of the special committee.  (Amend. Compl. ¶ 69.)  On July 14, 2000, Mr. Ashton approved the terms of Insilco's agreement to sell the automotive business to a DLJ venture, ThermaSys, at a sale price of $147 million.  (Amend. Compl. ¶ 72.)  The purportedly "independent" Mr. Ashton was soon installed as the chairman of the ThermaSys board of directors and, later, as CEO of ThermaSys. (Amend. Compl. ¶ 73.)

On July 14, 2000, MacDonald Investments, Inc. ("MacDonald") presented the special committee its opinion that DLJMB's $147 million offer to buy the automotive business was fair. However, MacDonald's analysis was flawed because it relied on the automotive business'

adjusted Last Twelve Month EBITDA[10] without taking into account productivity improvements
and reduced costs.  (Amend. Compl. ¶ 74.)

     DLJMB also required and caused Insilco to violate its Credit Agreement.[11]  (Amend.
Compl. ¶ 77-79.)  DLJMB used its insider status to generate additional fees for DLJ and expose
Insilco to three major transactions closing on August 25, 2000, which included the sale of the
automotive business to ThermaSys, Insilco's purchase of PCM, and a major refinancing of
Insilco's credit facility.[12]  (Amend. Compl. ¶ 77.)

     As of June 30, 2001, Insilco was in violation of the loan covenants under the Credit
Agreement.  (Amend. Compl. ¶ 84.)  At least as early as June 30, 2001, Insilco was insolvent.
Id.  Furthermore, DLJMB knew that Insilco could not survive in its current form and that
bankruptcy was a foregone conclusion.  (Amend. Compl. ¶ 85.)  Despite this knowledge,
DLJMB delayed the filing of a petition, deepening the Debtor's insolvency.  (Amend. Compl. ¶
86.)  DLJMB further delayed the necessary filing of the petition by exercising its dominance
over Insilco and refusing to allow the Board to take reasonably prudent actions and manipulating
Insilco's asset sale process and the timing of Insilco's bankruptcy filing to ensure that DLJ, alone

---

[10]"EBITDA" is an acronym for "earnings before interest, taxes, depreciation and amortization"
and is a common measure of a business's profitability.

[11]The "Credit Agreement" is defined in the Amended Complaint as the Second Amended and
Restated Credit Agreement dated as of August 25, 2000, as thereafter amended from time to time, among
Insilco Technologies and TAT Technologies, Inc., as Borrowers, U.S. Bank, N.A. as Administrative
Agent, DLJ Capital as Lead Arranger and Syndication Agent, TransAmerica Business Credit Corporation
and LaSalle National Bank, as co-Documentation Agents, and the various financial institutions party
thereto.  (Amend. Compl. ¶78).

[12]Although the identity of "PCM" is not readily apparent from the Amended Complaint, the
Disclosure Statement states that "In August 2000, the Debtors sold their automotive related businesses to
ThermaSys Holdings Co. for $144.5 million and acquired Precision Cable Manufacturing Company, Inc.
...."  Disclosure Statement, p. 7.  Presumably "PCM" refers to Precision Cable Manufacturing Company,
Inc.

among all of Insilco's other creditors, would benefit from the remaining assets of Insilco. (Amend. Compl. ¶¶ 102-104.)

Lastly, the Liquidating Trustee alleges that the Insilco Directors breached their duties of care, loyalty, honesty and good faith by approving actions and strategies designed to advance DLJ's interests while compromising Insilco's interests, managing the company in an unfair, unjust and inequitable manner not designed to benefit the company, and failing to avoid and prevent corporate waste and unnecessary expense. (Amend. Compl. ¶ 112.)

## BACKGROUND

On December 16, 2002, Insilco filed a voluntary petition for relief under chapter 11. On January 3, 2003, the Official Committee of Unsecured Creditors was appointed (the "Committee")(docket no. 78). In response to objections made by the Committee (and others) to the Debtors' motions to sell substantially all of their assets, the Debtor, the Committee and pre-petition lenders entered into an "Asset Reallocation and Settlement Agreement" dated May 13, 2004 (the "Settlement Agreement"), approved by the Court on June 11, 2003 (docket no. 721). Under the Settlement Agreement, certain claims of pre-petition lenders were allowed and certain claims against the pre-petition lenders were released. By order dated June 10, 2004, (the "Confirmation Order")(docket no. 1173), the Court confirmed the Debtor's Joint Liquidating Plan Pursuant to chapter 11 of the United States Bankruptcy Code (the "Plan")(docket no. 1019). Section 14.20 of the Plan provides that to the extent there was a conflict between the terms of the Plan and the terms of the Settlement Agreement, the terms of the Settlement Agreement would control. The Confirmation Order contains a similar provision (¶52).

Section 7.2 of the Plan provides that as of the effective date of the Plan, all "Rights of

6

Action" were transferred to the Creditor Trust (Section 7.2(a)), along with the responsibility of

"filing, prosecuting and settling the Rights of Action" (Section 7.2(b)).  "Rights of Action" is

defined in Section 1.2 of the Plan as:

> All actions, causes of action, suits, rights of action ... arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions[13] and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) related to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

On December 15, 2004, the Liquidating Trustee filed the complaint commencing this

adversary proceeding.  On February 17, 2005, the Liquidating Trustee filed the Amended

Complaint alleging the following causes of action:

| | |
|---|---|
| First Claim for Relief (against DLJMB): | Avoidance of Transfers Pursuant to 11 U.S.C. § 547(b); |
| Second Claim for Relief (against DLJ): | Avoidance of Fraudulent Transfers pursuant to 11 U.S.C. § 548(a)(1)(B); |
| Third Claim for Relief (against DLJ): | Fraud; |
| Fourth Claim for Relief (against DLJ): | Professional Malpractice; |
| Fifth Claim for Relief (against DLJ): | Unjust Enrichment; |

---

[13]"Avoidance Actions" is defined in the Plan as "[a]ll actions, causes of action or claims of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date."

| | |
|---|---|
| Sixth Claim for Relief<br>(against DLJ): | Deepening Insolvency; |
| Seventh Claim for Relief<br>(against DLJ): | Equitable Subordination pursuant to 11 U.S.C. § 510(c); |
| Eighth Claim for Relief<br>(against DLJ): | Aiding and abetting breach of fiduciary duty; |
| Ninth Claim for Relief<br>(against Insilco Directors): | Breach of fiduciary duty; |
| Tenth Claim for Relief<br>(against DLJ and<br>and Insilco Directors): | Abuse of Control; |
| Eleventh Claim for Relief<br>(against McDonald): | Professional Malpractice. |

## LEGAL STANDARD - MOTION TO DISMISS

Fed.R.Civ.P. 12(b)(6), made applicable by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failure to state a claim upon which relief can be granted.  In considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all allegations in the complaint, and all reasonable inferences that an be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3rd Cir. 1989).  *See In re Spree.com Corp. v. Tesler,* 2001 WL 1518242, at *2 (E.D. Pa. Nov. 2, 2001).  "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002), citing *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996).

A complaint should be dismissed only if the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief."  *Conley v. Gibson,* 355 U.S. 41, 45 (1957);

8

*Spree.com,* 2001 WL 1518242, at *2. The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the Complaint." *U.S. Express Lines, Ltd. v. Higgins,* 2002 WL 229501, at *2 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

## DISCUSSION

In the memoranda supporting their respective motions to dismiss, the DLJ-related Defendants, Howe, Ashton and Curran each argue that this Court lacks subject matter jurisdiction over the claims alleged in the Amended Complaint. Jurisdiction is a threshold issue; I will examine this first.

The Plan contains a "Retention of Jurisdiction" provision which provides, in relevant part:

> Section 13.1 *Retention of Jurisdiction*
>
> Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan. The Bankruptcy Court shall also have exclusive jurisdiction:
> ....
> (c)    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

However, parties cannot "write their own jurisdictional ticket" and a confirmation order cannot confer jurisdiction upon a bankruptcy court unless jurisdiction exists pursuant to 28 U.S.C. § 1334 or 28 U.S.C. §157. In re Resorts International, Inc., 372 F.3d 154, 161 (3d Cir. 2004).

Under 28 U.S.C. § 1334, the district courts "shall have original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings

arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. §1334(a) and

(b). The District Court is authorized to refer those cases and proceedings to the bankruptcy

judges for their district. 28 U.S.C. § 157(a).

In its <u>Resorts</u> decision, the Third Circuit described bankruptcy court jurisdiction as

follows:

> Bankruptcy Court jurisdiction potentially extends to four types of title 11 matters, pending referral from the district court: " '(1) cases under Title 11, (2) proceedings arising under Title 11, (3) proceedings arising in a case under Title 11, and (4) proceedings related to a case under Title 11.' " [Torkelsen v. Maggio] (In re Guild & Gallery Plus, Inc., 72 F.3d [1171], at 1175 [(3d Cir. 1996)](quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 264 (3d Cir. 1991)). Cases under title 11, proceedings arising under title 11 and proceedings arising in a case under title 11 are referred to as "core" proceedings; whereas proceedings "related to" a case under title 11 are referred to as "non-core" proceedings. See 1 <u>Collier on Bankruptcy,</u> ¶3.02[2], at 3-35 (15th ed. rev. 2003). Congress vested the bankruptcy courts with full adjudicative power with regard to "core" proceedings, subject to appellate review by the district courts. 28 U.S.C. §§ 157(b)(1), 158(a), (c). At the same time, it provided that, for "non-core" proceedings that are otherwise related to a case under title 11, the bankruptcy court "shall submit proposed findings of fact and conclusions of law to the district court" subject to de novo review by that court. 28 U.S.C. § 157(c)(1).

Resorts, 372 F.3d at 162. The first inquiry with respect to the claims asserted in the Amended

Complaint is whether they are core matters.

<u>A. The Bankruptcy Court has Subject Matter Jurisdiction over "core" claims.</u>

The Third Circuit Court of Appeals articulated the following test for deciding whether a

matter is a core proceeding:

> To determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources. First, a court must consult [28 U.S.C.] §157(b). Although §157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core." *See* §157(b)(2)(A)-(O). Second, the court must apply this court's test for a "core" proceeding. Under that test, "a proceeding is core [1] if it invokes a substantive right provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case."

Halper v. Halper, 164 F.3d 830, 836 (3d Cir. 1999) *(citations omitted).*

The non-exhaustive list of core proceedings set forth in 28 U.S.C. §157(b)(2) includes (i) proceedings to determine, avoid, or recover preferences, (ii) proceedings to determine, avoid, or recover fraudulent conveyances, and (iii) determinations of the validity, extent, or priority of liens.  28 U.S.C. § 157(b)(2)(F), (H) and (K).  The First and Second Claims for Relief set forth in the Liquidating Trustee's Amended Complaint, referring to avoidance of preferential and fraudulent transfers under Bankruptcy Code §§547 and 548, easily fall within the core proceedings described in § 157(b)(2)(F) and (H), respectively.  Accordingly, the First and Second Claims for Relief are properly before me.[14]

---

[14]The DLJ-related Defendants also argued that the First and Second Claims for Relief are not sufficiently pled and should be dismissed.

In the first claim, the Liquidating Trustee alleges that transfers totaling not less than $477,700 were made to or for the benefit of DLJMB in the one-year period prior to the Petition Date.  (Amend. Compl. ¶120).  Pursuant to Fed.R.Civ.P. 8(a)(2), applicable here by Fed.R.Bankr.P. 7008, a pleading is required to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Pardo v. Gonzaba (In re APF Co.), 308 B.R. 183, 188 (Bankr.D.Del. 2004) quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  Factors that should be included in a preference complaint to give fair notice to the defendant include "(a) an identification of the nature and amount of each antecedent debt and (b) an identification of each alleged preference transfer by (i) date, (ii) name of debtor/transferor, (iii) name of transferee and (iv) the amount of the transfer."  APF, 308 B.R. at 188 quoting Valley Media, Inc. v. Borders, Inc. (In re Valley Media), 288 B.R. 189, 192 (Bankr.D.Del. 2003).  The Amended Complaint does not identify the antecedent debt or give any basic information about the dates or amounts of the alleged preferential transfers.  However, because "leave to amend should be freely given when justice so requires" (Fed.R.Civ.P. 15(a), made applicable here by Fed.R.Bankr.P. 7015), I will not dismiss the claim, but will allow the Liquidating Trustee an opportunity to amend and provide more specific information so that DJLMB is given fair notice of the alleged transfers which are the basis of the Liquidating Trustee's claim.

The Second Claim for Relief alleges that the Debtor paid "certain advisory fees...totaling not less than $447,700 to or for the benefit of DLJ and DLJ affiliates" and that those fees are avoidable under Bankruptcy Code §548.  (Amend. Compl. ¶128).  Fed.R.Civ.P. 9(b) requires allegations of fraud to be stated with particularity, but "[c]ourts have noted that, in the bankruptcy context, Rule 9(b) should be interpreted liberally, particularly when the trustee, a third party outsider to the fraudulent transaction, is bringing the action."  Levitt v. Riddell Sports, Inc. (In re MacGregor Sporting Goods, Inc.), 199 B.R. 502, 514-15 (Bankr.D.N.J. 1995).  Despite a more liberal interpretation, some courts have determined that a fraudulent transfer complaint is sufficient under Rule 9(b) if the complaint lists the approximate date and amount of each transfer and identifies the debtor as the transferor and the defendant as the transferee.

The Seventh Claim for Relief in the Liquidating Trustee's Amended Complaint, alleging equitable subordination claims against DLJ pursuant to 11 U.S.C. § 510(c), also is a core proceeding under 28 U.S.C. § 157(b)(2)(K) and (O). However, the Liquidating Trustee previously raised equitable subordination claims against DLJ in the "First Omnibus (Substantive) Objection of the Official Committee of Unsecured Creditors to Claims of Class 7 Creditors" (docket no. 1169)(the "Claim Objection"). By Order dated November 18, 2004 (docket no. 1356), the Claim Objection was dismissed because I determined that the "Term C Lenders," (which were defined to include the same entities that are defined as "DLJ" in the Amended Complaint) had been released as part of the Settlement Agreement. The Seventh Claim for Relief is no more than a repeat of the earlier Claim Objection and I will not reconsider it here.[15] Therefore, the equitable subordination claims will be dismissed as to DLJ. However, the Liquidating Trustee will be permitted to conduct discovery for a period of 60 days after entry of this Memorandum and Order to determine whether there are equitable subordination claims that may be brought against defendants other than DLJ.[16]

The Liquidating Trustee also argues that the unjust enrichment and deepening insolvency claims, set forth in the Fifth and Sixth Claims for Relief in the Amended Complaint, are core

---

Argus Management Group v. Rider (In re CVEO Corp.), Adv. No. 03-50377, 2004 WL 2049316, *2 (Bankr.D.Del. Sept. 13, 2004); APF, 308 B.R. at 188. Although the Liquidating Trustee claims that he has labeled each transfer and identified the recipient (Response, p. 30), the Amended Complaint does not contain any specific information about the dates, approximate amounts, or recipients of allegedly fraudulent transfers. As above, I will not dismiss the claims on this basis. Instead, under Fed.R.Civ.P. 15(a), the Liquidating Trustee will have an opportunity to amend the complaint to provide the requisite specificity about the alleged fraudulent transfers.

[15]The November 18, 2004 Order was appealed by the Liquidating Trustee.

[16]At oral argument on the motions to dismiss, the DLJ-related Defendants asserted that the only claims filed by DLJ were those that were the subject of the Claim Objection. Tr. 6/29/05 at 76-77.

proceedings under the "catch-all" provisions of 28 §157(b)(2)(A) and (O).[17]  The Liquidating

Trustee relies upon the case <u>Robert v. Schiff (In re 400 South Main Street)</u>, 133 B.R. 282, 284

(D.R.I. 1991), in which the court decided that the unjust enrichment claim was a core proceeding

based on §157(b)(2)(O).[18]  The Liquidating Trustee also argues that the deepening insolvency

claim is a core matter pursuant to §157(b)(2)(A).

Some courts, however, have determined that a cause of action created solely by state law,

which does not otherwise fall within the provisions of 28 U.S.C. §157(b)(2)(B)-(N), is a non-

core matter, even if it arguably falls within the literal wording of the catch-all provisions of

§157(b)(2) (A) or (O).  <u>Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)</u>, 781

F.2d 159, 162 (9th Cir. 1986); <u>Stanger v. Athos Steel and Aluminum, Inc. (In re Athos Steel and

Aluminum, Inc.)</u>, 71 B.R. 525, 534 (Bankr.E.D.Pa. 1987).   The unjust enrichment claim and the

deepening insolvency claim do not meet the elements of the second part of the <u>Halper</u> test,

because neither claim invokes a substantive right provided by title 11, nor could either claim

arise only in the context of a bankruptcy case.[19]  Without more, the claims cannot be considered

---

[17]28 U.S.C. §157(b)(2) provides, in part, that:
>     (b)(2)   Core proceedings include, but are not limited to - -
>         (A)      matters concerning administration of the estate;
>         ....
>         (O)      other proceedings affecting the liquidation of the assets of the estate or
>                   the adjustment of the debtor-creditor or the equity security holder
>                   relationship, except personal injury tort or wrongful death claims.

[18]In <u>Main Street,</u> the issue was whether a debtor had been unjustly enriched by payments made by the plaintiff.  The <u>Main Street</u> Court denied the debtor's request for dismissal due to lack of subject matter jurisdiction, deciding that the unjust enrichment claim was a core proceeding based on §157(b)(2)(O). <u>Main Street</u>, 133 B.R. at 284.  In the alternative, the <u>Main Street</u> Court determined that the unjust enrichment claim was at least "related to" the bankruptcy case. <u>Id.</u>

[19]The Liquidating Trustee argued that deepening insolvency claims can only arise in a chapter 11 case.  However, such claims have been  alleged outside the context of a bankruptcy case.  <u>See e.g.</u>, <u>Bondi v. Citigroup, Inc.</u>, No. BER-L-10902-04, 2005 WL 955856 (N.J.Super.Ct. Feb. 28, 2005); <u>Coroles v.</u>

core based §157(b)(2)(A) and (O).   Therefore, I conclude that the unjust enrichment and deepening insolvency claims are not core proceedings.

The parties do not argue that any of the remaining claims in Liquidating Trustee's Amended Complaint are core proceedings.  Therefore, I now will analyze whether there is "related to" jurisdiction over the remaining claims.

 B. There is no "related to" subject matter jurisdiction over the remaining claims.

By establishing "related to" jurisdiction, Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.  Resorts, 327 F.3d at 163-64 citing Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).  However, "related to" jurisdiction of the bankruptcy court is not without limit.  Its boundaries were delineated in Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984) as follows:

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy....Thus, the proceeding need not necessarily be against the debtor or against the debtor's property.  An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

Pacor, 743 F.2d at 994.[20]

---

Sabey, 79 P.3d 974, 983 (Utah Ct. App. 2003).  The Liquidating Trustee also cites to my decision in Official Committee of Unsecured Creditors v. Credit Suisse First Boston (In re Exide Technologies, Inc., 299 B.R. 732 (Bankr.D.Del. 2003) in support of his position that the deepening insolvency claim is a core matter.  However, in Exide, the parties did not argue or brief the issue of whether the various counts were core matters.  Exide, 299 B.R. at 737.  Instead, the parties consented to the Court's entry of a final order pursuant to §157(c)(2) and it was unnecessary to decide which claims were core or non-core.  Id.

[20]While Pacor was overruled on other grounds by Things Remembered, Inc. v. Petrar, 516 U.S. 124, 134-35 (1995)(Stevens, J. concurring), the Pacor test for "related to" jurisdiction was discussed favorably by the U.S. Supreme Court in Celotex Corp. v. Edwards, 514 U.S. 300, 308, 115 S.Ct. 1493,

Once a plan is confirmed, however, all property of the estate usually will vest in the reorganized debtor (unless the plan provides otherwise).  Therefore, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."  Resorts, 372 F.3d at 165.  But the Court in Resorts recognized that most courts "do not usually apply Pacor's 'effect on the bankruptcy estate' test so literally as to entirely bar post-confirmation bankruptcy jurisdiction."  Id.  After reviewing various decisions, the Court determined that, after plan confirmation, bankruptcy court "related to" jurisdiction is limited to matters in which "there is a close nexus to the bankruptcy plan or a proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement...."  Resorts, 372 F.3d at 168-69.  See also Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189 (9th Cir. 2005)(agreeing that post-confirmation bankruptcy court jurisdiction is more limited than pre-confirmation jurisdiction and adopting the "close nexus" test of Resorts); Grimes v. Graue (In re Haws), 158 B.R. 965, 970 (Bankr. S.D. Tex. 1993)("[T]he bankruptcy court appears to be restricted to exercising postconfirmation jurisdiction over those matters directly relevant to the management of the former estate as it was treated and disposed of in a confirmed plan of reorganization.")

In Resorts, the Court decided that a post-confirmation adversary proceeding brought by a litigation trust alleging professional malpractice claims against its accountant did not have a close nexus to the bankruptcy plan or proceeding.  Chief Judge Scirica wrote:

---

1499, 131 L.Ed.2d 403 (1995), and in footnote 6 of Celotex, the Supreme Court noted that - - as of that time - - eight other circuit courts had adopted the Pacor test with little or no variation.

> [R]esolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to [the] bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's "related to" jurisdiction post-confirmation.

Resorts, 372 F.3d at 169.

The Liquidating Trustee argues that this adversary proceeding meets the close nexus test enunciated in Resorts because the Plan specifically created the Creditor Trust and granted the Creditor Trust the responsibility to file, prosecute, and settle the "Rights of Action," thereby rendering this proceeding necessary in order to administer and implement the Plan. Moreover, the asserted claims arose pre-petition and, the Liquidating Trustee argues, are part of the assets to be distributed under the Plan. The Liquidating Trustee compares this proceeding to the post-Resorts decision, Michaels v. World Color Press, Inc. (In re LGI, Inc.), 322 B.R. 95 (Bankr.D.N.J. 2005), in which the bankruptcy court decided that it had jurisdiction to hear a post-confirmation adversary proceeding brought by a distribution trustee to recover a pre-petition casualty loss.

The confirmed plan in LGI generally incorporated the terms of an asset purchase agreement, but specifically transferred the excluded assets (which were designated to include any proceeds arising from the prepetition casualty loss) to a distribution trust for liquidation and distribution to certain creditors. LGI, 322 B.R. at 97. The LGI Court determined that the adversary proceeding had a close nexus to the plan because it "invoked" the implementation, consummation and execution of the confirmed plan. LGI, 322 B.R. at 103. The LGI Court

16

noted that, unlike Resorts, the cause of action in the case before it arose prepetition, was

specifically identified in the plan, and "was an important substantive element of the Plan to be

prosecuted by the Distribution Trustee." Id.   The LGI plan specifically identified recovery of

the casualty loss as an asset to be distributed to creditors.

In Haws, relied upon, in part, by the Court in Resorts, the bankruptcy court held that it

did not have jurisdiction to hear pre-petition state law claims, pursued post-confirmation by a

liquidating trust, against the debtor's former partner.  The Haws Court recognized that

"[n]owhere in the lawsuit is the bankruptcy court being asked to construe or interpret the

confirmed plan or to see that federal bankruptcy laws are complied with in the face of

violations."  Resorts, 372 F.3d at 168 quoting Haws, 158 B.R. at 971.  The Haws Court

concluded: "The only nexus to this bankruptcy case is that the plaintiff in this matter is a

liquidating trustee representing a group of creditors appointed pursuant to the confirmed plan of

reorganization."  Id.

Similarly, even though the claims alleged by the Liquidating Trustee in the Amended

Complaint arose prepetition, their resolution does not require interpretation of the Plan and will

not affect the bankruptcy estate or the Debtor.  The outcome of this adversary proceeding could

result in additional assets to distribute to creditors, but Resorts rejected the argument that such a

result (without more) creates a close nexus to the Plan, writing:

> [T]he potential to increase assets of the Litigation Trust and its beneficiaries does
> not necessarily create a close nexus sufficient to confer "related to" bankruptcy
> court jurisdiction post-confirmation.  The Trust beneficiaries here no longer have
> the same connection to the bankruptcy proceeding as when they were creditors of
> the estate.  For reasons they believed financially prudent, they traded their
> creditor status as claimants to gain rights to the Litigation Trust's assets.  Thus,
> their connection to the bankruptcy plan or proceeding is more attenuated.
> Furthermore, if the mere possibility of a gain or loss of trust assets sufficed to

17

confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust
would fall under the "related to" grant. Such a result would widen the scope of
bankruptcy court jurisdiction beyond what Congress intended for non-Article III
bankruptcy courts.

Resorts, 372 F.3d at 170.[21]

Finally, at oral argument on June 29, 2005, the Liquidating Trustee cited Boston

Regional Medical Center, Inc. v. Reynolds (In re Boston Regional Medical Center, Inc.), 410

F.3d 100 (1st Cir. 2005) in further support of his argument in favor of subject matter jurisdiction.

The Boston Regional Court distinguished between liquidating and reorganizing debtors for

purposes of determining post-confirmation "related to" jurisdiction, holding: "[W]hen a debtor

(or a trustee acting to the debtor's behoof) commences litigation designed to marshal the debtor's

---

[21]The Liquidating Trustee also relies on the pre-Resorts decision by the Third Circuit in
Donaldson v. Bernstein, 104 F.3d 547 (3d Cir. 1997). In Donaldson, a chapter 7 trustee brought an action
against the debtor's officers and shareholders (after conversion from chapter 11) for violating their
fiduciary duties to unsecured creditors by diverting business from the debtor and not funding the
reorganization plan. Donaldson held that the bankruptcy court had jurisdiction to hear the trustee's case,
which "implicates the integrity of the bankruptcy process," because the officers' actions impaired the
debtor's ability to make payments under the previously confirmed plan. Donaldson, 104 F.3d at 553.
The litigation was intended to enforce implementation of the plan and, therefore, had a "close nexus" to
the plan (though the Donaldson panel did not use the same terminology later employed in Resorts).
Finally, the Court in Donaldson also stated:

> In reaching our result on the jurisdictional issues we have not lost sight of the theme which recurs
> in the reported opinions that the jurisdiction of the bankruptcy courts must be confined within
> appropriate limits and does not extend indefinitely, particularly after the confirmation of a plan
> and the closing of a case. We are in full accord with that approach and indeed have expressed
> similar reservations regarding a bankruptcy court's jurisdiction in other contexts. Yet we
> recognize, ..., that in an "analysis of the impact of a confirmed plan of reorganization upon a
> subsequent conversion to Chapter 7 ... much depends on procedural nuances." Here, we are
> satisfied for the reasons we have expressed that the bankruptcy court had jurisdiction in these
> proceedings. We predicate our conclusion, however, on the unusual "procedural nuances" here
> so our opinion should not be used as authority in circumstances in which it cannot be applied
> reasonably. Different "nuances" might bring a different conclusion.

Donaldson, 104 F.3d at 554-55 (citations omitted). This case does not have "procedural nuances" similar
to those in Donaldson and, therefore, the Donaldson decision does not aid the Liquidating Trustee's
jurisdictional argument.

assets for the benefit of its creditors pursuant to a liquidating plan or reorganization, the compass of related to jurisdiction persists undiminished after plan confirmation." Boston Regional, 410 F.3d at 107. The court reasoned that the scope of "related to" jurisdiction should not diminish for a liquidating debtor because "a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court" and "in the case of a liquidating plan of reorganization, there exists a substantial policy interest in favor of adhering to the general rule governing related to jurisdiction: the strong federal policy in favor of the expeditious liquidation of debtor corporations and the prompt distribution of available assets to creditors." Id.

The jurisdictional statutes apply without differentiating between liquidating and reorganizing debtors. Resorts makes no such distinction and holds that post-confirmation "related to" jurisdiction lies only if the matter at issue affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan. I cannot conclude that there exists here a sufficient basis for distinguishing between liquidating and reorganizing debtors when considering post-confirmation "related to" jurisdiction.

The claims in the Amended Complaint do fall within the literal definition of "Rights of Action" and the Disclosure Statement does state that the Creditor Trust reserves its right to pursue claims and Rights of Action not specifically identified in the plan documents (*see* Section 8.2 of the Disclosure Statement).[22] However, neither the Plan nor Disclosure Statement specifically identifies the claims against the defendants as an asset to be liquidated and distributed to creditors. The general language of the Plan and Disclosure Statement concerning

---

[22]It is also true that Section 4(c) of the Settlement Agreement limits certain releases given to the DLJ Affiliates (therein called the Term C Lenders), but identifies no potential claim against the defendants.

post-confirmation litigation does not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation.[23]  If the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan.[24]  Further, pursuit of these non-core claims does not call for the interpretation of any Plan provision.  I decline to find the requisite "close nexus" of these non-core claims to the bankruptcy case based solely upon the Plan's creation of the Creditor Trust to pursue generally defined "Rights of Action," or to conclude that this particular litigation by the Liquidating Trustee is "implementation of the plan."  Such an interpretation would run afoul of  Resorts.

For these reasons, I conclude that jurisdiction properly lies with respect to the First, Second and Seventh Claims for Relief in the Amended Complaint.  This Court does not have

---

[23]General language, however, should usually be sufficient to provide notice to creditors of the right to pursue, post-confirmation, avoidance actions under chapter 5 of the Bankruptcy Code.  Such claims are core proceedings.  In this case, such actions were expressly described.  See n. 13, supra.

[24]The Liquidating Trustee argued that the Committee had no control over the contents of the Plan and Disclosure Statement since those documents were drafted by the Debtor.  He acknowledged that the Committee could have fought to include specific language in the plan documents, but the Committee decided against such a fight to allow the case to move forward.  Tr. 6/29/05 at 38. However, the lack of specific language as drafted by the Debtor and the Committee's decision not to force the issue further supports the argument that the litigation is not critical to the Plan.  Or, if indeed, the litigation is critical to implementation of the Plan, this should have been revealed on the record and before confirmation.  The Liquidating Trustee also argued that the Court should take judicial notice of numerous statements made at hearings throughout the bankruptcy case regarding the importance of this litigation to the Committee's goals.  Tr. 6/29/05 at 37.  At argument of the Motions to Dismiss, the Liquidating Trustee could not offer immediate reference to any such statements and the Court declined to permit post-argument submissions to identify any such statements.  Even if such statements were made by counsel at various hearings throughout this chapter 11 case, such statements are not evidence.  Moreover, in the course of a chapter 11 case, various counsel may make many statements, related to a particular motion, objection, or hearing, which may not necessarily be relevant for any other purpose.  And, during the course of a chapter 11 case, positions taken at one stage often change at another, and may not serve, reliably, later for another purpose.

jurisdiction to determine on their merits the remaining claims for relief.[25] An appropriate order follows.

                              BY THE COURT:


                              KEVIN J. CAREY
                              UNITED STATES BANKRUPTCY JUDGE

Dated: September 27, 2005

---

[25]At oral argument, the Liquidating Trustee's counsel stated that, if his claims were dismissed, the Liquidating Trustee would be without remedy, certain statutes of limitations having passed.  I will, therefore, provide an opportunity to the Liquidating Trustee to demonstrate whether this court may transfer the dismissed claims to another court of competent jurisdiction.  See, e.g., 28 U.S.C. §1631 (or any other applicable state law).  The defendants will also have the opportunity to assert that applicable state savings statutes or tolling provisions may make transfer unnecessary.

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re: | : | |
| | : | Chapter 11 |
| **INSILCO TECHNOLOGIES, INC.**, *et al.*, | : | Case No. 02-13672 (KJC) |
| Debtors | : | |
| | : | (Jointly Administered) |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯: | | |
| | : | |
| **CHAD J. SHANDLER, CREDITOR** | : | |
| **TRUSTEE OF INSILCO TECHNOLOGIES,** | : | |
| **INC.,** *et al.* | : | |
| Plaintiff | : | |
| | : | |
| vs. | : | |
| | : | |
| **DLJ MERCHANT BANKING, INC. n/k/a** | : | Adv. Pro. No. 04-57950 (KJC) |
| **CREDIT SUISSE FIRST BOSTON,** *et al.* | : | |
| Defendants | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯: | | |

## <u>ORDER</u>

AND NOW, this 27th day of September, 2005, upon consideration of the Motion of the DLJ-related Defendants to Dismiss the Amended Complaint (docket no. 12), and motions to dismiss filed by David Howe (docket no. 18), James Ashton (docket no. 20), and Randall Curran (docket no. 22)(collectively, the "Motions to Dismiss"), and the response of the Liquidating Trustee thereto (docket no. 35), and after oral argument held on June 29, 2005, and for the reasons set forth in the foregoing Opinion, it is hereby ORDERED and DECREED that the Motions to Dismiss are GRANTED, in part, and DENIED, in part, as follows:

      1.      The Bankruptcy Court lacks jurisdiction to hear the following claims for relief set forth in the Amended Complaint: Third Claim for Relief (Fraud); Fourth Claim for Relief (Professional Malpractice); Fifth Claim for Relief (Unjust Enrichment);

Sixth Claim for Relief (Deepening Insolvency); Eighth Claim for Relief (Aiding and Abetting Breach of Fiduciary Duty); Ninth Claim for Relief (Breach of Fiduciary Duty); Tenth Claim for Relief (Abuse of Control);and Eleventh Claim for Relief (Professional Malpractice);

2.      A hearing will be held on **October 20, 2005** at **10:00 a.m.** in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, Second Floor, Philadelphia, Pennsylvania to determine whether this Court should or may transfer the claims set forth in paragraph 1, above, to a court of competent jurisdiction. The Liquidating Trustee shall file and serve a memorandum in support of his position on or before **October 6, 2005**. Response(s) thereto must be filed and served on or before **October 13, 2005**.

3.      The Motions to Dismiss are DENIED, in part, with respect to the First Claim for Relief (Avoidance of Preferential Transfers) and Second Claim for Relief (Avoidance of Fraudulent Transfers); provided, however, that on or before **December 1, 2005** the Liquidating Trustee may file an amended complaint that provides more detail regarding the alleged preferential and fraudulent transfers.

4.      The Motions to Dismiss are GRANTED, in part, with respect to the Seventh Claim for Relief (Equitable Subordination) against DLJ (as that term is defined in the Amended Complaint); provided, however, that the Liquidating Trustee shall have sixty (60) days from the date of this order to conduct discovery and on or before **December 1, 2005**, the Liquidating Trustee may file a second amended complaint with respect to the Seventh Claim for Relief to add a defendant or

2

defendants to the Seventh Claim for relief.

BY THE COURT:


KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE