**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| INSILCO TECHNOLOGIES, INC., *et al.*, | ) | Case No. 02-13672 (KJC) |
|  | ) |  |
| Debtors | ) | (Jointly Administered) |

|  |  |  |
|---|---|---|
| CHAD SHANDLER, as Trustee to the Insilco Liquidating Trust, | ) | Case No. 05 CV 795 (GMS) |
| Appellant. | ) |  |
| v. | ) |  |
| DLJ MERCHANT BANKING, INC. n/k/a CREDIT SUISSE FIRST BOSTON, | ) |  |
| Appellees. | ) |  |

<u>**APPELLANT'S OPENING BRIEF**</u>

DUANE MORRIS LLP
Michael R. Lastowski (ID No. 3892)
Richard W. Riley (ID No. 4052)
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
mlastowski@duanemorris.com

        -and-

ARENT FOX LLPC
Andrew I. Silfen
Michael S. Cryan
Heike M. Vogel
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
silfen.andrew@arentfox.com

*Attorneys for Chad Shandler,
Trustee of the Insilco Liquidating Trust*

DM3\438761.2

**TABLE OF CONTENTS**

Page

JURISDICTIONAL STATEMENT ................................................................................. 1

PRELIMINARY STATEMENT ...................................................................................... 1

QUESTIONS PRESENTED.............................................................................................. 2

STANDARD OF REVIEW .............................................................................................. 2

STATEMENT OF THE CASE.......................................................................................... 3

STATEMENT OF FACTS ................................................................................................ 5

ARGUMENT.................................................................................................................... 13

I.    THE PROVISIONS OF THE LIQUIDATION PLAN AND THE
      DISCLOSURE STATEMENT PROPERLY PRESERVE THE
      DISMISSED CLAIMS PURSUANT TO SECTION 1123 OF THE
      BANKRUPTCY CODE AND CASE LAW OF THIS CIRCUIT................................... 13

      A.    The Reservation of Rights Provisions in the Liquidation Plan  and
            Disclosure Statement Fully Comply with Section 1123 ..................................... 13

      B.    The Multiple Reservation of Rights Provisions of the Liquidation
            Plan and Disclosure Statement Also  Meet the Requirements of
            Case Law of this Circuit ................................................................................... 17

II.   CONSISTENT WITH THE THIRD CIRCUIT COURT'S *RESORTS*
      DECISION,  THE DISMISSED CLAIMS ARE THE TYPE OF CLAIMS
      FOR WHICH POST-CONFIRMATION JURISDICTION IS
      SPECIFICALLY PRESEVED ...................................................................................... 21

      A.    The Dismissed Claims Were Properly Preserved in the Liquidation
            Plan; they Belonged to the Debtors, Arose Pre-petition, and the
            Prosecution of these Claims Is the Corner Stone and an Integral
            Part of the Plan.................................................................................................... 21

      B.    The Resorts Decision of the Third Circuit is in  Harmony, Not in
            Contraction, with the First  Circuit Court's Ruling in *Boston
            Regional* ............................................................................................................. 25

CONCLUSION.................................................................................................................... 27

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Astropower Liquidating Trust v. Xantrex Technology, Inc. (In
    re Astropower Liquidating Trust),*
    335 B.R. 309 (Bankr. D. Del. 2005) ........................................................................... 22

*Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.),*
    327 F.3d 154 (3d Cir. 2004).................................................................................... 2, 21

*Boston Regional Medical Center, Inc. v. Reynolds (In re
    Boston Regional Medical Center, Inc.),*
    410 F.3d 100 (1st Cir. 2005).................................................................................... 25

*Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.),*
    326 B.R. 312 (Bankr. D. Del. 2005) ........................................................................ 16

*EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.),*
    352 B.R. 731 (Bankr. D. Del. 2006) ........................................................................ 22

*Guttman v. Martin, III, et al. (In re Railworks Corp., et al.),*
    325 B.R. 709 (Bankr. D. Md. 2005) ........................................................................ 14

*In re Amarex,*
    96 B.R. 330 (W.D. Okla. 1989) ............................................................................... 24

*In re Goodman Bros. Steel Drum Co., Inc.,*
    247 B.R. 604 (Bankr. E.D.N.Y. 2000)..................................................................... 20

*Koplik & Sons, Inc. v. Bank Mandiri (In re Perry H. Koplik &
    Sons, Inc.),*
    2006 WL 3017346, (Bankr. S.D.N.Y. 2006) ........................................................... 17

*Michaels v. World Color Press, Inc. (In re LGI, Inc.),*
    322 B.R. 95 (Bankr. D.N.J. 2005) ...................................................................... 22, 23

*Peltz v. Worldnet Corp. (In re USN Communications, Inc.),*
    280 B.R. 573 (Bankr. D. Del. 2002) ........................................................................ 14

Statutes

11 U.S.C. § 1123................................................................................................................ 12

28 U.S.C. § 158.................................................................................................................... 2

## JURISDICTIONAL STATEMENT

(A)    This is a controversy arising under the bankruptcy laws of the United States.

(B)    This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(a)(1).

(C)    The Notice of Appeal was timely filed on October 4, 2005.

(D)    This is an appeal from a final order of the bankruptcy court that disposed of the parties' claims that were the subject of the contested matter.

## PRELIMINARY STATEMENT

This is an appeal from an order and opinion of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") by the Honorable Kevin J. Carey, United States Bankruptcy Judge, dismissing based on lack of jurisdiction the Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh claims for relief (the "Dismissed Claims")[1] as set forth in an amended complaint filed on February 17, 2005 (the "Amended Complaint") (D.I. 5) by Chad J. Shandler, the trustee for the unsecured creditors' trust (the "Liquidating Trustee"), and granting in part the Motion of the Appellees to Dismiss the Amended Complaint (D.I. 12), and motions to dismiss filed by

---

[1] The Dismissed Claims are as follows: Third Claim for Relief – Fraud; Fourth Claim for Relief – Professional Malpractice; Fifth Claim for Relief – Unjust Enrichment; Sixth Claim for Relief – Deepening Insolvency; Eighth Claim for Relief – Aiding and abetting breach of fiduciary duty; Ninth Claim for Relief – Breach of fiduciary duty; Tenth Claim for Relief – Abuse of Control; Eleventh Claim for Relief – Professional Malpractice. The Amended Complaint also contained the First Claim for Relief – Avoidance Transfers Pursuant to 11 U.S.C. § 547(b); the Second Claim for Relief – Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 548(a)(1)(B), and the Seventh Claim for Relief – Equitable Subordination Pursuant to 11 U.S.C. § 510(c) (the "Surviving Claims"). Judge Carey permitted the Liquidating Trustee to provide more detail about the transfers set forth in the First & Second Claims and to conduct discovery to determine whether to amend the complaint to bring the Seventh Claim against any other party. However, after the Liquidating Trustee timely filed a Notice of Appeal and the Bankruptcy Court held a telephonic hearing on October 17, 2005, all the parties entered into a stipulation agreeing to stay the Surviving Claims during the pendency of the appeal. Stipulation (D.I. 60).

1

David Howe (D.I. 18), James Ashton (D.I. 20), and Randall Curran (D.I. 22) (collectively, the "Motions to Dismiss"). The Bankruptcy Court's opinion was dated September 27, 2005, and it was entered with an accompanying order on the court docket on September 27, 2005 (the "Insilco Opinion") (D.I. 52).

## QUESTIONS PRESENTED

1.    Did the Bankruptcy Court err in dismissing the Dismissed Claims where the Plan of Liquidation properly preserved the Dismissed Claims under both the Bankruptcy Code and relevant precedent?

2.    Did the Bankruptcy Court err in applying the holding of the Third Circuit's decision in *Resorts*[2], which specifically recognizes post-confirmation jurisdiction over pre-petition claims that belonged to a debtor and are essential to the administration and execution of the Plan of Liquidation such as the Dismissed Claims?

3.    Did the Bankruptcy Court err in finding that the enforcement of the Dismissed Claims does not establish a close nexus to the Plan of Liquidation when the Creditor Trust created under the Liquidation Plan received all of the non-released claims and causes of actions belonging to the Debtors or the estates, and the outcome of this prosecution is the primary source of funding the Plan of Liquidation and making distributions to creditors?

## STANDARD OF REVIEW

A District Court reviews a Bankruptcy Court's "legal determinations *de novo,* its factual findings for clear error and its exercise of discretion for abuse thereof." *In re Gen. Datacomm Indus., Inc.,* 407 F.3d 616, 619 (3d Cir. 2005) (internal quotation marks omitted). Here, the Bankruptcy Court's Order reflects a legal determination and, as such,

---

[2] *Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 372 F.3d 154, 165 (3d Cir. 2004).

DM3\438761.2

this Court's review is *de novo.*

## STATEMENT OF THE CASE

The Liquidation Plan and the Disclosure Statement properly and specifically preserved post-confirmation jurisdiction over the Dismissed Claims pursuant to Section 1123 of the Bankruptcy Code, which allows, but does not require, a reservation of claims clause in a plan to ensure that the estate representative is not prohibited from prosecuting claims post-confirmation. The Insilco Plan of Liquidation and Disclosure Statement contain provisions pursuant to which the Debtors transferred all of their Rights of Actions (described in more detail below) to the Liquidating Trustee and specifically retained the Liquidating Trustee's right to commence and prosecute the Dismissed Claims in the Bankruptcy Court post-confirmation. In accordance with his fiduciary and contractual obligations created under the Liquidation Plan and this transfer and retention of claims pursuant to Section 1123, the Liquidating Trustee properly commenced the Amended Complaint against the DLJ affiliated entities ("DLJ")[3] and certain former directors of Insilco.

As will be described more fully below, the provisions in the Debtors' Plan and Disclosure Statement that generally identified and preserved the Debtors' causes of actions and claims and transferred such claims to the Liquidating Trustee are indeed specific and adequate enough under the Bankruptcy Code and case law of this Circuit.

---

[3] DLJ affiliated entities include DLJ Merchant Banking, Inc. n/k/a Credit Suisse First Boston ("DLJMB"), DLJ Merchant Banking Partners, L.P. ("DLJMB, L.P."), Donaldson, Lufkin & Jenrette Securities Corp. ("DLJ Securities"), Donaldson, Lufkin & Jenrette, Inc. ("Donaldson, Lufkin & Jenrette, Inc."), DLJ Capital Funding, Inc. ("DLJ Capital"), MBP II Plan Investors, L.P. ("MBP II"), DLJ Offshore Partners II, C.V. ("DLJ Offshore"), DLJ Millennium Partners-A, L.P. ("DLJ Millennium Partners-A"), DLJ Millennium Partners, L.P. ("DLJ Millennium Partners"), DLJ ESC II, L.P. ("DLJ ESC"), DLJ EAB Partners, L.P. ("DLJ EAB"), DLJ Merchant Banking Partners II-A, L.P. ("DLJMB II-A"), DLJ Merchant Banking Partners II, L.P. ("DLJMB II"), DLJ Diversified Partners, L.P. ("DLJ Diversified Partners"), DLJ Diversified Partners-A, L.P. ("DLJ Diversified Partners-A"), and the following DLJ officers: Thompson Dean, William F. Dawson, Jr., George A. Peinado, and Keith Palumbo.

DM3\438761.2

More importantly, even though the reservation of claims clause in the Insilco Plan does not expressly name DLJ, such specificity is simply not required either by the Bankruptcy Code or the case law of this District.

Furthermore, contrary to the Insilco Opinion, the Third Circuit's decision in *Resorts* plainly provides for the retention of post-confirmation jurisdiction over the Dismissed Claims because, unlike the claim in *Resorts* which arose not only post-petition but after the confirmation and effective date of the plan and therefore did not have any nexus to the *Resorts* plan of reorganization, all of the Dismissed Claims are crucial to the administration of the Liquidation Plan, arose pre-petition, belonged to the Debtors and were duly transferred to the Liquidating Trustee under the Insilco Plan of Liquidation. Moreover, since the Insilco Plan provides for the liquidation, and not the reorganization, of all of the Debtors' assets, including the prosecution of causes of action, the Liquidating Trustee can neither administer the Plan nor make a distribution as provided for in the Liquidation Plan without the enforcement of the Dismissed Claims.  The Liquidating Trustee was appointed specifically to liquidate the remaining assets of the Debtors and to provide a distribution out of such liquidation to Insilco's unsecured creditors.  However, by dismissing the Dismissed Claims, the Bankruptcy Court effectively halted the Liquidating Trustee's ability to implement and administer the Plan of Liquidation which is in violation of Section 1123 of the Bankruptcy Code and contrary to the Third Circuit's decision in *Resorts*.  Accordingly, this Court should overrule the Bankruptcy Court's Opinion dismissing the Dismissed Claims based on lack of subject matter jurisdiction because the requisite close nexus to the Liquidation Plan, conferring jurisdiction, has been duly established in the present case.

## STATEMENT OF FACTS

Bankruptcy Petition of Insilco

On December 16, 2002 (the "Petition Date"), Insilco Technologies, Inc. *et al.*[4]

("Insilco" or the "Debtors") filed a voluntary petition for relief under chapter 11 of title

11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy

Court for the District of Delaware.

The Insilco Trust Agreement

On August 30, 2004, the Bankruptcy Court entered an order approving the Insilco

Liquidating Trust Agreement (the "Trust Agreement") among Insilco and the Liquidating

Trustee. (D.I. 1270). A-1 through A-103.[5] The Trust Agreement specifically confers the

Liquidating Trustee with the status of "'representative of the estate' as such phrase is

used in Section 1123(b)(3)(B) of the Bankruptcy Code with respect to the rights and

powers granted in the Trust Agreement, in the Plan and the Confirmation Order". Trust

Agreement § 2.13 at 8, A-265.

DLJ and Insilco Prior to Bankruptcy

DLJMB acquired a majority share in Insilco in 1998, and thereafter expanded its

control over the company by installing DLJ insiders as members of the Board of

Directors. Throughout its relationship with Insilco, DLJMB required Insilco to employ

DLJ-related entities as Insilco's financial advisor on multiple transactions and proposed

transactions. DLJMB also required Insilco to buy or sell eight (8) different businesses

and amend its credit agreements three times since August 1998, generating substantial

---

[4] The other debtors in these jointly administered Chapter 11 proceedings are Insilco Holding Co., InNet Technologies Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

[5] In accordance with D. Del. LR. 7.1.3(a)(3), citations to the Appendix are referred to as "A-__".

fees for DLJ-related entities attendant to each transaction.  In all, Insilco paid DLJ at least $15 million in fees between 1998 and 2002.

In July 2000, DLJ decided to acquire Insilco's most significant assets—its Automotive Business Unit—at an artificially low price, and the Insilco Directors approved this sale without hesitation.  DLJ not only stood on both sides of this transaction, but also had one of its insiders, Director Ashton, appointed to Insilco's board of directors to approve this transaction while misrepresenting to the Insilco's Board of Directors that he was "completely disinterested."  DLJ's insiders on the Insilco's Board might have known that Mr. Ashton was not as "disinterested" as he claimed, but said nothing to the Board's members who were not affiliated with DLJ.  These "independent" members of Insilco's Board did not question either Mr. Ashton's "disinterestedness," or the fairness of the entire transaction to Insilco, and rubberstamped the transaction without much deliberation.  The purportedly "independent" Mr. Ashton was soon installed as the chairman of the ThermaSys board of directors and later CEO of ThermaSys—the very entity whose sale he approved.

Deprived of its major cash-generating asset, Insilco came closer to financial collapse in the second quarter 2001, forcing Insilco to write down almost $150 million in goodwill in 2001.  Despite the recognition that Insilco was facing financial collapse, DLJMB did not permit Insilco to seek the protection of the Bankruptcy Code or to explore strategic alternatives.  Instead, DLJMB delayed the bankruptcy filing to insulate DLJ-related entities from adverse effects of such bankruptcy.

By January 2002, Insilco's Board finally determined that the combination of the declining economy and Insilco's highly leveraged position seriously threatened Insilco's ability to continue as a going concern.  Only then did DLJMB give its blessing for the sale of Insilco's remaining assets.  Fearful, however, that its status as an insider and

6

affiliate of Insilco would result in the avoidance of the liens and claims of DLJ, DLJMB

manipulated Insilco's assets sale process and the timing of Insilco's insolvency petitions

to ensure that DLJ, alone among all of Insilco's creditors, would benefit from the

remaining assets of Insilco.  DLJMB also continued to loot Insilco's remaining assets by

causing Insilco to pay hundreds of thousands of dollars to Bain & Co. in January of 2002

for services provided exclusively for DLJMB and at DLJMB's request.  The Insilco

Directors rubberstamped the decision to pay Bain & Co., as they rubberstamped other

decisions that led to Insilco's demise.

The Debtors' Disclosure Statement and Pertinent
Provisions Regarding the Transfer and Reservation of Claims

The Opinion specifically refers to certain provisions of the Debtors' Amended

Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Debtors'

Amended Joint Liquidating Plan which was entered and approved by the Bankruptcy

Court on February 13, 2004 (the "Disclosure Statement") (D.I. 1020).  The Disclosure

Statement specifically describes that under the Liquidation Plan the assets belonging to

the Debtors be vested in the Creditor Trust and in this regard states as follows:

> . . . The Unsecured Creditor Distribution Fund, the
> Administrative Claims Reserve Fund, the Creditor Trust
> Expense Fund, and the *Rights of Action* shall all be assets
> of the Unsecured Creditor Series; any other Assets
> (including the Star Litigation, Tax Refunds and any other
> Assets that will give rise to Settlement Proceeds) shall be
> part of the Senior Lender Series. The Excluded Assets in
> the Unsecured Creditor Series shall be managed and used
> for the sole purposes of achieving Consummation and
> carrying out the Plan and effectuating the Distributions
> provided for in the Plan . . .

Disclosure Statement, Art. V, G.1. at 25-26 (emphasis added).

Moreover, the Disclosure Statement describes a provision of the Liquidation Plan

which specifically states that the funding of Plan shall be "[t]he source of all Cash

7

necessary to achieve entry of the Final Decree and to carry out the Plan shall be the

Excluded Assets, including the *Rights of Action Recovery*." Disclosure Statement, Art.

V, G.6. at 27 (emphasis added).

The Disclosure Statement further describes the ability of the Liquidating Trustee

to commence and enforce claims in its provisions governing the Creditor Trust and

Rights of Action and states in pertinent part:

> On or before the Effective Date, (i) the Creditor Trust shall
> be created and established by the execution and delivery of
> the Trust Agreement and any other necessary action,
> subject to the provisions of the Asset Reallocation and
> Settlement Agreement and the Plan, and (ii) all Rights of
> Action and other Excluded Assets shall be transferred to
> the Unsecured Creditor Series of the Creditor Trust, free of
> all Claims, Liens and interests. The Creditor Trust shall
> reduce to Cash or otherwise liquidate the Rights of Action
> and other Excluded Assets and distribute such liquidated
> Assets in accordance with and subject to the terms and
> provisions of the Asset Reallocation and Settlement
> Agreement and the Plan. . . . As of the Effective Date, the
> Creditor Trust shall be responsible for (i) the winding up of
> the Debtors' Estates, (ii) liquidating or otherwise reducing
> to Cash the Excluded Assets in accordance with the Trust
> Agreement, (iii) filing, prosecuting and settling the Rights
> of Action, (iv) making Distributions to Holders of Allowed
> Claims, (v) complying with and carrying out the terms of
> the Asset Reallocation and Settlement Agreement, (vi)
> overseeing the continued liquidation to Cash of all other
> Assets (including the Star Services Litigation and the Tax
> Refunds) and promptly remitting to the Agent all
> Settlement Proceeds and all Cash (other than Cash which is
> proceeds of Excluded Assets), and (vii) settling, resolving
> and objecting to Claims.

Disclosure Statement, Art. V, H.1. at 27-28.

The Disclosure Statement defines the Rights of actions as follows:

> In accordance with the Plan, the Unsecured Creditors'
> Trustee shall be authorized and empowered to pursue and
> prosecute, to settle, or to decline to pursue, the Rights of
> Action, including all pending adversary proceedings and
> contested matters, whether or not such causes of action
> have been commenced prior to the Effective Date, and shall

8

be substituted as the real party in interest in any such action, commenced by or against the Debtors, Debtors' Estates or Creditors' Committee. The Unsecured Creditors' Trustee may settle, release, sell, assign, otherwise transfer or compromise such Rights of Action, in the Unsecured Creditors' Trustee's business judgment, subject to the provisions of the Plan without Bankruptcy Court approval.

Except as otherwise set forth in the Plan, but subject in all respects to the Asset Reallocation and Settlement Agreement, the Unsecured Creditors' Trustee may, but shall not be required to, set-off against any Claim and the Distributions to be made pursuant to the Plan in respect of such Claim, any Rights of Action the Estates may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Unsecured Creditors' Trustee of any such Rights of Action, setoff or recoupment which the Debtors may have against such Holder.

Disclosure Statement, Art. V, H.3. at 29.

Lastly, the Disclosure Statement explains that the Plan retains jurisdiction by listing an extensive Retention of Jurisdiction clause which provides in pertinent part:

Except as provided in the Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code or arising in or related to the Chapter 11 Cases including interpretation and implementation of the Plan. The Bankruptcy Court shall also have exclusive jurisdiction:

to enter such orders as may be necessary or appropriate to implement, interpret or enforce the provisions of the Plan and any contracts, instruments, releases, transactions and other agreements or documents created in connection with the Plan;

to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

to hear and determine disputes arising in connection with or relating to the Plan, the interpretation, implementation or enforcement of the Plan, or the extent of any Entity's

9

obligations incurred in connection with or released under the Plan;

to hear and determine any matters that may arise in connection with the sales of the Debtors' Assets or any order of the Bankruptcy Court with respect thereto;

Disclosure Statement, Art. V, M.1. at 37-38.

The Debtors' Amended Plan and Pertinent Provisions
Regarding the Transfer and Reservation of Claims

On February 13, 2004, the Debtors filed with the Bankruptcy Court the Amended

Joint Liquidating Plan (the "Liquidation Plan") (D.I. 1019). A-1 through A-103. The

Liquidation Plan specifically provides, *inter alia*, that the Liquidating Trustee is

responsible for (iii) filing, prosecuting and settling the Rights of Action. Liquidation

Plan, Art. VII, § 7.2 (b), A-26. The Liquidation Plan defines "Rights of Action" as

follows:

> All actions, causes of action, suits, rights of action, counterclaims, crossclaims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transaction with or related to the Debtors, any party named or identified in the Schedules or pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any other of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) Released Claims or (ii) related to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

Liquidation Plan, Art. I., § 1.2, A-12 through A-13.

The Liquidation Plan specifically preserves the Rights of Action under Section

8.2 and provides as follows:

> Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Asset Reallocation and Settlement Agreement, and this Plan, or any Final Order, the Debtors expressly reserve such claim or Right of Action for later enforcement by the Creditor Trust (including, without limitation, claims and Rights of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore no preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Rights of Action have been expressly released in the Asset Allocation and Settlement Agreement, this Plan or other Final Order…

Liquidation Plan, Art. VIII, § 8.2, A-28.

Additionally, the Liquidation Plan contains a Retention of Jurisdiction clause which states as follows:

> Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan. The Bankruptcy Court shall also have exclusive jurisdiction:
>
> > (c) to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

Liquidation Plan, Art. XIII, § 13.1, A-35.

DM3\438761.2

Confirmation Order and the Liquidating Trustee

On June 10, 2004, the Bankruptcy Court confirmed the Liquidation Plan by signing and entering the Findings of Fact, Conclusions of Law and Order Under Section 1129 of the Bankruptcy Code and Rule 3020 of the Bankruptcy Rules Confirming the Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Order") (D.I. 1173). A-104 through A-253. The Liquidation Plan provides for and the Confirmation Order confirms the creation of a liquidating trust to hold and administer the Liquidating Trust Assets in accordance with the Trust Agreement. The Liquidation Plan and the Trust Agreement duly appoint and recognize the appointment of the Liquidating Trustee as the estate representative pursuant to Section 1123 of the Bankruptcy Code. The Confirmation Order also authorizes and empowers the Liquidating Trustee to pursue and prosecute, maintain, settle or to decline to pursue the Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date. Confirmation Order, ¶ 33, at 17, A-120 through 121.

The Amended Complaint

By filing the Amended Complaint, the Liquidating Trustee sought to redress, among other things, the grievous and massive harm caused by the DLJ Affiliates and the following members of the Insilco Board of Directors: William F. Dawson, Jr., Thompson Dean, John F. Fort, III, George A. Peinado, Keith Palumbo, Randall Curran, James Ashton, and David Howe (the "Insilco Directors," and collectively with DLJ Affiliates and DLJ, the "Defendants") and McDonald Investments, Inc., ("McDonald"), which prepared a faulty fairness opinion at issue in this action.[6] These Defendants harmed and

---

[6] McDonald did not move to dismiss and will not be discussed further in this brief.

12

damaged Insilco, the estates of Insilco and its creditors by wrongfully exercising impermissible control over Insilco and taking unfair and harmful actions to advance the interests of DLJ Affiliates and failing to fulfill their fiduciary duties while compromising, prejudicing and adversely affecting interests of Insilco, the estates of Insilco and its creditors.  Amended Complaint ¶ 1, A-283.

## ARGUMENT

I.  **THE PROVISIONS OF THE LIQUIDATION PLAN AND THE DISCLOSURE STATEMENT PROPERLY PRESERVE THE DISMISSED CLAIMS PURSUANT TO SECTION 1123 OF THE BANKRUPTCY CODE AND CASE LAW OF THIS CIRCUIT**

Under Section 1123 of the Bankruptcy Code and controlling case law of this Circuit, the provisions of the Liquidation Plan and Trust Agreement as well as the disclosures made in the Disclosure Statement were more than adequate to preserve post-confirmation jurisdiction over the Debtors' and estate's claims.  Section 1123 and case law in this Circuit only require a general reservation of rights clause, not the restrictive specific reservation of claims language that the Bankruptcy Court required in this case. Indeed, even if more specificity were required by Section 1123 or his Circuit's precedent, the Liquidation Plan at issue here set forth numerous, detailed and specific provisions that clearly satisfy any requirement.

A.  **The Reservation of Rights Provisions in the Liquidation Plan and Disclosure Statement Fully Comply with Section 1123**

Section 1123(b)(3)(B) provides that a "plan *may* provide for the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest;" *See* 11 U.S.C. § 1123 (emphasis added). As one bankruptcy court explains, "[i]nvoking the provisions of § 1123(b)(3)(b) preserves the *status quo ante* of the existence of pre-confirmation causes of action.  The clarification of the types of claims that can be preserved, *i.e.*, those belonging to the

13

estate or those that belong to the debtor, is a reflection and acknowledgment of all claims that a trustee may bring as they exist during the bankruptcy case." *See Guttman v. Martin, III, et al. (In re Railworks Corp., et al.)*, 325 B.R. 709, 719 (Bankr. D. Md. 2005). The Trust Agreement and Liquidation Plan accomplished just that – by appointing the Liquidating Trustee pursuant to Section 1123, the *status quo ante* of all of the Debtors' claims were preserved and thus allowed the Liquidating Trustee to commence the Amended Complaint without losing bankruptcy court jurisdiction through the confirmation of the Liquidation Plan.

Moreover, as the bankruptcy court of this District points out, "Section 1123 distinguishes between what a plan must include and what a plan may include. While a plan *may* provide for the retention of certain causes of action by the debtor and/or its representatives, there is no *requirement* that it do so." *See Peltz v. Worldnet Corp. (In re USN Communications, Inc.)*, 280 B.R. 573, 590 (Bankr. D. Del. 2002) ("*USN Communications*"). The *USN Communications* Court notes that "… even if the language in § 1123(b)(3)(B) could be construed as containing such a requirement, there is nothing in the provision to suggest that the plan must specifically identify each and every claim and/or interest belonging to the debtor that may be subject to retention and enforcement." *See id.* (internal citations omitted).

In the present case, the Disclosure Statement provides in pertinent part that "[i]n accordance with the Plan, the Unsecured Creditors' Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, the Rights of Action, including *all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date*, and shall be substituted as the real party in interest in any such action, *commenced by* or against *the Debtors*, *Debtors' Estates or Creditors' Committee*." Disclosure Statement, Art. V, H.3.

14

at 29.

Additionally, the Liquidation Plan further describes Rights of Actions as:

> All actions, causes of action, suits, rights of action, counterclaims, … covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transaction with or related to the Debtors, any party named or identified in the Schedules or pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any other of the Debtors or their estates whether or not commenced as of the Effective Date…

Liquidation Plan, Art. I., § 1.2, A-12 through A-13.

Even more importantly, Section 8.2 expressly reserves the Rights of Action and states that

> (a)      Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Asset Reallocation and Settlement Agreement, and this Plan, or any Final Order, the Debtors expressly reserve such claim or Right of Action for later enforcement by the Creditor Trust (including, without limitation, claims and Rights of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore no preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Rights of Action have been expressly released in the Asset Allocation and Settlement Agreement, this Plan or other Final Order…

Liquidation Plan, Art. VIII, § 8.2, A-28.

15

The Dismissed Claims were not released in the Asset Allocation and Settlement
Agreement, this Plan or any other Final Order and fall squarely within the definitions of
retained claims not only in this Reservation of Rights of Actions clause, but also in
several other provisions of the Liquidation Plan and fully described in the Disclosure
Statement. Undoubtedly, the specific language used in the provisions of Liquidation Plan
and the disclosures made in the Disclosure Statement meet the requirement of Section
1123, especially since Section 1123 does not require that a plan contain specific language
to retain post-confirmation jurisdiction.

Furthermore, the provisions of the Liquidation Plan and Disclosure Statement
provided all creditors, including DLJ, with absolute notice and certainly with the type of
notice required by Section 1123. As recently explained by another bankruptcy court of
this District, "the legislative history of § 1123(b)(3) plainly shows [that] … the notice at
issue in § 1123(b)(3) is not notice to potential defendants, it is notice to creditors
generally that there are assets for prosecution by the reorganized debtor or its designee."
*See Cooper v. Tech Data Corp. (In re Bridgeport Holdings, Inc.)*, 326 B.R. 312, 325
(Bankr. D. Del. 2005) (internal citations omitted). Here, the Liquidation Plan provides
the creditors with this notice under Article II, entitled Funding of Plan, stating that, "[t]he
source of all Cash necessary to achieve entry of the Final Decree and to carry out this
Plan shall be the Excluded Assets, including the *Rights of Action Recovery*." *See*
Liquidation Plan, Art. VII, A-25 (emphasis added). This provision, coupled with the
reservation of rights clauses in the Liquidation Plan and Disclosure Statement, clearly
provided more than sufficient notice to creditors of the Debtors. Accordingly, the
provisions of Liquidation Plan clearly notified the creditors that there will be assets for
prosecution by the Liquidating Trustee. However, since the Bankruptcy Court
improperly dismissed the Dismissed Claims, thereby preventing the Liquidating Trustee

16

from prosecuting the Rights of Action, the anticipated funding of the Liquidation Plan cannot be implemented.

Thus, the Bankruptcy Court erred in requiring that the Liquidation Plan specifically reference the DLJ litigation and provide notice to DLJ. Section 1123 of the Bankruptcy Code does not mandate such specificity or such notice and accordingly, the Opinion by the Bankruptcy Court is contrary to the language of Section 1123 and should be overruled.

### B. The Multiple Reservation of Rights Provisions of the Liquidation Plan and Disclosure Statement Also Meet the Requirements of Case Law of this Circuit

Courts in this District agree that a reservation clause that provides a *general* description of the claims to be reserved is sufficient. *See In re US Communications*, 280 B.R. at 590 (determining that although some courts hold that *res judicata* bars a subsequent action unless the debtor's disclosure statement and/or plan specifically reserves the right to litigate that specific claim, several reasons exit for departing from the holding of those cases); *see also Freightlines, Inc. v. TIC Financial Systems (In re Ampace Corp.)*, 279 B.R. 145, 158 (Bankr. D. Del. 2002) ("*Ampace*") (finding that while some courts require that a debtor's plan specifically reserve the right to litigate that specific action, there are several reasons for departing from such a holding); *Koplik & Sons, Inc. v. Bank Mandiri (In re Perry H. Koplik & Sons, Inc.)*, 2006 WL 3017346, * 9 (Bankr. S.D.N.Y. 2006)[7] (explaining that despite a conflict among courts, it has been held in the Second Circuit that a debtor's plan of reorganization may reserve post-confirmation claims in general terms). In the present case, the definition of Rights of Action, combined with the specific Reservation of Rights of Action clause as well as the

---

[7] Pursuant to D. Del. LR 7.1.3(a)(7) a copy of this case is attached hereto.

17

general Retention of Jurisdiction provisions in the Plan and the Disclosure Statement unequivocally reserved the Dismissed Claims and retained post-confirmation jurisdiction. Indeed, these provisions in the Plan and Disclosure Statement contain even more specific language than required by case law of this Circuit.

The courts in *US Communications* and *Ampace* provide the following reasons for holding that a general description of claims in a plan is sufficient to preserve post-confirmation jurisdiction:  (i) Section 1123 does not require that a plan specifically identify each and every claim and/or interest belonging to the debtor in order to preserve post-confirmation jurisdiction; (ii) a confirmed plan acts as a binding contract on all parties thereto; and (iii) the confirmation process is expedited by allowing debtors to include a general reservation of their right to pursue certain causes of action. *See US Communications*, 280 B.R. at 590 to 592; *Ampace*, 279 B.R. at 159 to 161.  The third reason has become even more pertinent with the enactment of the new Bankruptcy Code which now requires debtors to propose and confirm plans on a much more expedited timeline.  Indeed, as noted in the Insilco Opinion, the Liquidating Trustee explained that the Creditors Committee could have fought for the inclusion of more specific language in the Plan of Liquidation, but decided against such a fight to allow the case to move forward. *See* Insilco Opinion at 20, FN 24, A-338.  The Bankruptcy Court dismissed this reasoning and suggested that the Committee should have fought harder and delayed the confirmation process in order to incorporate a more specific reservation of rights clause in the Plan. *Id.*  However, the Bankruptcy Court erred – Section 1123 and case law are absolutely clear:  there is no such requirement, and indeed the Committee acted in accordance with the mandate of the Bankruptcy Code when it allowed the plan confirmation to proceed without delays, especially since the pertinent provisions of the Liquidation Plan and Disclosure Statement provide more than adequate and specific

18

language.

      With regard to the second reason for permitting a general reservation of rights clause, the *Ampace* Court explains that prior to a plan's confirmation, creditors have the opportunity to examine the terms of the proposed plan and respond accordingly. The defendant in *Ampace*, despite receiving notice and multiple opportunities to object to the provisions of the plan, did not do so. Thus, the *Ampace* Court held that "pursuant to § 1141(a), Defendant is now bound by the terms of the Plan, and as such, is precluded from objecting to those provisions reserving the Trustee's right to pursue Avoidance Actions post-confirmation. *See Ampace*, 279 B.R. at 160. The *Ampace* Court reached this holding despite the fact that reservation of rights clause in the plan was described in general terms and did not specifically describe the claims commenced by the trustee post-confirmation. The same reasoning must be applied in the present case.

      Contrary to the Insilco Opinion, DLJ was properly put on notice by the reservation of claims clause in the Plan of Liquidation. The Rights of Action clause states in pertinent part that ". . . and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender parties and Released Employees) . . . ." *See* Liquidation Plan, Art. I, § 1.2, A-13. Additionally, Section 8.2 of the Liquidation Plan specifically reserves "...claims and Rights of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist and, therefore no preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply

to such claims or Rights of Action *upon or after* the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, *except* where such claims or Rights of Action have been expressly released in the Asset Allocation and Settlement Agreement, this Plan or other Final Order…" *See* Liquidation Plan, Art. VIII, § 8.2, A-28. It is without dispute that all of the DLJ entities, as former insiders of the Debtors, are "parties having dealings, relationships or transactions with or related to the Debtors", and the DLJ entities were specifically named in the Debtors' Schedules. Moreover, the Dismissed Claims were not released in any agreement, Plan or Final Order. Accordingly, it is incomprehensible that the DLJ entities could assume that they were excluded from the Rights of Action clause just because they were not named by name. As explained by the *Ampace* Court, ". . . a general reservation in a plan of reorganization indicating the *type* or category of claims to be preserved should be sufficiently specific to provide creditors with notice that their claims may be challenged post-confirmation." *Id.* (emphasis added)*; see also In re Goodman Bros. Steel Drum Co., Inc.*, 247 B.R. 604, 609 (Bankr. E.D.N.Y. 2000) (finding that the text of § 1123(b)(3) leads to the conclusion that the statue does not contain a requirement that the language of a plan be specific and unequivocal).

Since the law does not require specific descriptions of each claim and indeed the language used in the Liquidation Plan (as well as the disclosures in the Disclosure Statement) are detailed and sufficient under existing case law in this Circuit, the Bankruptcy Court erred in penalizing the Liquidating Trustee by finding that the Plan of Liquidation had to specifically describe the DLJ litigation for the Liquidating Trustee to prosecute it, and the Insilco Opinion should be overruled.

20

II.   **CONSISTENT WITH THE THIRD CIRCUIT COURT'S *RESORTS* DECISION, THE DISMISSED CLAIMS ARE THE TYPE OF CLAIMS FOR WHICH POST-CONFIRMATION JURISDICTION IS SPECIFICALLY PRESEVED**

Unlike the claim in *Resorts* which arose seven years post-confirmation, did not belong to the debtor and was never even mentioned (neither specifically nor generally) in the plan of reorganization nor existed at the time of confirmation, the Dismissed Claims are claims for which the *Resorts* Court specifically preserved and anticipated post-confirmation jurisdiction.

A.   **The Dismissed Claims Were Properly Preserved in the Liquidation Plan; they Belonged to the Debtors, Arose Pre-petition, and the Prosecution of <u>these Claims Is the Corner Stone and an Integral Part of the Plan</u>**

Bankruptcy court jurisdiction diminishes post-confirmation but jurisdiction does not disappear. *Resorts* and numerous other cases recognize that bankruptcy court jurisdiction does not completely end with the confirmation of the plan of reorganization or liquidation. A bankruptcy court retains jurisdiction even after plan confirmation, and while this jurisdiction may be narrower than pre-confirmation, it is not eliminated entirely. *See Binder v. Price Waterhouse & Co. (In re Resorts Int'l, Inc.)*, 327 F.3d 154, 165 (3d Cir. 2004) ("*Resorts*").

Indeed, the *Resorts* Court found that, "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." 372 F.3d at 167. This close nexus was clearly established in the present case because the Dismissed Claims arose pre-petition, belonged to the Debtors, were transferred to the Liquidating Trustee, were preserved by the Liquidation Plan and are essential to the execution of the Liquidation Plan. These are the types of claims for which *Resorts* anticipated post-confirmation would be preserved. As

21

explained by a recent bankruptcy court decision of this District that also addresses the

Insilco Opinion: "*Resorts* decided the narrow issue of 'related to' jurisdiction over a

claim that arose *post*-confirmation…Moreover, its holding that 'the potential to increase

assets of the [*post*-confirmation] Trust and its beneficiaries does not *necessarily* create a

close nexus' to the bankruptcy proceeding *does not* mean that a sufficiently close nexus

might not exit on different facts…Among other things, the Third Circuit pointed to the

post-confirmation nature of the dispute and its unrelatedness to any provision of the

chapter 11 plan in the *Resorts* case as factors attenuating any nexus with the bankruptcy

proceeding." *See Astropower Liquidating Trust v. Xantrex Technology, Inc. (In re

Astropower Liquidating Trust)*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) ("*Astropower*")[8]

(emphasis in original and added).  The *Astropower* Court explained that it preferred to

follow the well-reasoned ruling of *In re LGI, Inc.*, another case of this District, which

provided the following explanation of establishing "close nexus":

> Defendants' effort *sub judice* to characterize this case as
> being beyond the subject matter jurisdiction of this Court
> based upon *Resorts* encounters obvious factual hurdles.
> Unlike *Resorts* (where the cause at issue developed post-
> confirmation), here the cause of action developed
> prepetition.  Moreover, unlike *Resorts, sub judice* the Plan
> of Reorganization and related organic orders and
> agreements defined the cause of action as an "asset"
> intended to be distributed to certain creditors as part of the
> reorganization process.  These facts, without more, could
> well establish the "close nexus to the bankruptcy plan or
> proceeding" which the Third Circuit requires for subject
> matter jurisdiction.  Though not involving matters of

---

[8] Finding that post-confirmation jurisdiction over certain claims existed and declining to follow the Insilco Opinion's reliance on *Resorts*, the *Astropower* Court nonetheless distinguished the facts in Insilco by noting that the Plan and Disclosure Statement in *Astropower* contained specific language preserving the causes of action in question.  However, as discussed above, the Bankruptcy Code does not require specific language to retain post-confirmation jurisdiction, and indeed the description in the Liquidation Plan was specific enough to preserve the enforcement of the Dismissed Claims. *See also EXDS, Inc. v. CB Richard Ellis, Inc. (In re EXDS, Inc.)*, 352 B.R. 731 (Bankr. D.Del. 2006) (distinguishing Insilco from the case before it based on the general reservation of rights clause used in the Insilco Liquidation Plan).

> "interpretation" or "administration" of a confirmed plan,
> this adversary proceeding plainly serves the plan through
> the "implementation, consummation [and] execution"
> which typify many post-confirmation matters.

*Michaels v. World Color Press, Inc. (In re LGI, Inc.)*, 322 B.R. 95, 101 (Bankr. D.N.J. 2005).

Here, the Bankruptcy Court ignored the important facts that differentiate the Dismissed Claim from the highly unusual, post-confirmation claim at issue in *Resorts*. In the present case, the Dismissed Claims arose pre-petition, they belonged to the Debtors, were transferred to the Liquidating Trustee, and their enforcement were preserved in the Plan of Liquidation. Moreover, the Liquidating Trustee was duly appointed pursuant to Section 1123 of the Bankruptcy Code and the Liquidating Trust was specifically incorporated in the Plan of Liquidation. Additionally, the Liquidation Plan specifically explains that the cash obtained from the prosecution of the Rights of Action will be used to fund the Plan. Had the *Resorts* Court been asked to determine whether post-confirmation jurisdiction was properly retained over the Dismissed Claims, it most certainly would have answered in the positive since there exists a close nexus between the prosecution of the Dismissed Claims and the implementation of the Liquidation Plan. However, the *Resorts* Court was instead asked whether post-confirmation jurisdiction was properly preserved for a claim that arose *seven years* post-confirmation; that did not belong to the debtor but rather was a malpractice suit that belonged only to the Litigation Trustee and even though it would have increased the amount of the Litigation Trust, it never benefited the debtor's estate. To the contrary, the outcome of claim in *Resorts* would have only benefited the Trustee of the Litigation Trust, which is in violation of Section 1123 of the Bankruptcy Code. As the Oklahoma District Court explained:

> The primary concern is whether a successful recovery by
> the appointed representative would benefit the debtor's

23

> estate and particularly, the debtor's unsecured creditors...
> In instances in which the purported representative has been
> found to be a 'stranger' to the bankruptcy estate, such that a
> successful recovery would only benefit the representative
> and not the estate or its unsecured creditors, courts have
> concluded that § 1123 does not authorize such a party to
> prosecute a claim, in spite of a provision in a plan of
> reorganization that authorizes the representative to do so.

*See In re Amarex*, 96 B.R. 330, 334 (W.D.Okla. 1989).

In the present case, the outcome of the Amended Complaint only benefits the

creditors of the estate. Unlike the Trustee in *Resorts*, the Liquidating Trustee stands to

gain no benefit and only commenced the Amended Complaint to carry out his fiduciary

and statutory obligations since the funding of the Liquidation Plan rests on the

Liquidating Trustee's ability to prosecute and enforce the Rights of Actions. Indeed, The

Liquidation Plan specifically provides that it will be funded by the sources of Cash

obtained from the Rights of Action Recovery. Accordingly, the prosecution of the

Dismissed Claims would indeed have resulted in additional assets to distribute to

creditors of the estate which is precisely the kind of result that *Resorts* envisioned would

have established a close nexus to the plan. In *Resorts,* the outcome of the prosecution of

the malpractice suit did not establish a close nexus because it would have merely

increased the assets of the Litigation Trust, not as here, the assets of the estate. The plan

of reorganization in *Resorts* never even contemplated the malpractice suit brought by the

Litigation Trustee and therefore, unlike the Liquidation Plan of Insilco, did not

specifically provide that its successful outcome should be used to fund the *Resorts* plan of

reorganization. As the *Resorts* Court explained, "[t]he Trust beneficiaries here no longer

have the same connection to the bankruptcy proceeding as when they were creditors of

the estate." *Id.*

In the present case, any recovery obtained by the Liquidating Trustee will benefit

24

the unsecured creditors of the estate. The Insilco creditors are still waiting to receive a distribution. They have not given up their creditor status in favor of becoming beneficiaries of a trust. The Unsecured Creditors Trust fully incorporated in the Liquidation Plan to fund distribution to creditors must not be confused with the *Resorts* Litigation Trust that was created only to allow its trustee to litigate claims against Donald Trump, which he did. Indeed, by the time the Litigation Trustee in *Resorts* commenced the malpractice suit, he had already settled the litigation claims against Donald Trump, and thus, his duties set forth in the *Resorts* Plan had already been fulfilled. In light of the circumstances of the present case, it is inexplicable how the Bankruptcy Court could simply disregard the obvious close nexus between the prosecution of the Dismissed Claims and the implementation of the Liquidation Plan.

### B. The Resorts Decision of the Third Circuit is in Harmony, Not in Contraction, with the First Circuit Court's Ruling in *Boston Regional*

Post-confirmation jurisdiction over the Dismissed Claims was also preserved because Insilco is a liquidation and not a reorganization proceeding, which is consistent with the *Resorts* decision since *Resorts* was in fact a reorganized debtor that had long re-entered the marketplace by the time the Litigation Trustee commenced the malpractice suit. The First Circuit held that post-confirmation jurisdiction should only be curtailed in actions involving reorganized debtors re-entering the marketplace and that this narrowing is not necessary in a liquidation case. *See Boston Regional Medical Center, Inc. v. Reynolds (In re Boston Regional Medical Center, Inc.)*, 410 F.3d 100, 106 (1st Cir. 2005) ("*Boston Regional*"). The *Boston Regional* Court provides the following, *inter alia*, sound explanation for this finding:

> ....[t]here is another, perhaps more important reason for distinguishing between liquidating plans and true reorganization plans. Courts that have limited the scope of

25

> post-confirmation jurisdiction have based their holdings on the conclusion that, once confirmation has occurred, fewer proceedings are actually related to the underlying bankruptcy case... That makes good sense: as the corporation moves on, the connection attenuations.... By contrast, a liquidating debtor exists for the singular purpose of executing an order of the bankruptcy court. Any litigation involving such a debtor thus relates much more directly to a proceeding under title 11.

*Id.* at 106-7.

The Bankruptcy Court declined to consider this reasoning, explaining that *Resorts* did not make the distinction between reorganization or liquidation. *See* Insilco Opinion at 19, A-337. However, the *Resorts* Court did not have to make this distinction because the debtor in *Resorts* was indeed a *reorganized* debtor and had long emerged from bankruptcy at the time the Litigation Trustee commenced the malpractice suit. Moreover, as set forth above, the Litigation Trustee in *Resorts* failed the "close nexus" test on numerous other grounds – grounds that do not exit in the present case – and thus, the *Resorts* Court did not have to differentiate between liquidation and reorganization cases. In the present case, the Bankruptcy Court should have considered the fact that the Debtors are no longer in existence; that all that remains are assets, including the litigation claims, which must be liquidated by the Liquidating Trustee, and that the Dismissed Claims are a crucial element in carrying out this liquidation and providing distribution to the creditors of this bankruptcy estate.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## CONCLUSION

For the foregoing reasons, the Opinion of the Bankruptcy Court dismissing the

Dismissed Claims should be overruled.

Dated: January 17, 2007
      Wilmington, Delaware

 

_____
Michael R. Lastowski (ID No. 3892)
Richard W. Riley (ID No. 4052)
DUANE MORRIS LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246
Telephone: (302) 657-4900
Facsimile: (302) 657-4901
           mlastowski@duanemorris.com

    -and-

Andrew I. Silfen
Michael S. Cryan
Heike M. Vogel
ARENT FOX LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
           silfen.andrew@arentfox.com

*Attorneys for Chad Shandler, Trustee of the Insilco Liquidating Trust*

27