IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------x
                                          :
In re                                     :      Chapter 11
                                          :
INSILCO TECHNOLOGIES, INC., et al.,¹      :      Case No. 02-13672 (KJC)
                                          :
                    Debtors.              :      (Jointly Administered)
                                          :
------------------------------------------x
```

AMENDED JOINT LIQUIDATING PLAN PURSUANT TO
CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE


SHEARMAN & STERLING LLP
Constance A. Fratianni
Scott C. Shelley
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

        – and –

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Pauline K. Morgan (Del. 3650)
Maureen D. Luke (Del. 3062)
Sharon M. Zieg (Del. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253


Co-Counsel for the Debtors and Debtors in Possession

Dated: February 13, 2004

---

¹ The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW** ............................................................................1
Section 1.1. Rules of Interpretation, Computation of Time and Governing Law ...............1
Section 1.2. Defined Terms ...............................................................................................1

**ARTICLE II SUBSTANTIVE CONSOLIDATION OF DEBTORS; CANCELLATION OF INTERCOMPANY CLAIMS**.........................................................................11
Section 2.1. Substantive Consolidation ...........................................................................11
Section 2.2. Cancellation of Intercompany Claims...........................................................11

**ARTICLE III ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES** ...............12
Section 3.1. Introduction...................................................................................................12
Section 3.2. Administrative Claims ..................................................................................12
Section 3.3. Statutory Fees ...............................................................................................13
Section 3.4. Professional Fees ..........................................................................................13

**ARTICLE IV CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**..........................................................................14
Section 4.1. Summary.......................................................................................................14
Section 4.2. Class 1 – Senior Lenders' Claims.................................................................14
Section 4.3. Class 2 – Other Secured Claims ...................................................................15
Section 4.4. Class 3 – Priority Claims ..............................................................................15
Section 4.5. Class 4 – General Unsecured Claims ...........................................................16
Section 4.6. Class 5 – Senior Discount Notes ..................................................................16
Section 4.7. Class 6 – Senior Subordinated Notes ...........................................................17
Section 4.8. Class 7 – Term-C Loan Claims ....................................................................17
Section 4.9. Class 8 – Equity Interests..............................................................................18

**ARTICLE V ACCEPTANCE OR REJECTION OF PLAN** ........................................18
Section 5.1. Voting Classes ..............................................................................................18
Section 5.2. Acceptance by Class of Creditors and Holders of Interests .........................18
Section 5.3. Cramdown.....................................................................................................18

**ARTICLE VI EFFECT OF CONFIRMATION** ...........................................................19
Section 6.1. Vesting of Assets in the Creditor Trust.........................................................19
Section 6.2. Authority to Effectuate Plan .........................................................................19
Section 6.3. Dismissal of Officers and Directors and Dissolution of the Debtors and Board........20
Section 6.4. Status Reports ...............................................................................................20
Section 6.5. Escrows.........................................................................................................20
Section 6.6. Binding Effect...............................................................................................20
Section 6.7. Corporate Action...........................................................................................20
Section 6.8. Amendment of Final Cash Collateral Order .................................................20
Section 6.9. Dissolution of Creditors' Committee; Plan Oversight Committee.................21
Section 6.10. Late Claims .................................................................................................21

**ARTICLE VII IMPLEMENTATION OF THIS PLAN** ...............................................21
Section 7.1. Funding of Plan.............................................................................................21
Section 7.2. Creation of the Creditor Trust.......................................................................22

Section 7.3. The Trustees..........................................................................................................22

ARTICLE VIII RIGHTS OF ACTION..........................................................................................24

Section 8.1. Maintenance of Rights of Action .........................................................................24
Section 8.2. Preservation of All Rights of Action Not Expressly Settled or Released ...........24

ARTICLE IX PROVISIONS REGARDING DISTRIBUTIONS....................................................25

Section 9.1. Distribution to Creditors ......................................................................................25
Section 9.2. Claims Allowed as of the Effective Date .............................................................25
Section 9.3. Unsecured Disputed Claims Reserve ...................................................................26
Section 9.4. Time and Manner of Payments .............................................................................26
Section 9.5. Delivery of Distributions ......................................................................................26
Section 9.6. Undeliverable Distributions ..................................................................................26
Section 9.7. Compliance with Tax Requirements/Allocation ...................................................27
Section 9.8. Time Bar to Cash Payments ..................................................................................27
Section 9.9. Fractional Dollars, De Minimis Distributions ......................................................27
Section 9.10. Set-Offs ...............................................................................................................28

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS.......................................28

Section 10.1. Prosecution of Objections to Claims ..................................................................28
Section 10.2. Estimation of Claims ...........................................................................................28
Section 10.3. Cumulative Remedies ..........................................................................................29
Section 10.4. Allowance of Claims and Interests .....................................................................29

ARTICLE XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................29

Section 11.1. Rejection of Executory Contracts and Unexpired Leases ...................................29
Section 11.2. Rejection Damage Claims ....................................................................................30

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF
       THIS PLAN..........................................................................................................................30

Section 12.1. Conditions Precedent to Confirmation Date of this Plan ....................................30
Section 12.2. Conditions Precedent to Effective Date of this Plan ...........................................30
Section 12.3. Waiver of Conditions Precedent ..........................................................................30

ARTICLE XIII RETENTION OF JURISDICTION ........................................................................31

Section 13.1. Retention of Jurisdiction .....................................................................................31

ARTICLE XIV MISCELLANEOUS PROVISIONS .......................................................................32

Section 14.1. Title to Assets ......................................................................................................32
Section 14.2. Releases of All Liens ...........................................................................................32
Section 14.3. Modification of Plan ............................................................................................32
Section 14.4. Revocation or Withdrawal ...................................................................................33
Section 14.5. Injunction .............................................................................................................33
Section 14.6. Discharge .............................................................................................................33
Section 14.7. Indemnification ....................................................................................................33
Section 14.8. Term of Existing Injunctions or Stays .................................................................34
Section 14.9. Releases ................................................................................................................34
Section 14.10. Exculpation and Limitation of Liability .............................................................35
Section 14.11. Cancellation of Notes, Instruments, Debentures and Equity Securities ............36
Section 14.12. Post-Effective Date Fees and Expenses .............................................................36
Section 14.13. Section 1146 Exception ......................................................................................36
Section 14.14. Severability .........................................................................................................36

iv

Section 14.15. Recognition ............................................................................................36
Section 14.16. Governing Law .......................................................................................36
Section 14.17. Notices ...................................................................................................36
Section 14.18. Closing of Cases ....................................................................................37
Section 14.19. Section Headings ...................................................................................38
Section 14.20. Primacy of Asset Reallocation and Settlement Agreement....................38
Section 14.21. Continuing Viability of Other Orders/Agreements ................................38
Section 14.22. Administration of Wind Down Budget ..................................................39

The above-captioned debtors and debtors in possession respectfully propose the following Amended Joint Liquidating Plan (this "Plan") pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

# ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

Section 1.1. *Rules of Interpretation, Computation of Time and Governing Law*

(a)     For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)     In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)     Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section 1.2. *Defined Terms*

(a)     As used in this Plan, the following terms have the respective meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

Administrative Claim:  Any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the administration and implementation of this Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Confirmation Date or otherwise in accordance with the provisions of this Plan, any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930 or as determined by the Bankruptcy Court to be an Administrative Claim in a Final Order.

Administrative Claims Reserve Fund:  Such amount of Cash, constituting proceeds of Excluded Assets, which are allocable to Administrative Claims under the Asset Reallocation and Settlement

Agreement (including under any applicable line items in the Wind Down Budget), as the Debtors and the Creditors' Committee shall determine to be necessary to retain on the Effective Date in respect of unpaid Allowed Administrative Claims and Professional Fees or, if Disputed, for the purpose of paying such Disputed amounts to the extent such Disputed amounts become Allowed. Such Administrative Claims Reserve Fund shall be equal to an amount to be disclosed in a notice that the Debtors will file and serve on or before five (5) days prior to the Confirmation Date (which amount shall not exceed the sum of (i) expenses set forth in the Wind Down Budget from the Effective Date to entry of the Final Decree), and (ii) amounts attributable to Disputed Administrative Claims (not to exceed the amounts available under the Asset Reallocation and Settlement Agreement for the payment of such claims. The Debtors will serve this notice via overnight express mail or Federal Express upon (i) the US Trustee, (ii) counsel to the Lenders, (iii) counsel to the Creditors' Committee, and (iv) parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.

Administrative Expense Carve Out:  The amount of Contributed Assets described in Paragraph 3Aii of the Asset Reallocation and Settlement Agreement, up to $250,000 allocated for the payment of administrative expenses, as more particularly defined and provided in Section 3Aii of the Asset Reallocation and Settlement Agreement.

Agent:  Bank One, N.A., as Administrative Agent under the Credit Agreement.

Allowed:  The term "allowed" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors or other party in interest have not filed an objection by the Effective Date; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) in any stipulation with the Debtors of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, (ii) in any stipulation with the Debtors of amount and nature of Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court, or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

Allowed Claim/Allowed Interest:  Any Claim against or Interest in the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against or Interests in the Debtors, (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent or (iii) any Interest registered in the stock register or partnership documents maintained by or on behalf of the Debtors as of the Record Date and, in each such case in clauses (i), (ii) and (iii) above, a Claim or Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to section 553 of the Bankruptcy Code.

Asset Reallocation and Settlement Agreement:  The settlement agreement dated as of May 13, 2003, and approved by Order of the Bankruptcy Court entered on June 16, 2003, by and among (i) Insilco Technologies and its affiliated debtors, (ii) the official committee of unsecured creditors appointed in the Insilco Technologies bankruptcy cases, (iii) Bank One N.A., as agent and the lenders, including Bank One N.A., under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

amended, (iv) Wachovia Bank, National Association as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, and (v) U.S. Bank, National Association as indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co., Inc. A true and correct copy of the Asset Reallocation and Settlement Agreement and the Final Order approving it are attached hereto as Exhibit A and incorporated herein by reference.

Assets: Any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

Avoidance Actions: All actions, causes of action or claims of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date.

Bankruptcy Code: Title 11 of the United States Code, as applicable to the Chapter 11 Cases, as amended.

Bankruptcy Court: The United States Bankruptcy Court for the District of Delaware.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

Bar Date: May 15, 2003.

Bar Date Order: The Order (A) Establishing Procedures and Deadlines for the Filing of (i) Proofs of Claim and (ii) Requests for Payment of Administrative Expenses, (B) Establishing Consequences for the Failure to Comply with Such Procedures and Deadlines and (C) Approving Form and Scope of Notice of Such Procedures and Deadlines, entered by the Bankruptcy Court on March 25, 2003.

Budget: The budget annexed to this Plan as Exhibit B, which sets forth the expenses of the wind-down of the Debtors from and after the Effective Date, and which is incorporated by reference in its entirety in this Plan. The Budget shall be funded exclusively from Excluded Assets subject to and in accordance with the Asset Reallocation and Settlement Agreement and as provided under the Cash Collateral Order in respect of the Wind Down Budget and the Carve Out (as defined in the Cash Collateral Order).

Cash: Cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

Cash Collateral Order: The Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens entered by the Bankruptcy Court on January 16, 2003, as amended.

Chapter 11 Cases: The cases under chapter 11 of the Bankruptcy Code, commenced by Debtors in the Bankruptcy Court, being jointly administered under Case No. 02-13672 (KJC).

Charging Lien: Any lien or other priority in payment arising prior to the Effective Date to which the Indenture Trustees are entitled, pursuant to the Indentures, against distributions to be made to Noteholders.

Claim: Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, known or unknown; or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Claims Reserve Balance: The Cash constituting proceeds of Excluded Assets in the Unsecured Creditor Disputed Claims Reserve on the first date after which (a) all Distributions or payments to be made under this Plan or a Final Order in respect of each Allowed Unsecured Creditor Claim have been made, (b) no Unsecured Creditor Claim is a Disputed Claim and (c) all payments to be made from the Unsecured Creditor Disputed Claims Reserve have been made.

Class: A category of Holders of Claims or Equity Interests as set forth in Article IV of this Plan.

Confirmation Date: The date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

Confirmation Order: The order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

Consummation: The occurrence of the Effective Date.

Contributed Assets: Subject to the provisions of Paragraph 4B of the Asset Reallocation and Settlement Agreement, the following cash and proceeds have been reallocated by the Senior Lenders to the Holders of Allowed Unsecured Claims pursuant to Paragraph 3 of the Asset Reallocation and Settlement Agreement:

(a)     $1,750,000 from the Net Proceeds realized from the closing of the Going Concern Sales;

(b)     Net Proceeds from the sale of the Debtors' real properties located in Larne, Northern Ireland, Taylorsville, North Carolina and McAllen, Texas and the Net Proceeds from the sale of the miscellaneous office equipment and furnishings located in the Debtors' Columbus, Ohio offices as listed on Schedule 1 hereto; provided, however, that, to the extent that the Estates do not otherwise have sufficient readily available unencumbered assets to pay Administrative Claims (other than Professional Fees) required to be paid in order to obtain confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, the Estates shall be entitled to use up to $250,000 of the Net Proceeds described in this subparagraph (b) for the payment of such Administrative Claims: and provided further that the aggregate Net Proceeds provided in this subparagraph (b) shall not exceed $1,250,000 (inclusive of the $250,000 that may be allocated for Administrative Claims hereunder). Any Net Proceeds from the sale of the assets described in this subparagraph (b) that exceed $1,250,000 shall not be considered Contributed Assets and shall be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement;

(c)    $250,000 of cash collateral (which shall be asset sale proceeds), plus 10% of the net recoveries derived from (x) the Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97 and generally referred to as the "Star Services Litigation" and (y) income tax refunds received by the Debtors from and after April 15, 2003, for the purpose of establishing a "Creditor Trust" to investigate and pursue Rights of Action Recoveries, provided the Contributed Assets under this subparagraph (c) shall not exceed $750,000, with any excess over $750,000 to be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement and which excess (including any net recoveries derived from the assets described under (x) and (y) beyond the amount allocated to the Creditor Trust in this paragraph (c)) will not constitute "Contributed Assets";

(d)    the Reallocated Monies; provided, however, that the first $200,000 of any such Reallocated Monies shall be allocated first to the payment of the Allowed fees and expenses of the Creditors' Committee's professionals incurred from and after May 1, 2003, with any remaining Reallocated Monies available for the payment of other Administrative Claims.

Credit Agreement:  The Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as thereafter amended from time to time, among Insilco Technologies and TAT Technology Inc., as Borrowers, U.S. Bank, N.A., as Administrative Agent, DLJ Capital Funding, Inc., as Lead Arranger and Syndication Agent, TransAmerica Business Credit Corporation and LaSalle National Bank, as Co-Documentation Agents, and the various financial institutions party thereto.

Creditor Trust:  The statutory trust created pursuant to the Delaware Statutory Trust Act (12 Del. C. Section 3801 et. seq.), organized in series and composed of an Unsecured Creditor Series and a Senior Lender Series, created pursuant to Sections 3804 and 3806(b)(2) of the Delaware Statutory Trust Act, the Trust Agreement and this Plan.

Creditor Trust Expense Fund:  A fund, which shall be held by the Creditor Trust for use in paying the expenses of administering the Unsecured Creditor Series of the Creditor Trust, consisting of the following Contributed Assets: $250,000 of cash collateral plus ten percent of the net proceeds recovered from (a) the Star Services Litigation and (b) Tax Refunds, with all of the foregoing to be used to fund prosecution of the Rights of Action and expenses of the Creditor Trust or otherwise distributed to Holders of Allowed Unsecured Claims pursuant to the provisions of the Asset Reallocation and Settlement Agreement, as incorporated in this Plan; provided, however, that the aggregate amount of the Contributed Assets funding the Creditor Trust Expense Fund shall not exceed $750,000, with any excess over $750,000 deemed not to constitute Contributed Assets and to be immediately remitted to or retained by the Agent for the benefit of the Senior Lenders in accordance with the Asset Reallocation and Settlement Agreement.

Creditors' Committee:  The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on or about January 3, 2003.

Debtors or Debtors in Possession:  Insilco Technologies, Inc., Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

Disclosure Statement:  The amended disclosure statement for this Plan, filed concurrently herewith, and approved by the Bankruptcy Court as containing adequate information on or about February 13, 2004.

Disputed:  Any Claim or Equity Interest (a) listed on the Schedules as unliquidated, disputed or contingent, or (b) as to which Debtors or any other party in interest with standing have interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtors or any other party in interest with standing in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) unless otherwise indicated in this Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

Distribution:  The Cash or Assets to be distributed to Holders of Allowed Claims under the terms of this Plan.

Distribution Date:  Any date on which the Creditor Trust makes a Distribution pursuant to this Plan.

Effective Date:  The eleventh day following the Confirmation Date or, if an appeal of the Confirmation Order has been taken, the first business day following the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article XII of this Plan have been (i) satisfied or (ii) waived pursuant to Article XII.

Effective Date Distributions:  Those Distributions payable on the Effective Date in respect of (i) Allowed Administrative Claims, (ii) Other Secured Claims, and (iii) Priority Claims.

Entity:  An entity as defined in section 101(15) of the Bankruptcy Code.

Equity Interests:  Any equity interest in one or more of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

Excluded Assets:  Those Assets defined as Excluded Assets in Paragraph 2 of the Asset Reallocation and Settlement Agreement.

Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

Final Order:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

First Administrative Bar Date:  May 15, 2003.

14% Note Indenture:  That certain Indenture governing the Senior Discount Notes dated August 17, 1998, between Silkworm Acquisition Corporation, as issuer, and Star Bank, N.A. n/k/a U.S. Bank, as indenture trustee, together with any amendments thereto.

14% Note Indenture Trustee:   Star Bank, N.A. n/k/a U.S. Bank, National Association, as indenture trustee under the 14% Note Indenture.

General Unsecured Claims:  Unsecured Claims other than Noteholder Claims and Term-C Loan Claims.

Going Concern Sales:   The sales of substantially all of the Debtors' Assets pursuant to (i) an Asset Purchase Agreement with SRDF Acquisition Company, LLC for the sale of assets related to the Debtors' precision stampings business for approximately $13 million dated as of December 15, 2002; (ii) a Stock and Asset Purchase Agreement with Amphenol Corporation and Amphenol Technical Products International Co. for the sale of the assets related to the Debtors' custom assemblies business for $10.14 million, dated as of December 15, 2002; (iii) a Stock and Asset Purchase Agreement with Bel Fuse Ltd., Bel Fuse Macau, L.D.A., Bel Connector Inc. and Bel Transformer Inc. for the sale of the assets related to the Debtors passive components business for $35 million, dated as of December 15, 2002; (iv) a Share Sale and Purchase Agreement with Stephen Bullock for the sale of the Debtors' interest in Insilco Teoranta for $100,000 and the assumption of certain liabilities, dated as of December 15, 2002; and (v) an Asset Purchase Agreement with LL&R Partnership for $1.7 million for the sale of the Debtors' North Myrtle Beach, South Carolina facility, dated as of December 15, 2002.

Holder:  An Entity holding an Equity Interest or Claim.

Impaired:  A Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

Indenture:  The 12% Note Indenture and the 14% Note Indenture.

Indenture Trustees:  The 12% Note Indenture Trustee and the 14% Note Indenture Trustee.

Initial Distribution Date:  The first Distribution Date, which date shall be fifteen days following the date on which at least 80% in amount of the General Unsecured Claims filed against the Debtors in these cases are Allowed Claims or have been disallowed or as soon as practicable thereafter.

Intercompany Claims:  Any Claim held by any of the Debtors against any other Debtor.

Interim Compensation Order:  The Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Professionals entered by the Bankruptcy Court on January 10, 2003, as amended by the amended order dated February 20, 2003.

Lenders:  The lenders and financial institutions (and any of their successors or assigns) that are party to the Credit Agreement.

Lien:  Any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

Net Proceeds:   The total proceeds derived from the sale, liquidation, disposition or other recoveries on any Asset or the Going Concern Sales, net of all direct and indirect expenses of such disposition, including, but not limited to, the costs of maintaining, preparing and marketing such Asset for sale.

Noteholder Claims:  The Claims of Noteholders.

Noteholder Release:  The release, waiver and discharge of the Senior Lenders described in Paragraph 4B of the Asset Reallocation and Settlement Agreement and set forth in Section 14.9 hereof.

Noteholders:  The Holders of the Senior Discount Notes and the Senior Subordinated Notes.

Noteholder's Share:  The ratio of (x) the allowed claims of Holders of Class 5 Claims or Class 6 Claims that have not granted or are not deemed to have granted the Noteholder Release to (y) the allowed claims of all Unsecured Creditors.

Other Secured Claims:  Those Secured Claims other than the Senior Lenders' Secured Claims as of the Petition Date.

Petition Date:  December 16, 2002.

Plan Oversight Committee:  The committee created pursuant to Section 6.9 of this Plan.

Priority Claims:  Those claims afforded priority under sections 507(a) and 502(f) of the Bankruptcy Code.

Professionals:  An Entity (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

Professional Fees:  Those fees and expenses claimed by Professionals retained through a Bankruptcy Court order under sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Effective Date.

Reallocated Monies:  A sum of Cash, not to exceed $500,000, equal to the difference between (x) the amounts allocated to line items other than "Selling Costs" in the Wind Down Budget and (y) the actual amounts necessary to fund such line items, which sum may be reallocated and used by the Debtors' estates for the purposes set forth in Paragraph 3A(iv) of the Asset Reallocation and Settlement Agreement.

Record Date:  The Confirmation Date, unless otherwise provided by order of the Bankruptcy Court.

Released Claims:  Those Rights of Action or Claims that were specifically waived and released under the Asset Reallocation and Settlement Agreement.

Released Employees:  Collectively, Michael Elia, Fred Stewart, Steve Crea and Phil Pitman.

Released Lender Parties:  The Agent and each of the Senior Lenders and each of their agents, employees and professionals.

Releasing Estate Parties:  The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns.

Rights of Action:  All actions, causes of action, suits, rights of action, counterclaims, crossclaims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) relate to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

Rights of Action Recovery: Any Cash recovery from the Rights of Action less those costs and expenses of the Unsecured Creditors' Trustee and Plan Oversight Committee relating to the prosecution of the Rights of Actions (including those costs and expenses incurred by professionals retained by the Unsecured Creditors' Trustee and Plan Oversight Committee that are not paid from the Reallocated Monies) in excess of the Creditor Trust Expense Fund, that shall be payable to Holders of Unsecured Claims pursuant to the Asset Reallocation and Settlement Agreement, as incorporated in this Plan.

Schedules: The Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court on January 23, 2003 by the Debtors in accordance with section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended.

Second Administrative Bar Date: The date that is forty-five (45) days after the Confirmation Date.

Secured Claim: A Claim against the Debtors that is secured by a Lien on the Debtors' property or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Debtors' property or to the extent of the amount subject to setoff as applicable. as determined in accordance with section 506(a) of the Bankruptcy Code.

Senior Discount Notes: The 14% Senior Discount Notes issued by Insilco Holding Co., f/k/a Silkworm Acquisition Corporation, due 2008, and governed by the 14% Note Indenture.

Senior Lenders: The Lenders other than the Term C-Lenders.

Senior Lender Series: The series of the Creditor Trust created and maintained for the benefit of the Senior Lenders.

Senior Lenders' Trustee: The co-trustee of the Creditor Trust appointed by the Agent to administer the Senior Lender Series of the Creditor Trust.

Senior Notes: Collectively, the Senior Discount Notes and the Senior Subordinated Notes.

Senior Subordinated Notes: The 12% Senior Subordinated Notes issued by Insilco Technologies. Inc., f/k/a Insilco Corporation, due 2007, and governed by the 12% Note Indenture.

Series: The Senior Lenders Series and/or the Unsecured Creditor Series.

Settlement Proceeds: The total proceeds derived from the sale. liquidation. disposition or other recoveries on all Assets except Excluded Assets, and including, without limitation. (i) all proceeds, all Cash or cash equivalents in the possession of the Debtors as of the Effective Date or to which the Debtors

10

are entitled or receive in the future, (ii) all accounts receivable, (iii) all deposits, rebates, Tax Refunds (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), escrow accounts, or other similar security accounts to which the Debtors are entitled, (iv) insurance proceeds, (v) any proceeds from the disposition of Assets (other than Excluded Assets), whether before or after the Effective Date (other than the $1.75 million allocated under the Asset Reallocation and Settlement Agreement), (vi) all recoveries from the Star Services Litigation (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), (vii) all amounts allocated for line item expenses under the Wind Down Budget that are in excess of the actual line item expenses for which such amounts were allocated (less, for the avoidance of doubt, the Reallocated Monies), (viii) unused Professional retainers after application of such retainers in payment of allowed Professional fees pursuant to an order entered on the final fee application in respect of any Professional holding such retainer, and (ix) refunded monies relating to security for self-insured claims or unused insurance premiums.

Star Services Litigation:  The Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97.

Tax Refunds:  All tax refunds of whatever kind or nature received by or payable to the Debtors from and after April 15, 2003, from any municipal, federal, state, foreign or other taxing authority.

Term-C Lenders:  DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Offshore Partners II, C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ Millennium Partners, L.P., DLJ ESC II, L.P., DLJ Millennium Partners-A, L.P. and MBP II Plan Investors and their respective successors and assigns.

Term-C Loan:  The loan made pursuant to Section 2.1.6 of the Credit Agreement.

Trust Agreement:  The series trust agreement that documents the powers, duties and responsibilities of the Trustees, which agreement shall be in form and substance acceptable to the Creditors' Committee and the Agent and filed with the Bankruptcy Court not less than five (5) days prior to the date of the hearing fixed by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Trustees:  The co-trustees of the Creditor Trust, comprising the Unsecured Creditors' Trustee and the Senior Lenders' Trustee.

12% Note Indenture:  That certain Indenture governing the Senior Subordinated Notes, dated November 9, 1998, between Insilco Corporation, as issuer, and Star Bank, N.A., as original indenture trustee (having been succeeded by Wachovia Bank, National Association), together with any amendments thereto.

12% Note Indenture Trustee:  Wachovia Bank, National Association as successor indenture trustee under the 12% Note Indenture.

Unsecured Claim:  Any Claim that is not a Secured Claim or a Claim entitled to priority under section 507(a) of the Bankruptcy Code.

Unsecured Creditor Disputed Claims Reserve:  The amount of the Unsecured Creditor Distribution Fund to be placed in a reserve account, as determined by the Debtors or Unsecured Creditors' Trustee before any Distribution to Unsecured Creditors is made herein in order to ensure that

Disputed Unsecured Claims receive their ratable share of such Distribution if such Claims ultimately become Allowed.

Unsecured Creditor Distribution Fund: The Cash derived from Excluded Assets to be distributed to Unsecured Creditors under this Plan, in accordance with the terms of the Asset Reallocation and Settlement Agreement and this Plan, following liquidation of any unliquidated Contributed Assets.

Unsecured Creditor Series: The series of the Creditor Trust created and maintained for the benefit of the Holders of Unsecured Claims.

Unsecured Creditors' Trustee: The co-trustee appointed by the Creditors' Committee to administer the Unsecured Creditor Series of the Creditor Trust.

US Trustee: The United States Trustee for the District of Delaware.

Wind Down Budget: The Budget annexed to the Cash Collateral Order as Exhibit B.

(b)    Other Definitions: Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

## ARTICLE II
## SUBSTANTIVE CONSOLIDATION OF DEBTORS;
## CANCELLATION OF INTERCOMPANY CLAIMS

Section 2.1. *Substantive Consolidation*

On the Effective Date, the Chapter 11 Cases and the Debtors and their estates shall be deemed to be substantively consolidated for voting and distribution purposes only under this Plan. The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions under this Plan only with respect to such single Claim. Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

Section 2.2. *Cancellation of Intercompany Claims*

On the Effective Date, all Intercompany Claims shall be eliminated and extinguished.

12

## ARTICLE III
## ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES

Section 3.1. *Introduction*

Certain types of Claims are not placed into voting Classes. Such Claims are not considered Impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. These non-voting Claims and their treatment are described in this Article III.

Section 3.2. *Administrative Claims*

All Allowed Administrative Claims shall be paid in Cash from proceeds of Excluded Assets, in accordance with the allocations therefore as set forth in the Asset Reallocation and Settlement Agreement and in the Wind Down Budget, as applicable.

On or before the Effective Date, the Debtors (in accordance with the Budget) shall pay in full the amount of Allowed Administrative Claims as of such date and shall fund the Administrative Claims Reserve Fund and the Creditor Trust shall pay each Administrative Claim in full, without interest and in Cash (except for Professional Fees to the extent that their treatment, which is set forth below, differs) when and to the extent the Administrative Claim is or becomes Allowed. The Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by such Holder and the respective Debtor.

Holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003 (the First Administrative Bar Date) pursuant to the Bar Date Order. Holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date must file a request for payment of Administrative Claims with the Bankruptcy Court and serve the same upon counsel to each of the Trustees such that it is received no later than the Second Administrative Bar Date. If an Administrative Claim was not timely filed by the First Administrative Bar Date or is not timely filed by the Second Administrative Bar Date, as applicable, then such Administrative Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property, Administrative Claims Reserve Fund or Creditor Trust. The foregoing shall not apply to the Professional Fee Claims. An objection to an Administrative Claim filed pursuant to this provision must be filed within ninety (90) days from the later of the date such Administrative Claim is filed and properly served or ninety (90) days after the Effective Date. The Debtors and Creditors' Committee reserve the right to seek an extension of the time to object.

Subject to the provisions of this Plan and the Cash Collateral Order, and within the confines of the Budget, all reasonable fees for services rendered in connection with the Chapter 11 Cases and this Plan after the Effective Date, including those relating to the resolution of pending Claims, shall be paid by the Creditor Trust after the submission of a monthly fee statement with service upon counsel to each of the Trustees and the Agent's counsel, provided that no objections are received within ten (10) days of such service. If no objections are received, the Trustees shall be authorized to pay such amounts requested without further Bankruptcy Court authorization. If objections are received and such objections are not capable of being resolved between the parties in a timely manner, the Bankruptcy Court shall reserve jurisdiction to resolve such disputes.

Section 3.3. *Statutory Fees*

Without limiting the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date from the Budget. Payments after the Effective Date shall be made as required by statute and shall be paid by the Creditor Trust in accordance with the Budget.

Section 3.4. *Professional Fees*

(a)     The Creditor Trust shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Creditor Trust Expense Fund as provided under the Asset Reallocation and Settlement Agreement.

(b)     The Bankruptcy Court must rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order. For all Professional Fees, the Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under this Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims, nor shall anything herein abrogate or modify the terms of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees.

(c)     Except as otherwise provided by Bankruptcy Court order for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court and to the provisions of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees. Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtors or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

(d)     Notwithstanding anything herein to the contrary, following the occurrence of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for payment of fees and expenses authorized to be paid pursuant to this Plan, including fees and expenses approved by the Bankruptcy Court in connection with such Professionals' final applications for allowance of compensation and reimbursement of expenses. Thereafter (a) Shearman & Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the amount of $25,000 until the earlier of (i) six months after the Effective Date or (ii) entry of the Final Decree and shall be authorized without further order of the Bankruptcy Court to apply such retainer to fees and expenses incurred in connection with services rendered on behalf of the Debtors or the Creditor Trust on or after the Effective Date, and (b) other Professionals shall return the unapplied balance of any retainer to the Senior Lenders' Trustee for distribution to the Senior Lenders.

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Section 4.1. *Summary*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Senior Lenders' Claims are Allowed Claims, pursuant to the Final Order approving the Asset Reallocation and Settlement Agreement. In accordance with and subject to the provisions of the Asset Reallocation and Settlement Agreement, the Senior Lenders have agreed to waive (i) any right to seek a Distribution on account of their unsecured deficiency Claims, and (ii) subject to the receipt of the Noteholder Releases from the Class 6 and Class 7 Noteholders, any enforcement of their contractual and structural subordination rights with respect to the Senior Notes.

The classification of Claims and Equity Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Senior Lenders' Claims | Unimpaired | Not entitled to vote |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote |
| Class 3 | Priority Claims | Unimpaired | Not entitled to vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 5 | Senior Discount Notes | Impaired | Entitled to vote |
| Class 6 | Senior Subordinated Notes | Impaired | Entitled to vote |
| Class 7 | Term-C Loan Claims | Impaired | Entitled to vote |
| Class 8 | Equity Interests | Impaired | Not entitled to vote (deemed to have rejected Plan under the Bankruptcy Code) |

Section 4.2. *Class 1 – Senior Lenders' Claims*

(a)   Classification: Class 1 consists of the Senior Lenders' Allowed Claims against the Debtors in the amount of $232,712,443.42.

15

(b)    Treatment:  Holders of Allowed Class 1 Claims shall continue to receive the treatment set forth in the Asset Reallocation and Settlement Agreement and approved pursuant to the Final Order entered on June 16, 2003, including specifically, the receipt, for application to their Allowed Secured Claims, of (i) all Settlement Proceeds and (ii) to the extent Noteholder Releases are not obtained, an amount equal to the non-releasing Noteholder's Share of the amount of the Contributed Assets (subject to certain exclusions), as set forth in Paragraph 4B of the Asset Reallocation and Settlement Agreement.  The treatment of the Claims of the Senior Lenders set forth in the Asset Reallocation and Settlement Agreement is incorporated by reference in this Plan, but is in no way dependent upon the confirmation or consummation of this Plan and shall not be deemed a Distribution hereunder. All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have already been paid or for which no further payment is provided for or required, together with all other Cash not constituting Excluded Assets, shall be remitted directly to the Agent on or prior to the Effective Date and shall not vest in the Creditor Trust. All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have not been paid as of the Effective Date shall vest in the Creditor Trust for use in paying such line item expenditures, with any remaining balance to be remitted promptly to the Agent by the Unsecured Creditors' Trustee once such expenditures have been paid or at such time as it appears that no further payments in respect of such expenditures will be required.

(c)    Voting:  Class 1 is, by agreement, an Unimpaired Class and Holders of Class 1 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.3. *Class 2 – Other Secured Claims*

(a)    Classification:  Class 2 consists of Secured Claims against the Debtors other than those Class 1 Secured Claims.

(b)    Treatment:  Unless the Holder of a Class 2 Claim agrees to a different treatment, each Holder of an Allowed Class 2 Claim shall receive on the Effective Date, either (i) the return of such Assets on which the Holder has a senior perfected and indefeasible lien or security interest, or (ii) all proceeds (up to the amount of the Allowed Class 2 Claim) from the sale, liquidation, or abandonment of any Asset on account of which the Holder has a senior, perfected and indefeasible Lien or security interest, including those proceeds of Going Concern Sales held by the Debtors to fund the Wind Down Budget (but solely to the extent that such Lien or security interest as of the Petition Date is senior in priority to any lien or security interest of the Senior Lenders on the same Asset) as full and complete satisfaction of all Class 2 Claims.

(c)    Voting:  Class 2 is an Unimpaired Class and Holders of Class 2 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.4. *Class 3 – Priority Claims*

(a)    Classification:  Class 3 consists of Holders of Priority Claims specified under sections 507(a) and 502(f) of the Bankruptcy Code, including but not limited to priority tax Claims and priority wage Claims.

(b)    Treatment:  The Bankruptcy Code requires that each Holder of such an Allowed Priority Claim receive the present value of such Claim. On the Effective Date, each Holder of an

Allowed Priority Class 3 Claim shall be entitled to receive Cash derived from Excluded Assets equal to the full amount of such Allowed Priority Claim.

(c)    <u>Voting</u>: Class 3 is an Unimpaired Class and Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan.

## Section 4.5. *Class 4 – General Unsecured Claims*

(a)    <u>Classification</u>: Class 4 consists of the Unsecured Claims other than (i) the Noteholder Claims and (ii) the Term-C Loan Claims.

(b)    <u>Treatment</u>: Unless the Holder of a Class 4 Claim agrees to a different treatment, each Holder of an Allowed Class 4 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date. The distributions to be made to Holders of Class 4 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)    <u>Voting</u>: Holders of Class 4 Claims are entitled to vote to accept or reject this Plan.

## Section 4.6. *Class 5 – Senior Discount Notes*

(a)    <u>Classification</u>: Class 5 consists of the Claims in respect of the Senior Discount Notes.

(b)    <u>Treatment</u>: Each Holder of a Class 5 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust. In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 5 Claim that has elected not to grant such a Noteholder Release (which election may be made by checking the appropriate box on the ballot provided). With respect to any Holder of a Class 5 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out), and (b) such Noteholder shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Settlement Agreement. The Distributions to be made to Holders of Class 5 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)    <u>Voting</u>: Holders of Class 5 Claims are entitled to vote to accept or reject this Plan.

Section 4.7. *Class 6 – Senior Subordinated Notes*

    (a)    <u>Classification</u>:  Class 6 consists of the Claims in respect of the Senior Subordinated Notes.

    (b)    <u>Treatment</u>:  Subject to the possible application of the subordination provisions of the 12% Note Indenture (as described in Article V, Paragraph J(2) of the Disclosure Statement, each Holder of a Class 6 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust.  In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 6 Claim that has elected not to grant such Noteholder Release (which election may be made by checking the appropriate box on the ballot provided).  With respect to any Holder of a Class 6 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out) and (b) such Holder of a Class 6 Claim shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement. The Distributions to be made to Holders of Class 6 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

    (c)    <u>Voting</u>:  Holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

Section 4.8. *Class 7 – Term-C Loan Claims*

    (a)    <u>Classification</u>:  Class 7 consists of the Claims of the Term-C Lenders under the Term-C Loan in the amount of $22,221,128.07.

    (b)    <u>Treatment</u>:  Unless the Debtors (or the Creditors' Committee on behalf of the Debtors or their estates) or Indenture Trustees have commenced an adversary proceeding or contested matter prior to the Confirmation Date seeking to subordinate or reclassify the Allowed Claims in Class 7, each Holder of an Allowed Class 7 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of the Unsecured Creditor Distribution Fund available for Distribution on such Distribution Date and the Rights of Action Recovery available for Distribution on each such Distribution Date.  If the Debtors (or the Creditors' Committee or Indenture Trustees) have commenced such an adversary proceeding or contested matter prior to the Confirmation Date, then the Allowed Class 7 Claims shall be Disputed Claims, and any Distribution otherwise payable to the Holders of Class 7 Claims shall be held in the Unsecured Creditor Disputed Claims Reserve pending the resolution of such adversary proceeding or contested matter by a Final Order.  Any Distribution made hereunder to holders of Class 7 Claims represents a reallocation from holders of claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.  The subordination rights of the Term-C Lenders are unaffected by the Plan, and, in particular, the holders of Class

18

7 Claims have not waived any right of subordination with respect to any recovery by the holders of Class 6 Claims. However, the holders of Class 7 Claims have agreed with the 12% Note Indenture Trustee that no right of subordination will be asserted with respect to recovery of any distribution made on the Initial Distribution Date to the holders of Class 6 Claims, and that the holders of Class 7 claims do not otherwise waive any right of subordination, including, without limitation, in respect of any subsequent distributions or with respect to any right of setoff in connection with any litigation or proceeding brought against the holders of Class 7 Claims or related parties or entities, or otherwise.

(c)    <u>Voting</u>:  Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

Section 4.9. *Class 8 – Equity Interests*

(a)    <u>Classification</u>:  Class 8 consists of all Equity Interests in the Debtors.

(b)    <u>Treatment</u>:  All Equity Interests of each of the Debtors shall be cancelled on the Effective Date and Holders of such Equity Interests should not receive or retain any property or Distributions under this Plan.

(c)    <u>Voting</u>:  Class 8 Equity Interests will receive no Distribution under this Plan and are, therefore, deemed to have rejected this Plan.  Accordingly, Class 8 Equity Interests are not entitled to vote.


# ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

Section 5.1. *Voting Classes*

Each Holder of a Claim in Classes 4, 5, 6 and 7 shall be entitled to vote separately to accept or reject this Plan.  Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain confirmation.  Class 8 is conclusively deemed to have rejected this Plan and is not entitled to vote.

Section 5.2. *Acceptance by Class of Creditors and Holders of Interests*

Under the Bankruptcy Code, an impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.

Section 5.3. *Cramdown*

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the Debtors intend to request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, this Plan.

## ARTICLE VI
## EFFECT OF CONFIRMATION

Section 6.1. *Vesting of Assets in the Creditor Trust*

On the Effective Date, all Assets of the Debtors, including Excluded Assets (but excluding Cash remitted to the Agent pursuant to Section 4.2(b) herein) shall vest in the Creditor Trust, with the Excluded Assets to be held by and separately accounted for as part of the Unsecured Creditor Series and all other Assets (including specifically Tax Refunds and the Star Litigation) to be held by and separately accounted for as part of the Senior Lender Series. Except to the extent expressly provided for in the Asset Reallocation and Settlement Agreement or the Creditor Trust Agreement, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Creditor Trust generally or the assets of the other Series, and the Budget (including Wind Down Budget) shall be allocable in accordance with the foregoing. The Unsecured Creditor Distribution Fund, the Administrative Claims Reserve Fund, the Creditor Trust Expense Fund, and the Rights of Action shall all be assets of the Unsecured Creditor Series; any other Assets (including the Star Litigation, Tax Refunds and any other Assets that will give rise to Settlement Proceeds) shall be part of the Senior Lender Series. The Excluded Assets in the Unsecured Creditor Series shall be managed and used for the sole purposes of achieving Consummation and carrying out this Plan and effectuating the Distributions provided for in this Plan provided, however, that, in accordance with and subject to the Asset Reallocation and Settlement Agreement and the Cash Collateral Order, any amounts included in the Wind Down Budget (other than the Reallocated Monies) that are not required to fund specific line item expenses for which such amounts were allocated, together with any other amounts to which the Agent is entitled under the Asset Reallocation and Settlement Agreement, shall be promptly remitted by the Unsecured Creditors' Trustee to the Agent for the benefit of the Senior Lenders. Notwithstanding anything herein to the contrary, in accordance with the Asset Reallocation and Settlement Agreement, the Agent's liens shall continue to attach to all Assets in the Creditor Trust other than Excluded Assets, including, without limitation, unliquidated Contributed Assets, the Star Services Litigation and all Tax Refunds and any amounts required to be remitted to the Agent due to the failure of any Noteholders to provide Noteholder Releases as provided under this Plan. The unliquidated Assets held as part of the Senior Lender Series of the Creditor Trust (including the Star Litigation, Tax Refunds and the estate's interest in retainers or any other Assets that would give rise to Settlement Proceeds) shall be administered by the Senior Lenders' Trustee subject to the obligation to remit to the Unsecured Creditors' Trustee such amount as may be required by the Asset Reallocation and Settlement Agreement.

Section 6.2. *Authority to Effectuate Plan*

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Creditor Trust and the Trustees shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out this Plan and to effectuate the Distributions provided for thereunder, subject to the provisions of this Plan, including Article VII. The Creditor Trust and the Trustees are expressly authorized to sell or dispose of any and all Excluded Assets and to pay all costs and expenses associated with such sale or disposition without further order of the Bankruptcy Court, subject to the provisions of the Asset Reallocation and Settlement Agreement and the provisions of this Plan, including Article VII.

Section 6.3. *Dismissal of Officers and Directors and Dissolution of the Debtors and Board*

Upon the Effective Date, (i) the existing Board of Directors of each Debtor and any remaining officer of any Debtor shall be dismissed and (ii) each of the Debtors shall be deemed dissolved without any further action required on the part of the Debtors, the shareholders of the Debtors, or the officers or directors of the Debtors.

Section 6.4. *Status Reports*

Not later than 90 days following the occurrence of the entry of the Effective Date, the Trustees shall file with the Bankruptcy Court and serve on counsel to the Agent and the Plan Oversight Committee status reports and a detailed accounting explaining what progress has been made toward entry of the Final Decree. The status reports shall also be served on the US Trustee, and those parties who have requested special notice post-confirmation. Until entry of the Final Decree, further status reports shall be filed every 60 days and served on the same entities. Each status report shall include a description of Assets sold or otherwise realized upon, gross and net proceeds received, Distributions made and payments remitted to the Agent, expenses incurred and paid, remaining Wind Down Budget funds and projected Wind Down Budget expenses, and cash on hand, as well as a detailed reporting of claims objections and the status of all contested matters and litigation.

Section 6.5. *Escrows*

All escrows previously established in the Chapter 11 Cases and still in existence on the Effective Date shall be released pursuant to the terms of the Asset Reallocation and Settlement Agreement and this Plan. Any escrowed funds that constitute Excluded Assets shall be released for the benefit of Holders of Allowed Unsecured Claims in accordance with the Asset Reallocation and Settlement Agreement after the Effective Date shall be paid to the Creditor Trust and shall be used to achieve Consummation and carry out this Plan.

Section 6.6. *Binding Effect*

Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan and all exhibits thereto shall bind the Creditors' Committee and all Holders of Claims and Equity Interests.

Section 6.7. *Corporate Action*

Each of the matters provided for under this Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders, officers or directors of any of the Debtors.

Section 6.8. *Amendment of Final Cash Collateral Order*

The Final Cash Collateral Order has been deemed amended in accordance with the Final Order approving the Asset Reallocation and Settlement Agreement to provide that the Reallocated Monies shall remain Assets of the Estates and shall not be distributed to Holders of Class 1 Claims, other than as provided in Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 4 herein in respect of any Noteholder who has not provided the Noteholder Release.

Section 6.9. *Dissolution of Creditors' Committee; Plan Oversight Committee*

On the Effective Date, the Creditors' Committee will dissolve and its members will be released and discharged from all further duties and obligations arising from or related to the Chapter 11 Cases. The professionals retained by the Creditors' Committee and the members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered other than in connection with the preparation of applications under section 330 and 503 of the Bankruptcy Code.

On the Effective Date, the Plan Oversight Committee shall be created. The Plan Oversight Committee shall have overall direction and control of the liquidation of the Excluded Assets, prosecution, settlement and abandonment of Rights of Action and the prosecution and resolution of claims pursuant to this Plan and the terms of the Creditor Trust Agreement, and shall direct, oversee and control all of the activities of the Unsecured Creditors' Trustee. Persons who served as professionals to the Committee prior to the Effective Date may also continue to serve as professionals to the Plan Oversight Committee and/or Unsecured Creditors' Trustee. With the approval of the Plan Oversight Committee and Unsecured Creditors' Trustee, a member of the Plan Oversight Committee may receive reimbursement of reasonable fees and expenses of such member's attorneys from the Excluded Assets allocable to the Unsecured Creditor Series of the Creditor Trust. This Plan Oversight Committee shall consist of any member of the Creditors' Committee that notifies the Unsecured Creditors' Trustee in writing of its intention to serve on the Plan Oversight Committee. The By-Laws of the Committee as in effect on the Effective Date shall govern the proceedings of the Plan Oversight Committee subject to amendment by the Plan Oversight Committee. This Plan Oversight Committee shall be dissolved on the earlier of the Final Decree or the termination of the Creditor Trust. In the event of the resignation of a member of the Plan Oversight Committee, the remaining members may, but need not, designate a successor from among the Holders of Class 4, 6 and 7 Claims. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership. Neither the Plan Oversight Committee nor any of its members, nor any of its employees, professionals or agents, shall in any way be liable for any acts or for any acts of any of its members, except for acts undertaken in bad faith, willful misconduct or gross negligence, in the performance of their duties as members of the Plan Oversight Committee. The Unsecured Creditor Series of the Creditor Trust shall indemnify and hold harmless the Plan Oversight Committee, its members, and its professionals from and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them in their capacities as members or agents for the Plan Oversight Committee except for acts undertaken in bad faith, willful misconduct or gross negligence.

Section 6.10. *Late Claims*

In accordance with the Bar Date Order, unless otherwise specifically ordered by the Bankruptcy Court, any entity that was required to but did not file a request for payment of an Administrative Claim or a proof of claim in respect of a Claim in compliance the procedures and deadlines established by the Bar Date Order shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution with respect to this Plan.

## ARTICLE VII
## IMPLEMENTATION OF THIS PLAN

Section 7.1. *Funding of Plan*

The source of all Cash necessary to achieve entry of the Final Decree and to carry out this Plan shall be the Excluded Assets, including the Rights of Action Recovery.

Section 7.2. *Creation of the Creditor Trust*

(a)    On or before the Effective Date, (i) the Creditor Trust shall be created and established by the execution and delivery of the Trust Agreement and any other necessary action, subject to the provisions of the Asset Reallocation and Settlement Agreement and this Plan, and (ii) all Rights of Action and other Excluded Assets shall be transferred to the Unsecured Creditor Series of the Creditor Trust, free of all Claims, Liens and interests. The Creditor Trust shall reduce to Cash or otherwise liquidate the Rights of Action and other Excluded Assets and distribute such liquidated Assets in accordance with and subject to the terms and provisions of the Asset Reallocation and Settlement Agreement and this Plan. The costs and expenses incurred by the Unsecured Creditor Series of the Creditor Trust on and after the Effective Date shall be paid from the Creditor Trust Expense Fund. Upon entry of the Final Decree, the Creditor Trust shall be dissolved without further action by the Trustee. The costs and expenses incurred by the Senior Lender Series of the Creditor Trust shall be paid from the assets of the Senior Lender Series, including that portion of the Budget and Wind Down Budget allocable to the recovery of the Star Litigation and Tax Refunds.

(b)    As of the Effective Date, the Creditor Trust shall be responsible for (i) the winding up of the Debtors' Estates, (ii) liquidating or otherwise reducing to Cash the Excluded Assets in accordance with the Trust Agreement, (iii) filing, prosecuting and settling the Rights of Action, (iv) making Distributions to Holders of Allowed Claims, (v) complying with and carrying out the terms of the Asset Reallocation and Settlement Agreement, (iv) overseeing the continued liquidation to Cash of all other Assets (including the Star Services Litigation and the Tax Refunds) and promptly remitting to the Agent all Settlement Proceeds and all Cash (other than Cash which is proceeds of Excluded Assets), and (vii) settling, resolving and objecting to Claims. The Creditor Trust shall have the authority without further Bankruptcy Court approval to liquidate the Excluded Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to pursue any preserved Rights of Action, and otherwise to take such other actions as shall be necessary to administer the Chapter 11 Cases and effect the closing of the Chapter 11 Cases; provided, however, that, to the extent reasonably practicable, the Star Services Litigation and the recovery of Tax Refunds shall continue to be administered in the same manner and by the same personnel and professionals (who may not be removed without the approval of the Senior Lenders' Trustee, with any replacement or successor to be subject to such Trustee's approval) and any settlement, compromise or other proposed resolution of the Star Services Litigation or any Tax Refund shall require the prior written approval of the Senior Lenders' Trustee.

(c)    The beneficial interests in the Unsecured Creditor Series of the Creditor Trust are not transferable.

Section 7.3. *The Trustees*

(a)    Five (5) days prior to the Confirmation Hearing, the Creditors' Committee shall select one Person to serve as the Unsecured Creditors' Trustee and the Agent shall select one person that is a resident of Delaware to serve as the Senior Lenders' Trustee, and each shall file a notice of such selection with the Bankruptcy Court. The Trustees, once appointed by the Bankruptcy Court, shall act as co-Trustees on behalf of the Creditor Trust to carry out their obligations and exercise their rights in accordance with, and subject to, this Plan, the Confirmation Order and the Asset Reallocation and Settlement Agreement. The Trustees shall be compensated on a per hour basis plus actual out-of-pocket expenses as set forth in the Trust Agreement and shall not be required to file a fee application to receive compensation. Any objection to the designation of the Trustees shall be raised at the Confirmation Hearing. The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Trustees

in their official capacity, with respect to their status, duties, powers, acts or omissions as Trustees in any forum other than the Bankruptcy Court. The Trustees shall be vested with the rights, powers and benefits set forth in the Trust Agreement, which shall include, without limitation, all rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code. The Unsecured Creditors' Trustee shall be subject to the directions of the Plan Oversight Committee and the Senior Lenders' Trustee shall be subject to the direction of the Agent. Subject to the provisions of the Trust Agreement, the Trustees shall be entitled to hire such professionals as they deem necessary to assist them in carrying out their duties, with the fees and expenses of such professionals to be borne by the Creditor Trust Expense Fund, in the case of professionals retained by the Unsecured Creditors' Trustee, and by the assets of the Senior Lender Series, in the case of the Senior Lenders' Trustee.

(b)      In addition to reporting requirements set forth in Section 6.4 hereof, the Trustees shall regularly consult with and be reasonably accessible to each other to monitor the liquidation of Assets and the implementation and the Asset Reallocation and Settlement Agreement, and the Trustees shall make all personnel, books and records relating to the Debtors, the Trust and the implementation of the Asset Reallocation and Settlement Agreement available to each other or to any other party in interest, upon written request. The Trustees shall cooperate fully with each other and seek to fully implement the Asset Reallocation and Settlement Agreement as expeditiously and efficiently as possible. Any disputes concerning the administration of the Trust or the implementation of the Asset Reallocation and Settlement Agreement may be brought before the Bankruptcy Court for resolution.

(c)      On, or as soon as practicable after, the Effective Date, the Creditor Trust Expense Fund shall be deposited in a segregated, interest-bearing account of the Creditor Trust in order to fund the fees and expenses of the Unsecured Creditor Series of the Creditor Trust (including, without limitation, compensation of the Unsecured Creditors' Trustee and fees and expenses incurred in connection with the duties and actions of such Trustee, such as fees and expenses of legal counsel and accountants) and to pay insurance, taxes and other expenses arising in the ordinary course of business in maintaining and disposing of any unliquidated Excluded Assets. The Creditor Trust may pay all such fees and expenses without Bankruptcy Court approval.

(d)      Upon the date that all Claims have either become Allowed Claims or been resolved by Final Order and all Distributions in respect of such Allowed Claims have been made, the Creditor Trust shall deliver, as promptly as practicable, the balance of the Creditor Trust Expense Fund to the Agent for distribution to Holders of, and on account of, Allowed Class 1 Claims.

(e)      Upon any determination by the Unsecured Creditors' Trustee that it is holding any amount not constituting Excluded Assets or proceeds of Excluded Assets, or which constitutes the Noteholder's Share of any Distribution in respect of a Noteholder who is not deemed to have provided the Noteholder Release, the Unsecured Creditors' Trustee shall promptly pay such amount to the Agent for the Holders of, and on account of, Allowed Class 1 Claims.

(f)      In accordance with this Plan, the Unsecured Creditors' Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, the Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by or against the Debtors, Debtors' Estates or Creditors' Committee. The Unsecured Creditors' Trustee may pursue or decline to pursue the Rights of Action and may settle, release, sell, assign, otherwise transfer or compromise such Rights of Action, in the Unsecured Creditors' Trustee's business judgment, subject to the provisions of this Plan without Bankruptcy Court approval. Except as otherwise set forth in this Plan, but subject in all respects to the Asset Reallocation and Settlement Agreement, the Unsecured Creditors' Trustee may, but shall not be required to, set-off against any Claim

and the Distributions to be made pursuant to this Plan in respect of such Claim, any Rights of Action the Estates may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Unsecured Creditors' Trustee of any such Rights of Action, set-off or recoupment which the Debtors may have against such Holder. The foregoing provisions shall not apply to the Holders of Allowed Claims in Class 1, it being understood and acknowledged that such Holders are entitled to receipt of all Settlement Proceeds in accordance with the Final Order approving the Asset Reallocation and Settlement Agreement, that the estate's (and the Unsecured Creditors' Trustee's) obligation to effect such remittance to the Agent on account of the Holders of Class 1 Allowed Claims is independent of this Plan, and that nothing in this Plan shall be deemed to vary or in any way modify the terms of the Asset Reallocation and Settlement Agreement.

(g)     The Trustees may be removed and replaced for good cause or as provided under the Creditor Trust Agreement by the Plan Oversight Committee (in respect of the Unsecured Creditors' Trustee) or the Agent (in respect of the Senior Lenders' Trustee), subject to Bankruptcy Court approval.

## ARTICLE VIII
## RIGHTS OF ACTION

Section 8.1. *Maintenance of Rights of Action*

Except as otherwise provided in the Asset Reallocation and Settlement Agreement, the Debtors transfer and assign to the Creditor Trust all rights on behalf of the Debtors to commence and pursue, as appropriate, any and all Rights of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, including the actions specified in section VI(k) of the Disclosure Statement and, in accordance with section 1123(b)(3) of the Bankruptcy Code, all claims, rights, and Rights of Action that the respective Debtors may hold against any Entity shall vest in the Creditor Trust. From and after the Effective Date, the Unsecured Creditors' Trustee shall retain and may exclusively enforce any and all such Rights of Action; and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle, or compromise any and all such Rights of Action, and the Senior Lenders' Trustee shall retain and may exclusively enforce any and all claims or rights of the Debtors that are not Excluded Assets (including Tax Refunds and the Star Litigation) and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle or compromise any and all such claims and rights.

Section 8.2. *Preservation of All Rights of Action Not Expressly Settled or Released*

(a)     Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Asset Reallocation and Settlement Agreement, and this Plan, or any Final Order, the Debtors expressly reserve such claim or Right of Action for later enforcement by the Creditor Trust (including, without limitation, claims and Rights of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Rights of Action have been expressly released in the Asset Reallocation and Settlement Agreement, this Plan or other Final Order. In addition, the Creditor Trust expressly reserves the right to pursue or adopt any claims, crossclaims or

counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions in the Asset Reallocation and Settlement Agreement, this Plan or any Final Order.

(b)    Subject to the terms of the Asset Reallocation and Settlement Agreement and any other Final Order, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Creditor Trust subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of claim against the Debtors in these Chapter 11 Cases, (ii) such Entity's proof of claim has been the subject of an objection, (iii) such Entity's Claim was included in Debtors' Schedules, or (iv) such Entity's scheduled claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent or unliquidated.

## ARTICLE IX
## PROVISIONS REGARDING DISTRIBUTIONS

Section 9.1. *Distribution to Creditors*

Subject to the provisions of the Asset Reallocation and Settlement Agreement and any Final Order, the Creditor Trust will make Distributions to all Allowed Claim Holders in accordance with the terms of this Plan; provided that the Indenture Trustees are designated as disbursing agents for purposes of effecting Distributions to the respective Noteholders as of the Record Date pursuant to this Plan (without requirement of surrender of the certificates evidencing the Senior Notes) and the Indenture; and provided further that the Agent is designated as disbursing agent for purposes of payments to the Senior Lenders remitted by the Creditor Trust in accordance with the Asset Reallocation and Settlement Agreement. All Distributions shall be made by the Creditor Trust, the Indenture Trustees, the Senior Lenders' Trustee and/or the Agent without any requirement for bond or surety with respect thereto. Any reference to the "Creditor Trust" in respect of (i) Distributions to be made to the Noteholders shall be deemed to refer to the respective Indenture Trustees or their nominees, designees or affiliates, and (ii) payments to be made to the Senior Lenders shall be deemed to refer to the Agent or its nominee, designee or affiliate. All Distributions to be made to the Noteholders under this Plan shall be made to the Indenture Trustees in accordance with the respective Indenture, applicable law, and this Plan, and the Indenture Trustees shall, as soon as reasonably practicable, in accordance with the 14% Note Indenture and the 12% Note Indenture, applicable law and this Plan, deliver the Distributions, subject to provisions and priorities established under the Indentures and the rights of the appropriate Indenture Trustee to assert its Charging Lien against such distribution, to the respective Noteholders as provided herein and the respective Indentures. All payments to be made to the Senior Lenders under the Asset Reallocation and Settlement Agreement, as incorporated by this Plan, shall be made to the Agent.

Section 9.2. *Claims Allowed as of the Effective Date*

Except as otherwise provided in this Plan, or as may be ordered by the Bankruptcy Court, for those Claims that are Allowed as of the Initial Distribution Date and are entitled to receive Distributions under this Plan, Distribution shall be made on the Initial Distribution Date (or as soon thereafter as is practicable) by the Unsecured Creditors' Trustee provided, however, that all payments required to be made to the Agent on behalf of the Senior Lenders under the Asset Reallocation and Settlement Agreement shall promptly be made, pursuant to and in accordance with the terms of the Asset Reallocation and Settlement Agreement, without regard to the Distribution Dates and Distribution

mechanisms set forth in this Plan. Distributions on account of Claims that become Allowed after the Initial Distribution Date shall be made by the Unsecured Creditors' Trustee pursuant to the provisions of this Plan.

Section 9.3. *Unsecured Disputed Claims Reserve*

The Creditor Trust shall maintain, in accordance with the Creditor Trust's powers and responsibilities under this Plan and the Trust Agreement, the Unsecured Disputed Claims Reserve. Any Distribution to a Holder of a Disputed Unsecured Claim that has not been resolved by Final Order as of the Effective Date shall be made by the Unsecured Creditors' Trustee as soon as reasonably practicable when and if a Final Order resolves such Claim, which Claim if Allowed shall be treated as if it had been Allowed as of the Effective Date. To the extent that a portion or all of the funds in the Unsecured Disputed Claims Reserve are no longer necessary to cover Disputed Unsecured Claims, such funds shall promptly released to the Creditor Distribution Fund.

Section 9.4. *Time and Manner of Payments*

Any payment in Cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Section 9.5. *Delivery of Distributions*

Subject to the provisions of Bankruptcy Rule 2002(g) and except as otherwise provided under this Plan, Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such Holders, or if the Debtors or the Creditor Trust have been notified in writing of a change of address. All payments on account of the Allowed Claims of the Class 1 Senior Lenders shall be made to the Agent at the address set forth in the proof of claim filed by the Agent.

Section 9.6. *Undeliverable Distributions*

(a)     Holding of Undeliverable Distributions: If any Distribution to any Holder of an Allowed Unsecured Claim is returned to the Debtors as undeliverable, no further Distributions shall be made to such Holder unless and until the Trustee is notified, in writing, of such Holder's then-current address. Subject to Section 9.6(b) of this Plan, undeliverable Distributions shall remain in the possession of the Creditor Trust until such time as a Distribution becomes deliverable. All persons ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in this Plan shall require the Creditor Trust to attempt to locate any Holder of an Allowed Claim. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.

(b)     Failure to Claim Undeliverable Distributions: Within ten (10) Business Days after the later of the first anniversary of the Effective Date or the first distribution under this Plan, the Creditor Trust shall file a list with the Bankruptcy Court setting forth the names of those Entities for which Distributions have been attempted hereunder and have been returned as undeliverable as of the date thereof. Any Holder of an Allowed Claim that does not assert its rights pursuant to this Plan to receive a Distribution within two (2) months from and after the filing of such list shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim against the Debtors or the Creditor Trust. In such case, any consideration held for Distribution on account of such Claim shall revert to the Creditor Trust for Distribution to the beneficiaries in accordance with the

terms of this Plan. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.

Section 9.7. *Compliance with Tax Requirements/Allocation*

In connection with this Plan, to the extent applicable, the Trustee in making Distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Trustee the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Trustee the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Trustee to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan.

The Creditor Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to applicable withholding and reporting requirements. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

Section 9.8. *Time Bar to Cash Payments*

Checks issued by the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Creditor Trust by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the right to all moneys from the voided checks shall revert to the Creditor Trust for Distribution under this Plan.

Section 9.9. *Fractional Dollars, De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Creditor Trust, as successor to the Debtors shall have the discretion not to make payments of less than twenty-five ($25) on account of any Allowed Unsecured Claim, unless a specific request is made in writing to the Debtors on or before ninety days after allowance of such Claim. In addition, after the First Distribution Date, the Creditor Trust shall not be required to make any Distribution on account of any Claim in the event that the costs of making such Distribution payment exceed the amount of such Distribution payment, and all cash that otherwise would have been distributed to the Holders of such de minimis claims shall otherwise be distributed in accordance with the terms of the Plan.

Section 9.10. *Set-Offs*

The Creditor Trust, as successor to the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the Holder of such Allowed Claim. The Holders of Claims may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off any Allowed Claims such Holder possesses against any claim, rights or causes of action of any nature that the Creditor Trust, as successor to the Debtors, may hold against such Holder. Neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or such Holders of any such claims, rights and causes of action that such parties may possess under section 553 of the Bankruptcy Code.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 10.1. *Prosecution of Objections to Claims*

(a)     Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in this Plan, the Creditor Trust shall have the right to make, file and prosecute objections to Unsecured Claims, Administrative Claims, Other Secured Claims and Priority Claims; provided that the Creditor Trust will not have the right, power or authority to pursue the Released Claims. The Creditor Trust shall have the right to prosecute objections to Claims previously filed by the Debtors.

(b)     Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made by the later of (a) ninety (90) days after the Effective Date; or (b) ninety (90) days after a timely Proof of Claim or request for payment with respect to such Claim is filed; provided, however, that the Creditor Trust may seek an extension of such time to object.

(c)     Except as set forth in this Plan or Asset Reallocation and Settlement Agreement, nothing in this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtors had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in this Plan or Asset Reallocation and Settlement Agreement, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses of the Debtors, which shall be vested in and assigned to the Creditor Trust as of the Effective Date.

Section 10.2. *Estimation of Claims*

The Creditor Trust may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Creditor Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount

constitutes a maximum limitation on such Claim, the Creditor Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

Section 10.3. *Cumulative Remedies*

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved or provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as such Administrative Claim or Claim becomes Allowed, such Claim or Administrative Claim shall be treated as a Disputed Administrative Claim or Disputed Claim for purposes related to allocations, Distributions and voting under this Plan.

Section 10.4. *Allowance of Claims and Interests*

(a)    Disallowance of Claims:  Pursuant to sections 105 and 502(d) of the Bankruptcy Code, no Distributions will be made to Holders of Claims held by Entities from which property is recoverable under sections 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code (including the Rights of Action) until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due to the respective Debtor or the Creditor Trust are turned over to the Debtors or the Creditor Trust. Until such time as any such claim has been settled or resolved by Final Order, the Debtors or the Creditor Trust (as applicable) shall maintain a reserve in respect of such claim in accordance with Section 9.3 hereof.

(b)    Allowance of Claims:  Except as expressly provided in this Plan or Asset Reallocation and Settlement Agreement, no Claim shall be deemed Allowed by virtue of this Plan, Confirmation, or any order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim is deemed Allowed under the Bankruptcy Code.

(c)    No Distribution Pending Allowance:  If any Claim is a Disputed Claim, no distribution provided hereunder shall be made on account of such claim unless such Claim becomes an Allowed Claim.


### ARTICLE XI
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 11.1. *Rejection of Executory Contracts and Unexpired Leases*

Any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Bankruptcy Court, which are not the subject of (i) a motion to assume the same pending as of the Effective Date, or (ii) not otherwise listed in a notice that the Debtors shall file and serve ten (10) days before the Confirmation Date,[2] shall be deemed rejected by the Debtors on the Effective Date or as otherwise agreed upon by the parties. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

---

[2]    The Debtors shall serve the notice via regular mail upon the (i) affected contract counter-parties, (ii) parties that have requested notice pursuant to Rule 2002, (iii) counsel to the Lenders, (iv) counsel to the Creditors' Committee and (v) US Trustee.

Section 11.2. *Rejection Damage Claims*

Notwithstanding anything in the Bar Date Order to the contrary, Claims arising out of the rejection of executory contracts or unexpired leases rejected as of the Effective Date pursuant to this Plan must be filed and served on the Creditor Trust pursuant to the procedures specified in the Confirmation Order or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date. Any claim not filed within such time will be forever barred from assertion against the Creditor Trust, the Debtors, their estates, their respective successors or their respective properties. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under this Plan.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

Section 12.1. *Conditions Precedent to Confirmation Date of this Plan*

The occurrence of the Confirmation Date shall be subject to the entry of the Confirmation Order in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent.

Section 12.2. *Conditions Precedent to Effective Date of this Plan*

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)    Confirmation Order as Final Order:  The Confirmation Order shall, in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent, be a Final Order in full force and effect and shall not have been amended, modified, stayed or reversed.

(b)    Execution of Documents; Other Actions:  All other actions and documents necessary to implement this Plan shall have been effected or executed.

(c)    Ability to Meet Projected Cash Needs:  The Debtors shall have sufficient Cash and Assets to permit compliance with the terms and conditions of this Plan, including the satisfaction of all the projected fees and expenses of the Creditor Trust and the projected fees, expenses and wind down costs of the Debtors.

(d)    Creditor Trust:  The Creditor Trust is created pursuant to the terms of this Plan once the Bankruptcy Court has approved the identity and appointed the Trustees and approved the Creditor Trust Agreement in form and substance acceptable to the Creditors' Committee and the Agent.

Section 12.3. *Waiver of Conditions Precedent*

To the extent legally permissible, each of the conditions precedent in Sections 12.1 and 12.2 may be waived, in whole or in part, by the Debtors with consent of the Creditors' Committee and the Agent. Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than proceeding to act as if the condition no longer existed.

## ARTICLE XIII
## RETENTION OF JURISDICTION

Section 13.1. *Retention of Jurisdiction*

Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan. The Bankruptcy Court shall also have exclusive jurisdiction:

(a) to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of this Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(b) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with this Plan;

(c) to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

(d) to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(e) to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

(f) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g) to issue orders in aid of execution of this Plan;

(h) to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i) to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j) to hear and determine disputes arising in connection with or relating to this Plan, the interpretation, implementation or enforcement of this Plan, or the extent of any Entity's obligations incurred in connection with or released under this Plan;

(k) to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(l) to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

release or other agreement or document created in connection with this Plan or the Disclosure Statement;

(m)    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)    to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

(o)    to enter a Final Decree closing the Chapter 11 Cases;

(p)    to determine matters that may arise in connection with the Creditor Trust or the Trust Agreement;

(q)    to determine and hear any actions or controversies by or against Trustees or Plan Oversight Committee; and

(r)    to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including, without limitation, the Global Settlement, or any other act or omission taken or to be taken in connection with the Chapter 11 Cases commenced against any party in the Chapter 11 Cases, including, without limitation, the Creditor Trust, the Debtors, the Creditors' Committee, the Lenders and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.1. *Title to Assets*

Except as otherwise provided by this Plan, on the Effective Date, title to all Assets shall vest in the Creditor Trust in accordance with section 1141 of the Bankruptcy Code, subject to the prepetition liens and security interests of the Agent in all such Assets other than Excluded Assets..

Section 14.2. *Releases of All Liens*

On the Effective Date, subject to the provisions of the Asset Reallocation and Settlement Agreement, all Liens on any of the Excluded Assets shall be deemed to be released and Claims related therein shall be paid pursuant to this Plan.

Section 14.3. *Modification of Plan*

Subject to obtaining the approval of the Creditors' Committee and the Agent, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. Claimants that

have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim.

Section 14.4. *Revocation or Withdrawal*

This Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date. If this Plan is revoked or withdrawn prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

Section 14.5. *Injunction*

(a)     Except as otherwise expressly provided in this Plan, all Entities who have held, hold or may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Creditor Trust or the Trustees; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Creditor Trust or the Trustees; and (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their estates, the Creditor Trust or the Trustees against the property or interests in property of any of the foregoing Entities. Except with respect to the Released Claims, nothing contained in this Plan or the Confirmation Order shall prohibit or restrain the prosecution of any Claims or Rights of Action against the Debtors' present or former directors and officers or Holders of Equity Interests based on acts, events or omissions occurring before the Petition Date.

(b)     With respect to the matters within the scope of Section 13.1(q) herein, all Persons and Entities shall be and are permanently enjoined from commencing or continuing any such matter except in the Bankruptcy Court and the Bankruptcy Court shall retain exclusive jurisdiction over such matters.

Section 14.6. *Discharge*

Consistent with section 1141(d)(3) of the Bankruptcy Code, this Plan does not grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise provided herein, (1) the rights afforded in this Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge and release of such Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Creditor Trust and any of its assets or properties, and (2) all Persons and Entities shall be precluded from asserting against the Creditor Trust or any of its assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, except as otherwise provided in this Plan.

Section 14.7. *Indemnification*

The Creditor Trust shall indemnify and hold harmless (i) Trustees, (ii) Plan Oversight Committee, and (iii) all professionals retained by the Trustee or Plan Oversight Committee (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Debtors or the implementation or administration of this Plan, if the Indemnified Parties acted

in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Debtors, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful; provided, however, that the Unsecured Creditor Series of the Creditor Trust shall be exclusively responsible (and the Senior Lender Series shall have no obligation) for such indemnity as it relates to the Unsecured Creditors' Trustee, the Plan Oversight Committee and all professionals retained by either. To the extent the Creditor Trust indemnifies and holds harmless the Indemnified Parties comprised of the Unsecured Creditors' Trustee, Plan Oversight Committee or their professionals, as provided above, the legal fees and costs related to the defense of such claims giving rise to the right of indemnification shall be paid out of the Rights of Action Recovery. The Senior Lender Series shall be exclusively responsible (and the Unsecured Creditor Series shall have no obligation) for the foregoing indemnity as it relates to the Senior Lender Trustee, the Agent and all professionals retained by either.

Section 14.8. *Term of Existing Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

Section 14.9. *Releases*

The releases set forth in the Asset Reallocation and Settlement Agreement are approved and ratified (as applicable) as set forth herein:

(a)    Releases by the Debtors and the Creditors' Committee. Pursuant to Paragraph 4A of the Asset Reallocation and Settlement Agreement, the Debtors and the Creditors' Committee have provided the releases, waivers and discharge of the Released Lender Parties as set forth therein. Pursuant to Paragraph 4C of the Asset Reallocation and Settlement Agreement, the release, waiver and discharge of the Term C Lenders is expressly limited and qualified as set forth therein.

(b)    Noteholder Releases. As of the Effective Date, each Holder of a Claim in Class 5 and each Holder of a Claim in Class 6 that is entitled to vote on this Plan shall be deemed to have unconditionally and fully waived, released and forever discharged the Released Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which such Holder or Trustee has had, now has, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Effective Date, relating to or concerning the Debtors, the Credit Agreement, the Senior Subordinated Notes or the Senior Discount Notes; provided, however, that the foregoing release does not apply to claims (if any) for enforcement of the Senior Lenders' obligations under the Asset Reallocation and Settlement Agreement, and provided further that each Holder of a claim in Class 5 and each Holder of a Claim in Class 6 entitled to vote on this Plan may elect, by checking the box provided on the Ballot, not to grant the releases set forth in this Section 14.9(b); provided further, that all Noteholders that do not expressly "opt out" of the Plan releases by returning a Ballot electing such "opt out" (including all Noteholders who do not return a Ballot) or who receive a Distribution under the Plan shall be deemed to have granted the releases as set forth in Section 14.9 of the Plan. However, as provided under the Asset Reallocation and Settlement Agreement the granting of the release set forth herein shall be a condition to both (i) the receipt of any distribution under this Plan by any Noteholder, and (ii) the waiver by the Senior

Lenders of their contractual and structural subordination rights in respect of the Holders of Class 5 and Class 6 Claims. In addition, the releases set forth in and in the manner provided by Section 4.B. of the Asset Reallocation and Settlement Agreement shall be deemed delivered by the 12% Note Indenture Trustee and the 14% Note Indenture Trustee as of the Effective Date.

     (c)    <u>Releases by the Agent and the Senior Lenders</u>. Pursuant to Paragraph 4D of the Asset Reallocation and Settlement Agreement, the Agent and the Senior Lenders waived and relinquished any and all interest in and claims that each of them have or may have against the Excluded Assets, including the Contributed Assets and Rights of Action, except to the extent specifically set forth in the Asset Reallocation and Settlement Agreement.

     (d)    <u>Release of Certain Avoidance Actions</u>. Pursuant to Paragraph 4E of the Asset Reallocation and Settlement Agreement, the Debtors, the Creditors' Committee, the Agent and the Senior Lenders, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns, have fully waived, released and forever discharged all Avoidance Actions arising under chapter 5 of the Bankruptcy Code or otherwise relating to or concerning the conversion from recourse to non-recourse of certain loans and the deferred payment of certain bonuses, in an aggregate amount not to exceed $250,000, in respect of the Released Employees.

Section 14.10. *Exculpation and Limitation of Liability*

     (a)    None of the Agent, the Debtors, the Creditor Trust, the Trustees, the Creditors' Committee, the Senior Lenders or the Indenture Trustees, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including, without limitation, the Asset Reallocation and Settlement Agreement, the formulating, negotiating or implementing of this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Cases and under this Plan.

     (b)    Notwithstanding any other provision of this Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Creditor Trust, the Trustees, any of the Debtors, any statutory committee, or any of their respective present or former members, officers, directors, employees, advisors or attorneys, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing this Plan, the consummation of this Plan, the confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except to the extent such right of action arises from any such party's gross negligence or willful misconduct.

     (c)    The Creditor Trust shall indemnify each Person exculpated pursuant to this Section 14.10 against, hold each such Person harmless from, and reimburse each such Person for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by such Person arising from any liability described in Section 14.10(a) of this Plan.

Section 14.11. *Cancellation of Notes, Instruments, Debentures and Equity Securities*

On the Effective Date, except to the extent provided otherwise in this Plan, all notes, instruments, certificates and other documents evidencing Claims and all Equity Interests in any of the Debtors shall be canceled and deemed terminated, without any further act or action under any applicable agreement, law, regulations, order or rule. On the Effective Date, except to the extent provided otherwise in this Plan, any indenture relating to any of the foregoing, shall be deemed canceled as permitted by section 1123(a)(5)(F) of the Bankruptcy Code. The Indentures shall survive confirmation of this Plan solely to effectuate Distributions to be made to holders of the Senior Notes as provided herein and to enforce the rights, duties and administrative functions of the Indenture Trustees as provided herein and therein with respect to such Distributions, and permitting the Indenture Trustees to assert the Charging Lien against such Distributions for the payment of the Indenture Trustees' fees and expenses. Upon the final Distributions to the holders of the Senior Notes pursuant to this Plan, the Indentures shall be canceled and deemed terminated and the Indenture Trustees shall be discharged of any further duties, without any further act or action under any applicable agreement, law, regulations, order or rule and the obligations of the Debtors under such Indentures shall be terminated.

Section 14.12. *Post-Effective Date Fees and Expenses*

From and after the Effective Date, the Creditor Trust shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Plan Oversight Committee, the Indenture Trustees in their capacity as disbursing agents, and the Creditor Trust related to implementation and consummation of this Plan, subject to any restrictions imposed under the Cash Collateral Order, provided that such payment shall be borne by the Series of the Creditor Trust to which such fees and expenses relate.

Section 14.13. *Section 1146 Exception*

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

Section 14.14. *Severability*

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors, the Creditors' Committee and the Lenders and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

Section 14.15. *Recognition*

As of the close of business on the Record Date, the Indenture Trustees will have no obligation to recognize any transfer of Notes occurring after the Record Date. For purposes of making distributions under this Plan, the Indenture Trustees will be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledger maintained by the Indenture Trustees or their designees as of the close of business on the Record Date.

Section 14.16. *Governing Law*

Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and

construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York.

Section 14.17. *Notices*

All notices, requests and demands to or upon the Debtors, the Creditor Trust, the Creditors' Committee or the Lenders to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following or, in the case of notice by facsimile transmission, when received by all of the following and telephonically confirmed, addressed as follows or to such other addresses as filed with the Bankruptcy Court.

To:

**On behalf of the Debtors:**

Constance A. Fratianni
Scott C. Shelley
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

- and -

Pauline K. Morgan
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

**On behalf of the Creditor Trust:**

_____
_____
_____
_____
_____
Telephone: _____
Facsimile: _____

**On behalf of the Creditors' Committee:**

Andrew I. Silfen
ARENT FOX KINTER PLOTKIN & KAHN

1675 Broadway
New York, NY 10019
Telephone: (212) 484-3903
Facsimile: (212) 484-3990

**On behalf of the Prepetition Agent:**

Janet E. Henderson
SIDLEY AUSTIN BROWN & WOOD
10 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

**On behalf of the US Trustee:**

David L. Buchbinder
Officer of the United States Trustee
844 King Street
Suite 2313
Wilmington, DE 19801
Telephone: (302) 573-6491
Facsimile: (302) 573-6497

Section 14.18. *Closing of Cases*

The Creditor Trust shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Cases.

Section 14.19. *Section Headings*

The section headings contained in this Plan are for reference purposes only and shall not affect the meaning or interpretation of this Plan.

Section 14.20. *Primacy of Asset Reallocation and Settlement Agreement*

To the extent of any conflict or inconsistency between the provisions of this Plan and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall govern and be deemed controlling. Notwithstanding anything herein to the contrary, the rights and entitlement of the Senior Lenders, as set forth in the Asset Reallocation and Settlement Agreement, shall in no way be dependent upon, and are expressly independent of, the provisions of this Plan.

Section 14.21. *Continuing Viability of Other Orders/Agreements*

Except to the extent expressly modified by this Plan or the Asset Reallocation and Settlement Agreement, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the debtors and their creditors shall continue in full force and effect.

39

Section 14.22. *Administration of Wind Down Budget*

The Trustees shall provide the Agent and the Plan Oversight Committee upon request and no less frequently than monthly a written accounting of (i) all line item expenses paid in the prior month pursuant to the Wind Down Budget and (ii) all projected payments for line item expenses. As soon as the Unsecured Creditors' Trustee determines in his reasonable judgment that any line item expense provided for in the Wind Down Budget has been paid, the Trustee shall, in accordance with the Cash Collateral Order, remit to the Agent for the benefit of the Senior Lenders any and all remaining cash collateral allocable to such line item in the Wind Down Budget, provided that the Unsecured Creditors' Trustee shall remit to the Agent all remaining unused cash allocable to the Wind Down Budget no later than January 5, 2004 (or such later date as the Agent may agree in writing). Notwithstanding anything herein to the contrary, and except as expressly provided in the Asset Reallocation and Settlement Agreement, the Creditor Trust or Contributed Assets shall not be subject to any Claims payable under the Wind Down Budget.

Dated: Wilmington, Delaware
February _23_, 2004

Respectfully Submitted,

INSILCO HOLDING CORPORATION
By: _Carol Wster_
Its: _President and General Counsel_

INSILCO TECHNOLOGIES, INC.
By: _Carol W_
Its: _President and General Counsel_

INNET TECHNOLOGIES, INC.
By: _Carol W_
Its: _Secretary and General Counsel_

INSILCO INTERNATIONAL HOLDINGS, INC.
By: _Carol Wster_
Its: _Secretary and General Counsel_

PRECISION CABLE MFG. CORPORATION
By: _Carol W_
Its: _General Counsel_

EYELETS FOR INDUSTRY, INC.
By: _Carol W_
Its: _Secretary and General Counsel_

EFI METAL FORMING, INC.
By: _Carol W_
Its: _Secretary and General Counsel_

STEWART STAMPING CORPORATION
By: _Carol Wster_
Its: _Secretary and General Counsel_

STEWART CONNECTOR SYSTEMS, INC.

By: _Carol G Stein_____

Its: _Secretary and General Counsel_

SIGNAL CARIBE, INC.

By: _Carol G Stein_____

Its: _General Counsel_

SIGNAL TRANSFORMER CORPORATION, INC.

By: _Carol G Stein_____

Its: _Secretary and General Counsel_

# EXHIBIT A

## ASSET REALLOCATION AND SETTLEMENT AGREEMENT

## ASSET REALLOCATION AND SETTLEMENT AGREEMENT

THIS ASSET REALLOCATION AND SETTLEMENT AGREEMENT

("SETTLEMENT AGREEMENT") dated as of May 13, 2003, by and among (i) Insilco

Technologies, Inc. ("Technologies") and its undersigned affiliated debtors (together with

Technologies, the "Debtors") in the administratively consolidated chapter 11 bankruptcy cases

pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court") bearing docket number 02-13672 (KJC) (the "Chapter 11 Cases"), (ii) the official

committee of unsecured creditors appointed in the Bankruptcy Cases (the "Creditors'

Committee"), (iii) Bank One, NA as agent (the "Agent") and the lenders, including Bank One,

NA, under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

amended (the "Credit Agreement") that have consented to the terms of this Settlement

Agreement (the "Senior Lenders")[1], (iv) Wachovia Bank, National Association, as indenture

trustee for the 12% senior subordinated notes due 2007 (the "12% Senior Subordinated Notes")

issued by Technologies ("Wachovia") and (v) U.S. Bank, N.A. ("U.S. Bank") as the indenture

trustee for the 14% senior discount notes due 2008 (the "14% Senior Discount Notes") issued by

Insilco Holding Co. (collectively, the parties to this Settlement Agreement are hereinafter

referred to as the "Parties"). Except as expressly provided otherwise herein, the terms and

provisions of this Settlement Agreement shall become effective and binding upon the Settlement

Effective Date, as defined in Paragraph 6 below.

## RECITALS

---

[1] As used herein, the term "Senior Lenders" does not include those lenders participating in Term Loan C, except in respect of Paragraph 1 only, wherein the term "Senior Lenders" shall include those lenders participating in Term Loan C

2

A.    On December 16, 2002 (the "Filing Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code")

commencing the Chapter 11 Cases.  The Debtors continue in the management and operation of

their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of

the Bankruptcy Code.  The Chapter 11 Cases have been consolidated for procedural purposes and

are being jointly administered pursuant to an order of the Bankruptcy Court.  No trustee or

examiner has been appointed in the Chapter 11 Cases.

B.    On December 19 and 20, 2002, the Debtors filed motions seeking, inter

alia, the entry of orders (i) approving bidding procedures governing the sale of substantially all of

the Debtors' assets, (ii) approving the sale of substantially all of the Debtors' assets, and (iii)

granting certain relief related thereto (the "Sale Motions").  The Sale Motions contemplated the

sale of substantially all of the Debtors' assets in separate transactions (the "Sales") pursuant to

five separate sale agreements described below (collectively, the "Sale Agreements"), subject to

higher or otherwise better offers and Bankruptcy Court approval:

> a.  Stock and Asset Purchase Agreement By and Among Amphenol
>     Corporation, Amphenol Technical Products International Co., Insilco
>     Technologies, Inc., T.A.T. Technology Inc., Insilco International Holdings,
>     Inc. and Precision Cable Mfg. Co., Inc. dated as of December 15, 2002;
>
> b.  Stock and Asset Purchase Agreement Among Bel Fuse Ltd., Bel Fuse
>     Macau, L.D.A., Bel Connector Inc., Bel Transformer Inc., and Insilco
>     Technologies, Inc. and Certain of its Subsidiaries, dated as of December
>     15, 2002;
>
> c.  SRDF Acquisition Company, LLC, Insilco Technologies, Inc., Stewart
>     Stamping Corporation, Eyelets For Industry, Inc. and EFI Metal Forming,
>     Inc., dated as of December 15, 2002;
>
> d.  Asset Purchase Agreement By and Between LL&R Partnership and Insilco
>     Technologies, Inc., dated as of December 15, 2002; and

3

     e.  Share Sale and Asset Purchase Agreement between Insilco Technologies, Inc. and Stephen Bullock, dated as of December 15, 2002.

    C.      On January 3, 2003, the Office of the United States Trustee appointed five members to serve on the Creditors' Committee in these cases.

    D.      On January 14, 2003, the Creditors' Committee and Wachovia filed objections to the bidding procedures. After extensive negotiations with the Creditors' Committee and Wachovia at the January 16, 2003 hearing to consider approval of the bidding procedures, the Debtors consented to various amendments to Debtors' proposed bidding procedures and agreed to continue the hearing on the Sale Motions until March 7, 2003.

    E.      On January 16, 2003, the Bankruptcy Court entered the Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens (the "Cash Collateral Order"). Annexed to the Cash Collateral Order as Exhibit B is a budget listing anticipated wind down expenses (the "Wind Down Budget"), including line items for payments that may be triggered under the Debtors' Key Executive and Key Employee Severance Plan (the "KESP") and the Debtors' Key Executive and Key Employee Retention Plan (the "KERP"). Paragraph 3 of the Cash Collateral Order provides that, subject to certain limitations, to the extent amounts allocated to line items other than "Selling Costs" in the Wind Down Budget exceed the amounts necessary to fund such line items, then up to $500,000 of the amount allocated to non "Selling Costs" line items may be reallocated and used by the Debtors' estates for other necessary expenses for a period of six months following the completion of the Sales (the "Reallocated Monies"), at which time the remaining balance of the Reallocated Monies shall be returned to the Agent.

4

   F. On January 30, 2003, the Court docketed the orders approving the Bidding

Procedures. With respect to the Custom Assemblies deal and the N. Myrtle Beach deal, the

Debtors submitted revised orders to effect certain ministerial changes, on or about February 6,

2003. These revised orders were entered by the Bankruptcy Court on February 19, 2003.

   G. On February 26, 2003, the Creditors' Committee and Wachovia filed

objections to the Sale Motions, and on March 6, 2003, the Creditors' Committee filed a

supplement to the objection (collectively, the "Sale Objections").

   H. On March 5, 2003, the Creditors' Committee filed a motion seeking inter

alia appointment of a chapter 11 trustee for the Debtors' estates or an examiner (the "Trustee

Motion").

   I. At the Sale Hearing on March 7, 2003, the Debtors presented argument

and evidence in support of the Sales. Prior to the Committee and Wachovia presenting evidence

in support of the Sale Objections and a ruling by the Bankruptcy Court on the Sale Motions,

counsel for the Debtors, the Agent and the Creditors' Committee informed the Bankruptcy Court

that they, together with Wachovia, had reached a settlement in principle pursuant to which the

Sale Objections were withdrawn. Counsel for the Debtors, the Agent and the Creditors'

Committee described certain of the general terms and conditions of the settlement on the record

at the Sale Hearing and noted that the settlement was subject to definitive documentation and

certain further approvals, including Bankruptcy Court approval and, in the case of the Agent,

approval of the terms of the settlement by the requisite majorities of the Senior Lenders sufficient

to bind the Senior Lenders, including as a class under a plan incorporating the settlement terms,

if necessary.

Claim is impaired under the Plan and is not of a Class that is deemed to have accepted or rejected the Plan pursuant to sections 1126(f) and (g) of the Bankruptcy Code and (b) either (i) such Holder's Claim has been scheduled by the Debtors (and such Claim is not scheduled as disputed, contingent or unliquidated), or (ii) such Holder has filed a proof of claim on or before the Bar Date.

Any holder of an Interest in the Debtors is not entitled to vote to accept or reject the Plan because Class 8 is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Unless otherwise permitted in the Plan, the holder of any Disputed Claim is not entitled to vote with respect to such Disputed Claim, unless the Bankruptcy Court, upon application by such holder, temporarily allows such Disputed Claim for the limited purpose of voting to accept or reject the Plan. Any such application must be heard and determined by the Bankruptcy Court prior to the Confirmation Hearing. A vote on the Plan may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that such vote was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

## C.  Vote Required for Acceptance by Classes of Claims

The Bankruptcy Code defines acceptance of a plan by a class of claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of the claims of that class which actually cast ballots for acceptance or rejection of the Plan. Thus, acceptance by a class of claims occurs only if at least two-thirds in dollar amount and a majority in number of the holders of such claims voting cast their ballots in favor of acceptance. A Class of Holders of Claims shall be deemed to accept the Plan in the event that no holder of a Claim within that Class submits a Ballot by the Ballot Date.

CREDITORS AND OTHER PARTIES IN INTEREST ARE CAUTIONED TO REVIEW THE DISCLOSURE STATEMENT ORDER AND THE PLAN FOR A FULL UNDERSTANDING OF VOTING REQUIREMENTS, INCLUDING, WITHOUT LIMITATION, USE OF BALLOTS AND MASTER BALLOTS.

**ARTICLE VII**
**CONFIRMATION OF THE PLAN**

Under the Bankruptcy Code, the following steps must be taken to confirm the Plan.

## A.  Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. By order of the Bankruptcy Court, the Confirmation Hearing has been scheduled for April 28, 2004 at 10:00 a.m. (prevailing Eastern Time) before the Hon. Kevin J. Carey in United States Bankruptcy Court for the District of Delaware, 900 Market Street, Courtroom 1, Philadelphia, Pennsylvania. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court and set forth the name of the objecting party, the nature and amount of the Claim or Equity Interest held or asserted by the objecting party against the Debtors' estates or property, the basis for the objection and the specific grounds therefor. The objection, together with proof of service thereof, must then be filed with the

A— 51