IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x
                                :

In re                           :

                                :

INSILCO TECHNOLOGIES, INC., et al.,[1]  :

                                :

                  Debtors.   :

                                :

-----------------------------------------------------x

Chapter 11

Case No. 02-13672 (KJC)

(Jointly Administered)

RE: Docket No. 1019

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER UNDER
SECTION 1129 OF THE BANKRUPTCY CODE AND RULE 3020 OF THE
BANKRUPTCY RULES CONFIRMING THE AMENDED JOINT
LIQUIDATING PLAN PURSUANT TO CHAPTER 11 OF
THE UNITED STATES BANKRUPTCY CODE**

## RECITALS

A.      On December 16, 2002 (the "Petition Date"), Insilco Holding Co. and

certain of its direct and indirect subsidiaries (collectively, the "Debtors") commenced these cases

by filing voluntary petitions under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the

"Court"). On December 17, 2002, the Debtors' chapter 11 cases were consolidated for

administrative purposes only. Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code,

the Debtors are acting as debtors in possession.[2]

---

[1]   The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet
Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry,
Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe,
Inc. and Signal Transformer Co., Inc.

[2]   Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the Amended Joint
Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code, dated February 13, 2004 (the
"Plan").

B.    No trustee or examiner has been appointed in these chapter 11 cases.  On January 3, 2003, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") to serve in these cases.

C.    As of the Petition Date, the Debtors and their non-debtor affiliates were leading global manufacturers and developers of highly-specialized electronic interconnection components and systems, serving the telecommunications, computer networking, electronics, automotive and medical markets.  They offered a broad range of magnetic interface products, cable assemblies, wire harnesses, fiber optic assemblies and subassemblies, high-speed data transmission connectors, power transformers and planar magnetic products, and highly engineered, precision-stamped metal components.

D.    Due to the continuing depressed state of the telecommunications industry, many of the Debtors' primary customers significantly reduced the volume of products purchased from the Debtors and the Debtors' revenues failed to reach previous levels.  As a result of their diminished cash flow, the Debtors did not have the ability to service their significant long-term debt obligations in the ordinary course of business.  After examining numerous restructuring alternatives with their investment advisors and consulting with their senior secured lenders, the Debtors determined that it was in the best interest of their creditors, customers and employees to file these chapter 11 proceedings.

E.    On December 19 and 20, 2002, the Debtors filed motions in these cases seeking approval of bidding procedures for sales of substantially all of the Debtors' assets on a going concern basis and authorization to consummate such sales (the "Going Concern Sales").  On January 30, 2003, this Court entered orders approving bidding procedures to govern the Going Concern Sales.  On March 7, 2003, the Court held hearings on the five Going Concern

2

Sales motions. At the March 7, 2003 hearing, the parties informed the Court that the Creditors' Committee, the agent for the Lenders (the "Agent") and the Debtors reached an agreement in principle over the terms of a "global" settlement. The Court subsequently signed orders approving the Going Concern Sales, which orders were entered by the Court on March 11, 2003. The Debtors consummated each of the Going Concern Sales between March 14 and March 25, 2003.

       F.     The aforementioned global settlement was incorporated into the Asset Reallocation and Settlement Agreement, dated as of May 13, 2003 (the "Asset Reallocation and Settlement Agreement"), by and among (i) the Debtors, (ii) the Creditors' Committee, (iii) Bank One, NA, as Agent, and the lenders, including Bank One, NA, under the Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as amended, that have consented to the terms of the Asset Reallocation and Settlement Agreement, (iv) Wachovia Bank, National Association, as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, Inc., and (v) U.S. Bank National Association, as the indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co. The Asset Reallocation and Settlement Agreement was approved by order of the Court dated June 14, 2003.

       G.     On January 27, 2004, the Debtors filed (a) the Motion for an Order: (I) Scheduling Confirmation Hearing; (II) Approving Form and Manner of Solicitation Packages; (III) Approving Form and Manner of Notice of the Confirmation Hearing; (IV) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (V) Approving Forms of Ballots; (VI) Establishing Last Date for Receipt of Ballots; (VII) Approving Procedures for Vote Tabulations; and (VIII) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan, dated January 27, 2004 (the "Solicitation Procedures

A- 106

Motion") and (b) a notice of hearing in connection thereto. The Solicitation Procedures Motion was served by regular mail on the Office of the United States Trustee for the District of Delaware and all entities that had filed a notice of appearance and request for service of papers in these chapter 11 cases.

H.    After a hearing on February 13, 2004 to consider the Solicitation Procedures Motion, this Court entered the Order: (I) Approving Amended Disclosure Statement for the Debtors' Joint Liquidating Plan; (II) Scheduling Confirmation Hearing; (III) Approving Form and Manner of Solicitation Packages; (IV) Approving Form and Manner of Notice of the Confirmation Hearing; (V) Establishing Record Date and Approving Procedures for Distribution of Solicitation Packages; (VI) Approving Forms of Ballots; (VII) Establishing Last Date for Receipt of Ballots; (VIII) Approving Procedures for Vote Tabulations; and (IX) Establishing Deadline and Procedures for Filing Objections to Confirmation of the Plan (the "Solicitation Procedures Order").

I.    As required by the Solicitation Procedures Order, on or before February 23, 2004 (the "Distribution Date"), the Debtors caused PatLett, Inc. ("PatLett"), the Debtors' solicitation and voting agent, to mail Non-Voting Creditor Notices to Unimpaired Creditors and to the Class 8 interest holders.

J.    Also as required by the Solicitation Procedures Order, on or before the Distribution Date, the Debtors caused PatLett to mail (or make available electronically) (i) Solicitation Packages or Non-Voting Creditor Notices (whichever were applicable) and (ii) the Committee Letter, to all creditors and parties in interest in these cases.

4

K.    Also as required by the Solicitation Procedures Order, on or before March 1, 2004, the Debtors made a one-time publication of a notice of the Confirmation Hearing in USA Today.

L.    Except as explicitly set forth below, on or before the Distribution Date, the Debtors caused PatLett to mail Solicitation Packages, each containing a copy of (i) the Solicitation Procedures Order, (ii) the Confirmation Hearing Notice, (iii) the Committee Letter, (iv) ballot and return envelope addressed to the Ballot Tabulation Center and (v) the Disclosure Statement, together with all exhibits thereto, including the Plan, to (a) each entity listed on the Debtors' schedules of assets and liabilities (other than (x) Unimpaired Creditors and (y) creditors with claims scheduled as disputed, contingent or unliquidated, who had failed to timely file proofs of claim), as amended or reconstituted by the Record Date, (b) each entity that had filed a proof of claim in accordance with this Court's order, dated February 25, 2003, which claim had not been disallowed, withdrawn or expunged, (c) the beneficial owners of the Senior Notes as identified by The Depository Trust Company ("DTC") as of the Record Date and (d) Nominees as identified by DTC as of the Record Date.

M.    Pursuant to the Solicitation Procedures Order, ballots to accept or reject the Plan were required to be submitted to PatLett by no later than 4:00 p.m. prevailing Eastern time on April 19, 2004 (the "Voting Deadline").

N.    On or about April 10, 2004, the Debtors were informed that certain Class 5 claimholders (the "Affected Claimholders") had not received Solicitation Packages. Soon thereafter, on or about April 14, 2004, the Debtors caused PatLett to mail Solicitation Packages to such claimholders by express/overnight mail. Moreover, on April 19, 2004, the Debtors filed the Debtors' Motion for Order Pursuant to 11 U.S.C. § 105(a) and Rule 9006(b) of the Federal

5

Rules of Bankruptcy Procedure Permitting Debtors to Extend the Voting Deadline (the "Voting Deadline Extension Motion"). No objections were filed with the Court or received by the Debtors prior to the objection deadline, and on May 17, 2004, the Debtors filed a certificate of no objection. The Debtors have agreed to extend the Voting Deadline with respect to each ballot cast by an Affected Claimholder that was received after the Voting Deadline.

        O.    As described more fully in the Affidavit of Patricia E. Hackett-Lett Certifying Voting on and Tabulation of Ballots Accepting and Rejecting the Debtors' Amended Plan of Liquidation (the "Voting Report"), the Plan has been accepted by all impaired classes of claims and interests entitled to vote.

        P.    The Solicitation Procedures Order further required that any objections to confirmation of the Plan be in writing, filed with the Court and served upon the Service Parties, together with proof of service, by no later than April 19, 2004. As of April 19, 2004, the Debtors had received copies of the following objections/joinders:

        (i) Objection by the United States (Internal Revenue Service) to the Debtors' Amended Joint Liquidating Plan;

        (ii) Objection of New York State to Debtors' Amended Joint Liquidating Plan;

        (iii) Objection of SUSA Mt. Vernon LLC to the Debtors' Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code;

        (iv) Limited Objection to Confirmation by Chapter 7 Trustee for the Bankruptcy Estate of Star Services, Inc. of Delaware; and

        (v) Joinder of Lawrence F. DeGeorge in Limited Objection to Confirmation and Motion for Relief from the Automatic Stay Filed by Chapter 7 Trustee for the Bankruptcy Estate of Star Services, Inc. of Delaware.

A— 109

Q.    On or about June 7, 2004, the Debtors filed a technical modification to the Plan, wherein the Debtors modified the definition of the term "Trust Agreement" to provide that the Trust Agreement may be filed with the Court prior to the Effective Date (the "Technical Modification").

R.    On June 7, 2004, the Debtors filed the Memorandum in Support of Confirmation of Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (the "Confirmation Memorandum"), and on June 9, 2004, the Debtors filed the Declaration of Carol G. Stebbins (the "Stebbins Declaration") in support of confirmation.

S.    The Confirmation Hearing was held on June 10, 2004 at 10:00 a.m. Eastern daylight time.

NOW, THEREFORE, based upon the Court's review of the Confirmation Memorandum and the Voting Report previously filed with the Court and upon (i) all of the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of these chapter 11 cases, and after due deliberation thereon and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[3]

IT IS HEREBY FOUND AND DETERMINED THAT:

1.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409). This Court has jurisdiction over these chapter 11 cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court

---

[3]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

7

has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

        2.     <u>Judicial Notice</u>. This Court takes judicial notice of the docket of these chapter 11 cases maintained by the clerk of the Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered or adduced at the hearings held before the Court during these chapter 11 cases, including, without limitation, the hearing to consider the adequacy of the Disclosure Statement.

        3.     <u>Burden Of Proof</u>. The Debtors, as proponents of the Plan, have the burden of proving the elements of subsections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence and the Debtors have met that burden as further found and determined herein.

        4.     <u>Transmittal and Mailing of Materials; Notice</u>. The Solicitation Packages were transmitted and served in compliance with the Solicitation Procedures Order, the Bankruptcy Code and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient. Adequate and sufficient notice of the Confirmation Hearing and the other dates and hearings described in the Solicitation Procedures Order was given in compliance with the Bankruptcy Rules, the Bankruptcy Code and the Solicitation Procedures Order, and no other or further notice is or shall be required.

        5.     <u>Voting</u>. Votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Procedures Order and industry practice. All of the impaired classes of Claims voting under the Plan have voted to accept the Plan, with the requisite Holders

A- 111

(in number and amount) in each of Class 4 Claims, Class 5 Claims, Class 6 Claims and Class 7 Claims having voted to accept the Plan, without the need to include any acceptance of the Plan by an insider. No Noteholder has submitted a ballot opting out of the Noteholder Releases.

      6.    The Plan Modification (11 U.S.C. § 1127). Subsequent to solicitation, the Debtors made a technical modification to the Plan, on or about June 7, 2004, wherein the Debtors modified the definition of the term "Trust Agreement." This modification does not adversely affect the treatment of any Claims or Interests in the Debtors under the Plan. Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, this modification does not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor does such modification require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan. The Plan as modified shall constitute the Plan submitted for confirmation by the Bankrutpcy Court.

      7.    Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). As set forth below, the Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

          i.    Proper Classification of Claims and Interests (11 U.S.C. §§ 1122, 1123(a)(1)). With the exception of Administrative Claims and claims based on Statutory Fees and Professional Fees, which need not be classified, the Plan designates eight (8) classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

A- 112

ii.    Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2)). The Plan specifies that Classes 1, 2 and 3 are not impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

iii.    Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). The Plan designates Classes 4, 5, 6, 7 and 8 as impaired and specifies the treatment of Claims and Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

iv.    Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Interest in a particular Class unless the holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

v.    Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

vi.    Charter Provisions (11 U.S.C. § 1123(a)(6)). Pursuant to the Plan, upon the Effective Date, (i) the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed and (ii) each of the Debtors will be deemed dissolved. Accordingly, as each of the Debtors will be deemed dissolved, there is no issue as to (x) the issuance of nonvoting equity securities or (y) the "appropriate distribution" of voting power among the securities possessing voting power. Therefore, section 1123(a)(6) of the Bankruptcy Code is inapplicable.

vii.    Selection of Officers and Directors (11 U.S.C. § 1123(a)(7)). Pursuant to the Plan, upon the Effective Date, the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed. In view of the fact that the Debtors are not reorganizing their businesses, but rather are liquidating their properties, that is consistent with the interests of creditors, equity holders, and public policy because it will promote cost-efficient and expeditious administration of the Plan. Therefore, section 1123(a)(7) of the Bankruptcy Code is satisfied.

viii.    Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

ix.    Rule 3016(c) of the Bankruptcy Rules. The Plan describes in specific and conspicuous italicized language all acts to be enjoined and identifies the entities that would be subject to the injunction.

8.    Debtors' Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

i.    the Debtors are proper debtors under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

ii.    the Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and

iii.    the Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Procedures Order in transmitting the Confirmation Hearing Notice and the Solicitation Packages and in soliciting and tabulating votes on the Plan.

9.    Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of these chapter 11 cases and the formulation of the Plan. These chapter 11 cases were filed, and the Plan was proposed, with the legitimate and honest purpose of distributing the proceeds of the sale of substantially all of the Debtors' assets so as to provide the greatest possible distribution to the Debtors' creditors.

10.    Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Except as otherwise provided or permitted by (i) the Plan or (ii) the Court's order dated January 10, 2003 (as amended by the amended order dated February 20, 2003) establishing procedures

11

for interim compensation and reimbursement of expenses for professionals (the "Interim Compensation Order"), any payment made or to be made by the Debtors for services or for costs and expenses in or in connection with these chapter 11 cases, or in connection with the Plan and incident to these chapter 11 cases, have been approved by, or are subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

11.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). Section 1129(a)(5) of the Bankruptcy Code is inapplicable in the instant case because the Plan provides that upon the Effective Date, (i) the existing board of directors of each Debtor and any remaining officer of any Debtor will be dismissed and (ii) each of the Debtors will be deemed dissolved.

12.    No Rate Changes (11 U.S.C. § 1129(a)(6)). The Debtors will not operate any businesses, therefore, their prices are not subject to governmental regulation. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in the instant case.

13.    Best Interests of Creditors Test (11 U.S.C. § 1129(a)(7)). The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence or challenged and (iii) establishes that each holder of a Claim or Interest in an impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that it would receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.

14.    Treatment of Priority Claims (11 U.S.C. § 1129(a)(9)). The Plan's treatment of Allowed Administrative Claims and Allowed Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code, respectively.

Under the Plan, holders of priority claims under sections 507(a) and 502(f) of the Bankruptcy Code will receive, on the Effective Date, Cash equal to the full amount of Allowed Priority Claims. The Plan also provides for (i) payment in full of Allowed Administrative Claims on or before the Effective Date and (ii) funding of the Administrative Claims Reserve Fund for payment in full of Administrative Claims that become allowed after the Effective Date.

15.    Acceptance of at Least One Impaired Class (11 U.S.C. § 1129(a)(10)). Classes 4, 5, 6 and 7 have each voted to accept the Plan (without the need to include any acceptance of the Plan by any insider), thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

16.    Feasibility (11 U.S.C. § 1129(a)(11)). The Plan provides for the liquidation of the Debtors' remaining assets and the distribution of cash to creditors and interest holders in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan. Further, the Plan contemplates the formation of, and reserves funds for compensation of, a Creditor Trust. The Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged and (iii) establish that the Plan is feasible, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

17.    Payment of Certain Fees (11 U.S.C. § 1129(a)(12)). All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid on the Effective Date pursuant to the Plan. Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

18.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). The evidence adduced at the Confirmation Hearing establishes that the Debtors are not obligated, now or in the

13

future, to pay retiree benefits. Thus, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

        19.     Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Class 8 is not entitled to receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors presented uncontroverted evidence at the Confirmation Hearing that the Plan does not discriminate unfairly and is fair and equitable with respect to Class 8, as required by section 1129(b)(1) of the Bankruptcy Code. Thus, although section 1129(a)(8) has not been satisfied with respect to Class 8, the Plan is confirmable because it satisfies section 1129(b) of the Bankruptcy Code with respect to Class 8.

        20.     Only One Plan (11 U.S.C. § 1129(c)). Other than the Plan (including previous versions thereof), no other plan has been filed in these chapter 11 cases. Accordingly, the requirements of section 1129(c) have been satisfied.

        21.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

        22.     Good Faith Solicitation (11 U.S.C. § 1125(e)). Based upon the record before the Court, the Debtors and their agent have solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpatory and injunctive provisions set forth in the Plan.

14

23. <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>. Article XI of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of section 365(b) of the Bankruptcy Code.

24. <u>Releases, Exculpation and Injunctions</u>. Based upon the facts and circumstances of these chapter 11 cases, the release, exculpation and injunction provisions contained in the Plan are fair and equitable, are an essential component of the agreement among the parties in interest, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities as provided in the Plan and are hereby approved.

25. <u>Satisfaction of Confirmation Requirements</u>. The Plan satisfies the requirements for confirmation set forth in subsections 1129(a) and (b) of the Bankruptcy Code.

26. <u>Retention of Jurisdiction</u>. The Court may properly retain jurisdiction over the matters set forth in Article XIII of the Plan and paragraph 40 below.

DECREES

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, DECREED AND DETERMINED THAT:

27. <u>Confirmation</u>. The Plan (a copy of which – including the Technical Modification -- is annexed hereto as Exhibit <u>A</u>), is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of each of the documents in the Plan (subject to further modifications by the Debtors, the Creditors' Committee and the Agent and the Lenders, which modifications shall not be inconsistent with the Plan or this Confirmation Order) are approved, and are incorporated by reference into, and are an integral part of the Plan.

15

28. <u>Objections Withdrawn or Overruled</u>. The objections of the United States and Lawrence P. DeGeorge have been resolved and withdrawn, based upon the Debtors' inclusion of certain language satisfactory to such parties in Paragraph 34 below. Except as expressly provided in this Confirmation Order, each of the remaining objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are hereby denied and overruled on the merits.

29. <u>Provisions of Plan and Order Nonseverable and Mutually Dependent</u>. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

30. <u>Plan Classification Controlling</u>. The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and equity holders in connection with voting on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, and (iii) shall not be binding on the Debtors, their estates, the Creditor Trust or the Trustees.

31. <u>Binding Effect</u>. Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtors, (ii) the Creditor Trust, (iii) the Trustees, (iv) all holders of Claims against and Interests in the Debtors, whether or not impaired

A— 119

under the Plan and whether or not, if impaired, such holders accepted the Plan and (v) each person acquiring property under the Plan.

32.    Vesting of Assets.  Pursuant to the Plan, upon the Effective Date, all Assets of the Debtors (other than Cash required to be remitted to the Agent pursuant to Section 4.2(b) of the Plan) shall vest in the Creditor Trust.  The Excluded Assets in the Unsecured Creditor Series shall be held, managed and used for the sole purpose of achieving Consummation and carrying out the Plan and effectuating the Distributions provided for in the Plan, including the payments required pursuant to or under the Plan and the Asset Reallocation and Settlement Agreement.  The ~~unliquidated~~ Assets held as part of the Senior Lender Series of the Creditor Trust (including the Star Litigation, Tax Refunds and the estate's interest in retainers or any other Assets that would give rise to Settlement Proceeds) shall be administered by the Senior Lenders' Trustee subject to the obligation to remit to the Unsecured Creditors' Trustee such amount as may be required by the Asset Reallocation and Settlement Agreement and the Plan.

33.    The Unsecured Creditor Trustee.  On and after the Effective Date, the Unsecured Creditors' Trustee shall be authorized and empowered to pursue and prosecute, maintain, settle or to decline to pursue the Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date.  The Unsecured Creditors' Trustee may pursue, abandon, settle or release any or all Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date, without the need to obtain approval or any other or further relief from the Bankruptcy Court. The Unsecured Creditors' Trustee may, in its sole discretion (subject to restrictions of the Plan and the Asset Reallocation and Settlement Agreement), offset, setoff or net any Claim held

17

against a Holder of a Claim against any payment due against such Holder of a Claim under the Plan.

34.   Injunction.  Except as otherwise provided in the Plan or as expressly provided in this Confirmation Order, from and after the Confirmation Date all persons who have held, hold or may hold Claims against or Interests in the Debtors are permanently enjoined from taking any of the following actions against the Debtors, the Debtors' estates, the Creditor Trust or the Trustees or any of their respective properties on account of such Claims or Interests: (a) commencing or continuing, in any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or enforcing any Lien or encumbrance; and (d) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, provided, however, that nothing contained herein shall preclude such persons from exercising their rights pursuant to and consistent with the terms of the Plan; provided further, that (i) notwithstanding anything to the contrary in the Plan or this Confirmation Order, confirmation of the Plan shall not affect the setoff and recoupment rights of the United States, if any, in respect of any future refunds that may be payable to the Debtors, nor shall confirmation of the Plan affect any defenses the Debtors or the Creditor Trust may have to such setoff or recoupment rights, (ii) nothing in the Plan or this Confirmation Order shall be deemed to discharge, release, exculpate or relieve any party from any liability arising under §§ 1104-1109 and 1342(d) of the Employee Retirement Income Security Act of 1974, as amended, and (iii) if a proceeding is brought in the chapter 7 bankruptcy proceedings of Star Services, Inc. of Delaware ("Star Services"), Case No. 04-31168 pending in the United States Bankruptcy Court for the Southern District of Florida to determine the relative priorities of the liens claimed *as permitted pursuant to the Court's Order of June 10, 2004 granting relief from the automatic stay to Deborah Menotti as Trustee in Bankruptcy for Star Services, Inc. of Delaware and/or*

by Insilco Technologies, Inc. ("Insilco") and Lawrence F. DeGeorge against property held by Star Services, Insilco or its successor(s) can be named a party in such proceeding without violating Section 14.5, or any other provision of, the Plan, or this Confirmation Order.

35.   Continuation of Automatic Stay.  All injunctions or stays provided for in these chapter 11 cases under sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

36.   Rejected Contracts and Leases.  Except as otherwise provided in the Plan, any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Court, which are not the subject of (i) a motion to assume the same pending as of the Effective Date or (ii) not otherwise listed in a notice filed and served by the Debtors ten (10) days before the Confirmation Date, shall be deemed rejected by the Debtors on the Effective Date or as otherwise agreed upon by the parties.  The entry of the Confirmation Order by the Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

37.   General Authorizations; Plan Modifications.  Pursuant to section 1142(b) of the Bankruptcy Code, (i) the Debtors, (ii) the Creditor Trust, (iii) the Trustees and (iv) all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable or required to comply with the terms and conditions of the Plan and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, and other agreements or documents

19

created in connection with the Plan. After entry of this Confirmation Order, the Debtors (or, after the Effective Date, the Creditor Trust) may, without further order of the Court, make non-material amendments or modifications to the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan, in such manner as may be necessary to carry out the purpose and intent of the Plan.

38.    Corporate Action. Any corporate action required to be taken by the Debtors in respect of any of the matters provided for under the Plan shall, as of the Effective Date, be deemed to have been taken and shall be effective as provided herein, and such corporate action shall be authorized and approved in all respects without any requirement of further action by stockholders, officers or directors of any of the Debtors.

39.    Exemption From Transfer Taxes. Pursuant to section 1146(c) of the Bankruptcy Code, any transfer from the Debtors to the Creditor Trust or otherwise pursuant to the Plan shall not be subject to any stamp tax or similar tax, and all appropriate state or local governmental officials or agents are hereby directed to forego the collection of any such tax and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax.

40.    Substantive Consolidation. Pursuant to Sections 2.1 and 2.2 of the Plan, on the Effective Date, and for purposes of Distributions under the Plan, the Chapter 11 Cases shall be substantively consolidated and (i) all Claims among the Debtors shall be eliminated, (ii) all assets and liabilities of the Debtors shall be treated as though they were merged (such liabilities to be satisfied in accordance with and subject to the terms of the Plan), (iii) all cross guaranties, indemnities, co-signatures, sureties or otherwise shall be eliminated and any obligation of any Debtors by one or more of the Debtors shall be deemed to be a single

20

A— 123

obligation of the consolidated Debtors, (iv) any Claims filed or to be filed in connection with any such obligation shall be deemed one Claim against the consolidated Debtors, and (v) each and every Claim filed or to be filed in the individual chapter 11 case of any of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed joint and several obligations of the Debtors' estates. Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

41.    Bar Date for Administrative Claims. Holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003, *i.e.*, the First Administrative Bar Date, pursuant to the Bar Date Order. Holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date shall file a request for payment of Administrative Claims with the Court and serve a copy of such request upon counsel to each of the Trustees such that it is received no later than the date that is forty-five (45) days after the Confirmation Date, *i.e.*, the Second Administrative Bar Date. If an Administrative Claim was not timely filed by the First Administrative Bar Date or is not timely filed by the Second Administrative Bar Date, as applicable, then such Administrative Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property, Administrative Claims Reserve Fund or the Creditor Trust. The foregoing shall not apply to the Professional Fee Claims. An objection to an Administrative Claim filed pursuant to this provision must be filed within ninety (90) days from the later of the date such Administrative Claim is filed and properly served or ninety (90) days after the Effective Date. The Debtors and Creditor Trust shall have the right to seek an extension

21

of the time to object. The following persons or entities need not file a proof of Administrative Claim:

    i.    any person who, or entity which, has already filed a proof of Administrative Claim against the Debtors with the clerk of the Court; and

    ii.    any holder of an Administrative Claim that has heretofore been deemed Allowed under the Plan or been Allowed by Order of the Court.

42.    <u>Professional Compensation and Reimbursement Claims</u>.  The Creditor Trust shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Creditor Trust Expense Fund as provided under the Asset Reallocation and Settlement Agreement and the Plan.

43.    The Court shall rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order.  For all Professional Fees, the Professional in question shall file and serve a properly noticed fee application and the Court shall rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under the Plan; <u>provided</u> that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims, nor shall anything herein abrogate or modify the terms of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees.

44.    Except as otherwise provided by Order of the Court for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final

22

allowance of compensation and reimbursement of expenses by no later than the Second Administrative Bar Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court and to the provisions of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees. Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtors or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

45.    Notwithstanding anything herein to the contrary, following the occurrence of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for payment of fees and expenses authorized to be paid pursuant to the Plan, including fees and expenses approved by the Court in connection with such Professionals' final applications for allowance of compensation and reimbursement of expenses. Thereafter, (a) Shearman & Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the amount of $25,000 until the earlier of (i) six months after the Effective Date or (ii) entry of the Final Decree, and shall be authorized without further order of the Court to apply such retainer to fees and expenses incurred in connection with services rendered on behalf of the Debtors, their estates or the Creditor Trust on or after the Effective Date and (b) other Professionals shall return the unapplied balance of any retainer to the Senior Lenders' Trustee for distribution to the Senior Lenders.

46.    Payment of Fees. All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date from the Budget. Payments

23

after the Effective Date shall be made as required by statute and shall be paid by the Creditor Trust in accordance with the Budget.

47.    Failure to Consummate Plan.  If the Effective Date does not occur on or before the date that is sixty (60) days after the Confirmation Date, the Debtors may seek to have this Confirmation Order vacated and the Plan revoked and withdrawn.

48.    Retention of Jurisdiction.  Except as otherwise provided in the Plan, the Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to these chapter 11 cases and the Plan.  The Court shall also have exclusive jurisdiction:

    i.    to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

    ii.    to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with the Plan;

    iii.    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

    iv.    to ensure that Distributions to Holders of Allowed Claims are accomplished as provided in the Plan;

    v.    to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

A— 127

vi.     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

vii.    to issue orders in aid of execution of the Plan;

viii.   to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

ix.    to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

x.     to hear and determine disputes arising in connection with or relating to the Plan, the interpretation, implementation or enforcement of the Plan, or the extent of any Entity's obligations incurred in connection with or released under the Plan;

xi.    to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

xii.    to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

xiii.   to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

xiv.   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

xv.    to enter a Final Decree closing these chapter 11 cases;

xvi.   to determine matters that may arise in connection with the Creditor Trust or the Trust Agreement;

xvii.  to determine and hear any actions or controversies by or against Trustees or Plan Oversight Committee; and

A- 128

xviii.   to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan, including, without limitation, the Global Settlement or any other act or omission taken or to be taken in connection with these chapter 11 cases commenced against any party in these chapter 11 cases, including, without limitation, the Creditor Trust, the Debtors, the Creditors' Committee, the Lenders and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

49.   <u>Acceptance by Governmental Units</u>.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in county and state offices where any document may need to be filed in order to effectuate the Plan, including any documents executed by the Creditor Trust as successor to the Debtors.

50.   <u>Notice of Entry of Confirmation Order; Notice of Second Administrative Bar Date</u>.  On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order (which notice shall include notice of the Second Administrative Bar Date) pursuant to Rules 2002(f)(7), 2002(k) and 3020(c) of the Bankruptcy Rules on all creditors, the United States Trustee and other parties in interest, by causing a notice of entry of the Confirmation Order and the Second Administrative Bar Date in substantially the form of the notice annexed hereto as Exhibit B, which form is hereby approved (the "Notice of Confirmation and Second Administrative Bar Date"), to be delivered to such parties by first class mail, postage prepaid; <u>provided however</u>, that notice need not be given or served under the Bankruptcy Code, the Bankruptcy Rules, or this

26

A‒ 129

Confirmation Order to any person to whom the Debtors mailed a notice of the Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved - left no forwarding address" or "forwarding order expired," or similar marking, unless the Debtors have been informed in writing by such person of that person's correct address. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

51.    References to Plan Provisions.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

52.    Confirmation Order Controlling.  If there is any direct conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control, provided however that nothing in this Confirmation Order shall undermine or impair the effectiveness of the Asset Reallocation and Settlement Agreement, and to the extent there is any conflict between this Confirmation Order and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall control.

53.    Reversal.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such Order.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or

27

vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

54. Applicable Non-Bankruptcy Law. Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

55. Rule 7062. Notwithstanding Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry.

56. Releases by the Debtors and the Creditors' Committee. Pursuant to Paragraph 4A of the Asset Reallocation and Settlement Agreement, the Debtors and the Creditors' Committee have provided the releases, waivers and discharge in respect of the Released Lender Parties as set forth therein. Pursuant to Paragraph 4C of the Asset Reallocation and Settlement Agreement, the release, waiver and discharge of the Term C Lenders is expressly limited and qualified as set forth therein.

57. Exculpation. Pursuant to Section 14.10 of the Plan, none of the Agent, the Debtors, the Creditor Trust, the Trustees, the Creditors' Committee, the Senior Lenders or the Indenture Trustees, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any Holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including, without limitation, the Asset Reallocation and Settlement Agreement, the formulating, negotiating or implementing of the Plan, the solicitation of acceptances of the Plan, the pursuit of

28

confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the

administration of the Plan or the property to be distributed under the Plan, except for their gross

negligence or willful misconduct, and in all respects such parties shall be entitled to reasonabl*[if any]*

rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 1

Cases and under the Plan, *provided, however, that nothing in the Plan or this Confirmation Order shall affect or abrogate the rights of the State of New York to exercise*

58.    <u>Noteholder Releases</u>. No Holder of a Claim in Class 5 or Class 6 having *its police or regulatory power*

returned a ballot opting out of the Noteholder Releases, as of the Effective Date, each Holder of

a Claim in Class 5 and each Holder of a Claim in Class 6 that is entitled to vote on the Plan

(including any Holders of Class 5 Claims or Class 6 Claims that did not return a ballot or any

Holders of Class 5 Claims or Class 6 Claims that accept a distribution under the Plan) shall be

deemed to have unconditionally and fully waived, released and forever discharged the Released

Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits,

debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies,

trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever,

known or unknown, fixed or contingent, which such Holder or Trustee has had, now has, or may

hereafter have against the Released Lender Parties, by reason of any matter, cause or thing

whatsoever, from the beginning of time through and to the Effective Date, relating to or

concerning the Debtors, the Credit Agreement, the Senior Subordinated Notes or the Senior

Discount Notes; <u>provided</u> <u>however</u>, that the foregoing release does not apply to claims (if any)

for enforcement of the Senior Lenders' obligations under the Asset Reallocation and Settlement

Agreement. In addition, the releases set forth in and in the manner provided by Section 4B of the

Asset Reallocation and Settlement Agreement shall be deemed delivered by the 12% Note

Indenture Trustee and the 14% Note Indenture Trustee as of the Effective Date.

29

59.    <u>Releases by the Agent and the Senior Lenders</u>.  Pursuant to Paragraph 4D of the Asset Reallocation and Settlement Agreement, the Agent and the Senior Lenders waived and relinquished any and all interest in and claims that each of them have or may have against the Excluded Assets, including the Contributed Assets and Rights of Action, except to the extent specifically set forth in the Asset Reallocation and Settlement Agreement.

60.    <u>Approval of the Trustees</u>.  The appointment of Chad Shandler as the Unsecured Creditors' Trustee and the appointment of Robert Troisio of BTB Associates LLC as the Senior Lenders' Trustee are hereby approved.  The liability of the Trustees shall be limited as set forth in the Plan and the Trust Agreement, and without the permission of this Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Trustees in their official capacity, with respect to their status, duties, powers, acts or omissions as Trustees in any forum other than this Court.  The Trustees shall be vested with the rights, powers and benefits set forth in the Trust Agreement.

61.    <u>Distributions to Noteholders</u>.  In accordance with Section 9.1 of the Plan, the record date for the purpose of determining which Noteholders are entitled to receive any and all distributions on account of Noteholder Claims, irrespective of the date of or number of distributions, shall be 5:00 p.m., prevailing Eastern Time, on the date the Confirmation Order is entered on the Court's docket (the "Noteholder Record Date").  On the Noteholder Record Date the registers with respect to Noteholder Claims (the "Noteholder Registers") shall be deemed closed for purposes of determining whether a holder of a Noteholder Claim is a record holder entitled to distributions under the Plan.  The Debtors, the Indenture Trustees and their respective agents, successors, and assigns shall have no obligation to recognize, for purposes of

30

distributions pursuant to or in any way arising from the Plan, any Noteholder Claim or Claim arising therefrom or in connection therewith transferred after the Noteholder Record Date. Instead, they all shall be entitled to recognize and deal for distribution purposes with only those record holders set forth in the Noteholder Registers as of the Noteholder Record Date irrespective of the number of distributions to be made under the Plan or the date of such distributions.

62.     References to Plan Provisions.  The failure to specifically include or reference to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed and approved in its entirety.

63.     No Waiver of Rights.  Unless otherwise agreed to in writing, no distribution on account of any Claim, whether allowed on or after the Effective Date shall be deemed to waive the rights of the Debtors or the Creditor Trust in connection with any causes of action against the Holder of any Claim receiving such distribution, including without limitation, any Rights of Action or any other causes of action under Chapter 5 of the Bankruptcy Code.

64.     Technical Adjustments.  Prior to the Effective Date, the Debtors with the reasonable consent of the Agent and the Creditors' Committee may make appropriate technical adjustments and modifications to the Plan without further order or approval of this Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims or Interests.

31

65.    Binding Effect. Pursuant to sections 1123(a) and 1142(a) of the
Bankruptcy Code and the provisions of this Confirmation Order, the Plan shall apply and be
enforceable notwithstanding any otherwise applicable non-bankruptcy law.

Dated:    Wilmington, Delaware
          June _10_, 2004

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

TOTAL P.33

A- 135

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------x
                                         :
                                         :    Chapter 11
In re                                    :
                                         :    Case No. 02-13672 (KJC)
INSILCO TECHNOLOGIES, INC., et al.,[1]   :
                                         :    (Jointly Administered)
                          Debtors.       :
                                         :
----------------------------------------x

### AMENDED JOINT LIQUIDATING PLAN PURSUANT TO
### CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

SHEARMAN & STERLING LLP
Constance A. Fratianni
Scott C. Shelley
Susan A. Fennessey
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

     – and –

YOUNG CONAWAY STARGATT
& TAYLOR, LLP
Pauline K. Morgan (Del. 3650)
Maureen D. Luke (Del. 3062)
Sharon M. Zieg (Del. 4196)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

Co-Counsel for the Debtors and Debtors in Possession

Dated: February 13, 2004

----------------------------------

[1]  The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

ii

# TABLE OF CONTENTS

Page

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME
    AND GOVERNING LAW............................................................................................1
Section 1.1. Rules of Interpretation, Computation of Time and Governing Law ...............................1
Section 1.2. Defined Terms ...............................................................................................................1

ARTICLE II SUBSTANTIVE CONSOLIDATION OF DEBTORS; CANCELLATION OF
    INTERCOMPANY CLAIMS................................................................................11
Section 2.1. Substantive Consolidation ...........................................................................................11
Section 2.2. Cancellation of Intercompany Claims...........................................................................11

ARTICLE III ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES .............................12
Section 3.1. Introduction...................................................................................................................12
Section 3.2. Administrative Claims ..................................................................................................12
Section 3.3. Statutory Fees ..............................................................................................................13
Section 3.4. Professional Fees ..........................................................................................................13

ARTICLE IV CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY
    INTERESTS..........................................................................................................14
Section 4.1. Summary.......................................................................................................................14
Section 4.2. Class 1 – Senior Lenders' Claims ................................................................................14
Section 4.3. Class 2 – Other Secured Claims...................................................................................15
Section 4.4. Class 3 – Priority Claims .............................................................................................15
Section 4.5. Class 4 – General Unsecured Claims ...........................................................................16
Section 4.6. Class 5 – Senior Discount Notes..................................................................................16
Section 4.7. Class 6 – Senior Subordinated Notes...........................................................................17
Section 4.8. Class 7 – Term-C Loan Claims....................................................................................17
Section 4.9. Class 8 – Equity Interests.............................................................................................18

ARTICLE V ACCEPTANCE OR REJECTION OF PLAN .........................................................18
Section 5.1. Voting Classes ..............................................................................................................18
Section 5.2. Acceptance by Class of Creditors and Holders of Interests .........................................18
Section 5.3. Cramdown.....................................................................................................................18

ARTICLE VI EFFECT OF CONFIRMATION .............................................................................19
Section 6.1. Vesting of Assets in the Creditor Trust ........................................................................19
Section 6.2. Authority to Effectuate Plan ........................................................................................19
Section 6.3. Dismissal of Officers and Directors and Dissolution of the Debtors and Board.........20
Section 6.4. Status Reports ..............................................................................................................20
Section 6.5. Escrows.........................................................................................................................20
Section 6.6. Binding Effect...............................................................................................................20
Section 6.7. Corporate Action .........................................................................................................20
Section 6.8. Amendment of Final Cash Collateral Order .................................................................20
Section 6.9. Dissolution of Creditors' Committee; Plan Oversight Committee................................21
Section 6.10. Late Claims .................................................................................................................21

ARTICLE VII IMPLEMENTATION OF THIS PLAN ..................................................................21
Section 7.1. Funding of Plan.............................................................................................................21
Section 7.2. Creation of the Creditor Trust ......................................................................................22

NYDOCS03/672357.16

iii

Section 7.3. The Trustees................................................................................................22

ARTICLE VIII. RIGHTS OF ACTION........................................................................24

Section 8.1. Maintenance of Rights of Action.............................................................24
Section 8.2. Preservation of All Rights of Action Not Expressly Settled or Released ........24

ARTICLE IX PROVISIONS REGARDING DISTRIBUTIONS..................................25

Section 9.1. Distribution to Creditors..........................................................................25
Section 9.2. Claims Allowed as of the Effective Date.................................................25
Section 9.3. Unsecured Disputed Claims Reserve........................................................26
Section 9.4. Time and Manner of Payments.................................................................26
Section 9.5. Delivery of Distributions..........................................................................26
Section 9.6. Undeliverable Distributions......................................................................26
Section 9.7. Compliance with Tax Requirements/Allocation.......................................27
Section 9.8. Time Bar to Cash Payments......................................................................27
Section 9.9. Fractional Dollars, De Minimis Distributions..........................................27
Section 9.10. Set-Offs...................................................................................................28

ARTICLE X PROCEDURES FOR RESOLVING DISPUTED CLAIMS....................28

Section 10.1. Prosecution of Objections to Claims.......................................................28
Section 10.2. Estimation of Claims...............................................................................28
Section 10.3. Cumulative Remedies..............................................................................29
Section 10.4. Allowance of Claims and Interests.........................................................29

ARTICLE XI EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...............29

Section 11.1. Rejection of Executory Contracts and Unexpired Leases.......................29
Section 11.2. Rejection Damage Claims.......................................................................30

ARTICLE XII CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF
THIS PLAN.............................................................................................30

Section 12.1. Conditions Precedent to Confirmation Date of this Plan .......................30
Section 12.2. Conditions Precedent to Effective Date of this Plan ..............................30
Section 12.3. Waiver of Conditions Precedent .............................................................30

ARTICLE XIII RETENTION OF JURISDICTION .....................................................31

Section 13.1. Retention of Jurisdiction.........................................................................31

ARTICLE XIV MISCELLANEOUS PROVISIONS .....................................................32

Section 14.1. Title to Assets..........................................................................................32
Section 14.2. Releases of All Liens...............................................................................32
Section 14.3. Modification of Plan................................................................................32
Section 14.4. Revocation or Withdrawal.......................................................................33
Section 14.5. Injunction.................................................................................................33
Section 14.6. Discharge.................................................................................................33
Section 14.7. Indemnification........................................................................................33
Section 14.8. Term of Existing Injunctions or Stays....................................................34
Section 14.9. Releases....................................................................................................34
Section 14.10. Exculpation and Limitation of Liability................................................35
Section 14.11. Cancellation of Notes, Instruments, Debentures and Equity Securities ........36
Section 14.12. Post-Effective Date Fees and Expenses................................................36
Section 14.13. Section 1146 Exception.........................................................................36
Section 14.14. Severability.............................................................................................36

iv

Section 14.15. Recognition .................................................................................................36
Section 14.16. Governing Law ............................................................................................36
Section 14.17. Notices .........................................................................................................37
Section 14.18. Closing of Cases .........................................................................................38
Section 14.19. Section Headings .........................................................................................38
Section 14.20. Primacy of Asset Reallocation and Settlement Agreement .........................38
Section 14.21. Continuing Viability of Other Orders/Agreements .....................................38
Section 14.22. Administration of Wind Down Budget .........................................................39

The above-captioned debtors and debtors in possession respectfully propose the following Amended Joint Liquidating Plan (this "Plan") pursuant to chapter 11, title 11 of the United States Code, 11 U.S.C. §§ 101-1330.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME AND GOVERNING LAW

Section 1.1. *Rules of Interpretation, Computation of Time and Governing Law*

(a)    For purposes of this Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine or neuter gender, shall include the masculine, feminine and the neuter gender; (b) any reference in this Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified or supplemented; (d) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (e) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (f) any term used in capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(b)    In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

(c)    Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York.

Section 1.2. *Defined Terms*

(a)    As used in this Plan, the following terms have the respective meanings specified below, which meanings are equally applicable to both the singular and plural forms of the terms defined:

Administrative Claim:  Any Claim constituting a cost or expense of administration of the Chapter 11 Cases asserted under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estates of the Debtors, any actual and necessary costs and expenses of operating the businesses of the Debtors in Possession, any indebtedness or obligations incurred or assumed by the Debtors in Possession in connection with the administration and implementation of this Plan, any Claims for compensation and reimbursement of expenses arising during the period from and after the Petition Date and to the Confirmation Date or otherwise in accordance with the provisions of this Plan, any fees or charges assessed against the Debtors' estates pursuant to 28 U.S.C. § 1930 or as determined by the Bankruptcy Court to be an Administrative Claim in a Final Order.

Administrative Claims Reserve Fund:  Such amount of Cash, constituting proceeds of Excluded Assets, which are allocable to Administrative Claims under the Asset Reallocation and Settlement

2

Agreement (including under any applicable line items in the Wind Down Budget), as the Debtors and the Creditors' Committee shall determine to be necessary to retain on the Effective Date in respect of unpaid Allowed Administrative Claims and Professional Fees or, if Disputed, for the purpose of paying such Disputed amounts to the extent such Disputed amounts become Allowed. Such Administrative Claims Reserve Fund shall be equal to an amount to be disclosed in a notice that the Debtors will file and serve on or before five (5) days prior to the Confirmation Date (which amount shall not exceed the sum of (i) expenses set forth in the Wind Down Budget from the Effective Date to entry of the Final Decree), and (ii) amounts attributable to Disputed Administrative Claims (not to exceed the amounts available under the Asset Reallocation and Settlement Agreement for the payment of such claims. The Debtors will serve this notice via overnight express mail or Federal Express upon (i) the US Trustee, (ii) counsel to the Lenders, (iii) counsel to the Creditors' Committee, and (iv) parties that have requested notice pursuant to Rule 2002 of the Bankruptcy Rules.

Administrative Expense Carve Out: The amount of Contributed Assets described in Paragraph 3Aii of the Asset Reallocation and Settlement Agreement, up to $250,000 allocated for the payment of administrative expenses, as more particularly defined and provided in Section 3Aii of the Asset Reallocation and Settlement Agreement.

Agent: Bank One, N.A., as Administrative Agent under the Credit Agreement.

Allowed: The term "allowed" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors in their Schedules as other than disputed, contingent or unliquidated and as to which the Debtors or other party in interest have not filed an objection by the Effective Date; (b) a Claim that either is not a Disputed Claim or has been allowed by a Final Order; (c) a Claim that is allowed (i) in any stipulation with the Debtors of amount and nature of Claim executed prior to the Confirmation Date and approved by the Bankruptcy Court, (ii) in any stipulation with the Debtors of amount and nature of Claim executed on or after the Confirmation Date and, to the extent necessary, approved by the Bankruptcy Court, or (iii) in any contract, instrument, indenture or other agreement entered into or assumed by the Debtors in connection with this Plan; (d) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law; or (e) a Claim that is allowed pursuant to the terms of this Plan.

Allowed Claim/Allowed Interest: Any Claim against or Interest in the Debtors (i) proof of which was filed on or before the date designated by the Bankruptcy Court as the last date for filing proofs of Claim against or Interests in the Debtors, (ii) if no proof of Claim or Interest has been timely filed, which has been or hereafter is listed by the Debtors in their Schedules as liquidated in amount and not disputed or contingent or (iii) any Interest registered in the stock register or partnership documents maintained by or on behalf of the Debtors as of the Record Date and, in each such case in clauses (i), (ii) and (iii) above, a Claim or Interest as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Bankruptcy Code or the Bankruptcy Rules. For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold against the holder thereof, to the extent such claim may be set off pursuant to section 553 of the Bankruptcy Code.

Asset Reallocation and Settlement Agreement: The settlement agreement dated as of May 13, 2003, and approved by Order of the Bankruptcy Court entered on June 16, 2003, by and among (i) Insilco Technologies and its affiliated debtors, (ii) the official committee of unsecured creditors appointed in the Insilco Technologies bankruptcy cases, (iii) Bank One N.A., as agent and the lenders, including Bank One N.A., under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

3

amended, (iv) Wachovia Bank, National Association as indenture trustee for the 12% senior subordinated notes due 2007 issued by Insilco Technologies, and (v) U.S. Bank, National Association as indenture trustee for the 14% senior discount notes due 2008 issued by Insilco Holding Co., Inc. A true and correct copy of the Asset Reallocation and Settlement Agreement and the Final Order approving it are attached hereto as Exhibit A and incorporated herein by reference.

Assets: Any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, the property of the estate pursuant to section 541 of the Bankruptcy Code.

Avoidance Actions: All actions, causes of action or claims of the Debtors or their estates arising under chapter 5 of the Bankruptcy Code, whether or not commenced as of the Effective Date.

Bankruptcy Code: Title 11 of the United States Code, as applicable to the Chapter 11 Cases, as amended.

Bankruptcy Court: The United States Bankruptcy Court for the District of Delaware.

Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 cases, promulgated by the United States Supreme Court under 28 U.S.C. § 2075 and any Local Rules of the Bankruptcy Court.

Bar Date: May 15, 2003.

Bar Date Order: The Order (A) Establishing Procedures and Deadlines for the Filing of (i) Proofs of Claim and (ii) Requests for Payment of Administrative Expenses, (B) Establishing Consequences for the Failure to Comply with Such Procedures and Deadlines and (C) Approving Form and Scope of Notice of Such Procedures and Deadlines, entered by the Bankruptcy Court on March 25, 2003.

Budget: The budget annexed to this Plan as Exhibit B, which sets forth the expenses of the wind-down of the Debtors from and after the Effective Date, and which is incorporated by reference in its entirety in this Plan. The Budget shall be funded exclusively from Excluded Assets subject to and in accordance with the Asset Reallocation and Settlement Agreement and as provided under the Cash Collateral Order in respect of the Wind Down Budget and the Carve Out (as defined in the Cash Collateral Order).

Cash: Cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments and obligations of the United States of America or instrumentalities thereof.

Cash Collateral Order: The Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens entered by the Bankruptcy Court on January 16, 2003, as amended.

Chapter 11 Cases: The cases under chapter 11 of the Bankruptcy Code, commenced by Debtors in the Bankruptcy Court, being jointly administered under Case No. 02-13672 (KJC).

4

Charging Lien: Any lien or other priority in payment arising prior to the Effective Date to which the Indenture Trustees are entitled, pursuant to the Indentures, against distributions to be made to Noteholders.

Claim: Any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Claims Reserve Balance: The Cash constituting proceeds of Excluded Assets in the Unsecured Creditor Disputed Claims Reserve on the first date after which (a) all Distributions or payments to be made under this Plan or a Final Order in respect of each Allowed Unsecured Creditor Claim have been made, (b) no Unsecured Creditor Claim is a Disputed Claim and (c) all payments to be made from the Unsecured Creditor Disputed Claims Reserve have been made.

Class: A category of Holders of Claims or Equity Interests as set forth in Article IV of this Plan.

Confirmation Date: The date upon which the Confirmation Order is entered by the Bankruptcy Court in its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

Confirmation Order: The order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

Consummation: The occurrence of the Effective Date.

Contributed Assets: Subject to the provisions of Paragraph 4B of the Asset Reallocation and Settlement Agreement, the following cash and proceeds have been reallocated by the Senior Lenders to the Holders of Allowed Unsecured Claims pursuant to Paragraph 3 of the Asset Reallocation and Settlement Agreement:

    (a)    $1,750,000 from the Net Proceeds realized from the closing of the Going Concern Sales;

    (b)    Net Proceeds from the sale of the Debtors' real properties located in Larne, Northern Ireland, Taylorsville, North Carolina and McAllen, Texas and the Net Proceeds from the sale of the miscellaneous office equipment and furnishings located in the Debtors' Columbus, Ohio offices as listed on Schedule 1 hereto; provided, however, that, to the extent that the Estates do not otherwise have sufficient readily available unencumbered assets to pay Administrative Claims (other than Professional Fees) required to be paid in order to obtain confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, the Estates shall be entitled to use up to $250,000 of the Net Proceeds described in this subparagraph (b) for the payment of such Administrative Claims; and provided further that the aggregate Net Proceeds provided in this subparagraph (b) shall not exceed $1,250,000 (inclusive of the $250,000 that may be allocated for Administrative Claims hereunder). Any Net Proceeds from the sale of the assets described in this subparagraph (b) that exceed $1,250,000 shall not be considered Contributed Assets and shall be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement;

(c)  $250,000 of cash collateral (which shall be asset sale proceeds), plus 10% of the net recoveries derived from (x) the Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97 and generally referred to as the "Star Services Litigation" and (y) income tax refunds received by the Debtors from and after April 15, 2003, for the purpose of establishing a "Creditor Trust" to investigate and pursue Rights of Action Recoveries, provided the Contributed Assets under this subparagraph (c) shall not exceed $750,000, with any excess over $750,000 to be promptly remitted to or retained by the Agent in accordance with the Asset Reallocation and Settlement Agreement and which excess (including any net recoveries derived from the assets described under (x) and (y) beyond the amount allocated to the Creditor Trust in this paragraph (c)) will not constitute "Contributed Assets";

(d)  the Reallocated Monies; provided, however, that the first $200,000 of any such Reallocated Monies shall be allocated first to the payment of the Allowed fees and expenses of the Creditors' Committee's professionals incurred from and after May 1, 2003, with any remaining Reallocated Monies available for the payment of other Administrative Claims.

Credit Agreement: The Second Amended and Restated Credit Agreement, dated as of August 25, 2000, as thereafter amended from time to time, among Insilco Technologies and TAT Technology Inc., as Borrowers, U.S. Bank, N.A., as Administrative Agent, DLJ Capital Funding, Inc., as Lead Arranger and Syndication Agent, TransAmerica Business Credit Corporation and LaSalle National Bank, as Co-Documentation Agents, and the various financial institutions party thereto.

Creditor Trust: The statutory trust created pursuant to the Delaware Statutory Trust Act (12 Del. C. Section 3801 et. seq.), organized in series and composed of an Unsecured Creditor Series and a Senior Lender Series, created pursuant to Sections 3804 and 3806(b)(2) of the Delaware Statutory Trust Act, the Trust Agreement and this Plan.

Creditor Trust Expense Fund: A fund, which shall be held by the Creditor Trust for use in paying the expenses of administering the Unsecured Creditor Series of the Creditor Trust, consisting of the following Contributed Assets: $250,000 of cash collateral plus ten percent of the net proceeds recovered from (a) the Star Services Litigation and (b) Tax Refunds, with all of the foregoing to be used to fund prosecution of the Rights of Action and expenses of the Creditor Trust or otherwise distributed to Holders of Allowed Unsecured Claims pursuant to the provisions of the Asset Reallocation and Settlement Agreement, as incorporated in this Plan; provided, however, that the aggregate amount of the Contributed Assets funding the Creditor Trust Expense Fund shall not exceed $750,000, with any excess over $750,000 deemed not to constitute Contributed Assets and to be immediately remitted to or retained by the Agent for the benefit of the Senior Lenders in accordance with the Asset Reallocation and Settlement Agreement.

Creditors' Committee: The Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code on or about January 3, 2003.

Debtors or Debtors in Possession: Insilco Technologies, Inc., Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

6

Disclosure Statement:   The amended disclosure statement for this Plan, filed concurrently herewith, and approved by the Bankruptcy Court as containing adequate information on or about February 13, 2004.

Disputed:  Any Claim or Equity Interest (a) listed on the Schedules as unliquidated, disputed or contingent, or (b) as to which Debtors or any other party in interest with standing have interposed a timely objection or request for estimation or subordination in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by Debtors or any other party in interest with standing in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order, or (c) unless otherwise indicated in this Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

Distribution:  The Cash or Assets to be distributed to Holders of Allowed Claims under the terms of this Plan.

Distribution Date:  Any date on which the Creditor Trust makes a Distribution pursuant to this Plan.

Effective Date:  The eleventh day following the Confirmation Date or, if an appeal of the Confirmation Order has been taken, the first business day following the Confirmation Date on which (a) no stay of the Confirmation Order is in effect and (b) all conditions specified in Article XII of this Plan have been (i) satisfied or (ii) waived pursuant to Article XII.

Effective Date Distributions:  Those Distributions payable on the Effective Date in respect of (i) Allowed Administrative Claims, (ii) Other Secured Claims, and (iii) Priority Claims.

Entity:  An entity as defined in section 101(15) of the Bankruptcy Code.

Equity Interests:  Any equity interest in one or more of the Debtors, including, but not limited to, all issued, unissued, authorized or outstanding shares or stock, together with any warrants, options or contract rights to purchase or acquire such interests at any time.

Excluded Assets:  Those Assets defined as Excluded Assets in Paragraph 2 of the Asset Reallocation and Settlement Agreement.

Final Decree:  The decree contemplated under Bankruptcy Rule 3022.

Final Order:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

First Administrative Bar Date:  May 15, 2003.

14% Note Indenture:  That certain Indenture governing the Senior Discount Notes dated August 17, 1998, between Silkworm Acquisition Corporation, as issuer, and Star Bank, N.A. n/k/a U.S. Bank, as indenture trustee, together with any amendments thereto.

7

14% Note Indenture Trustee: Star Bank, N.A. n/k/a U.S. Bank, National Association, as indenture trustee under the 14% Note Indenture.

General Unsecured Claims: Unsecured Claims other than Noteholder Claims and Term-C Loan Claims.

Going Concern Sales: The sales of substantially all of the Debtors' Assets pursuant to (i) an Asset Purchase Agreement with SRDF Acquisition Company, LLC for the sale of assets related to the Debtors' precision stampings business for approximately $13 million dated as of December 15, 2002; (ii) a Stock and Asset Purchase Agreement with Amphenol Corporation and Amphenol Technical Products International Co. for the sale of the assets related to the Debtors' custom assemblies business for $10.14 million, dated as of December 15, 2002; (iii) a Stock and Asset Purchase Agreement with Bel Fuse Ltd., Bel Fuse Macau, L.D.A., Bel Connector Inc. and Bel Transformer Inc. for the sale of the assets related to the Debtors passive components business for $35 million, dated as of December 15, 2002; (iv) a Share Sale and Purchase Agreement with Stephen Bullock for the sale of the Debtors' interest in Insilco Teoranta for $100,000 and the assumption of certain liabilities, dated as of December 15, 2002; and (v) an Asset Purchase Agreement with J.L.&R Partnership for $1.7 million for the sale of the Debtors' North Myrtle Beach, South Carolina facility, dated as of December 15, 2002.

Holder: An Entity holding an Equity Interest or Claim.

Impaired: A Claim or Class of Claims that is impaired within the meaning of section 1124 of the Bankruptcy Code.

Indenture: The 12% Note Indenture and the 14% Note Indenture.

Indenture Trustees: The 12% Note Indenture Trustee and the 14% Note Indenture Trustee.

Initial Distribution Date: The first Distribution Date, which date shall be fifteen days following the date on which at least 80% in amount of the General Unsecured Claims filed against the Debtors in these cases are Allowed Claims or have been disallowed or as soon as practicable thereafter.

Intercompany Claims: Any Claim held by any of the Debtors against any other Debtor.

Interim Compensation Order: The Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code Establishing Procedures for Interim Compensation and Reimbursement of Professionals entered by the Bankruptcy Court on January 10, 2003, as amended by the amended order dated February 20, 2003.

Lenders: The lenders and financial institutions (and any of their successors or assigns) that are party to the Credit Agreement.

Lien: Any charge against or interest in property to secure payment or performance of a claim, debt or obligation.

Net Proceeds: The total proceeds derived from the sale, liquidation, disposition or other recoveries on any Asset or the Going Concern Sales, net of all direct and indirect expenses of such disposition, including, but not limited to, the costs of maintaining, preparing and marketing such Asset for sale.

Noteholder Claims: The Claims of Noteholders.

8

Noteholder Release:  The release, waiver and discharge of the Senior Lenders described in Paragraph 4B of the Asset Reallocation and Settlement Agreement and set forth in Section 14.9 hereof.

Noteholders:  The Holders of the Senior Discount Notes and the Senior Subordinated Notes.

Noteholder's Share:  The ratio of (x) the allowed claims of Holders of Class 5 Claims or Class 6 Claims that have not granted or are not deemed to have granted the Noteholder Release to (y) the allowed claims of all Unsecured Creditors.

Other Secured Claims:  Those Secured Claims other than the Senior Lenders' Secured Claims as of the Petition Date.

Petition Date:  December 16, 2002.

Plan Oversight Committee:  The committee created pursuant to Section 6.9 of this Plan.

Priority Claims:  Those claims afforded priority under sections 507(a) and 502(f) of the Bankruptcy Code.

Professionals:  An Entity (a) employed in the Chapter 11 Cases pursuant to a Final Order in accordance with sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement have been allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

Professional Fees:  Those fees and expenses claimed by Professionals retained through a Bankruptcy Court order under sections 330, 331 and/or 503 of the Bankruptcy Code, and unpaid as of the Effective Date.

Reallocated Monies:  A sum of Cash, not to exceed $500,000, equal to the difference between (x) the amounts allocated to line items other than "Selling Costs" in the Wind Down Budget and (y) the actual amounts necessary to fund such line items, which sum may be reallocated and used by the Debtors' estates for the purposes set forth in Paragraph 3A(iv) of the Asset Reallocation and Settlement Agreement.

Record Date:  The Confirmation Date, unless otherwise provided by order of the Bankruptcy Court.

Released Claims:  Those Rights of Action or Claims that were specifically waived and released under the Asset Reallocation and Settlement Agreement.

Released Employees:  Collectively, Michael Elia, Fred Stewart, Steve Crea and Phil Pitman.

Released Lender Parties:  The Agent and each of the Senior Lenders and each of their agents, employees and professionals.

Releasing Estate Parties:  The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns.

Rights of Action:  All actions, causes of action, suits, rights of action, counterclaims, crossclaims, rights of setoff, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants,

contracts, controversies, agreements, promises, variances, trespasses, damages or judgments arising under any theory of law or equity, including, without limitation, the Bankruptcy Code, including the Avoidance Actions and all claims against Creditors or Holders of Interests, parties having dealings, relationships or transactions with or related to the Debtors, any party named or identified in the Schedules or any pleadings filed in the Chapter 11 Cases (including, but not limited to, officers and directors of the Debtors and parties other than the Released Lender Parties and Released Employees), in each case held by or in favor of any of the Debtors or their estates whether or not commenced as of the Effective Date, but excluding any of the foregoing which (i) are Released Claims or (ii) relate to the recovery of Settlement Proceeds, including the Star Services Litigation and the Tax Refunds.

Rights of Action Recovery:  Any Cash recovery from the Rights of Action less those costs and expenses of the Unsecured Creditors' Trustee and Plan Oversight Committee relating to the prosecution of the Rights of Actions (including those costs and expenses incurred by professionals retained by the Unsecured Creditors' Trustee and Plan Oversight Committee that are not paid from the Reallocated Monies) in excess of the Creditor Trust Expense Fund, that shall be payable to Holders of Unsecured Claims pursuant to the Asset Reallocation and Settlement Agreement, as incorporated in this Plan.

Schedules:  The Debtors' schedules of assets and liabilities, statements of financial affairs, and such other schedules filed with the Bankruptcy Court on January 23, 2003 by the Debtors in accordance with section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as amended.

Second Administrative Bar Date:  The date that is forty-five (45) days after the Confirmation Date.

Secured Claim:  A Claim against the Debtors that is secured by a Lien on the Debtors' property or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Debtors' property or to the extent of the amount subject to setoff as applicable, as determined in accordance with section 506(a) of the Bankruptcy Code.

Senior Discount Notes:  The 14% Senior Discount Notes issued by Insilco Holding Co., f/k/a Silkworm Acquisition Corporation, due 2008, and governed by the 14% Note Indenture.

Senior Lenders:  The Lenders other than the Term C-Lenders.

Senior Lender Series:  The series of the Creditor Trust created and maintained for the benefit of the Senior Lenders.

Senior Lenders' Trustee:  The co-trustee of the Creditor Trust appointed by the Agent to administer the Senior Lender Series of the Creditor Trust.

Senior Notes:  Collectively, the Senior Discount Notes and the Senior Subordinated Notes.

Senior Subordinated Notes:  The 12% Senior Subordinated Notes issued by Insilco Technologies, Inc., f/k/a Insilco Corporation, due 2007, and governed by the 12% Note Indenture.

Series:  The Senior Lenders Series and/or the Unsecured Creditor Series.

Settlement Proceeds:  The total proceeds derived from the sale, liquidation, disposition or other recoveries on all Assets except Excluded Assets, and including, without limitation, (i) all proceeds, all Cash or cash equivalents in the possession of the Debtors as of the Effective Date or to which the Debtors

10

are entitled or receive in the future, (ii) all accounts receivable, (iii) all deposits, rebates, Tax Refunds (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), escrow accounts, or other similar security accounts to which the Debtors are entitled, (iv) insurance proceeds, (v) any proceeds from the disposition of Assets (other than Excluded Assets), whether before or after the Effective Date (other than the $1.75 million allocated under the Asset Reallocation and Settlement Agreement), (vi) all recoveries from the Star Services Litigation (other than the percentage constituting Contributed Assets under the Asset Reallocation and Settlement Agreement), (vii) all amounts allocated for line item expenses under the Wind Down Budget that are in excess of the actual line item expenses for which such amounts were allocated (less, for the avoidance of doubt, the Reallocated Monies), (viii) unused Professional retainers after application of such retainers in payment of allowed Professional fees pursuant to an order entered on the final fee application in respect of any Professional holding such retainer, and (ix) refunded monies relating to security for self-insured claims or unused insurance premiums.

Star Services Litigation: The Debtors' claims and causes of action against Star Services, Inc. relating to the litigation bearing Supreme Court of the State of New York Index No. 605676/97.

Tax Refunds: All tax refunds of whatever kind or nature received by or payable to the Debtors from and after April 15, 2003, from any municipal, federal, state, foreign or other taxing authority.

Term-C Lenders: DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Offshore Partners II, C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ Millennium Partners, L.P., DLJ ESC II, L.P., DLJ Millennium Partners-A, L.P. and MBP II Plan Investors and their respective successors and assigns.

Term-C Loan: The loan made pursuant to Section 2.1.6 of the Credit Agreement.

Trust Agreement: The series trust agreement that documents the powers, duties and responsibilities of the Trustees, which agreement shall be in form and substance acceptable to the Creditors' Committee and the Agent and filed with the Bankruptcy Court not less than five (5) days prior to the date of the hearing fixed by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code.

Trustees: The co-trustees of the Creditor Trust, comprising the Unsecured Creditors' Trustee and the Senior Lenders' Trustee.

12% Note Indenture: That certain Indenture governing the Senior Subordinated Notes, dated November 9, 1998, between Insilco Corporation, as issuer, and Star Bank, N.A., as original indenture trustee (having been succeeded by Wachovia Bank, National Association), together with any amendments thereto.

12% Note Indenture Trustee: Wachovia Bank, National Association as successor indenture trustee under the 12% Note Indenture.

Unsecured Claim: Any Claim that is not a Secured Claim or a Claim entitled to priority under section 507(a) of the Bankruptcy Code.

Unsecured Creditor Disputed Claims Reserve: The amount of the Unsecured Creditor Distribution Fund to be placed in a reserve account, as determined by the Debtors or Unsecured Creditors' Trustee before any Distribution to Unsecured Creditors is made herein in order to ensure that

11

Disputed Unsecured Claims receive their ratable share of such Distribution if such Claims ultimately become Allowed.

Unsecured Creditor Distribution Fund: The Cash derived from Excluded Assets to be distributed to Unsecured Creditors under this Plan, in accordance with the terms of the Asset Reallocation and Settlement Agreement and this Plan, following liquidation of any unliquidated Contributed Assets.

Unsecured Creditor Series: The series of the Creditor Trust created and maintained for the benefit of the Holders of Unsecured Claims.

Unsecured Creditors' Trustee: The co-trustee appointed by the Creditors' Committee to administer the Unsecured Creditor Series of the Creditor Trust.

US Trustee: The United States Trustee for the District of Delaware.

Wind Down Budget: The Budget annexed to the Cash Collateral Order as Exhibit B.

    (b)    Other Definitions: Unless the context otherwise requires, any capitalized term used and not defined herein or elsewhere in this Plan but that is defined in the Bankruptcy Code shall have the meaning assigned to that term in the Bankruptcy Code. Unless otherwise specified, all section, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

ARTICLE II
SUBSTANTIVE CONSOLIDATION OF DEBTORS;
CANCELLATION OF INTERCOMPANY CLAIMS

Section 2.1. *Substantive Consolidation*

    On the Effective Date, the Chapter 11 Cases and the Debtors and their estates shall be deemed to be substantively consolidated for voting and distribution purposes only under this Plan. The assets and liabilities of the Debtors shall be pooled and all Claims shall be satisfied from the assets of a single consolidated estate. Any Claims against one or more of the Debtors based upon a guaranty, indemnity, co-signature, surety or otherwise, of Claims against another Debtor shall be treated as a single Claim against the consolidated estate of the Debtors and shall be entitled to Distributions under this Plan only with respect to such single Claim. Notwithstanding the foregoing, substantive consolidation shall not affect the obligations of any Debtor to pay quarterly fees to the Office of the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) until such time as such Debtor's particular case is closed, dismissed or converted.

Section 2.2. *Cancellation of Intercompany Claims*

    On the Effective Date, all Intercompany Claims shall be eliminated and extinguished.

12

## ARTICLE III
## ADMINISTRATIVE CLAIMS AND PROFESSIONAL FEES

Section 3.1. *Introduction*

Certain types of Claims are not placed into voting Classes. Such Claims are not considered Impaired and they do not vote on this Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. These non-voting Claims and their treatment are described in this Article III.

Section 3.2. *Administrative Claims*

All Allowed Administrative Claims shall be paid in Cash from proceeds of Excluded Assets, in accordance with the allocations therefore as set forth in the Asset Reallocation and Settlement Agreement and in the Wind Down Budget, as applicable.

On or before the Effective Date, the Debtors (in accordance with the Budget) shall pay in full the amount of Allowed Administrative Claims as of such date and shall fund the Administrative Claims Reserve Fund and the Creditor Trust shall pay each Administrative Claim in full, without interest and in Cash (except for Professional Fees to the extent that their treatment, which is set forth below, differs) when and to the extent the Administrative Claim is or becomes Allowed. The Holder of an Allowed Administrative Claim may be paid on such other date and upon such other terms as may be agreed upon by such Holder and the respective Debtor.

Holders of Administrative Claims that arose on or before April 30, 2003 were required to file an Administrative Claim on or before May 15, 2003 (the First Administrative Bar Date) pursuant to the Bar Date Order. Holders of Administrative Claims that arose after April 30, 2003 that have not been paid as of the Effective Date must file a request for payment of Administrative Claims with the Bankruptcy Court and serve the same upon counsel to each of the Trustees such that it is received no later than the Second Administrative Bar Date. If an Administrative Claim was not timely filed by the First Administrative Bar Date or is not timely filed by the Second Administrative Bar Date, as applicable, then such Administrative Claim shall be forever barred and shall not be enforceable against Debtors, their successors, their assigns or their property, Administrative Claims Reserve Fund or Creditor Trust. The foregoing shall not apply to the Professional Fee Claims. An objection to an Administrative Claim filed pursuant to this provision must be filed within ninety (90) days from the later of the date such Administrative Claim is filed and properly served or ninety (90) days after the Effective Date. The Debtors and Creditors' Committee reserve the right to seek an extension of the time to object.

Subject to the provisions of this Plan and the Cash Collateral Order, and within the confines of the Budget, all reasonable fees for services rendered in connection with the Chapter 11 Cases and this Plan after the Effective Date, including those relating to the resolution of pending Claims, shall be paid by the Creditor Trust after the submission of a monthly fee statement with service upon counsel to each of the Trustees and the Agent's counsel, provided that no objections are received within ten (10) days of such service. If no objections are received, the Trustees shall be authorized to pay such amounts requested without further Bankruptcy Court authorization. If objections are received and such objections are not capable of being resolved between the parties in a timely manner, the Bankruptcy Court shall reserve jurisdiction to resolve such disputes.

13

Section 3.3. *Statutory Fees*

Without limiting the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date from the Budget. Payments after the Effective Date shall be made as required by statute and shall be paid by the Creditor Trust in accordance with the Budget.

Section 3.4. *Professional Fees*

(a)    The Creditor Trust shall pay Professionals who are entitled to allowance of fees and reimbursement of expenses as of the Effective Date from the Creditor Trust Expense Fund as provided under the Asset Reallocation and Settlement Agreement.

(b)    The Bankruptcy Court must rule on each request for payment of Professional Fees before the fees will be paid, except as such fees have been paid pursuant to the Interim Compensation Order. For all Professional Fees, the Professional in question must file and serve a properly noticed fee application and the Bankruptcy Court must rule on the application. Only the amount of fees allowed by the Bankruptcy Court will be owed and required to be paid under this Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims, nor shall anything herein abrogate or modify the terms of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees.

(c)    Except as otherwise provided by Bankruptcy Court order for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Interim Compensation Order and the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court and to the provisions of the Cash Collateral Order as such Order pertains to the payment of Allowed Professional Fees. Holders of Administrative Claims (including, without limitation, Professionals) requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtors or their successors, their assigns or their property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

(d)    Notwithstanding anything herein to the contrary, following the occurrence of the Effective Date, Professionals shall be authorized to retain any funds held on retainer for payment of fees and expenses authorized to be paid pursuant to this Plan, including fees and expenses approved by the Bankruptcy Court in connection with such Professionals' final applications for allowance of compensation and reimbursement of expenses. Thereafter (a) Shearman & Sterling LLP, counsel for the Debtors, shall be authorized to continue to hold a retainer in the amount of $25,000 until the earlier of (i) six months after the Effective Date or (ii) entry of the Final Decree and shall be authorized without further order of the Bankruptcy Court to apply such retainer to fees and expenses incurred in connection with services rendered on behalf of the Debtors or the Creditor Trust on or after the Effective Date, and (b) other Professionals shall return the unapplied balance of any retainer to the Senior Lenders' Trustee for distribution to the Senior Lenders.