14

## ARTICLE IV
## CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Section 4.1. *Summary*

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation and Distribution pursuant to this Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

The Senior Lenders' Claims are Allowed Claims, pursuant to the Final Order approving the Asset Reallocation and Settlement Agreement. In accordance with and subject to the provisions of the Asset Reallocation and Settlement Agreement, the Senior Lenders have agreed to waive (i) any right to seek a Distribution on account of their unsecured deficiency Claims, and (ii) subject to the receipt of the Noteholder Releases from the Class 6 and Class 7 Noteholders, any enforcement of their contractual and structural subordination rights with respect to the Senior Notes.

The classification of Claims and Equity Interests against the Debtors pursuant to this Plan is as follows:

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| Class 1 | Senior Lenders' Claims | Unimpaired | Not entitled to vote |
| Class 2 | Other Secured Claims | Unimpaired | Not entitled to vote |
| Class 3 | Priority Claims | Unimpaired | Not entitled to vote |
| Class 4 | General Unsecured Claims | Impaired | Entitled to vote |
| Class 5 | Senior Discount Notes | Impaired | Entitled to vote |
| Class 6 | Senior Subordinated Notes | Impaired | Entitled to vote |
| Class 7 | Term-C Loan Claims | Impaired | Entitled to vote |
| Class 8 | Equity Interests | Impaired | Not entitled to vote (deemed to have rejected Plan under the Bankruptcy Code) |

Section 4.2. *Class 1 – Senior Lenders' Claims*

(a)    Classification: Class 1 consists of the Senior Lenders' Allowed Claims against the Debtors in the amount of $232,712,443.42.

15

(b)    Treatment:  Holders of Allowed Class 1 Claims shall continue to receive the treatment set forth in the Asset Reallocation and Settlement Agreement and approved pursuant to the Final Order entered on June 16, 2003, including specifically, the receipt, for application to their Allowed Secured Claims, of (i) all Settlement Proceeds and (ii) to the extent Noteholder Releases are not obtained, an amount equal to the non-releasing Noteholder's Share of the amount of the Contributed Assets (subject to certain exclusions), as set forth in Paragraph 4B of the Asset Reallocation and Settlement Agreement.  The treatment of the Claims of the Senior Lenders set forth in the Asset Reallocation and Settlement Agreement is incorporated by reference in this Plan, but is in no way dependent upon the confirmation or consummation of this Plan and shall not be deemed a Distribution hereunder.  All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have already been paid or for which no further payment is provided for or required, together with all other Cash not constituting Excluded Assets, shall be remitted directly to the Agent on or prior to the Effective Date and shall not vest in the Creditor Trust.  All Cash held by the Debtors for payment of line item expenditures under the Wind Down Budget that have not been paid as of the Effective Date shall vest in the Creditor Trust for use in paying such line item expenditures, with any remaining balance to be remitted promptly to the Agent by the Unsecured Creditors' Trustee once such expenditures have been paid or at such time as it appears that no further payments in respect of such expenditures will be required.

(c)    Voting:  Class 1 is, by agreement, an Unimpaired Class and Holders of Class 1 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.3. *Class 2 – Other Secured Claims*

(a)    Classification:  Class 2 consists of Secured Claims against the Debtors other than those Class 1 Secured Claims.

(b)    Treatment:  Unless the Holder of a Class 2 Claim agrees to a different treatment, each Holder of an Allowed Class 2 Claim shall receive on the Effective Date, either (i) the return of such Assets on which the Holder has a senior perfected and indefeasible lien or security interest, or (ii) all proceeds (up to the amount of the Allowed Class 2 Claim) from the sale, liquidation, or abandonment of any Asset on account of which the Holder has a senior, perfected and indefeasible Lien or security interest, including those proceeds of Going Concern Sales held by the Debtors to fund the Wind Down Budget (but solely to the extent that such Lien or security interest as of the Petition Date is senior in priority to any lien or security interest of the Senior Lenders on the same Asset) as full and complete satisfaction of all Class 2 Claims.

(c)    Voting:  Class 2 is an Unimpaired Class and Holders of Class 2 Claims are, therefore, not entitled to vote to accept or reject this Plan.

Section 4.4. *Class 3 – Priority Claims*

(a)    Classification:  Class 3 consists of Holders of Priority Claims specified under sections 507(a) and 502(f) of the Bankruptcy Code, including but not limited to priority tax Claims and priority wage Claims.

(b)    Treatment:  The Bankruptcy Code requires that each Holder of such an Allowed Priority Claim receive the present value of such Claim.  On the Effective Date, each Holder of an

Allowed Priority Class 3 Claim shall be entitled to receive Cash derived from Excluded Assets equal to the full amount of such Allowed Priority Claim.

(c)    <u>Voting</u>: Class 3 is an Unimpaired Class and Holders of Class 3 Claims are not entitled to vote to accept or reject this Plan.

Section 4.5. *Class 4 – General Unsecured Claims*

(a)    <u>Classification</u>: Class 4 consists of the Unsecured Claims other than (i) the Noteholder Claims and (ii) the Term-C Loan Claims.

(b)    <u>Treatment</u>: Unless the Holder of a Class 4 Claim agrees to a different treatment, each Holder of an Allowed Class 4 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date. The distributions to be made to Holders of Class 4 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)    <u>Voting</u>: Holders of Class 4 Claims are entitled to vote to accept or reject this Plan.

Section 4.6. *Class 5 - Senior Discount Notes*

(a)    <u>Classification</u>: Class 5 consists of the Claims in respect of the Senior Discount Notes.

(b)    <u>Treatment</u>: Each Holder of a Class 5 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust. In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 5 Claim that has elected not to grant such a Noteholder Release (which election may be made by checking the appropriate box on the ballot provided). With respect to any Holder of a Class 5 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out), and (b) such Noteholder shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Settlement Agreement. The Distributions to be made to Holders of Class 5 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

(c)    <u>Voting</u>: Holders of Class 5 Claims are entitled to vote to accept or reject this Plan.

Section 4.7. *Class 6 - Senior Subordinated Notes*

    (a)    <u>Classification</u>: Class 6 consists of the Claims in respect of the Senior Subordinated Notes.

    (b)    <u>Treatment</u>: Subject to the possible application of the subordination provisions of the 12% Note Indenture (as described in Article V, Paragraph J(2) of the Disclosure Statement, each Holder of a Class 6 Claim that is deemed to have provided a Noteholder Release in accordance with the terms of this Plan shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of (i) the Unsecured Creditor Distribution Fund available for Distribution on each such Distribution Date and (ii) the Rights of Action Recovery available for Distribution on each such Distribution Date from the Creditor Trust. In accordance with Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 14.9 of this Plan, the Senior Lenders' waiver of subordination rights shall not apply to any Holder of a Class 6 Claim that has elected not to grant such Noteholder Release (which election may be made by checking the appropriate box on the ballot provided). With respect to any Holder of a Class 6 Claim that has elected not to grant such Release, (a) the Agent shall be paid an amount which equals the Noteholder's Share of the amount of Contributed Assets (exclusive only of the Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement and the Noteholder's pro rata portion of the Administrative Expense Carve Out) and (b) such Holder of a Class 6 Claim shall not receive any distribution, including, without limitation, any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3Aiii of the Asset Reallocation and Settlement Agreement. The Distributions to be made to Holders of Class 6 Claims represent a reallocation from Holders of Claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement.

    (c)    <u>Voting</u>: Holders of Class 6 Claims are entitled to vote to accept or reject this Plan.

Section 4.8. *Class 7 - Term-C Loan Claims*

    (a)    <u>Classification</u>: Class 7 consists of the Claims of the Term-C Lenders under the Term-C Loan in the amount of $22,221,128.07.

    (b)    <u>Treatment</u>: Unless the Debtors (or the Creditors' Committee on behalf of the Debtors or their estates) or Indenture Trustees have commenced an adversary proceeding or contested matter prior to the Confirmation Date seeking to subordinate or reclassify the Allowed Claims in Class 7, each Holder of an Allowed Class 7 Claim shall receive, on each Distribution Date, Cash derived from Excluded Assets equal to its ratable share of the Unsecured Creditor Distribution Fund available for Distribution on such Distribution Date and the Rights of Action Recovery available for Distribution on each such Distribution Date. If the Debtors (or the Creditors' Committee or Indenture Trustees) have commenced such an adversary proceeding or contested matter prior to the Confirmation Date, then the Allowed Class 7 Claims shall be Disputed Claims, and any Distribution otherwise payable to the Holders of Class 7 Claims shall be held in the Unsecured Creditor Disputed Claims Reserve pending the resolution of such adversary proceeding or contested matter by a Final Order. Any Distribution made hereunder to holders of Class 7 Claims represents a reallocation from holders of claims in Class 1 pursuant to the Asset Reallocation and Settlement Agreement. The subordination rights of the Term-C Lenders are unaffected by the Plan, and, in particular, the holders of Class

18

7 Claims have not waived any right of subordination with respect to any recovery by the holders of Class 6 Claims. However, the holders of Class 7 Claims have agreed with the 12% Note Indenture Trustee that no right of subordination will be asserted with respect to recovery of any distribution made on the Initial Distribution Date to the holders of Class 6 Claims, and that the holders of Class 7 claims do not otherwise waive any right of subordination, including, without limitation, in respect of any subsequent distributions or with respect to any right of setoff in connection with any litigation or proceeding brought against the holders of Class 7 Claims or related parties or entities, or otherwise.

(c)     Voting: Holders of Class 7 Claims are entitled to vote to accept or reject this Plan.

**Section 4.9. *Class 8 – Equity Interests***

(a)     Classification: Class 8 consists of all Equity Interests in the Debtors.

(b)     Treatment: All Equity Interests of each of the Debtors shall be cancelled on the Effective Date and Holders of such Equity Interests should not receive or retain any property or Distributions under this Plan.

(c)     Voting: Class 8 Equity Interests will receive no Distribution under this Plan and are, therefore, deemed to have rejected this Plan. Accordingly, Class 8 Equity Interests are not entitled to vote.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF PLAN

**Section 5.1. *Voting Classes***

Each Holder of a Claim in Classes 4, 5, 6 and 7 shall be entitled to vote separately to accept or reject this Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain confirmation. Class 8 is conclusively deemed to have rejected this Plan and is not entitled to vote.

**Section 5.2. *Acceptance by Class of Creditors and Holders of Interests***

Under the Bankruptcy Code, an impaired Class of Holders of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (⅔) in dollar amount and more than one-half (½) in number of the Allowed Claims of such Class that have voted to accept or reject this Plan.

**Section 5.3. *Cramdown***

If all applicable requirements for confirmation of this Plan are met as set forth in sections 1129(a)(1) through (13) of the Bankruptcy Code, except subsection (8) thereof, the Debtors intend to request that the Bankruptcy Court confirm this Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that this Plan is fair and equitable and does not discriminate unfairly with respect to each class of Claims that is impaired under, and has not accepted, this Plan.

19

# ARTICLE VI
## EFFECT OF CONFIRMATION

**Section 6.1.** *Vesting of Assets in the Creditor Trust*

On the Effective Date, all Assets of the Debtors, including Excluded Assets (but excluding Cash remitted to the Agent pursuant to Section 4.2(b) herein) shall vest in the Creditor Trust, with the Excluded Assets to be held by and separately accounted for as part of the Unsecured Creditor Series and all other Assets (including specifically Tax Refunds and the Star Litigation) to be held by and separately accounted for as part of the Senior Lender Series. Except to the extent expressly provided for in the Asset Reallocation and Settlement Agreement or the Creditor Trust Agreement, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Creditor Trust generally or the assets of the other Series, and the Budget (including Wind Down Budget) shall be allocable in accordance with the foregoing. The Unsecured Creditor Distribution Fund, the Administrative Claims Reserve Fund, the Creditor Trust Expense Fund, and the Rights of Action shall all be assets of the Unsecured Creditor Series; any other Assets (including the Star Litigation, Tax Refunds and any other Assets that will give rise to Settlement Proceeds) shall be part of the Senior Lender Series. The Excluded Assets in the Unsecured Creditor Series shall be managed and used for the sole purposes of achieving Consummation and carrying out this Plan and effectuating the Distributions provided for in this Plan *provided, however,* that, in accordance with and subject to the Asset Reallocation and Settlement Agreement and the Cash Collateral Order, any amounts included in the Wind Down Budget (other than the Reallocated Monies) that are not required to fund specific line item expenses for which such amounts were allocated, together with any other amounts to which the Agent is entitled under the Asset Reallocation and Settlement Agreement, shall be promptly remitted by the Unsecured Creditors' Trustee to the Agent for the benefit of the Senior Lenders. Notwithstanding anything herein to the contrary, in accordance with the Asset Reallocation and Settlement Agreement, the Agent's liens shall continue to attach to all Assets in the Creditor Trust other than Excluded Assets, including, without limitation, unliquidated Contributed Assets, the Star Services Litigation and all Tax Refunds and any amounts required to be remitted to the Agent due to the failure of any Noteholders to provide Noteholder Releases as provided under this Plan. The unliquidated Assets held as part of the Senior Lender Series of the Creditor Trust (including the Star Litigation, Tax Refunds and the estate's interest in retainers or any other Assets that would give rise to Settlement Proceeds) shall be administered by the Senior Lenders' Trustee subject to the obligation to remit to the Unsecured Creditors' Trustee such amount as may be required by the Asset Reallocation and Settlement Agreement.

**Section 6.2.** *Authority to Effectuate Plan*

Upon the entry of the Confirmation Order by the Bankruptcy Court, all matters provided under this Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Creditor Trust and the Trustees shall be authorized, without further application to or order of the Bankruptcy Court, to take whatever action is necessary to achieve Consummation and carry out this Plan and to effectuate the Distributions provided for thereunder, subject to the provisions of this Plan, including Article VII. The Creditor Trust and the Trustees are expressly authorized to sell or dispose of any and all Excluded Assets and to pay all costs and expenses associated with such sale or disposition without further order of the Bankruptcy Court, subject to the provisions of the Asset Reallocation and Settlement Agreement and the provisions of this Plan, including Article VII.

Section 6.3. *Dismissal of Officers and Directors and Dissolution of the Debtors and Board*

Upon the Effective Date, (i) the existing Board of Directors of each Debtor and any remaining officer of any Debtor shall be dismissed and (ii) each of the Debtors shall be deemed dissolved without any further action required on the part of the Debtors, the shareholders of the Debtors, or the officers or directors of the Debtors.

Section 6.4. *Status Reports*

Not later than 90 days following the occurrence of the entry of the Effective Date, the Trustees shall file with the Bankruptcy Court and serve on counsel to the Agent and the Plan Oversight Committee status reports and a detailed accounting explaining what progress has been made toward entry of the Final Decree. The status reports shall also be served on the US Trustee, and those parties who have requested special notice post-confirmation. Until entry of the Final Decree, further status reports shall be filed every 60 days and served on the same entities. Each status report shall include a description of Assets sold or otherwise realized upon, gross and net proceeds received, Distributions made and payments remitted to the Agent, expenses incurred and paid, remaining Wind Down Budget funds and projected Wind Down Budget expenses, and cash on hand, as well as a detailed reporting of claims objections and the status of all contested matters and litigation.

Section 6.5. *Escrows*

All escrows previously established in the Chapter 11 Cases and still in existence on the Effective Date shall be released pursuant to the terms of the Asset Reallocation and Settlement Agreement and this Plan. Any escrowed funds that constitute Excluded Assets shall be released for the benefit of Holders of Allowed Unsecured Claims in accordance with the Asset Reallocation and Settlement Agreement after the Effective Date shall be paid to the Creditor Trust and shall be used to achieve Consummation and carry out this Plan.

Section 6.6. *Binding Effect*

Except as otherwise expressly provided in this Plan, on and after the Effective Date, this Plan and all exhibits thereto shall bind the Creditors' Committee and all Holders of Claims and Equity Interests.

Section 6.7. *Corporate Action*

Each of the matters provided for under this Plan involving any corporate action to be taken or required by the Debtors shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by stockholders, officers or directors of any of the Debtors.

Section 6.8. *Amendment of Final Cash Collateral Order*

The Final Cash Collateral Order has been deemed amended in accordance with the Final Order approving the Asset Reallocation and Settlement Agreement to provide that the Reallocated Monies shall remain Assets of the Estates and shall not be distributed to Holders of Class 1 Claims, other than as provided in Paragraph 4B of the Asset Reallocation and Settlement Agreement and Section 4 herein in respect of any Noteholder who has not provided the Noteholder Release.

Section 6.9. *Dissolution of Creditors' Committee; Plan Oversight Committee*

On the Effective Date, the Creditors' Committee will dissolve and its members will be released and discharged from all further duties and obligations arising from or related to the Chapter 11 Cases. The professionals retained by the Creditors' Committee and the members thereof will not be entitled to compensation or reimbursement of expenses for any services rendered other than in connection with the preparation of applications under section 330 and 503 of the Bankruptcy Code.

On the Effective Date, the Plan Oversight Committee shall be created. The Plan Oversight Committee shall have overall direction and control of the liquidation of the Excluded Assets, prosecution, settlement and abandonment of Rights of Action and the prosecution and resolution of claims pursuant to this Plan and the terms of the Creditor Trust Agreement, and shall direct, oversee and control all of the activities of the Unsecured Creditors' Trustee. Persons who served as professionals to the Committee prior to the Effective Date may also continue to serve as professionals to the Plan Oversight Committee and/or Unsecured Creditors' Trustee. With the approval of the Plan Oversight Committee and Unsecured Creditors' Trustee, a member of the Plan Oversight Committee may receive reimbursement of reasonable fees and expenses of such member's attorneys from the Excluded Assets allocable to the Unsecured Creditor Series of the Creditor Trust. This Plan Oversight Committee shall consist of any member of the Creditors' Committee that notifies the Unsecured Creditors' Trustee in writing of its intention to serve on the Plan Oversight Committee. The By-Laws of the Committee as in effect on the Effective Date shall govern the proceedings of the Plan Oversight Committee subject to amendment by the Plan Oversight Committee. This Plan Oversight Committee shall be dissolved on the earlier of the Final Decree or the termination of the Creditor Trust. In the event of the resignation of a member of the Plan Oversight Committee, the remaining members may, but need not, designate a successor from among the Holders of Class 4, 6 and 7 Claims. Unless and until such vacancy is filled, the Plan Oversight Committee shall function with such reduced membership. Neither the Plan Oversight Committee nor any of its members, nor any of its employees, professionals or agents, shall in any way be liable for any acts or for any acts of any of its members, except for acts undertaken in bad faith, willful misconduct or gross negligence, in the performance of their duties as members of the Plan Oversight Committee. The Unsecured Creditor Series of the Creditor Trust shall indemnify and hold harmless the Plan Oversight Committee, its members, and its professionals from and against any and all liabilities, expenses, claims, damages or losses incurred by them as a direct result of acts or omissions taken by them in their capacities as members or agents for the Plan Oversight Committee except for acts undertaken in bad faith, willful misconduct or gross negligence.

Section 6.10. *Late Claims*

In accordance with the Bar Date Order, unless otherwise specifically ordered by the Bankruptcy Court, any entity that was required to but did not file a request for payment of an Administrative Claim or a proof of claim in respect of a Claim in compliance the procedures and deadlines established by the Bar Date Order shall not be treated as a creditor with respect to such Claim for the purposes of voting and distribution with respect to this Plan.

## ARTICLE VII
## IMPLEMENTATION OF THIS PLAN

Section 7.1. *Funding of Plan*

The source of all Cash necessary to achieve entry of the Final Decree and to carry out this Plan shall be the Excluded Assets, including the Rights of Action Recovery.

22

Section 7.2. *Creation of the Creditor Trust*

(a)    On or before the Effective Date, (i) the Creditor Trust shall be created and established by the execution and delivery of the Trust Agreement and any other necessary action, subject to the provisions of the Asset Reallocation and Settlement Agreement and this Plan, and (ii) all Rights of Action and other Excluded Assets shall be transferred to the Unsecured Creditor Series of the Creditor Trust, free of all Claims, Liens and interests. The Creditor Trust shall reduce to Cash or otherwise liquidate the Rights of Action and other Excluded Assets and distribute such liquidated Assets in accordance with and subject to the terms and provisions of the Asset Reallocation and Settlement Agreement and this Plan. The costs and expenses incurred by the Unsecured Creditor Series of the Creditor Trust on and after the Effective Date shall be paid from the Creditor Trust Expense Fund. Upon entry of the Final Decree, the Creditor Trust shall be dissolved without further action by the Trustee. The costs and expenses incurred by the Senior Lender Series of the Creditor Trust shall be paid from the assets of the Senior Lender Series, including that portion of the Budget and Wind Down Budget allocable to the recovery of the Star Litigation and Tax Refunds.

(b)    As of the Effective Date, the Creditor Trust shall be responsible for (i) the winding up of the Debtors' Estates, (ii) liquidating or otherwise reducing to Cash the Excluded Assets in accordance with the Trust Agreement, (iii) filing, prosecuting and settling the Rights of Action, (iv) making Distributions to Holders of Allowed Claims, (v) complying with and carrying out the terms of the Asset Reallocation and Settlement Agreement, (iv) overseeing the continued liquidation to Cash of all other Assets (including the Star Services Litigation and the Tax Refunds) and promptly remitting to the Agent all Settlement Proceeds and all Cash (other than Cash which is proceeds of Excluded Assets), and (vii) settling, resolving and objecting to Claims. The Creditor Trust shall have the authority without further Bankruptcy Court approval to liquidate the Excluded Assets, to hire and pay professional fees and expenses of counsel and other advisors, to prosecute and settle objections to Disputed Claims, to pursue any preserved Rights of Action, and otherwise to take such other actions as shall be necessary to administer the Chapter 11 Cases and effect the closing of the Chapter 11 Cases; provided, however, that, to the extent reasonably practicable, the Star Services Litigation and the recovery of Tax Refunds shall continue to be administered in the same manner and by the same personnel and professionals (who may not be removed without the approval of the Senior Lenders' Trustee, with any replacement or successor to be subject to such Trustee's approval) and any settlement, compromise or other proposed resolution of the Star Services Litigation or any Tax Refund shall require the prior written approval of the Senior Lenders' Trustee.

(c)    The beneficial interests in the Unsecured Creditor Series of the Creditor Trust are not transferable.

Section 7.3. *The Trustees*

(a)    Five (5) days prior to the Confirmation Hearing, the Creditors' Committee shall select one Person to serve as the Unsecured Creditors' Trustee and the Agent shall select one person that is a resident of Delaware to serve as the Senior Lenders' Trustee, and each shall file a notice of such selection with the Bankruptcy Court. The Trustees, once appointed by the Bankruptcy Court, shall act as co-Trustees on behalf of the Creditor Trust to carry out their obligations and exercise their rights in accordance with, and subject to, this Plan, the Confirmation Order and the Asset Reallocation and Settlement Agreement. The Trustees shall be compensated on a per hour basis plus actual out-of-pocket expenses as set forth in the Trust Agreement and shall not be required to file a fee application to receive compensation. Any objection to the designation of the Trustees shall be raised at the Confirmation Hearing. The Confirmation Order shall state that without the permission of the Bankruptcy Court, no judicial, administrative, arbitration or other action or proceeding shall be commenced against the Trustees

23

in their official capacity, with respect to their status, duties, powers, acts or omissions as Trustees in any forum other than the Bankruptcy Court. The Trustees shall be vested with the rights, powers and benefits set forth in the Trust Agreement, which shall include, without limitation, all rights, powers, and benefits afforded to a "trustee" under sections 704 and 1106 of the Bankruptcy Code. The Unsecured Creditors' Trustee shall be subject to the directions of the Plan Oversight Committee and the Senior Lenders' Trustee shall be subject to the direction of the Agent. Subject to the provisions of the Trust Agreement, the Trustees shall be entitled to hire such professionals as they deem necessary to assist them in carrying out their duties, with the fees and expenses of such professionals to be borne by the Creditor Trust Expense Fund, in the case of professionals retained by the Unsecured Creditors' Trustee, and by the assets of the Senior Lender Series, in the case of the Senior Lenders' Trustee.

(b)    In addition to reporting requirements set forth in Section 6.4 hereof, the Trustees shall regularly consult with and be reasonably accessible to each other to monitor the liquidation of Assets and the implementation and the Asset Reallocation and Settlement Agreement, and the Trustees shall make all personnel, books and records relating to the Debtors, the Trust and the implementation of the Asset Reallocation and Settlement Agreement available to each other or to any other party in interest, upon written request. The Trustees shall cooperate fully with each other and seek to fully implement the Asset Reallocation and Settlement Agreement as expeditiously and efficiently as possible. Any disputes concerning the administration of the Trust or the implementation of the Asset Reallocation and Settlement Agreement may be brought before the Bankruptcy Court for resolution.

(c)    On, or as soon as practicable after, the Effective Date, the Creditor Trust Expense Fund shall be deposited in a segregated, interest-bearing account of the Creditor Trust in order to fund the fees and expenses of the Unsecured Creditor Series of the Creditor Trust (including, without limitation, compensation of the Unsecured Creditors' Trustee and fees and expenses incurred in connection with the duties and actions of such Trustee, such as fees and expenses of legal counsel and accountants) and to pay insurance, taxes and other expenses arising in the ordinary course of business in maintaining and disposing of any unliquidated Excluded Assets. The Creditor Trust may pay all such fees and expenses without Bankruptcy Court approval.

(d)    Upon the date that all Claims have either become Allowed Claims or been resolved by Final Order and all Distributions in respect of such Allowed Claims have been made, the Creditor Trust shall deliver, as promptly as practicable, the balance of the Creditor Trust Expense Fund to the Agent for distribution to Holders of, and on account of, Allowed Class 1 Claims.

(e)    Upon any determination by the Unsecured Creditors' Trustee that it is holding any amount not constituting Excluded Assets or proceeds of Excluded Assets, or which constitutes the Noteholder's Share of any Distribution in respect of a Noteholder who is not deemed to have provided the Noteholder Release, the Unsecured Creditors' Trustee shall promptly pay such amount to the Agent for the Holders of, and on account of, Allowed Class 1 Claims.

(f)    In accordance with this Plan, the Unsecured Creditors' Trustee shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue, the Rights of Action, including all pending adversary proceedings and contested matters, whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by or against the Debtors, Debtors' Estates or Creditors' Committee. The Unsecured Creditors' Trustee may pursue or decline to pursue the Rights of Action and may settle, release, sell, assign, otherwise transfer or compromise such Rights of Action, in the Unsecured Creditors' Trustee's business judgment, subject to the provisions of this Plan without Bankruptcy Court approval. Except as otherwise set forth in this Plan, but subject in all respects to the Asset Reallocation and Settlement Agreement, the Unsecured Creditors' Trustee may, but shall not be required to, set-off against any Claim

24

and the Distributions to be made pursuant to this Plan in respect of such Claim, any Rights of Action the Estates may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Unsecured Creditors' Trustee of any such Rights of Action, set-off or recoupment which the Debtors may have against such Holder. The foregoing provisions shall not apply to the Holders of Allowed Claims in Class 1, it being understood and acknowledged that such Holders are entitled to receipt of all Settlement Proceeds in accordance with the Final Order approving the Asset Reallocation and Settlement Agreement, that the estate's (and the Unsecured Creditors' Trustee's) obligation to effect such remittance to the Agent on account of the Holders of Class 1 Allowed Claims is independent of this Plan, and that nothing in this Plan shall be deemed to vary or in any way modify the terms of the Asset Reallocation and Settlement Agreement.

(g)     The Trustees may be removed and replaced for good cause or as provided under the Creditor Trust Agreement by the Plan Oversight Committee (in respect of the Unsecured Creditors' Trustee) or the Agent (in respect of the Senior Lenders' Trustee), subject to Bankruptcy Court approval.

## ARTICLE VIII
## RIGHTS OF ACTION

Section 8.1. *Maintenance of Rights of Action*

Except as otherwise provided in the Asset Reallocation and Settlement Agreement, the Debtors transfer and assign to the Creditor Trust all rights on behalf of the Debtors to commence and pursue, as appropriate, any and all Rights of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases, including the actions specified in section VI(k) of the Disclosure Statement and, in accordance with section 1123(b)(3) of the Bankruptcy Code, all claims, rights, and Rights of Action that the respective Debtors may hold against any Entity shall vest in the Creditor Trust. From and after the Effective Date, the Unsecured Creditors' Trustee shall retain and may exclusively enforce any and all such Rights of Action; and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle, or compromise any and all such Rights of Action, and the Senior Lenders' Trustee shall retain and may exclusively enforce any and all claims or rights of the Debtors that are not Excluded Assets (including Tax Refunds and the Star Litigation) and shall have the exclusive right, authority and discretion to pursue, institute, prosecute, abandon, settle or compromise any and all such claims and rights.

Section 8.2. *Preservation of All Rights of Action Not Expressly Settled or Released*

(a)     Unless a claim or Right of Action against a Creditor or other Entity is expressly waived, relinquished, released, compromised or settled in the Asset Reallocation and Settlement Agreement, and this Plan, or any Final Order, the Debtors expressly reserve such claim or Right of Action for later enforcement by the Creditor Trust (including, without limitation, claims and Rights of Action not specifically identified or which Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to Debtors at this time or facts or circumstances which may change or be different from those which Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches shall apply to such claims or Rights of Action upon or after the confirmation or consummation of this Plan based on the Disclosure Statement, this Plan or the Confirmation Order, except where such claims or Rights of Action have been expressly released in the Asset Reallocation and Settlement Agreement, this Plan or other Final Order. In addition, the Creditor Trust expressly reserves the right to pursue or adopt any claims, crossclaims or

counterclaims alleged in any lawsuit in which the Debtors are a defendant or an interested party, against any person or entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits, subject to the provisions in the Asset Reallocation and Settlement Agreement, this Plan or any Final Order.

(b)    Subject to the terms of the Asset Reallocation and Settlement Agreement and any other Final Order, any Entity to whom the Debtors have incurred an obligation (whether on account of services, purchase or sale of goods or otherwise), or who has received services from the Debtors or a transfer of money or property of the Debtors, or who has transacted business with the Debtors, or leased equipment or property from the Debtors should assume that such obligation, transfer, or transaction may be reviewed by the Creditor Trust subsequent to the Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or not (i) such Entity has filed a proof of claim against the Debtors in these Chapter 11 Cases, (ii) such Entity's proof of claim has been the subject of an objection, (iii) such Entity's Claim was included in Debtors' Schedules, or (iv) such Entity's scheduled claim has been objected to by the Debtors or has been identified by the Debtors as disputed, contingent or unliquidated.

ARTICLE IX
PROVISIONS REGARDING DISTRIBUTIONS

Section 9.1. *Distribution to Creditors*

Subject to the provisions of the Asset Reallocation and Settlement Agreement and any Final Order, the Creditor Trust will make Distributions to all Allowed Claim Holders in accordance with the terms of this Plan; provided that the Indenture Trustees are designated as disbursing agents for purposes of effecting Distributions to the respective Noteholders as of the Record Date pursuant to this Plan (without requirement of surrender of the certificates evidencing the Senior Notes) and the Indenture; and provided further that the Agent is designated as disbursing agent for purposes of payments to the Senior Lenders remitted by the Creditor Trust in accordance with the Asset Reallocation and Settlement Agreement. All Distributions shall be made by the Creditor Trust, the Indenture Trustees, the Senior Lenders' Trustee and/or the Agent without any requirement for bond or surety with respect thereto. Any reference to the "Creditor Trust" in respect of (i) Distributions to be made to the Noteholders shall be deemed to refer to the respective Indenture Trustees or their nominees, designees or affiliates, and (ii) payments to be made to the Senior Lenders shall be deemed to refer to the Agent or its nominee, designee or affiliate. All Distributions to be made to the Noteholders under this Plan shall be made to the Indenture Trustees in accordance with the respective Indenture, applicable law, and this Plan, and the Indenture Trustees shall, as soon as reasonably practicable, in accordance with the 14% Note Indenture and the 12% Note Indenture, applicable law and this Plan, deliver the Distributions, subject to provisions and priorities established under the Indentures and the rights of the appropriate Indenture Trustee to assert its Charging Lien against such distribution, to the respective Noteholders as provided herein and the respective Indentures. All payments to be made to the Senior Lenders under the Asset Reallocation and Settlement Agreement, as incorporated by this Plan, shall be made to the Agent.

Section 9.2. *Claims Allowed as of the Effective Date*

Except as otherwise provided in this Plan, or as may be ordered by the Bankruptcy Court, for those Claims that are Allowed as of the Initial Distribution Date and are entitled to receive Distributions under this Plan, Distribution shall be made on the Initial Distribution Date (or as soon thereafter as is practicable) by the Unsecured Creditors' Trustee provided, however, that all payments required to be made to the Agent on behalf of the Senior Lenders under the Asset Reallocation and Settlement Agreement shall promptly be made, pursuant to and in accordance with the terms of the Asset Reallocation and Settlement Agreement, without regard to the Distribution Dates and Distribution

mechanisms set forth in this Plan. Distributions on account of Claims that become Allowed after the Initial Distribution Date shall be made by the Unsecured Creditors' Trustee pursuant to the provisions of this Plan.

Section 9.3. *Unsecured Disputed Claims Reserve*

The Creditor Trust shall maintain, in accordance with the Creditor Trust's powers and responsibilities under this Plan and the Trust Agreement, the Unsecured Disputed Claims Reserve. Any Distribution to a Holder of a Disputed Unsecured Claim that has not been resolved by Final Order as of the Effective Date shall be made by the Unsecured Creditors' Trustee as soon as reasonably practicable when and if a Final Order resolves such Claim, which Claim if Allowed shall be treated as if it had been Allowed as of the Effective Date. To the extent that a portion or all of the funds in the Unsecured Disputed Claims Reserve are no longer necessary to cover Disputed Unsecured Claims, such funds shall promptly released to the Creditor Distribution Fund.

Section 9.4. *Time and Manner of Payments*

Any payment in Cash shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Section 9.5. *Delivery of Distributions*

Subject to the provisions of Bankruptcy Rule 2002(g) and except as otherwise provided under this Plan, Distributions to Holders of Allowed Claims shall be made at the address of each such Holder as set forth on the Schedules filed with the Bankruptcy Court unless superseded by the address set forth on proofs of claim filed by such Holders, or if the Debtors or the Creditor Trust have been notified in writing of a change of address. All payments on account of the Allowed Claims of the Class 1 Senior Lenders shall be made to the Agent at the address set forth in the proof of claim filed by the Agent.

Section 9.6. *Undeliverable Distributions*

(a)    Holding of Undeliverable Distributions: If any Distribution to any Holder of an Allowed Unsecured Claim is returned to the Debtors as undeliverable, no further Distributions shall be made to such Holder unless and until the Trustee is notified, in writing, of such Holder's then-current address. Subject to Section 9.6(b) of this Plan, undeliverable Distributions shall remain in the possession of the Creditor Trust until such time as a Distribution becomes deliverable. All persons ultimately receiving undeliverable Cash shall not be entitled to any interest or other accruals of any kind. Nothing contained in this Plan shall require the Creditor Trust to attempt to locate any Holder of an Allowed Claim. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.

(b)    Failure to Claim Undeliverable Distributions: Within ten (10) Business Days after the later of the first anniversary of the Effective Date or the first distribution under this Plan, the Creditor Trust shall file a list with the Bankruptcy Court setting forth the names of those Entities for which Distributions have been attempted hereunder and have been returned as undeliverable as of the date thereof. Any Holder of an Allowed Claim that does not assert its rights pursuant to this Plan to receive a Distribution within two (2) months from and after the filing of such list shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim against the Debtors or the Creditor Trust. In such case, any consideration held for Distribution on account of such Claim shall revert to the Creditor Trust for Distribution to the beneficiaries in accordance with the

terms of this Plan. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.

## Section 9.7. *Compliance with Tax Requirements/Allocation*

In connection with this Plan, to the extent applicable, the Trustee in making Distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Trustee may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Trustee the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Trustee the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Trustee to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's Distribution shall be treated as an undeliverable Distribution in accordance with this Plan.

The Creditor Trust shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all Distributions pursuant to this Plan shall be subject to applicable withholding and reporting requirements. For tax purposes, Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest.

## Section 9.8. *Time Bar to Cash Payments*

Checks issued by the Creditor Trust on account of Allowed Claims shall be null and void if not negotiated within ninety (90) days from and after the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Creditor Trust by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim in respect of such a voided check shall be made on or before the later of (a) the first anniversary of the Effective Date or (b) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution hereunder on account of such Claim. After such date, all Claims in respect of voided checks shall be discharged and forever barred and the right to all moneys from the voided checks shall revert to the Creditor Trust for Distribution under this Plan.

## Section 9.9. *Fractional Dollars, De Minimis Distributions*

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down. The Creditor Trust, as successor to the Debtors shall have the discretion not to make payments of less than twenty-five ($25) on account of any Allowed Unsecured Claim, unless a specific request is made in writing to the Debtors on or before ninety days after allowance of such Claim. In addition, after the First Distribution Date, the Creditor Trust shall not be required to make any Distribution on account of any Claim in the event that the costs of making such Distribution payment exceed the amount of such Distribution payment, and all cash that otherwise would have been distributed to the Holders of such de minimis claims shall otherwise be distributed in accordance with the terms of the Plan.

28

Section 9.10. *Set-Offs*

The Creditor Trust, as successor to the Debtors may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to this Plan on account thereof (before any Distribution is made on account of such Claim), the claims, rights and causes of action of any nature that the Debtors may hold against the Holder of such Allowed Claim. The Holders of Claims may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off any Allowed Claims such Holder possesses against any claim, rights or causes of action of any nature that the Creditor Trust, as successor to the Debtors, may hold against such Holder. Neither the failure to effect such a set-off nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or such Holders of any such claims, rights and causes of action that such parties may possess under section 553 of the Bankruptcy Code.

## ARTICLE X
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

Section 10.1. *Prosecution of Objections to Claims*

(a)    Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as set forth in this Plan, the Creditor Trust shall have the right to make, file and prosecute objections to Unsecured Claims, Administrative Claims, Other Secured Claims and Priority Claims; provided that the Creditor Trust will not have the right, power or authority to pursue the Released Claims. The Creditor Trust shall have the right to prosecute objections to Claims previously filed by the Debtors.

(b)    Unless another time is set by order of the Bankruptcy Court, all objections to Claims shall be filed with the Bankruptcy Court and served upon the Holders of each of the Claims to which objections are made by the later of (a) ninety (90) days after the Effective Date; or (b) ninety (90) days after a timely Proof of Claim or request for payment with respect to such Claim is filed; provided, however, that the Creditor Trust may seek an extension of such time to object.

(c)    Except as set forth in this Plan or Asset Reallocation and Settlement Agreement, nothing in this Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation, shall constitute, or be deemed to constitute, a waiver or release of any claim, cause of action, right of setoff, or other legal or equitable defense that Debtors had immediately prior to the commencement of the Chapter 11 Cases, against or with respect to any Claim or Equity Interest. Except as set forth in this Plan or Asset Reallocation and Settlement Agreement, upon Confirmation, the Debtors shall have, retain, reserve and be entitled to assert all such claims, causes of action, rights of setoff and other legal or equitable defenses of the Debtors, which shall be vested in and assigned to the Creditor Trust as of the Effective Date.

Section 10.2. *Estimation of Claims*

The Creditor Trust may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or Creditor Trust previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount will constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount

constitutes a maximum limitation on such Claim, the Creditor Trust may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

Section 10.3. *Cumulative Remedies*

All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved or provided herein or by any mechanism approved by the Bankruptcy Court. Until such time as such Administrative Claim or Claim becomes Allowed, such Claim or Administrative Claim shall be treated as a Disputed Administrative Claim or Disputed Claim for purposes related to allocations, Distributions and voting under this Plan.

Section 10.4. *Allowance of Claims and Interests*

(a)     Disallowance of Claims:  Pursuant to sections 105 and 502(d) of the Bankruptcy Code, no Distributions will be made to Holders of Claims held by Entities from which property is recoverable under sections 542, 543, 550, 553, 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code (including the Rights of Action) until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due to the respective Debtor or the Creditor Trust are turned over to the Debtors or the Creditor Trust. Until such time as any such claim has been settled or resolved by Final Order, the Debtors or the Creditor Trust (as applicable) shall maintain a reserve in respect of such claim in accordance with Section 9.3 hereof.

(b)     Allowance of Claims:  Except as expressly provided in this Plan or Asset Reallocation and Settlement Agreement, no Claim shall be deemed Allowed by virtue of this Plan, Confirmation, or any order of the Bankruptcy Court in the Chapter 11 Cases, unless and until such Claim is deemed Allowed under the Bankruptcy Code.

(c)     No Distribution Pending Allowance:  If any Claim is a Disputed Claim, no distribution provided hereunder shall be made on account of such claim unless such Claim becomes an Allowed Claim.

## ARTICLE XI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Section 11.1. *Rejection of Executory Contracts and Unexpired Leases*

Any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Bankruptcy Court, which are not the subject of (i) a motion to assume the same pending as of the Effective Date, or (ii) not otherwise listed in a notice that the Debtors shall file and serve ten (10) days before the Confirmation Date,[2] shall be deemed rejected by the Debtors on the Effective Date or as otherwise agreed upon by the parties. The entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

---

[2]   The Debtors shall serve the notice via regular mail upon the (i) affected contract counter-parties, (ii) parties that have requested notice pursuant to Rule 2002, (iii) counsel to the Lenders, (iv) counsel to the Creditors' Committee and (v) US Trustee.

Section 11.2. *Rejection Damage Claims*

Notwithstanding anything in the Bar Date Order to the contrary, Claims arising out of the rejection of executory contracts or unexpired leases rejected as of the Effective Date pursuant to this Plan must be filed and served on the Creditor Trust pursuant to the procedures specified in the Confirmation Order or another order of the Bankruptcy Court, no later than thirty (30) days after the Effective Date. Any claim not filed within such time will be forever barred from assertion against the Creditor Trust, the Debtors, their estates, their respective successors or their respective properties. Unless otherwise ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Unsecured Claims under this Plan.

## ARTICLE XII
## CONDITIONS PRECEDENT TO CONFIRMATION AND EFFECTIVE DATE OF THIS PLAN

Section 12.1. *Conditions Precedent to Confirmation Date of this Plan*

The occurrence of the Confirmation Date shall be subject to the entry of the Confirmation Order in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent.

Section 12.2. *Conditions Precedent to Effective Date of this Plan*

The occurrence of the Effective Date is subject to satisfaction of the following conditions precedent:

(a)    Confirmation Order as Final Order: The Confirmation Order shall, in form and substance reasonably acceptable to Debtors, Creditors' Committee and Agent, be a Final Order in full force and effect and shall not have been amended, modified, stayed or reversed.

(b)    Execution of Documents; Other Actions: All other actions and documents necessary to implement this Plan shall have been effected or executed.

(c)    Ability to Meet Projected Cash Needs: The Debtors shall have sufficient Cash and Assets to permit compliance with the terms and conditions of this Plan, including the satisfaction of all the projected fees and expenses of the Creditor Trust and the projected fees, expenses and wind down costs of the Debtors.

(d)    Creditor Trust: The Creditor Trust is created pursuant to the terms of this Plan once the Bankruptcy Court has approved the identity and appointed the Trustees and approved the Creditor Trust Agreement in form and substance acceptable to the Creditors' Committee and the Agent.

Section 12.3. *Waiver of Conditions Precedent*

To the extent legally permissible, each of the conditions precedent in Sections 12.1 and 12.2 may be waived, in whole or in part, by the Debtors with consent of the Creditors' Committee and the Agent. Any such waiver of a condition precedent may be effected at any time, without notice or leave or order of the Bankruptcy Court and without any formal action, other than proceeding to act as if the condition no longer existed.

31

## ARTICLE XIII
## RETENTION OF JURISDICTION

Section 13.1. *Retention of Jurisdiction*

Except as otherwise provided in this Plan, the Bankruptcy Court shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code, arising in or related to the Chapter 11 Cases and this Plan. The Bankruptcy Court shall also have exclusive jurisdiction:

(a)     to resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which any of the Debtors was or is a party or with respect to which the Debtors may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of this Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(b)     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with this Plan;

(c)     to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to this Plan, may be instituted by the Creditor Trust after the Effective Date (to the extent such venue is selected by the Creditor Trust);

(d)     to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

(e)     to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

(f)     to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

(g)     to issue orders in aid of execution of this Plan;

(h)     to consider any modifications of this Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(i)     to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

(j)     to hear and determine disputes arising in connection with or relating to this Plan, the interpretation, implementation or enforcement of this Plan, or the extent of any Entity's obligations incurred in connection with or released under this Plan;

(k)     to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of this Plan;

(l)     to determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument,

32

release or other agreement or document created in connection with this Plan or the Disclosure Statement;

(m)   to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(n)   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

(o)   to enter a Final Decree closing the Chapter 11 Cases;

(p)   to determine matters that may arise in connection with the Creditor Trust or the Trust Agreement;

(q)   to determine and hear any actions or controversies by or against Trustees or Plan Oversight Committee; and

(r)   to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration, confirmation or consummation of this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with this Plan, including, without limitation, the Global Settlement, or any other act or omission taken or to be taken in connection with the Chapter 11 Cases commenced against any party in the Chapter 11 Cases, including, without limitation, the Creditor Trust, the Debtors, the Creditors' Committee, the Lenders and their respective current and former directors and officers, members, agents, advisors, attorneys, advisors and other professionals and Entities employed pursuant to sections 327 and 1103 of the Bankruptcy Code.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

Section 14.1. *Title to Assets*

Except as otherwise provided by this Plan, on the Effective Date, title to all Assets shall vest in the Creditor Trust in accordance with section 1141 of the Bankruptcy Code, subject to the prepetition liens and security interests of the Agent in all such Assets other than Excluded Assets..

Section 14.2. *Releases of All Liens*

On the Effective Date, subject to the provisions of the Asset Reallocation and Settlement Agreement, all Liens on any of the Excluded Assets shall be deemed to be released and Claims related therein shall be paid pursuant to this Plan.

Section 14.3. *Modification of Plan*

Subject to obtaining the approval of the Creditors' Committee and the Agent, the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan at any time prior to the entry of the Confirmation Order. Upon entry of the Confirmation Order, the Debtors may, upon order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan. Claimants that

have accepted this Plan shall be deemed to have accepted this Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim.

## Section 14.4. *Revocation or Withdrawal*

This Plan may be revoked or withdrawn by the Debtors prior to the Confirmation Date. If this Plan is revoked or withdrawn prior to the Confirmation Date, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

## Section 14.5. *Injunction*

(a)    Except as otherwise expressly provided in this Plan, all Entities who have held, hold or may hold Claims or Interests are permanently enjoined, from and after the Effective Date, from: (i) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against the Debtors, their estates, the Creditor Trust or the Trustees; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, their estates, the Creditor Trust or the Trustees; and (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, their estates, the Creditor Trust or the Trustees against the property or interests in property of any of the foregoing Entities. Except with respect to the Released Claims, nothing contained in this Plan or the Confirmation Order shall prohibit or restrain the prosecution of any Claims or Rights of Action against the Debtors' present or former directors and officers or Holders of Equity Interests based on acts, events or omissions occurring before the Petition Date.

(b)    With respect to the matters within the scope of Section 13.1(q) herein, all Persons and Entities shall be and are permanently enjoined from commencing or continuing any such matter except in the Bankruptcy Court and the Bankruptcy Court shall retain exclusive jurisdiction over such matters.

## Section 14.6. *Discharge*

Consistent with section 1141(d)(3) of the Bankruptcy Code, this Plan does not grant the Debtors a discharge. Notwithstanding the foregoing, except as otherwise provided herein, (1) the rights afforded in this Plan and the treatment of all Claims and Equity Interests shall be in exchange for and in complete satisfaction, discharge and release of such Claims and Equity Interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Creditor Trust and any of its assets or properties, and (2) all Persons and Entities shall be precluded from asserting against the Creditor Trust or any of its assets or properties any other or further Claims or Equity Interests based upon any act or omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date, except as otherwise provided in this Plan.

## Section 14.7. *Indemnification*

The Creditor Trust shall indemnify and hold harmless (i) Trustees, (ii) Plan Oversight Committee, and (iii) all professionals retained by the Trustee or Plan Oversight Committee (collectively, the "Indemnified Parties"), from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Debtors or the implementation or administration of this Plan, if the Indemnified Parties acted

in good faith and in a manner reasonably believed to be in or not opposed to the best interests of the Debtors, and, with respect to any criminal action or proceeding, had no reasonable cause to believe its conduct was unlawful; provided, however, that the Unsecured Creditor Series of the Creditor Trust shall be exclusively responsible (and the Senior Lender Series shall have no obligation) for such indemnity as it relates to the Unsecured Creditors' Trustee, the Plan Oversight Committee and all professionals retained by either. To the extent the Creditor Trust indemnifies and holds harmless the Indemnified Parties comprised of the Unsecured Creditors' Trustee, Plan Oversight Committee or their professionals, as provided above, the legal fees and costs related to the defense of such claims giving rise to the right of indemnification shall be paid out of the Rights of Action Recovery. The Senior Lender Series shall be exclusively responsible (and the Unsecured Creditor Series shall have no obligation) for the foregoing indemnity as it relates to the Senior Lender Trustee, the Agent and all professionals retained by either.

Section 14.8. *Term of Existing Injunctions or Stays*

Unless otherwise provided, all injunctions or stays provided for in the Chapter 11 Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date, and thereafter shall be annulled.

Section 14.9. *Releases*

The releases set forth in the Asset Reallocation and Settlement Agreement are approved and ratified (as applicable) as set forth herein:

(a)    Releases by the Debtors and the Creditors' Committee. Pursuant to Paragraph 4A of the Asset Reallocation and Settlement Agreement, the Debtors and the Creditors' Committee have provided the releases, waivers and discharge of the Released Lender Parties as set forth therein. Pursuant to Paragraph 4C of the Asset Reallocation and Settlement Agreement, the release, waiver and discharge of the Term C Lenders is expressly limited and qualified as set forth therein.

(b)    Noteholder Releases. As of the Effective Date, each Holder of a Claim in Class 5 and each Holder of a Claim in Class 6 that is entitled to vote on this Plan shall be deemed to have unconditionally and fully waived, released and forever discharged the Released Lender Parties from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which such Holder or Trustee has had, now has, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Effective Date, relating to or concerning the Debtors, the Credit Agreement, the Senior Subordinated Notes or the Senior Discount Notes; provided, however, that the foregoing release does not apply to claims (if any) for enforcement of the Senior Lenders' obligations under the Asset Reallocation and Settlement Agreement, and provided further that each Holder of a claim in Class 5 and each Holder of a Claim in Class 6 entitled to vote on this Plan may elect, by checking the box provided on the Ballot, not to grant the releases set forth in this Section 14.9(b); provided further, that all Noteholders that do not expressly "opt out" of the Plan releases by returning a Ballot electing such "opt out" (including all Noteholders who do not return a Ballot) or who receive a Distribution under the Plan shall be deemed to have granted the releases as set forth in Section 14.9 of the Plan. However, as provided under the Asset Reallocation and Settlement Agreement the granting of the release set forth herein shall be a condition to both (i) the receipt of any distribution under this Plan by any Noteholder, and (ii) the waiver by the Senior

35

Lenders of their contractual and structural subordination rights in respect of the Holders of Class 5 and Class 6 Claims. In addition, the releases set forth in and in the manner provided by Section 4.B. of the Asset Reallocation and Settlement Agreement shall be deemed delivered by the 12% Note Indenture Trustee and the 14% Note Indenture Trustee as of the Effective Date.

(c)    Releases by the Agent and the Senior Lenders.    Pursuant to Paragraph 4D of the Asset Reallocation and Settlement Agreement, the Agent and the Senior Lenders waived and relinquished any and all interest in and claims that each of them have or may have against the Excluded Assets, including the Contributed Assets and Rights of Action, except to the extent specifically set forth in the Asset Reallocation and Settlement Agreement.

(d)    Release of Certain Avoidance Actions.    Pursuant to Paragraph 4E of the Asset Reallocation and Settlement Agreement, the Debtors, the Creditors' Committee, the Agent and the Senior Lenders, on behalf of themselves and the estates of the Debtors, and each of their respective predecessors, successors and assigns, have fully waived, released and forever discharged all Avoidance Actions arising under chapter 5 of the Bankruptcy Code or otherwise relating to or concerning the conversion from recourse to non-recourse of certain loans and the deferred payment of certain bonuses, in an aggregate amount not to exceed $250,000, in respect of the Released Employees.

Section 14.10. *Exculpation and Limitation of Liability*

(a)    None of the Agent, the Debtors, the Creditor Trust, the Trustees, the Creditors' Committee, the Senior Lenders or the Indenture Trustees, nor any of their respective present or former members, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any holder of a Claim or Equity Interest, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, including, without limitation, the Asset Reallocation and Settlement Agreement, the formulating, negotiating or implementing of this Plan, the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except for their gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Cases and under this Plan.

(b)    Notwithstanding any other provision of this Plan, no holder of a Claim or Equity Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Creditor Trust, the Trustees, any of the Debtors, any statutory committee, or any of their respective present or former members, officers, directors, employees, advisors or attorneys, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, formulating, negotiating or implementing this Plan, the consummation of this Plan, the confirmation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, except to the extent such right of action arises from any such party's gross negligence or willful misconduct.

(c)    The Creditor Trust shall indemnify each Person exculpated pursuant to this Section 14.10 against, hold each such Person harmless from, and reimburse each such Person for, any and all losses, costs, expenses (including attorneys' fees and expenses), liabilities and damages sustained by such Person arising from any liability described in Section 14.10(a) of this Plan.

Section 14.11. *Cancellation of Notes, Instruments, Debentures and Equity Securities*

On the Effective Date, except to the extent provided otherwise in this Plan, all notes, instruments, certificates and other documents evidencing Claims and all Equity Interests in any of the Debtors shall be canceled and deemed terminated, without any further act or action under any applicable agreement, law, regulations, order or rule. On the Effective Date, except to the extent provided otherwise in this Plan, any indenture relating to any of the foregoing, shall be deemed canceled as permitted by section 1123(a)(5)(F) of the Bankruptcy Code. The Indentures shall survive confirmation of this Plan solely to effectuate Distributions to be made to holders of the Senior Notes as provided herein and to enforce the rights, duties and administrative functions of the Indenture Trustees as provided herein and therein with respect to such Distributions, and permitting the Indenture Trustees to assert the Charging Lien against such Distributions for the payment of the Indenture Trustees' fees and expenses. Upon the final Distributions to the holders of the Senior Notes pursuant to this Plan, the Indentures shall be canceled and deemed terminated and the Indenture Trustees shall be discharged of any further duties, without any further act or action under any applicable agreement, law, regulations, order or rule and the obligations of the Debtors under such Indentures shall be terminated.

Section 14.12. *Post-Effective Date Fees and Expenses*

From and after the Effective Date, the Creditor Trust shall, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, pay the reasonable professional fees and expenses incurred by the Plan Oversight Committee, the Indenture Trustees in their capacity as disbursing agents, and the Creditor Trust related to implementation and consummation of this Plan, subject to any restrictions imposed under the Cash Collateral Order, provided that such payment shall be borne by the Series of the Creditor Trust to which such fees and expenses relate.

Section 14.13. *Section 1146 Exception*

Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under this Plan, or the making or delivery of an instrument of transfer under this Plan, may not be taxed under any law imposing a stamp tax or similar tax.

Section 14.14. *Severability*

The provisions of this Plan shall not be severable unless such severance is agreed to by the Debtors, the Creditors' Committee and the Lenders and such severance would constitute a permissible modification of this Plan pursuant to section 1127 of the Bankruptcy Code.

Section 14.15. *Recognition*

As of the close of business on the Record Date, the Indenture Trustees will have no obligation to recognize any transfer of Notes occurring after the Record Date. For purposes of making distributions under this Plan, the Indenture Trustees will be entitled to recognize and deal for all purposes herein with only those holders of record stated on the transfer ledger maintained by the Indenture Trustees or their designees as of the close of business on the Record Date.

Section 14.16. *Governing Law*

Except to the extent that other federal law is applicable, or to the extent that an exhibit hereto provides otherwise, the rights, duties and obligations arising under this Plan shall be governed by, and

construed and enforced in accordance with, the Bankruptcy Code and, to the extent not inconsistent therewith, the laws of the State of New York.

Section 14.17. *Notices*

All notices, requests and demands to or upon the Debtors, the Creditor Trust, the Creditors' Committee or the Lenders to be effective shall be in writing, including by facsimile transmission, and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered to all of the following or, in the case of notice by facsimile transmission, when received by all of the following and telephonically confirmed, addressed as follows or to such other addresses as filed with the Bankruptcy Court.

To:

**On behalf of the Debtors:**

Constance A. Fratianni
Scott C. Shelley
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

- and -

Pauline K. Morgan
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253

**On behalf of the Creditor Trust:**

_____  _____
___ . _____
_____
_____  _____
_____  _____
_____
Telephone: _____  . ___
Facsimile: ___  . ____

**On behalf of the Creditors' Committee:**

Andrew I. Silfen
ARENT FOX KINTER PLOTKIN & KAHN

38

1675 Broadway
New York, NY 10019
Telephone: (212) 484-3903
Facsimile: (212) 484-3990

**On behalf of the Prepetition Agent:**

Janet E. Henderson
SIDLEY AUSTIN BROWN & WOOD
10 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

**On behalf of the US Trustee:**

David L. Buchbinder
Officer of the United States Trustee
844 King Street
Suite 2313
Wilmington, DE 19801
Telephone: (302) 573-6491
Facsimile: (302) 573-6497

Section 14.18. *Closing of Cases*

The Creditor Trust shall, promptly upon the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to obtain a Final Decree closing the Chapter 11 Cases.

Section 14.19. *Section Headings*

The section headings contained in this Plan are for reference purposes only and shall not affect the meaning or interpretation of this Plan.

Section 14.20. *Primacy of Asset Reallocation and Settlement Agreement*

To the extent of any conflict or inconsistency between the provisions of this Plan and the provisions of the Asset Reallocation and Settlement Agreement, the provisions of the Asset Reallocation and Settlement Agreement shall govern and be deemed controlling. Notwithstanding anything herein to the contrary, the rights and entitlement of the Senior Lenders, as set forth in the Asset Reallocation and Settlement Agreement, shall in no way be dependent upon, and are expressly independent of, the provisions of this Plan.

Section 14.21. *Continuing Viability of Other Orders/Agreements*

Except to the extent expressly modified by this Plan or the Asset Reallocation and Settlement Agreement, (i) all Final Orders previously entered by the Bankruptcy Court and (ii) any agreements between creditors or between the debtors and their creditors shall continue in full force and effect.

39

Section 14.22. *Administration of Wind Down Budget*

The Trustees shall provide the Agent and the Plan Oversight Committee upon request and no less frequently than monthly a written accounting of (i) all line item expenses paid in the prior month pursuant to the Wind Down Budget and (ii) all projected payments for line item expenses. As soon as the Unsecured Creditors' Trustee determines in his reasonable judgment that any line item expense provided for in the Wind Down Budget has been paid, the Trustee shall, in accordance with the Cash Collateral Order, remit to the Agent for the benefit of the Senior Lenders any and all remaining cash collateral allocable to such line item in the Wind Down Budget, provided that the Unsecured Creditors' Trustee shall remit to the Agent all remaining unused cash allocable to the Wind Down Budget no later than January 5, 2004 (or such later date as the Agent may agree in writing). Notwithstanding anything herein to the contrary, and except as expressly provided in the Asset Reallocation and Settlement Agreement, the Creditor Trust or Contributed Assets shall not be subject to any Claims payable under the Wind Down Budget.

Dated: Wilmington, Delaware
      February _23_, 2004

Respectfully Submitted,

INSILCO HOLDING CORPORATION
By: _Carol Wster_
Its: _President and General Counsel_

INSILCO TECHNOLOGIES, INC.
By: _Carol W_
Its: _President and General Counsel_

INNET TECHNOLOGIES, INC.
By: _Carol Wr_
Its: _Secretary and General Counsel_

INSILCO INTERNATIONAL HOLDINGS, INC.
By: _Carol Wster_
Its: _Secretary and General Counsel_

PRECISION CABLE MFG. CORPORATION
By: _Carol W_
Its: _General Counsel_

EYELETS FOR INDUSTRY, INC.
By: _Carol W_
Its: _Secretary and General Counsel_

EFI METAL FORMING, INC.
By: _Carol W_
Its: _Secretary and General Counsel_

STEWART STAMPING CORPORATION
By: _Carol Wster_
Its: _Secretary and General Counsel_

STEWART CONNECTOR SYSTEMS, INC.

By: _____

Its: Secretary and General Counsel

SIGNAL CARIBE, INC.

By: _____

Its: General Counsel

SIGNAL TRANSFORMER CORPORATION, INC.

By: _____

Its: Secretary and General Counsel

# EXHIBIT A

## ASSET REALLOCATION AND SETTLEMENT AGREEMENT

<u>ASSET REALLOCATION AND SETTLEMENT AGREEMENT</u>

THIS ASSET REALLOCATION AND SETTLEMENT AGREEMENT

("SETTLEMENT AGREEMENT") dated as of May 13, 2003, by and among (i) Insilco

Technologies, Inc. ("Technologies") and its undersigned affiliated debtors (together with

Technologies, the "Debtors") in the administratively consolidated chapter 11 bankruptcy cases

pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy

Court") bearing docket number 02-13672 (KJC) (the "Chapter 11 Cases"), (ii) the official

committee of unsecured creditors appointed in the Bankruptcy Cases (the "Creditors'

Committee"), (iii) Bank One, NA as agent (the "Agent") and the lenders, including Bank One,

NA, under the Second Amended and Restated Credit Agreement dated as of August 25, 2000, as

amended (the "Credit Agreement") that have consented to the terms of this Settlement

Agreement (the "Senior Lenders")[1], (iv) Wachovia Bank, National Association, as indenture

trustee for the 12% senior subordinated notes due 2007 (the "12% Senior Subordinated Notes")

issued by Technologies ("Wachovia") and (v) U.S. Bank, N.A. ("U.S. Bank") as the indenture

trustee for the 14% senior discount notes due 2008 (the "14% Senior Discount Notes") issued by

Insilco Holding Co. (collectively, the parties to this Settlement Agreement are hereinafter

referred to as the "Parties"). Except as expressly provided otherwise herein, the terms and

provisions of this Settlement Agreement shall become effective and binding upon the Settlement

Effective Date, as defined in Paragraph 6 below.

RECITALS

---

[1] As used herein, the term "Senior Lenders" does not include those lenders participating in Term Loan C, except in respect of Paragraph 1 only, wherein the term "Senior Lenders" shall include those lenders participating in Term Loan C.

2

A.    On December 16, 2002 (the "Filing Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "Bankruptcy Code") commencing the Chapter 11 Cases. The Debtors continue in the management and operation of their businesses and properties as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Chapter 11 Cases have been consolidated for procedural purposes and are being jointly administered pursuant to an order of the Bankruptcy Court. No trustee or examiner has been appointed in the Chapter 11 Cases.

B.    On December 19 and 20, 2002, the Debtors filed motions seeking, inter alia, the entry of orders (i) approving bidding procedures governing the sale of substantially all of the Debtors' assets, (ii) approving the sale of substantially all of the Debtors' assets, and (iii) granting certain relief related thereto (the "Sale Motions"). The Sale Motions contemplated the sale of substantially all of the Debtors' assets in separate transactions (the "Sales") pursuant to five separate sale agreements described below (collectively, the "Sale Agreements"), subject to higher or otherwise better offers and Bankruptcy Court approval:

    a.  Stock and Asset Purchase Agreement By and Among Amphenol Corporation, Amphenol Technical Products International Co., Insilco Technologies, Inc., T.A.T. Technology Inc., Insilco International Holdings, Inc. and Precision Cable Mfg. Co., Inc. dated as of December 15, 2002;

    b.  Stock and Asset Purchase Agreement Among Bel Fuse Ltd., Bel Fuse Macau, L.D.A., Bel Connector Inc., Bel Transformer Inc., and Insilco Technologies, Inc. and Certain of its Subsidiaries, dated as of December 15, 2002;

    c.  SRDF Acquisition Company, LLC, Insilco Technologies, Inc., Stewart Stamping Corporation, Eyelets For Industry, Inc. and EFI Metal Forming, Inc., dated as of December 15, 2002;

    d.  Asset Purchase Agreement By and Between LL&R Partnership and Insilco Technologies, Inc., dated as of December 15, 2002; and

3

    e. Share Sale and Asset Purchase Agreement between Insilco Technologies, Inc. and Stephen Bullock, dated as of December 15, 2002.

    C.    On January 3, 2003, the Office of the United States Trustee appointed five members to serve on the Creditors' Committee in these cases.

    D.    On January 14, 2003, the Creditors' Committee and Wachovia filed objections to the bidding procedures. After extensive negotiations with the Creditors' Committee and Wachovia at the January 16, 2003 hearing to consider approval of the bidding procedures, the Debtors consented to various amendments to Debtors' proposed bidding procedures and agreed to continue the hearing on the Sale Motions until March 7, 2003.

    E.    On January 16, 2003, the Bankruptcy Court entered the Final Order Authorizing Use of Cash Collateral and Granting Replacement Liens (the "Cash Collateral Order"). Annexed to the Cash Collateral Order as Exhibit B is a budget listing anticipated wind down expenses (the "Wind Down Budget"), including line items for payments that may be triggered under the Debtors' Key Executive and Key Employee Severance Plan (the "KESP") and the Debtors' Key Executive and Key Employee Retention Plan (the "KERP"). Paragraph 3 of the Cash Collateral Order provides that, subject to certain limitations, to the extent amounts allocated to line items other than "Selling Costs" in the Wind Down Budget exceed the amounts necessary to fund such line items, then up to $500,000 of the amount allocated to non "Selling Costs" line items may be reallocated and used by the Debtors' estates for other necessary expenses for a period of six months following the completion of the Sales (the "Reallocated Monies"), at which time the remaining balance of the Reallocated Monies shall be returned to the Agent.

4

F.    On January 30, 2003, the Court docketed the orders approving the Bidding Procedures. With respect to the Custom Assemblies deal and the N. Myrtle Beach deal, the Debtors submitted revised orders to effect certain ministerial changes, on or about February 6, 2003. These revised orders were entered by the Bankruptcy Court on February 19, 2003.

G.    On February 26, 2003, the Creditors' Committee and Wachovia filed objections to the Sale Motions, and on March 6, 2003, the Creditors' Committee filed a supplement to the objection (collectively, the "Sale Objections").

H.    On March 5, 2003, the Creditors' Committee filed a motion seeking *inter alia* appointment of a chapter 11 trustee for the Debtors' estates or an examiner (the "Trustee Motion").

I.    At the Sale Hearing on March 7, 2003, the Debtors presented argument and evidence in support of the Sales. Prior to the Committee and Wachovia presenting evidence in support of the Sale Objections and a ruling by the Bankruptcy Court on the Sale Motions, counsel for the Debtors, the Agent and the Creditors' Committee informed the Bankruptcy Court that they, together with Wachovia, had reached a settlement in principle pursuant to which the Sale Objections were withdrawn. Counsel for the Debtors, the Agent and the Creditors' Committee described certain of the general terms and conditions of the settlement on the record at the Sale Hearing and noted that the settlement was subject to definitive documentation and certain further approvals, including Bankruptcy Court approval and, in the case of the Agent, approval of the terms of the settlement by the requisite majorities of the Senior Lenders sufficient to bind the Senior Lenders, including as a class under a plan incorporating the settlement terms, if necessary.

5

J.    Pursuant to the terms and conditions set forth in this Settlement Agreement, the Parties have agreed to resolve all disputes among them, including without limitation the disputes regarding the Sale Motion (including the Sale Objections), the Trustee Motion and all matters related thereto, and otherwise resolve their differences amicably in order to avoid costly litigation and facilitate the orderly conclusion of these Chapter 11 Cases.

K.    Following the withdrawal of the Sale Objections, the Bankruptcy Court approved the Sale Motions by orders dated March 7, 2003 (the "Sale Orders").

NOW THEREFORE, in consideration of the mutual covenants, release of claims and agreements contained herein, including without limitation the resolution of the Sale Objections and the withdrawal of the Trustee Motion (which shall be deemed a withdrawal "with prejudice" to the extent set forth herein), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, in full and final settlement of the disputes among the Parties, the Parties to this Settlement Agreement hereby agree as follows:

### AGREEMENT

1.    ALLOWANCE OF SENIOR LENDERS' CLAIMS. The Senior Lenders' liens and claims against the Debtors (i.e., the prepetition revolving credit facility, Term Loan A, Term Loan B and Term Loan C) are fully and finally allowed in the amount of $254,933,571.49[2] (the "Allowed Senior Lenders' Claims"). The liens and security interests of the Senior Lenders (other than the Term Loan C Lenders, which are, under the terms of the Credit Agreement, unsecured) are deemed valid, perfected, first priority and indefeasible and neither

---

[2] Of this amount $232,712,443.42 represents principal, accrued interest and fees owing on the revolving credit facility, Term Loan A and Term Loan B as of the Petition Date, and $22,221,128.07 represents principal and accrued interest owing on Term Loan C as of the Petition Date.

6

such liens nor such claims shall be subject to any further challenge, and the Senior Lenders shall

not be required to file any proof of claim or further evidence of the indebtedness owing by the

Debtors or of any collateral securing such indebtedness.

    2.     <u>TREATMENT OF SENIOR LENDERS' CLAIMS</u>. A. Except with

respect to (i) amounts which are required to be funded pursuant to the "Carve Out" and "Wind

Down Budget" under the Cash Collateral Order, (ii) the Contributed Assets (as defined in

Paragraph 3, below, subject to the provisions of Section 4B in respect of the holders of the 14%

Senior Discount Notes and the 12% Senior Subordinated Notes), and (iii) Avoidance Actions (as

defined in Paragraph 3 below and which, whenever used herein, shall be deemed to include the

proceeds of Avoidance Actions) (clauses (i) through (iii), collectively the "Excluded Assets"), the

Senior Lenders shall receive and be entitled to receive and to indefeasibly retain as of the

Settlement Effective Date, in full satisfaction of their secured claims, all proceeds (including all

payments previously received by the Agent or its professionals in connection with these Chapter

11 cases), from the disposition of the Debtors' businesses and assets whether pursuant to the Sale

Orders or otherwise, and all other cash, including without limitation cash currently held or to be

received in the future by the Debtors from any source whatsoever, including without limitation,

litigation recoveries, tax refunds, asset dispositions, unapplied retainers and cash on hand. The

Agent's prepetition and postpetition liens on all such cash and assets other than the Excluded

Assets shall remain in place until the payments required herein have been made to the Agent, and

the Agent shall be entitled to the receipt of all cash and proceeds of assets (whether or not subject

to any such liens) other than the Excluded Assets; provided, however, that the Senior Lenders'

recovery shall not exceed the amount of the Allowed Senior Lenders' Claims. The Debtors (or

such other party as may be responsible for administering this Agreement) shall, without further

7

order of the Court, promptly remit to the Agent all proceeds other than Excluded Assets as and

when such proceeds are received and shall expeditiously remit all such proceeds in their

possession and cause their foreign subsidiaries to repatriate any such proceeds in their possession.

    B.    In consideration of the treatment set forth in Paragraph 2A, the Senior

Lenders waive and relinquish any right or entitlement to recovery or distributions on their

allowed unsecured deficiency claims and, effective upon the receipt of the releases described in

Paragraph 4B from the holders of the 12% Senior Subordinated Notes and the 14% Senior

Discount Notes, further waive any enforcement of their contractual subordination rights vis-à-vis

the holders of the 12% Senior Subordinated Notes and their structural subordination rights vis-à-

vis the holders of the 14% Senior Discount Notes in order to effectuate the reallocation and

distributions set forth in Paragraph 3 below, provided, however that, the Senior Lenders' sharing

and reallocation of the Contributed Assets in respect of the holders of the 14% Senior Discount

Notes and the 12% Senior Subordinated Notes (collectively, the "Noteholders") is expressly

conditioned upon and subject to the provisions of Paragraph 4B.

    3.    <u>ASSET REALLOCATION/CONTRIBUTED ASSETS.</u> A. Subject to

the provisions of Paragraph 4B, the Senior Lenders agree to the following sharing and reallocation

of cash and proceeds, as set forth in the following subparagraphs (i) through (iv) (the "Contributed

Assets"), to the holders of allowed general unsecured claims including those of the Noteholders

(collectively the "Unsecured Creditors") to be distributed in a manner set forth in a liquidating

trust agreement or a Plan (as defined in Paragraph 6), if such a Plan is required:

    i.    $1.75 million of the net proceeds realized from the
closing of the pending Sales;

    ii.    the sale proceeds paid to the Debtors' estate from the
sale of the real properties located in Larne, Northern

8

Ireland (whether paid directly to the Debtors or paid to
TAT Canada and by TAT Canada to the Debtors),
Taylorsville, North Carolina and McAllen, Texas, and
the proceeds paid to the Debtors' estate from the sale of
miscellaneous personal property, including the Debtors'
interest in artwork, equipment and furnishings, located
in the Debtors' Columbus, Ohio offices and listed on
Exhibit A hereto; provided, however, that, in the event
the Debtors seek to implement this Settlement
Agreement through a Plan, then, to the extent that the
Debtors' estates do not otherwise have sufficient readily
available unencumbered assets to pay administrative
expenses required to be paid in order to confirm such a
Plan (other than professional fees, including the Agent's
professional fees, incurred pursuant to Paragraph 11
below), the estate shall have the benefit of up to
$250,000 of the Contributed Assets described in this
subparagraph (ii) for the payment of such administrative
expenses (the "Administrative Expense Carve Out");
provided further that the aggregate Contributed Assets
under subparagraphs (i) and (ii) shall not together
exceed $3 million (inclusive of the Administrative
Expense Carve Out) with any excess over such $3
million to be promptly remitted to the Senior Lenders
and any such excess will not constitute "Contributed
Assets";

iii.  $250,000 of cash collateral (which shall be asset sale
proceeds), plus 10% of the net recoveries derived from
(x) the Debtors' claims and causes of action against Star
Services, Inc. relating to the litigation bearing Supreme
Court of the State of New York Index # 605676/97 and
generally referred to as the "Star Services Litigation"
and (y) income tax refunds received by the Debtors
from and after April 15, 2003, for the purpose of
establishing a "Creditors' Trust" to investigate and
pursue claims, actions and causes of action not
specifically released under this Settlement Agreement,
assertable by or on behalf of the Debtors or their estates
for the benefit of unsecured creditors and, including
claims arising under Chapter 5 of the Bankruptcy Code
("Avoidance Actions"), provided the Contributed
Assets under this subparagraph (iii) shall not exceed
$750,000, with any excess over $750,000 to be
promptly remitted to the Senior Lenders and which

9

excess (including any net recoveries derived from the assets described under (x) and (y) beyond the amount allocated to the Creditor Trust in this paragraph (iii)) will not constitute "Contributed Assets";

iv.     the Cash Collateral Order shall be amended (or deemed amended on the Settlement Effective Date) to provide that the Reallocated Monies shall remain as a reserve with the estate (not subject to the requirement that such Reallocated Monies be returned to the Agent), and that the first $200,000 of any such Reallocated Monies shall be allocated and earmarked for the payment of the allowed and unpaid fees and expenses of the Creditors' Committee's professionals incurred from and after May 1, 2003, with any remaining Reallocated Monies available for payment of other administrative expenses of the Debtors' estates.

B.     The Contributed Assets, as and when received by the Agent, shall be held by the Agent in a separate interest bearing account pending the earlier to occur of (i) the Settlement Effective Date (as defined herein) at which time such Contributed Assets shall be remitted to such account as has been designated by the Creditors' Committee, if any, for further distribution in accordance with the terms hereof upon order of the Court pursuant to a confirmed Plan (as defined in Paragraph 6), or other court order (provided that the Debtors or such other entity as may be administering this Settlement Agreement shall be responsible for the costs of maintaining such account for so long any of the Contributed Assets are held by the Agent), or (ii) the Settlement Termination Date (as defined herein) at which time such Contributed Assets may be provisionally applied by the Agent in accordance with the Cash Collateral Order. In the event any of the assets described in Paragraph 3A have not been liquidated as of the Settlement Effective Date ("Unliquidated Contributed Assets"), the provisions of this Paragraph 3 shall apply to the proceeds of such Unliquidated Contributed Assets as and when any of such Unliquidated Contributed Assets are liquidated. The Debtors shall use their reasonable best

10

efforts to promptly liquidate and reduce to cash the Unliquidated Contributed Assets, provided

that the disposition or liquidation of the Unliquidated Contributed Assets shall be on terms

reasonably acceptable to the Agent and the Creditors' Committee. The Agent's prepetition and

postpetition liens on the Unliquidated Contributed Assets shall remain in place until such

Unliquidated Contributed Assets have become Contributed Assets and the Senior Lenders'

allocable share of such Assets has been remitted to the Agent for distribution to the Senior

Lenders. All interest accruing on the Contributed Assets shall constitute Contributed Assets.

4.       RELEASES AND WAIVER OF CLAIMS AND INTERESTS.

         A.  Releases by the Debtors and the Creditors' Committee – The Debtors and the

Creditors' Committee, on behalf of themselves and the estates of the Debtors, and each of their

respective predecessors, successors and assigns (the "Releasing Estate Parties"), hereby fully

waive, release and forever discharge the Agent and each of the Senior Lenders and each of their

agents, employees and professionals ("Released Lender Parties") from any and all manner of

actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises,

liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs,

surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent,

which the Releasing Estate Parties have had, now have, or may hereafter have against the

Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning

of time through and to the Settlement Effective Date; provided, however, that nothing in this

Paragraph 4A releases any Parties' obligations or agreements pursuant to this Settlement

Agreement, or bars claims directed solely at enforcing the provisions of this Settlement

Agreement.

11

B. Releases By Wachovia, U.S. Bank and Noteholders – Wachovia and U.S.

Bank, and each of their respective predecessors, successors and assigns (together, the "Trustees")

shall use their reasonable best efforts either to obtain authority under their respective indentures

or, pursuant to the Bankruptcy Code (including pursuant to a Plan) to cause their constituencies

to, fully waive, release and forever discharge the Released Lender Parties from any and all

manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements,

promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-

offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or

contingent, which the Releasing Trustee Parties have had, now have, or may hereafter have

against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the

beginning of time through and to the Settlement Effective Date relating to or concerning in any

way the Debtors, the Credit Agreement, the 12% Senior Subordinated Notes and the 14% Senior

Discount Notes (all of the foregoing, collectively the "Noteholder Claims"); provided, however,

that nothing in this Paragraph 4B contemplates the release of any Party's obligations or

agreements under this Settlement Agreement or the bar of claims directed solely at enforcing the

provisions of this Settlement Agreement. The Trustees further agree that, in the event this

Settlement Agreement is consummated as part of or otherwise incorporated into a Plan (as

defined in Paragraph 6), they shall support and use their reasonable best efforts to obtain

acceptance by their constituencies of such Plan, which shall provide for the releases set forth

herein by the Trustees and by all holders of the 12% Senior Subordinated Notes and 14% Senior

Discount Notes of the Noteholder Claims. Whether the Contributed Assets are distributed under

a Plan or otherwise, however, it shall be a condition both (i) to the receipt of any Contributed

Assets and any other distributions of any kind and howsoever generated, (such as, by way of

12

example, recoveries obtained by the Creditor Trust), by any Noteholder and (ii) to the waiver by the Senior Lenders, as to any Noteholder, of the Senior Lenders' contractual subordination rights in respect of the 12% Senior Subordinated Notes and structural subordination rights vis-à-vis the holders of the 14% Senior Discount Notes, either that such Noteholder has provided the Agent and Senior Lenders with a release of the Noteholder Claims in a form reasonably satisfactory to the Agent, or that the Bankruptcy Court has determined, in a final order, that the Noteholder Claims have been deemed released as to such Noteholder. The Senior Lenders' waiver of subordination rights shall not apply to any Noteholder who elects not to grant or who is not deemed to have granted such release. With respect to any Noteholder that shall not have granted or deemed to have granted such release, (a) the Agent shall be paid the amount which equals the Noteholder's Share (as defined below) of the amount of Contributed Assets, exclusive of (x) the Contributed Assets described in Paragraph 3(A)(iii), and (y) the pro rata portion of the Administrative Expense Carve Out allocable to such non-releasing Noteholder (which shall be an amount equal to the Noteholder's Share of the Administrative Expense Carve Out), and (b) such Noteholder shall not receive any distributions from the estates, including any proceeds of recoveries obtained through the use of Contributed Assets described in Paragraph 3(A)(iii), with distributions instead to be reallocated, pursuant to a confirmed Plan or other order of the Court, among the allowed claims of other Unsecured Creditors. "Noteholder's Share" shall mean the ratio of the allowed claims of such non-releasing Noteholder to the allowed claims of all Unsecured Creditors.

C. Limitation on Release of Term C-Lenders – The releases and waivers contained in Paragraph 4A of this Settlement Agreement for the benefit of the Released Lender Parties shall also apply to the Term-C Lenders (DLJ Capital Funding, Inc., DLJ Merchant

13

Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P , DLJ Offshore Partners II,

C.V., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P.,

DLJ Millenium Partners, L.P., DLJ ESC II, L.P., DLJ Millenium Partners-A, L.P. and

Donaldson, Lufkin and Jenrette Securities Corporation (collectively, the "Term-C Lenders")) and

their affiliates, insiders (as defined in Section 101 of the Bankruptcy Code), agents, employees

and professionals, only in respect of the Term-C Loans under the Credit Agreement (as defined

therein) and notwithstanding anything herein to the contrary, the Term-C Lenders and their

affiliates, insiders (as defined in Section 101 of the Bankruptcy Code) agents, employees and

professionals, shall not otherwise be released or deemed released. Nothing contained herein shall

be deemed to discharge, impair or otherwise affect any claim, action, cause of action or right

against the Term-C Lenders and any affiliate, insider, agent or professional of the Term-C

Lenders, except as specifically set forth in the preceding sentence, provided however that the

reservation of non-released claims, causes of action or rights in this Paragraph shall not extend to

the Released Lender Parties.

     D.  The Agent and the Senior Lenders – Except to the extent specifically

otherwise provided herein, the Agent and the Senior Lenders hereby waive and relinquish any

and all interest in and claims that each of them have or may have against the Contributed Assets

and Avoidance Actions.

     E.  Release of Certain Avoidance Actions – In consideration for the agreement set

forth herein and the benefits and services provided by the Released Employees (defined below),

and subject to the terms of this Settlement Agreement, the Debtors, the Creditors' Committee,

the Agent and the Senior Lenders, on behalf of themselves and the estates of the Debtors, and

each of their respective predecessors, successors and assigns, hereby fully waive, release and

14

forever discharge all avoidance claims and causes of action arising under chapter 5 of the Bankruptcy Code or otherwise relating to or concerning the conversion from recourse to non-recourse of certain loans and the deferred payment of certain bonuses, in an aggregate amount not to exceed $250,000, in respect of the following employees of the Debtors: Michael Elia, Fred Stewart, Steve Crea, and Phil Pittman ("Released Employees").

F.  Scope of Releases – The Parties acknowledge and agree that nothing contained in the foregoing releases shall release or discharge any person or entity other than the specifically identified beneficiaries of the releases in this Paragraph 4.

5.    SUPPLEMENTAL SEVERANCE PROGRAM.  On April 14, 2003, the Bankruptcy Court entered an order approving, and authorizing the Debtors to make payments under, Debtors' Employee Compensation Program, in an amount not to exceed $750,000, from sums allocated in the Wind Down Budget, for employees who are not covered by the KERP and the KESP but who are not being hired by the purchasers of the Debtors' assets (the "Severance Pay Order"). Notwithstanding the Severance Pay Order, the Debtors have agreed that until sufficient excess funds have been identified in the Wind Down Budget, the Debtors would not distribute not more than $500,000 of the $750,000 that was identified as "Employee Benefits" unrelated to Sales in the Wind Down Budget, so that the remaining $250,000 of such $750,000 would be applied to the $500,000 of Reallocated Monies. The Debtors have identified sufficient additional unused funds related to wind down costs unrelated to Sales (as set forth in the Wind Down Budget) thus, the Creditors' Committee, Wachovia and U.S. Bank have consented to and agreed, absent any errors with respect to identified recipients and the calculation of applicable amounts, not to raise any objection to, the Debtors making severance payments not to exceed $750,000 in accordance with the Severance Pay Order.

15

6.    <u>SETTLEMENT EFFECTIVE DATE.</u> Subject to Paragraph 7 herein, the date this Settlement Agreement shall become effective and shall be binding upon and inure to the benefit of all the Senior Lenders, the Agent, the Debtors, the Creditors' Committee, Wachovia and U.S. Bank (the "Settlement Effective Date") shall be the earlier of (i) the date on which the Bankruptcy Court enters a final and non-appealable order approving this Settlement Agreement if the Settlement Agreement is executed by or on behalf of all of the Senior Lenders, or (ii) the date on which the Bankruptcy Court enters a final and non-appealable order confirming a plan of liquidation proposed by the Debtors which incorporates the terms of and is otherwise consistent with this Settlement Agreement and is in form and substance reasonably acceptable to the Creditors' Committee, Wachovia, U.S. Bank, the Debtors and the Agent ("Plan"). Notwithstanding the prior occurrence of the Settlement Effective Date, no holder of the 12% Senior Subordinated Notes or the 14% Senior Discount Notes shall be bound by or entitled to the benefit of this Settlement Agreement until such holder shall have provided (or be deemed to have provided) the release set forth in Paragraph 4B. For the avoidance of doubt, upon the Settlement Effective Date, the obligations of the Agent and the Senior Lenders, whether under this Settlement Agreement or otherwise, to the Debtors and the other signatories to this Settlement Agreement shall be limited to their consent to the reallocation of the Contributed Assets in accordance with and subject to the terms and conditions of this Settlement Agreement, the obligations under the Cash Collateral Order in respect of the Carve Out and the Wind Down Budget, the continuing confidentiality obligations under the Credit Agreement and, to the extent the Agent and the Debtors may mutually agree, to the continuation of the existing cash management system with the Agent. For the further avoidance of doubt, the allowance of the Senior Lenders' liens and claims, as set forth in Paragraph 1, the treatment of the Allowed Senior

16

Lenders' Claims, as set forth in Paragraph 2, the releases of the Senior Lenders set forth in Paragraph 4 and the reallocation of the Contributed Assets set forth in Paragraph 3 shall be final and irrevocable upon the Settlement Effective Date, without regard to whether the Debtors effectuate a Plan or whether (or in what manner) the distributions contemplated herein for Unsecured Creditors are effected.

7.    SETTLEMENT TERMINATION EVENT. A Settlement Termination Event shall be the earliest to occur of the following, provided that the Settlement Effective Date shall not previously have occurred: (i) May 14, 2003, (x) if this Settlement Agreement has not been executed by or on behalf of the Creditors' Committee, the Debtors, Wachovia, U.S. Bank and holders of not less than two-thirds (2/3) in amount and over one-half (1/2) in number of the holders of the Senior Lenders' claims, or (y) a motion for approval of this executed Settlement Agreement ("Settlement Motion") has not been filed with the court; (ii) June 15, 2003, if a final and non-appealable order approving the Settlement Motion has not been entered by the Bankruptcy Court and become final; (iii) May 30, 2003, if the Plan and disclosure statement have not been filed with the Court; and (iv) August 15, 2003, if a final and non-appealable confirmation order has not been entered in respect of such Plan. In the event of the occurrence of a Settlement Termination Event for any reason, including the failure to confirm the Plan due to the insufficiency of estate funds to pay administrative or priority claims under a Plan, the Settlement Agreement shall be deemed withdrawn and shall be null and void and of no further force and effect, and the parties shall be restored to their respective rights as if the Settlement Agreement had not been executed, except that (i) the Bar Date Amendment (as defined in Paragraph 9(a) below) shall survive the occurrence of any subsequent Settlement Termination

17

Event and (ii) provided that this Settlement Agreement is approved by order of the Bankruptcy Court, the provisions of Paragraph 8 of this Settlement Agreement shall survive the occurrence of any subsequent Settlement Termination Event.

8.    WITHDRAWAL OF TRUSTEE MOTION.  Upon the entry of a final order approving this Settlement Agreement, the Creditors' Committee will withdraw its Trustee Motion and such withdrawal shall be with prejudice to the filing by the Creditors' Committee of any future motion seeking the same or similar relief on substantially the same factual grounds, provided that nothing in this Paragraph 8 shall limit the Creditors' Committee's right to file a motion for appointment of a chapter 11 trustee or examiner based on events or facts occurring after the date of this Settlement Agreement.  Wachovia and U.S. Bank likewise agree not to file any further motion(s) seeking similar relief on substantially the same factual grounds as are set forth in the Trustee Motion, but shall retain the right to file a motion for appointment of a chapter 11 trustee or examiner based on events or facts occurring after the date of this Settlement Agreement.

9.    AMENDMENTS OF OTHER ORDERS. A.  The Cash Collateral Order shall be amended (or deemed amended as of the Settlement Effective Date) to the extent necessary to implement the provisions of Paragraphs 3A(iv) and 5 herein.

B.    Except as expressly amended hereby, the provisions of the Cash Collateral Order shall continue in full force and effect and shall not be deemed altered or affected in any way by this Settlement Agreement.

18

10.   SUBSTANTIVE CONSOLIDATION/CREDITORS' TRUST.  The

Plan shall provide for the substantive consolidation of the Debtors' estates for purposes of Plan

distributions.  The Plan shall also provide for the creation and implementation of a Creditors'

Trust for the benefit of Unsecured Creditors of the Debtors, which would be funded with the

proceeds of the Contributed Assets received under Paragraph 3A(iii) and the Avoidance Actions

and the Creditors' Trust shall pursue all claims, actions and causes of action that have been or

could be asserted by the Debtors or their estates, including Avoidance Actions, other than the

claims specifically released under this Settlement Agreement.

11.   MONITORING/ADMINISTRATION/SUPPORT.  All parties to this

Settlement Agreement shall be entitled to a monthly written accounting and status report from

the Debtors or such other legal entity as may be administering the estate or the implementation of

this Settlement Agreement, which shall include an accounting of all asset dispositions,

distributions, cash and other assets in which the estate has an interest and such other information

as may be necessary or desirable in order to monitor the implementation of this Settlement

Agreement.  Representatives of the Parties shall continue to be provided reasonable access to the

entity administering the estate and the implementation of this Settlement Agreement, and the

books, records and other relevant information in order to further monitor the implementation of

this Settlement Agreement.  The Parties shall use their reasonable best efforts and endeavor in

good faith to implement, and conclude, as expeditiously and cost effectively as possible, the

Settlement Agreement through a Plan or otherwise.  The Chapter 11 Cases shall not be dismissed

or converted to a case under Chapter 7 of the Bankruptcy Code unless and until procedures

reasonably acceptable to the Parties hereto have been adopted to carry out the provisions of this

19

Settlement Agreement, including the disposition of assets and distribution of proceeds as set forth herein and the turnover of cash and proceeds to the Agent, as provided herein, provided that the foregoing requirements are not intended to and shall not contravene the Debtor's exercise of its fiduciary duties.  To the extent that the Agent is required to take any action to enforce its rights under this Settlement Agreement, the Parties to this Settlement Agreement agree not to contest the Agent's entitlement to an administrative claim for its reasonable fees and expenses, including professional fees, with respect to such enforcement.  To the extent that confirmation of a Plan is necessary to achieve the Settlement Effective Date (or to achieve the releases set forth in Paragraph 4B), then, subject to the terms and conditions of this Settlement Agreement, the Parties shall recommend to their constituencies entitled to vote on such a Plan that they vote in favor of the Plan.

12.    BINDING EFFECT.  From and after the Settlement Effective Date, this Settlement Agreement shall inure to the benefit of and be binding upon the Parties and their respective agents, representatives, successors and assigns, including without limitation, any chapter 7 trustee or any other representative of these estates, custodian of the assets subject to this Settlement Agreement or such other legal entity as may be responsible for carrying out all or any portion of this Settlement Agreement.  Prior to the Settlement Effective Date, no signatory hereto shall assign its claim against the Debtors unless such assignee executes a written agreement consenting to the terms of this Settlement Agreement and agreeing to comply with the terms and conditions hereof.

13.    MISCELLANEOUS.  The terms of this Settlement Agreement are conditioned upon the completion of documentation, including pleadings, in form and substance

20

reasonably acceptable to all parties. This Settlement Agreement is not and shall not be deemed to be a solicitation for consents to a Plan. Acceptance of a Plan shall not be solicited from any creditor until such creditor has received the appropriate disclosure statement and related ballots, as approved by the Bankruptcy Court.

14.   FIDUCIARY OBLIGATIONS.  Nothing herein shall be interpreted to conflict with or to restrict the performance of any fiduciary duty of the Debtors, the Creditors' Committee or the Trustees, except that it is acknowledged and agreed that, based upon the present facts known to the Parties as of the date of this Settlement Agreement, the terms of this Settlement Agreement are in the best interest of the Debtors' estates and of the unsecured creditors of such estates, and therefore consistent with such fiduciary duties.

15.   REPRESENTATION, WARRANTIES AND COVENANTS.  Each of the Parties to this Settlement Agreement hereby represents and warrant as to itself as of the date hereof that:

A.   Each of the Parties has full right, power, authority, and legal capacity and is competent to enter into and perform this Settlement Agreement and each agreement, document or instrument executed hereunder.

B.   For each such Party that is a corporation, it is a corporation duly organized and validly existing under the laws of its state of incorporation.

C.   This Settlement Agreement constitutes the valid and binding obligation of such Party and is enforceable in accordance with its terms.