IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

----------------------------------------------------x
                                :    Chapter 11
In re                             :
                                  :    Case No.  02-13672 (KJC)
INSILCO TECHNOLOGIES, INC., et al.[1], :
                                  :    Jointly Administered
                  Debtors.     :
                                  :
                                  :    Re . Docket Nos. 1249 and 1250
----------------------------------------------------x

## ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b), 1142(b) and 105(a) APPROVING LIQUIDATING TRUST AGREEMENT AND GRANTING RELATED RELIEF

This matter having come before the Court on the motion (the "Motion")[2] of the

above-captioned debtors (collectively, the "Debtors") seeking entry of an order pursuant to

sections 363(b), 1142(b) and 105(a) of title 11 of the United States Code (the "Bankruptcy

Code") approving the liquidating trust agreement substantially in the form annexed hereto as

Exhibit A  (the "Trust Agreement"), by and among the Debtors, Chad J. Shandler of Traxi, LLC,

as trustee for the Unsecured Creditor Series Beneficiaries (the "Unsecured Creditor Trustee") and

Robert F. Troisio of BTB Associates, LLC, as trustee for the Senior Lender Series Beneficiaries

(the "Senior Lender Trustee" and together with the Unsecured Creditors' Trustee, the "Trustees"

and each individually, a "Trustee") in connection with the Amended Joint Liquidating Plan

Pursuant to Chapter 11 of the United States Bankruptcy Code, which was confirmed on June 10,

2004 (the "Plan") and authorizing Robert J. Troisio ("Troisio") to file final tax returns on behalf

of the Debtors' estates; and the Debtors having requested entry of an order shortening notice of

---

[1] The other debtors in these jointly administered chapter 11 proceedings are Insilco Holding Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

the Motion; and notice of the Motion and the request to shorten notice having been provided to the Office of the United States Trustee, the attorneys for the Creditors' Committee, the attorneys for the Agent for the lenders, the Trustees and all parties that have filed requests for notices in these cases pursuant to Bankruptcy Rule 2002, and that no other or further notice need be given; and an objection (the "Objection") to the motion having been filed by DLJ Merchant Banking Partners II, L.P., DLJ Merchant Banking Partners II-A, L.P., DLJ Diversified Partners, L.P., DLJ Diversified Partners-A, L.P., DLJ EAB Partners, L.P., DLJ ESC II, L.P., DLJ Millenium Partners, L.P., DLJ Millenium Partners-A, L.P., DLJ Offshore Partners II, C.V. and MBP II Plan Investors, lenders to the Debtors (the "DLJMB Lenders"), on behalf of themselves and the former directors of the Debtors who were also affiliated with the DLJMB Lenders (the "Directors", and together with the DLJMB Lenders, the "DLJMB Creditors"); and the Debtors having agreed to modify the Trust Agreement to address concerns raised by the DLJMB Creditors, and in consideration therefore, the DLJMB Creditors having agreed to withdraw the Objection; and sufficient cause appearing therefor; it is

ORDERED that the Motion and the request to shorten notice thereof are hereby granted, and any objections to the Motion that have not been withdrawn are hereby overruled; and it is further

ORDERED that the Trust Agreement is hereby approved; and it is further

ORDERED that the Debtors and the Trustees are hereby authorized to take such actions are as contemplated by the Trust Agreement; and it is further

ORDERED that the Trustees (on behalf of the Trust as the successor in interest to the Debtors for purposes of collecting, liquidating and distributing the the Debtors' remaining Assets

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

(including tax refunds) that have vested in the Trust) are hereby authorized to take such actions as are contemplated by the Trust Agreement; provided that nothing in the Trust Agreement or this Order shall be in derogation of the Trust's status as a "grantor trust" for federal income tax purposes under applicable Treasury Regulations and applicable provisions of the Internal Revenue Code; and it is further

ORDERED that Troisio is authorized to file the Debtors' final tax returns on behalf of the Debtors; and it is further

ORDERED that the Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

Dated:    Wilmington, Delaware
          August ⎯⎯ , 2004

_____
HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Exhibit A (form of Trust Agreement)

# INSILCO LIQUIDATING TRUST AGREEMENT

THIS INSILCO LIQUIDATING TRUST AGREEMENT (this "Agreement"), is made as of the _____ day of August, 2004 among Insilco Technologies, Inc. and certain of its affiliates (collectively the "Debtors")[1], Chad J. Shandler of Traxi, LLC, as trustee for the Unsecured Creditor Series Beneficiaries (the "Unsecured Creditor Trustee"), and Robert F. Troisio of BTB Associates, LLC, as trustee for the Senior Lender Series Beneficiaries (the "Senior Lender Trustee" and together with the Unsecured Creditors' Trustee, the "Trustees" and individually, a "Trustee") in connection with the Amended Joint Liquidating Plan, which was confirmed on June 10, 2004 (the "Plan"). Capitalized terms used herein and not otherwise defined shall have the meanings set forth in the Plan, a copy of which is attached hereto as Exhibit A.

## RECITALS:

A.    On December 16, 2002 the Debtors filed voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code.

B.    On June 16, 2003 the Bankruptcy Court entered an Order approving the Asset Reallocation and Settlement Agreement ("Settlement Agreement") between the Debtors, the Debtors' Senior Secured Lenders, the Official Creditors' Committee and the Indenture Trustees for two bond series issued by the Debtors, which set forth the terms of a global settlement that formed the basis for the Plan.

C.    On June 10, 2004 the Bankruptcy Court entered an order confirming the Plan, which incorporates the Settlement Agreement.

D.    The Plan provides for the creation of a liquidating trust (the "Trust") to hold and administer the Liquidating Trust Assets, in accordance with the terms of this Agreement and the Plan. This Agreement is executed to establish the Trust and to otherwise facilitate the implementation of the Plan.

E.    The primary purpose of the Trust is to liquidate and administer the Liquidating Trust Assets for the benefit of the Beneficiaries in accordance with Treasury Regulation Section 301.7701-4(d). The Trust will not be operated with the objective of continuing or engaging in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

F.    Each Series of the Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes and the Trustees shall operate and maintain each series of the Trust in compliance with Internal Revenue Service Revenue Procedure 94-45,

---

[1] In addition to Insilco Technologies, Inc. the other Debtors include Insilco Holdings Co., InNet Technologies, Inc., Insilco International Holdings, Inc., Precision Cable Mfg. Corporation, Eyelets for Industry, Inc., EFI Metal Forming, Inc., Stewart Stamping Corporation, Stewart Connector Systems, Inc., Signal Caribe, Inc. and Signal Transformer Co., Inc.

2

1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service.

  G. This Trust is also intended to constitute a Series Trust pursuant to Sections 3804 and 3806(b)(2) of the Act.

  NOW, THEREFORE, in consideration of the premises and the mutual covenants agreements and undertakings contained herein:

**ARTICLE I**
**Definitions**

  "Act" means the Delaware Statutory Trust Act, 12 <u>Del. C.</u> § 3801 <u>et seq.</u>

  "Assets" means any and all real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, Rights of Action and any other general intangibles of the Debtors, as the case may be, of any nature whatsoever, including, without limitation, the property of the estate pursuant to Section 541 of the Bankruptcy Code.

  "Bankruptcy Code" means United States Bankruptcy Code, 11 U.S.C. 101, <u>et seq.</u>

  "Beneficiaries" means the Unsecured Creditor Series Beneficiaries and the Senior Lender Series Beneficiaries.

  "Certificate of Trust" means the certificate of trust in respect of the Trust filed with the Delaware Secretary of State pursuant to Section 3810 of the Act, in substantially the form attached hereto as Exhibit A.

  "Confirmation Order" means the order confirming the Plan, entered by the Bankruptcy Court on June 10, 2004 and attached hereto as Exhibit B.

  "Liquidating Trust Assets" means all Assets (other than that Cash which is required under the Plan to be remitted to the Agent on the Effective Date).

  "Plan" means the Amended Joint Liquidating Plan Pursuant to Chapter 11 of the United States Bankruptcy Code, which was confirmed on June 10, 2004.

  "Secretary of State" means the Office of the Secretary of State of the State of Delaware.

  "Senior Lender Series Beneficiaries" means the Senior Lenders and their successors or assigns.

  "Series" or "Series of the Trust" shall have the meaning set forth in Section 2.3 of this Agreement.

3

"Trust Accounts" shall have the meaning set forth in Section 4.1 of this Agreement.

"Unsecured Creditor Series Beneficiaries" means the Holders of Allowed Unsecured Claims.

For purposes of this Agreement, except as otherwise expressly provided herein or unless the context otherwise requires: (a) references to "Articles", "Sections", and other subdivisions, without reference to a particular document, are to be designated Articles, Sections, and other subdivisions of this Agreement; (b) the use of the term "including" means "including but not limited to"; and (c) the words "herein", "hereunder", and other words of similar import refer to this Agreement as a whole and not to any particular provision (unless otherwise specified). The enumeration and headings contained in this Agreement are for convenience of reference only and are not intended to have any substantive significance in interpreting this Agreement. The singular shall include the plural and the plural the singular, when the context so requires, and the feminine, the masculine, and the neuter genders shall be mutually inclusive.

# ARTICLE II
## Organization

2.1    *Trust Name.*  The trust created hereby shall be known as INSILCO LIQUIDATING TRUST, in which name the Trustees may, among other things, conduct the business of the Trust, make and execute contracts on behalf of the Trust, sue and be sued on behalf of the Trust, and take such other actions as the Trustees are authorized hereunder to take.

2.2    *Declaration of Trust.*  (a) For good and valuable consideration, the receipt of which is hereby acknowledged by the undersigned, and pursuant to the terms of the Plan and the Confirmation Order, the Debtors and the Trustee have executed this Agreement and, subject to the provisions, of Section 2.5, each of the Debtors irrevocably and absolutely transfers, assigns, conveys, sets over and delivers free and clear of all liens, claims, encumbrances and interests, of any kind and nature (except in respect of Assets which are not Excluded Assets, which Assets shall remain subject to the Senior Lenders' Liens, as provided in the Settlement Agreement and Plan) (i) the Excluded Assets to the Unsecured Creditor Trustee, and (ii) all other Assets to the Senior Lender Trustee; in each case such transfer is in trust pursuant to the provisions hereof, with such conveyance transferring all of the Debtors' or their estates' right, title and interest in, to and under the Liquidating Trust Assets.

b)    Until such time as they are dissolved, the Debtors shall, as needed and as reasonably requested by the Trustees or either of them, execute and deliver or cause to be executed and delivered to or upon the order of such Trustee(s) all such further documents and instruments as may be reasonably necessary to carry out the purposes and intent of this Agreement; and the Debtors shall take or cause to be taken such other action as the Trustees may reasonably deem necessary or appropriate, in order to vest or perfect in or confer to the Trustees title to and possession of all the Liquidating Trust Assets.

4

A- 260

(c)     Each Trustee hereby accepts the trust created by this Agreement and agrees to hold the assets of the respective Series of the Trust in trust upon and subject to the conditions set forth herein and in the Plan for the use and benefit of the respective Series Beneficiaries. Effective as of the date hereof, the Trustees shall have all of the rights, powers and duties set forth herein, in the Plan, in the Confirmation Order and in the Act with respect to accomplishing the purposes of the Trust. The Trustees hereby agree to execute and file the Certificate of Trust with the Delaware Secretary of State.

2.3     *Delaware Statutory Trust Organized in Series Status.* It is the intention of the parties hereto that the Trust created hereby constitute a statutory trust under the Act, and that this document constitute the governing instrument of the Trust. Effective as of the date hereof, the Trustees shall have all of the rights, powers and duties set forth herein and in the Act with respect to accomplishing the purposes of the Trust with respect to their respective Series of the Trust. The Trustees are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto as Exhibit A. The Trust is a series trust pursuant to Sections 3804 and 3806(b)(2) of the Act, and each Series shall be a separate series of the Trust within the meaning of Section 3806(b)(2) of the Act. As such, separate and distinct records shall be maintained by the Trust for each Series and the assets of the Trust associated with a particular Series shall be held and accounted for by the Trust separately from the assets of any other Series. Except to the extent otherwise expressly provided in this Agreement, the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable only against the assets of such Series. Except to the extent otherwise expressly provided in this Agreement, none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of any other Series. There shall initially be two Series of the Trust. There shall be the Unsecured Creditor Series of the Trust for which the Unsecured Creditor Trustee shall act as trustee, and there shall be a separate Series of the Trust designated as the Senior Lender Series of the Trust for which the Senior Lender Trustee shall act as trustee. In the event that one Series is terminated before the other, the remaining Series Trustee shall have the option, authority and power to cancel the Certificate of Trust and cause the Trust to become solely a liquidating trust that constitutes a grantor trust pursuant to the terms hereof and applicable law or to appoint a new trustee or co-trustee for the purpose of fulfilling the requirements of the Act; provided that if a co-trustee is so appointed, such trustee's only function shall be to fulfill the residency requirements under the Act and the co-trustee shall have no other duties or responsibilities hereunder.

2.4     *Tax Treatment of Liquidating Trust.* For United States federal and applicable state income tax purposes, the transfer of the Assets to the Trust pursuant to and in accordance with the Plan and Confirmation Order shall be treated as a disposition of the Liquidating Trust Assets directly to and for the benefit of the Beneficiaries immediately followed by a contribution of the Liquidating Trust Assets by the Beneficiaries to the Trust for the benefit of the Beneficiaries. The Unsecured Creditor Series Beneficiaries will be treated as the grantors and owners of the Unsecured Creditor Series of the Trust and the Senior Lender Series Beneficiaries will be treated as the grantors and owners of the Senior Lender Series of the Trust. Each Series of the Trust is intended to qualify as a liquidating trust that is treated as a "grantor trust" for federal income tax purposes, and the Trustees shall use their best efforts to operate and maintain each Series in substantial compliance with Internal Revenue Service Revenue Procedure 94-45,

5

1994-2 C.B. 684, and Treasury Regulation Sections 1.671-4(a) and 301.7701-4(d) and all subsequent guidelines regarding liquidating trusts issued by the Internal Revenue Service and each Series shall obtain its own taxpayer ID number and file its own tax returns. The transfer of the Excluded Assets to the Trust shall be treated as a disposition of the Excluded Assets directly to and for the benefit of the Unsecured Creditor Series Beneficiaries immediately followed by a contribution of the Excluded Assets by the Unsecured Creditor Series Beneficiaries to the Unsecured Creditor Series of the Trust for the benefit of the Unsecured Creditor Series Beneficiaries and the transfer of all other Liquidating Trust Assets to the Trust shall be treated as a disposition of such Liquidating Trust Assets directly to and for the benefit of the Senior Lender Series Beneficiaries immediately followed by a contribution of such Assets by the Senior Lender Series Beneficiaries to the Senior Lenders Series of the Trust for the benefit of the Senior Lender Series Beneficiaries. For all federal income tax purposes, consistent valuations of Liquidating Trust Assets shall be used by (i) the Unsecured Creditor Series of the Trust and the Unsecured Creditor Series Beneficiaries, and (ii) the Senior Lender Series of the Trust and the Senior Lender Series Beneficiaries.

2.5    *Transfer to and Vesting of Liquidating Trust Assets in Trust.*  On the Effective Date all Liquidating Trust Assets shall be transferred to and vest in the Trust. The Excluded Assets shall be deposited with the Trust and allocated to the Unsecured Creditor Series of the Trust, free and clear of all Claims, Liens and Equity Interests. The Unsecured Creditor Distribution Fund, the Creditor Trust Expense Fund and the Rights of Action shall all constitute assets of the Unsecured Creditor Series of the Trust, to be administered by the Unsecured Creditor Trustee. All other Liquidating Trust Assets (including Tax Refunds, the Star Services Litigation and any other Assets giving rise to Settlement Proceeds) shall be deposited with the Trust and allocated to the Senior Lender Series of the Trust, to be administered by the Senior Lender Trustee. The Excluded Assets in the Unsecured Creditor Series shall be managed and used by the Unsecured Creditor Trustee for the sole purpose of carrying out the Plan and effectuating the Distributions provided for in the Plan, provided that, in accordance with the Settlement Agreement and the Cash Collateral Order, any amounts included in the Wind Down Budget (other than the Reallocated Monies) that are not required to fund the specific line item expenses for which such amounts were allocated, shall be promptly remitted by the Unsecured Creditor Trustee to the Agent (or, at the Agent's election, to the Senior Lender Trustee for the benefit of the Senior Lenders) together with any other amounts to which the Agent is entitled under the Settlement Agreement or Plan. The Agent's liens shall continue to attach to all Assets in the Trust other than Excluded Assets, including unliquidated Contributed Assets, the Star Services Litigation and all Tax Refunds. The unliquidated Assets in the Senior Lender Series shall be administered by the Senior Lender Trustee subject to the obligation to remit to the Unsecured Creditor Trustee such amounts as may constitute Contributed Assets under the Settlement Agreement and Plan. The Trust shall be deemed the successor in interest to the Debtors solely for purposes of maintaining, preserving, collecting, liquidating and distributing the Debtors' remaining Assets that have vested in the Trust (including tax refunds), as allocated to each Series.

2.6    *Payment of Liabilities.*  Payment of costs and expenses associated with each Series shall be paid from the assets of the respective Series, including the remaining line item expenses for which payment may still reasonably be required under the Budget (and Wind Down Budget); provided that, after the Second Administrative Bar Date, all amounts included in the

6

Wind Down Budget and Budget for which a valid claim has not been timely filed shall be remitted by the Unsecured Creditor Trustee to the Agent (or if the Agent so elects, to the Senior Lender Trustee) not later than thirty days after the Second Administrative Bar Date.

2.7    *Office.* The principal office of the Senior Lender Series of the Trust shall be located at the offices of BTB Associates, attn: Robert Troisio, #2 Pettinaro Drive, Millville, DE 19970, and the principal office of Unsecured Creditor Series of the Trust shall be located at the offices of Traxi, LLC, attn: Chad J. Shandler, 212 West 35th Street, 4th Floor, New York, NY 10001 or at such other addresses as the Trustees may designate by written notice to the parties hereto.

2.8    *Situs of the Trust.* The Trust shall be located in the State of Delaware.

2.9    *Appointment of Trustees.* Chad J. Shandler of Traxi LLC is hereby appointed the trustee of the Unsecured Creditor Series of the Trust, to have all of the rights, powers and duties set forth herein and in the Act. Robert F. Troisio of BTB Associates, LLC is hereby appointed the trustee of the Senior Lender Series of the Trust, to have all of the rights, powers and duties set forth herein and in the Act.

2.10    *Title to Trust property.* From and after the Effective Date, legal title to all of the Trust property shall be vested at all times in the Trust as a separate legal entity and allocated to the respective Series as provided hereunder, except where applicable law in any jurisdiction in which the Trust property may be located requires title to any part of the Trust property to be vested in a trustee or trustees, in which case title shall be deemed vested in the respective Trustee of the Series to which the property belongs. No Beneficiary shall have legal title to any part of the assets of the Trust.

2.11    *Incorporation of Plan.* The Plan (including the Settlement Agreement incorporated in and made a part thereof) is hereby incorporated into this Agreement and made a part hereof by this reference. To the extent of any conflict between the Plan and this Agreement, the Plan shall control.

2.12    *Purpose of the Trust.* (a) The Trust is formed for the purpose of holding and liquidating the Liquidating Trust Assets allocable to each Series on behalf of the Beneficiaries of each such Series, enforcing the rights of such Beneficiaries thereto, collecting the income on the Liquidating Trust Assets, and providing for the orderly investment, conservation, and distribution of any and all of the Liquidating Trust Assets, and undertaking actions as authorized hereunder, in the Settlement Agreement and the Plan. The Unsecured Creditor Series of the Trust shall reduce to Cash or otherwise liquidate the Rights of Action and other Excluded Assets and distribute such liquidated Assets to the Unsecured Creditor Series Beneficiaries in accordance with and subject to the terms and provisions of the Settlement Agreement and the Plan. The Unsecured Creditor Series of the Trust shall also maintain and administer, in accordance with the Trust's powers and responsibilities under the Plan and the Trust Agreement, the Unsecured Creditor Disputed Claims Reserve. The Senior Lender Series of the Trust shall reduce to Cash or otherwise liquidate all Assets other than Excluded Assets and distribute such liquidated Assets in accordance with and subject to the terms of the Settlement Agreement.

7

(b)     As of the Effective Date, (A) the Unsecured Creditor Series of the Trust shall be responsible for (i) the winding up of the Debtors' estates, (ii) liquidating or otherwise reducing to Cash the Excluded Assets in accordance with the Trust Agreement, (iii) filing, prosecuting, abandoning and settling the Rights of Action, (iv) making Distributions to holders of Allowed Priority Claims and Allowed Administrative Claims and to holders of Allowed Unsecured Claims, (v) filing claim objections, settling, or otherwise resolving Disputed Claims, (vi) complying with and carrying out the terms of the Settlement Agreement and Plan to the extent applicable to the Unsecured Creditor Series ; and (B) the Senior Lender Series of the Trust shall be responsible for, (i) overseeing the continued liquidation to Cash of all other Assets (including the Star Services Litigation and the Tax Refunds), paying the expenses (including line item expenses in the Wind Down Budget) associated therewith and incurred in the liquidation of such Assets, and promptly remitting to the Agent all Settlement Proceeds and all Cash (other than Cash which is proceeds of Excluded Assets), and (ii) complying with and carrying out the terms of the Settlement Agreement and Plan, to the extent applicable to the Senior Lender Series. Each Series of the Trust shall have the authority without further Bankruptcy Court approval to liquidate the Assets in its respective Series, to hire and pay reasonable professional fees and expenses of counsel and other advisors necessary to administer its Series, and, in respect of the Unsecured Creditor Series, to prosecute and settle objections to Disputed Claims and to pursue any preserved Rights of Action, and otherwise to take such other actions as shall be necessary to implement the Plan.

(c)     In accordance with the Plan, the Unsecured Creditor Trustee on behalf of the Trust and for the benefit of the Unsecured Creditor Series of the Trust shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue or abandon, the Rights of Action, including all pending adversary proceedings and contested matters involving Excluded Assets (but not including the Tax Refunds or the Star Services Litigation), whether or not such causes of action have been commenced prior to the Effective Date, and shall be substituted as the real party in interest in any such action, commenced by or against the Debtors, the Debtors' estates or the Creditors' Committee. The Unsecured Creditor Trustee may settle, release, sell, assign, otherwise transfer or compromise such Rights of Action, in the Unsecured Creditor Trustee's business judgment, subject to the provisions of the Plan, without Bankruptcy Court approval. The Senior Lender Trustee on behalf of and for the benefit of the Senior Lender Series of the Trust shall be authorized and empowered to pursue and prosecute, to settle, or to decline to pursue such claims, actions and proceedings related to Assets other than Excluded Assets, to collect the Tax Refunds and to realize upon the judgments entered in the Star Services Litigation, and including all pending adversary proceedings and contested matters involving such Assets, whether or not such causes of action have been commenced prior to the Effective Date; and the Senior Lender Trustee shall be substituted as the real party in interest in any such action commenced by or against the Debtors or the Debtors' estates and shall be the successor to the applicable Debtors in respect of such Assets, including in respect of all litigation and proceedings involving the Tax Refunds and Star Services Litigation. Subject to the direction of the Agent, the Senior Lender Trustee may settle, release, sell, assign or otherwise transfer or compromise any such claims, proceedings or actions involving all Assets other than Excluded Assets (and specifically including Tax Refunds and the judgments entered in the Star Services Litigation) without Bankruptcy Court approval.

(d)     Except as otherwise set forth in the Plan, but subject in all respects to the

.8

Settlement Agreement, the Unsecured Creditor Trustee may, but shall not be required to, set-off against any Claim and the Distributions to be made pursuant to the Plan in respect of such Claim, any Rights of Action the estates may have against the Holder of the Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Unsecured Creditor Trustee of any such Rights of Action, set-off or recoupment which the Debtors may have against such Holder.

    2.13   *Status of Trustees.* The Trustees shall each be a "representative of the estate" as that phrase is used in Section 1123(b)(3)(B) of the Bankruptcy Code with respect to the rights and powers granted in this Trust Agreement and in the Plan and Confirmation Order. Except as otherwise set forth in the Plan, the Unsecured Creditor Trustee shall be the successor-in-interest to the Debtors with respect to the Excluded Assets, including any Avoidance Actions or other Rights of Action which were or could have been commenced by the Debtors prior to the Effective Date and shall be deemed substituted for the same as the party in such action, and the Senior Lender Trustee shall be the successor-in-interest to the Debtors with respect to any and all Liquidating Trust Assets other than Excluded Assets (including any and all claims, actions or defenses relating thereto) and shall be deemed substituted for the Debtors in any claim, proceeding or action pending as of the Effective Date to recover such Assets (including all proceedings involving the judgments entered in the Star Services Litigation and proceedings or actions to recover the Tax Refunds). All actions, claims, rights or interests constituting Excluded Assets are preserved and retained and may be enforced by the Unsecured Creditor Trustee as the representative of the Debtors' estate pursuant to 11 U.S.C. § 1123(b)(3)(B) and all actions, claims, rights or interest constituting Liquidating Trust Assets other than Excluded Assets (but specifically including the Star Services Litigation and all Tax Refunds) are preserved and retained and may be enforced by the Senior Lender Trustee as the representative of the Debtors' estates pursuant to 11 U.S.C. § 1123(b)(3)(B).

## ARTICLE III
### Beneficiaries

    3.1   *Identification of Beneficiaries.* The Trust is created for the benefit of the Beneficiaries. The Beneficiaries shall each have an undivided beneficial interest in the assets of their respective Series of the Trust. The initial Beneficiaries are those parties holding Claims (other than Claims that have been disallowed, extinguished or expunged by Final Order) against any of the Debtors as of the Effective Date. The initial Beneficiaries of the Unsecured Creditor Series shall be based on the list of General Unsecured Claims as maintained by Patlett, Inc. (other than those Claims that have been disallowed, extinguished or expunged by Final Order). The Beneficiaries of the Senior Lender Series are the Senior Lenders and their successors and assigns.

    3.2   *Rights of Beneficiaries.* Each Beneficiary shall be entitled to participate in the rights due to a Beneficiary hereunder. Each Beneficiary shall take and hold its beneficial interest in the Trust ("Beneficial Interest") subject to all of the terms and provisions of this Trust Agreement, the Plan, and the Confirmation Order, and any Beneficial Interest shall only include interests that are identified in an Allowed Claim. The Beneficial Interests shall not be certificated. The interest of a Beneficiary of the Trust is in all respects personal property, and upon the death, insolvency or incapacity of an individual Beneficiary, such Beneficiary's

9

Beneficial Interest shall pass to the legal representative of such Beneficiary. A Beneficiary shall have no title to, or any right to possess, manage or control, the Trust estate, the Liquidating Trust Assets or any portion thereof or interest therein, except as expressly provided herein or in the Plan. No surviving spouse, heir or devisee of any deceased Beneficiary shall have any right of dower, homestead or inheritance, or of partition, or any other right, statutory or otherwise, in the Unsecured Creditors Series, but the whole title to all the Trust estate shall be vested in the Trustee for the Series in which such Liquidating Trust Assets are held, and the sole interest of the Beneficiaries shall be the rights and benefits provided to such persons under this Trust Agreement and the Plan.

3.3     *Transfer of Interests of Beneficiaries.* The Beneficial Interest of a Beneficiary of the Unsecured Creditors' Series may not be transferred or assigned in whole or in part except by applicable laws of descent and distribution (in the case of a deceased individual Beneficiary); by operation of law, in accordance with applicable Bankruptcy law; or as otherwise approved by the Bankruptcy Court. The Unsecured Creditors Trust shall not be required to recognize any equitable or other claims to such interest by the transferee thereof, and the named Beneficiary shall remain as such for all purposes hereunder. The restrictions of this Section 3.3 shall not apply to the Beneficiaries of the Senior Lender Series, whose Beneficial Interests shall be freely transferable, provided that prior written notice of any such Transfer shall have been provided to the Agent (in the manner required under the applicable loan documents) and such transfer shall not be recognized until written notice has been so given and then only in respect of payments made to the Beneficiaries of the Senior Lender Series after such notice has been given in accordance with the applicable loan documents. No transfer of the right, title and interest of any Beneficiary in and to the Trust estate or hereunder, by operation of law or otherwise, shall operate to terminate this Trust or affect the validity of this Trust Agreement or entitle any successor or transferee of such Beneficiary to an accounting or to the transfer to it of legal title to any part of the Trust estate.

3.4     *Liability of Beneficiary.* A Beneficiary shall be entitled to the same limitation of liability extended to stockholders of a corporation organized for profit under the Delaware General Corporation Law.

## ARTICLE IV
## Distributions

4.1     *Establishment of Trust Accounts.* The Trustees, for the benefit of their respective Beneficiaries, shall establish or cause to be established and maintained any accounts needed in connection with the purposes of the Trust (the "Trust Account"). Such accounts shall be maintained only at FDIC insured financial institutions including, but not limited to, the Wilmington Trust Company, and shall bear a designation clearly indicating that the funds deposited therein are held for the benefit of the respective Series of the Trust.

4.2     *Investment of Cash.* (a) Cash in the Trust Accounts and any other amounts contemplated by this Trust Agreement shall be maintained in United States dollars or shall be invested by the Trustees in (i) direct obligations of, or obligations guaranteed by, the United

10

States of America, (ii) obligations of any agency or corporation that is or may hereafter be created by or pursuant to an act of Congress of the United States of America as an agency or instrumentality thereof, or (iii) such other obligations or instruments as may from time to time be permitted under section 345 of the Bankruptcy Code; *provided* that the Trustees may, to the extent necessary to implement the provisions of the Plan and this Trust Agreement, deposit moneys in demand deposits at any banking institution or trust company having combined capital stock and surplus in excess of $100,000,000 based upon its most recently available audited financial statements, regardless of whether such investments and deposits are insured. Such investments shall mature in such amounts and at such times as the Trustees, in their discretion, shall deem appropriate to provide funds when needed to transfer funds in accordance with the Plan, make payments to the Trust Accounts or make Distributions in accordance with this Trust Agreement and the Plan.

(b)     Any investments made by a Trustee with Cash that is part of the Liquidating Trust Assets shall remain a part of the Liquidating Trust Assets, allocated to the Series from which such Cash was invested. All interest and income received by the Trustees in respect of investments of the Liquidating Trust Assets shall constitute a part of the Liquidating Trust Assets allocable to the respective Series from which such investment was made.

4.3     *Liquidation of Trust Property.* The Trustees shall liquidate the Trust property pursuant to the Settlement Agreement, Plan and Confirmation Order.

4.4     *No Payment to the Debtors.* In no event shall the Trustees or the Trust distribute any Trust property to any of the Debtors.

4.5     *Distributions.*

(a)     Payments/Order of Priority. The Unsecured Creditor Trustee shall first pay any unpaid Allowed Priority Claims and Allowed Administrative Claims in accordance with the provisions of the Plan and Settlement Agreement (provided that Allowed Professional Fees payable to professionals holding retainers shall first be satisfied from such retainers) before any distributions are made from the Unsecured Creditor Series of the Trust to the Unsecured Creditor Series Beneficiaries. The Senior Lender Trustee shall pay, from the Senior Lender Series of the Trust, those line item expenses in the Wind Down Budget directly relating to Assets in the Senior Lender Series of the Trust (including the judgments entered in the Star Services Litigation and the Tax Refunds). Each Trustee shall pay from its Series all reasonable costs and expenses of the Series for which he is Trustee, including his compensation, as specified in Section 5.4 of this Agreement, together with the reimbursement of such Trustee's reasonable costs, expenses and liabilities incurred in connection with the performance of his duties under this Trust Agreement, and of any professionals rendering services to or for the benefit of his Series of the Trust.

(b)     Distributions to the Beneficiaries of the Unsecured Creditor Series shall be made no less frequently than annually from all net cash derived from Assets of the Unsecured Creditor Series, including all net cash income and all other cash received by the Unsecured Creditor Series in accordance with the terms of the Settlement Agreement, Plan and Confirmation Order, after making due provision for the payment of the costs, expenses, contingent liabilities, amounts

11

necessary to maintain the value of the Assets of the Unsecured Creditor Series and claims of the Unsecured Creditor Series, and, if proceeds of the Unsecured Creditor Series are insufficient to pay a class of Beneficial Interests in full, then Distributions shall be pro rata based on the amount of the Beneficial Interest of a Holder compared with the aggregate amount of Beneficial Interests outstanding, and shall be governed by the terms of the Plan, the Settlement Agreement and this Trust Agreement. Payments shall be made by the Senior Lender Trustee to the Agent for the benefit of the Senior Lender Series Beneficiaries as often as practicable (but not less frequently than quarterly) from all net cash derived from the Assets of the Senior Lender Series, including all net cash income and all other cash received by the Senior Lender Series until all assets of the Senior Lender Series have been liquidated and distributed after making due provision for the payment of the costs, expenses, contingent liabilities, amounts necessary to maintain the value of the Assets of the Secured Creditor Series and claims of the Senior Lender Series.

(c)    Disputed Claims.    Any Distribution to a Holder of a Disputed Unsecured Claim that has not been resolved by Final Order as of the Effective Date shall be made by the Unsecured Creditor Trustee as soon as reasonably practicable when and if an order resolving such claim has been entered and has become a Final Order, and such Claim, if Allowed, shall be treated as if it had been Allowed as of the Effective Date. To the extent that a portion or all of the funds in the Unsecured Disputed Claims Reserve are no longer necessary to cover Disputed Unsecured Claims, such funds shall be available for distribution by the Unsecured Creditor Trustee pursuant to Section 4.5(a) and 4.5(b).

(d)    Method of Payment.    All amounts payable to a Beneficiary pursuant to this Agreement shall be paid by the applicable Trustee to or for the benefit of such Beneficiary in the manner provided in the Plan; provided that (i) all payments by the Senior Lender Trustee shall be made to the Agent who shall distribute same to the Senior Lender Series Beneficiaries, and (ii) all Distributions by the Unsecured Creditor Trustee to certain Unsecured Creditor Trust Beneficiaries on account of Allowed Claims in Class 5 and Class 6 shall be made to the Indenture Trustee for the Noteholders represented in each such Class.

4.6    *Undeliverable Distributions.*

(a)    Holding of Undeliverable Property.    If any distribution by the Unsecured Creditor Trustee of any Cash or other Property of the Unsecured Creditor Series of the Trust to any Beneficiary is returned to the Trust or the Unsecured Creditor Trustee as undeliverable, no further distributions shall be made to such Beneficiary unless the Unsecured Creditor Trustee is notified in writing of such Beneficiary's then current address within the time period specified in Section 9.6 of the Plan. For purposes of this Agreement, undeliverable distributions shall include checks sent to a Beneficiary that have not been cashed within ninety (90) days following the date of issuance of such checks. Any Beneficiary that fails to cash a check within such ninety (90) day period shall be entitled to receive a reissued check from the Trust for the amount of the original check, without any interest, if such Beneficiary so requests the Unsecured Creditor Trustee on or before the later of (A) the first anniversary of the Effective Date or (B) ninety (90) days after the date of issuance of such check, if such check represents a final Distribution, and provides such documentation as the Unsecured Creditor Trustee requests to verify that such Beneficiary is entitled to such check. Undeliverable distributions shall remain in the possession of the Trust until the earlier of (i) such time as the relevant distributions becomes

12

A— 268

deliverable and (ii) the time period specified in Section 4.6(b).

(b)    _Failure to Claim Undeliverable Property._  Within ten (10) Business Days after the later of the first anniversary of the Effective Date or the first distribution under the Plan, the Creditor Trust shall file a list with the Bankruptcy Court setting forth the names of those Entities for which Distributions have been attempted hereunder and have been returned as undeliverable as of the date thereof.  Any Holder of an Allowed Claim that does not assert its rights pursuant to the Plan to receive a Distribution within two (2) months from and after the filing of such list shall have its Claim for such undeliverable Distribution discharged and shall be forever barred from asserting any such Claim against the Debtors, the Trustees or the Creditor Trust.  In such case, any consideration held for Distribution on account of such Claim shall revert to the Creditor Trust for Distribution to the beneficiaries in accordance with the terms of the Plan. Notwithstanding the foregoing, the Indenture Trustees shall deliver the distributions in accordance with their respective Indentures.  Nothing contained in the Plan or in this Agreement shall require the Trust or the Unsecured Creditor Trustee to attempt to locate any Holders of Claims.

## ARTICLE V
## The Trustees

5.1    _Standard of Care._  Each Trustee shall exercise the rights and powers vested in it by this Agreement and use reasonable business judgment in such exercise.  Subject to applicable law and Section 5.3, neither Trustee shall be liable to the Trust or any Beneficiary for any act or omission by the Trustee while acting in good faith and in the exercise of his reasonable business judgment.  The foregoing limitation on liability shall apply equally to the agents, professionals, attorneys, and/or employees of the respective Trustees acting on behalf of such respective Trustee.

5.2    _Bond._  The Trustees shall not be required to provide any bond, surety or security for the performance of the their duties hereunder.

5.3    _Duties of the Trustees._  (a)    Each of the Trustees accepts the trust hereby created and agrees to perform his duties hereunder with respect to the same, but only upon the terms of this Agreement and the Plan.  No implied covenants or obligations shall be read into this Agreement.  Neither Trustee shall be personally liable under any circumstances, except (x) for such Trustee's own willful misconduct, gross negligence or fraud or (y) for taxes, fees or other charges on, based on or measured by any fees, commission or compensation received by such Trustee in connection with the provision of his services hereunder.  In particular, but not by way of limitation:

(i)    The Trustees shall not be personally liable for any error of judgment that does not constitute gross negligence and that was made in good faith;

(ii)    The Trustees shall not be required to take any action that (A) is inconsistent with the purposes of the Trust as set forth herein, or (B) would, to the actual knowledge of a Trustee result in the Trust or any Series of the Trust becoming an

13

A- 269

association taxable as a corporation for federal income tax purposes;

      (iii)    No provision of this Agreement shall require a Trustee to expend or risk its personal funds, or otherwise incur any financial liability in the performance of its rights or powers hereunder, if a Trustee shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured or provided to it;

      (iii)    Under no circumstances shall a Trustee be personally liable for any indebtedness or obligation of the Trust; and

      (iv)    The Trustees shall not be liable for the default or misconduct of any other party and shall not be liable for any act or omission taken at the direction of the Agent or Plan Oversight Committee.

      (b)    The Trustees are authorized and directed to execute and deliver the Basic Documents and each certificate or other document attached as an exhibit to or contemplated by the Basic Documents to which the Trust is to be a party with respect to its respective Series of the Trust. The execution and delivery of, and performance of the terms of, the Basic Documents and each certificate or other document attached as an exhibit to or otherwise contemplated by the Basic Documents to which the Trust is to be a party shall be deemed not to conflict with or constitute a breach or default under this Agreement. In addition, the Trustees shall be vested with the rights, power and benefits set forth herein, which shall include, without limitation, all rights, powers, and benefits afforded to a "trustee" under section 704 and 1106 of the Bankruptcy Code.

      (c)    The Trustees shall incur no liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine and believed by it to be signed by the proper party or parties. The Trustees may accept a certified copy of a resolution of the board of directors or other governing body of any corporate party as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Trustees may for all purposes hereof rely on a certificate, signed by the president or any vice president or by the treasurer or any assistant treasurer or the secretary or any assistant secretary of the relevant party, as to such fact or matter, and such certificate shall constitute full protection to the Trustees for any action taken or omitted to be taken by it in good faith in reliance thereon.

      (d)    In the exercise or administration of the trusts hereunder, the Trustees (i) may act directly or, at the expense of the Creditor Trust Expense Fund in the case of the Unsecured Creditor Series of the Trust or out of assets of the Senior Lender Series in the case of the Senior Lender Series of the Trust, through agents or attorneys pursuant to agreements entered into with any of them, and the Trustees shall not be liable for the default or misconduct of such agents or attorneys if such agents or attorneys shall have been selected by the Trustee with reasonable care and with the approval of the Plan Committee or Agent, as applicable; and (ii) may, at the expense of the applicable series of the Trust, consult with such counsel, accountants and other skilled persons selected with reasonable care and employed by it with the approval of the Plan

Committee or Agent, as applicable, and it shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled persons, provided that the Plan Committee or Agent, as applicable, has approved any such actions taken by the Trustee.

(e)    Except as expressly provided herein, in accepting the trusts hereby created each Trustee acts solely as trustee hereunder and not in its individual capacity, and all persons having any claim against the Trustee by reason of the transactions contemplated by this Agreement shall look only to the Trust's property for payment or satisfaction thereof.

(f)    The Trustees agree that they will not manage, control, use, sell, dispose of or otherwise deal with the Trust property except (i) as expressly required by the terms of this Agreement or (ii) as expressly provided in written instructions of the Agent or Plan Oversight Committee as provided in (h) below.

(g)    Neither of the Trustees incur any liability for any act or omission in his capacity as Trustee answerable or accountable under any circumstances, except for the willful misconduct or gross negligence, provided that a Trustee may be liable for any failure to use ordinary care in connection with the disbursement of funds and for liabilities that may result from the inaccuracy of any representation or warranty of a Trustee in this Agreement.

(h)    The Unsecured Creditor Trustee shall be subject to the direction of the Plan Oversight Committee and the Senior Lender Trustee shall be subject to the direction of the Agent.

(i)    The Trustees shall file all tax returns and other filings with governmental authorities on behalf of each Series of the Trust and the Liquidating Trust Assets it holds for time periods ending on or before termination of the Trust. Subject to definitive guidance from the Internal Revenue Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Trustees of a private letter ruling if the Trustees so request one, or the receipt of an adverse determination by the Internal Revenue Service upon audit if not contested by the Trustees, the Trustees shall file tax returns for each Series of the Trust as a grantor trust pursuant to Treasury Regulations Section 1.671-4(a). The Trustees' filings shall also include requests for determination of tax under Section 505(b) of the Bankruptcy Code (to the extent applicable) and responses to any tax audits. The Trustees shall make available such information to the Beneficiaries as will enable them to properly file their separate tax returns and withhold and pay over any amounts required by tax law.

(j)    Each Trustee is authorized to act as agent for the Series as to which he is Trustee in withholding or paying over any amounts required by any law (including tax law), regulation, rule, ruling, directive or other governmental requirement (including, but not limited to, the "Foreign Investment in Real Property Tax Act") to be withheld or paid by the applicable Series of the Trust in connection with the transfer and assignment of the Liquidating Trust Assets to the Trust pursuant to the Plan. Each Trustee is further entitled to deduct any United States federal or applicable state withholding taxes from further payments or distributions made with respect to Allowed Claims, as appropriate, and shall otherwise comply with Section 346 of the Bankruptcy Code.

15

A- 271

(k)    All net income of each Series of the Trust and net proceeds from the disposition of such Series' Assets shall be subject to United States federal and applicable state income taxation in the year such net income or net proceeds are realized and taxable to the respective Series Beneficiaries, whether or not such amounts are immediately distributed to the Beneficiaries.

(l)    The Trustees shall incur no liability to anyone in acting in reliance upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties. Unless other evidence in respect thereof is specifically prescribed herein, any request, direction, order or demand mentioned herein shall be sufficiency evidenced by written instruments signed by a person purporting to be an officer. As to any fact or matter the manner of ascertainment of which is not specifically prescribed herein, the Trustee may for all purposes hereof rely on a certificate signed by a person purporting to be an officer as to such fact or matter, and such certificate shall constitute full protection to the Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.

(m)    In acting hereunder, each of Chad Shandler and Robert Troisio acts solely as trustee and not in his individual capacity, and except as may be otherwise expressly provided herein, all persons having any claim against either Trustee by reason of the transactions contemplated hereby shall look only to the applicable Series of the Trust for payment or satisfaction thereof.

(n)    The Trustees shall not have any duty or obligation to manage, control, use, sell, dispose of or otherwise deal with the Trust or Trust property or to otherwise take or refrain from taking any action under this Agreement except as expressly required by the terms hereof or as expressly provided in written instructions as provided herein, and no implied duties or obligations shall be read into this Agreement against the Trustees. The Trustees shall not be required to take any action under this Agreement unless the Trustee shall have been indemnified, in manner and form satisfactory to such Trustee, against any liability, cost or expense (including counsel fees and disbursements) which may be incurred in connection therewith. The Trustees shall not be required to take any action under this Agreement if such Trustee shall reasonably determine or shall have been advised by counsel that such action is contrary to the terms of this Agreement or is otherwise contrary to law.

(o)    The Trustees will manage the business and affairs of the Trust in accordance with the terms of the Act; provided, however, that the Trustees undertake to perform only such duties as are specifically set forth in this Trust Agreement and as it may be directed from time to time.

(p)    Each Trustee may fully rely upon and shall have no liability in connection with calculations or instructions forwarded to the Trustee by the Plan Oversight Committee, in the case of the Unsecured Creditor Trustee, and the Agent, in the case of the Senior Lender Trustee.

(q)    The Trustees shall not be liable with respect to any act or omission in good faith in accordance with the advice or direction as provided herein. Whenever a Trustee is unable to decide between alternative courses of action permitted or required by the terms of this Trust

16

Agreement, or is unsure as to the application, intent, interpretation or meaning of any provision hereof, the Trustees may give notice (in such form as shall be appropriate under the circumstances) to the Plan Oversight Committee or the Agent, as applicable, requesting instructions as to the course of action to be adopted, and, to the extent a Trustee acts in good faith in accordance with any such instruction received, the Trustee shall not be liable on account of such action to any Person. If the Trustee shall not have received appropriate instructions within ten days of such notice (or within such shorter period of time as reasonably may be specified in such notice or may be necessary under the circumstances), it may, but shall be under no duty to, take or refrain from taking such action which is consistent, in its view, with this Agreement and as it shall deem to be in the best interest of the respective Beneficiaries, and the Trustee shall have no liability to any Person for any such action or inaction.

(r)    The Trustees shall not have any responsibility or liability for or with respect to the genuineness, value, sufficiency or validity of the Trust property.

(s)    In no event whatsoever shall the Trustee be liable for any representation, warranty, covenant, agreement, indebtedness or other obligation of the Trust.

(t)    The Trustees shall incur no liability if, by reason of any provision of any present or future law or regulation thereunder, or by any force majeure event, including but not limited to natural disaster, war or other circumstances beyond its control, the Trustees or either of them shall be prevented or forbidden from doing or performing any act or thing which the terms of this Agreement provide shall or may be done or performed.

(u)    Each Trustee shall cooperate fully with the other Trustee in the administration of the Trust. By way of illustration (and not limitation), such duty of cooperation shall include the sharing of information (and the Debtors' books and records) in respect of Series assets, liabilities, and expenses; the turnover of assets due to the other Series when required under the Settlement Agreement and Plan; the preparation and filing of reports and Trust tax returns, and in respect of such other matters as may be necessary or appropriate to the fulfillment by each Trustee of his duties hereunder.

(v)    The Senior Lender Trustee is authorized to and shall file, on behalf of the Debtors' affiliated tax group, any and all federal and state final tax returns required by law and shall be authorized to take such actions as he deems appropriate under Section 505 of the Bankruptcy Code, or otherwise, to recover upon any tax assets that are part of the Senior Lender Series.

(w)    The attorney-client privilege, work product doctrine or other privileges or immunities inuring to the benefit of the Debtors or attaching to documents or communications of the Debtors shall be transferred to the Trust. Each Trustee is authorized to assert or waive any such privilege or doctrine, as necessary or appropriate for the administration of the Series for which he is Trustee and the collection of Assets allocated to such Series, provided that, to the extent any such privilege or doctrine is waived in connection with information requested of any professional previously employed by the Debtors, the Trustees agree that such information request shall be made solely for the purpose of carrying out the Trustee's duties hereunder, that the Trustees shall act in good faith and shall use their best efforts to tailor as narrowly as possible

17

any request so as not to be unduly invasive or burdensome to the professional upon whom the request is made, and that the restrictions set forth in Section 9.11 shall apply to such request.

(x)    So long as both Series exist, each Series shall bear one half of the statutory minimum quarterly US Trustee fees required to be paid pursuant to 11 U.S.C. §1930(a)(6) for any and all open chapter 11 cases, provided that any US Trustee fees over the minimum shall be borne by the Series making the distribution triggering the fee, if applicable. As soon as practicable, the Trustees shall jointly move to close and "final decree" any chapter 11 cases not required to remain open to pursue and maintain any claim, objection or cause of action. The Unsecured Creditor Trustee shall be responsible for filing all post-confirmation quarterly reports required by the US Trustee Operating Guidelines for chapter 11 cases.

(y)    Prior to the filing of the Trust's initial federal tax returns, each Trustee shall, in reliance upon such professionals as the Trustee shall maintain, make a good faith valuation of the Liquidating Trust Assets in his Series as of the Effective Date (other than unliquidated causes of action whose value the Trustee concludes in good faith cannot be determined). Such valuation shall be used consistently by all parties, including the Beneficiaries of such Series, for all purposes, including federal income tax purposes, and shall be provided by the Trustee to the Beneficiaries of his respective Series together with such other information as the Trustee provides to such Beneficiaries for purposes of preparing tax returns.

5.4    *Compensation and Indemnity.* (a) Each Trustee shall be entitled to receive from its respective Series as compensation for his services hereunder such fees as have been separately agreed upon in writing with the Agent (in respect of the Senior Lender Series) and the Plan Oversight Committee (in respect of the Unsecured Creditor Series), which compensation in each case shall not be limited by any provision of law in regard to compensation of a trustee of an express trust.

(b)    With respect to each Trustee, the Series for which he is Trustee shall (i) reimburse the Trustee for all reasonable expenses incurred by him in connection with the execution and performance of his rights and duties hereunder (including reasonable fees and expenses of counsel and other experts); (ii) indemnify, defend and hold harmless such Trustee (in both his individual and trustee capacities) and the officers, directors, employees and agents of the Trustee (collectively, including the Trustee in its individual capacity, the "Indemnified Persons") from and against any and all losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including the reasonable fees and expenses of counsel), taxes and penalties of any kind and nature whatsoever, to the extent that such expenses arise out of or are imposed upon or asserted at any time against one or more Indemnified Persons with respect to the performance of this Agreement, the creation, operation, administration or termination of the Trust, or the transactions contemplated hereby (collectively, "Indemnified Expenses"); and (iii) advance to each Indemnified Person Indemnified Expenses (including reasonable legal fees) incurred by such Indemnified Person in defending any claim, demand, action, suit or proceeding, prior to the final disposition of such claim, demand, action, suit or proceeding, upon receipt by the applicable Series of the Trust of a written request therefor and of an undertaking by or on behalf of the Indemnified Person to repay such amount if it shall ultimately be determined that the Indemnified Person is not entitled to be indemnified therefor under this Article V; provided however, that notwithstanding anything in this Agreement to the contrary, the Trust (and each

18

Series) shall not be required to reimburse a Trustee for any expenses, indemnify an Indemnified Person for Indemnified Expenses, or advance any Indemnified Expenses to an Indemnified Person, to the extent any such obligation arose or was the result of the bad faith, willful misconduct or gross negligence of such Indemnified Person.

5.5    Tenure, Resignation, Removal and Replacement of Trustee.

(a)    The authority of the Trustees shall be effective as of the Effective Date and shall remain in full force and effect, with respect to the Unsecured Creditor Trustee, until all distributions have been made to the Unsecured Creditor Series Beneficiaries, and with respect to the Senior Lender Trustee, until all payments have been made to the Senior Lender Series Beneficiaries.

(b)    Either Trustee may resign and be discharged by the Trust created by this Agreement upon not less than 30 days' prior written notice to the Plan Oversight Committee, in the case of the Unsecured Creditor Trustee, and to the Agent, in the case of the Senior Lender Trustee. Upon receiving such notice of resignation, the Plan Oversight Committee or Agent, as the case may be, shall use its best efforts promptly to appoint a successor Trustee by written instrument or instruments delivered to such resigning Trustee and the successor Trustee. In addition, the Plan Oversight Committee, in the case of the Unsecured Creditor Trustee, and the Agent, in the case of the Senior Lender Trustee, may remove such Trustee, with or without cause, and appoint a successor Trustee by written instrument or instruments delivered to the Trustee being removed and to the successor Trustee. Any resignation or removal of a Trustee and appointment of a successor Trustee shall become effective only upon acceptance of the appointment by the successor Trustee. If no successor Trustee shall have been appointed within 30 days after notice of such resignation or removal has been delivered, the Trustee may apply to the Bankruptcy Court for the appointment of a successor Trustee, and the Bankruptcy Court may, after such notice (if any) as it may deem proper, appoint a successor Trustee.

(c)    In the event of the death or incapacity of a Trustee, the Plan Oversight Committee or the Agent, as applicable, shall appoint a successor Trustee by written instrument delivered to the successor Trustee.

(d)    For so long as the Trust is intended to qualify as a statutory trust under the Act, the Trust shall have at least one Trustee that qualifies under the Act, and any successor Trustee appointed hereunder shall promptly file an amendment to the Certificate of Trust with the Delaware Secretary of State identifying the name and principal place of business of such successor Trustee in the State of Delaware.

(e)    No successor Trustee shall be in any way responsible or liable for the acts or omissions of any predecessor Trustee.

## ARTICLE VI
### Reports to Beneficiaries

6.1    *Reports to Beneficiaries.*  Not later than 120 days following the Effective Date, each Trustee shall file with the Bankruptcy Court and serve on counsel to the Agent and the Plan

19

A— 275

Oversight Committee a status report and a detailed accounting explaining what progress has been made toward entry of the Final Decree. The status reports shall also be served on the US Trustee and those parties who have requested special notice post-confirmation. Until entry of the Final Decree, further status reports shall be filed every 60 days and served on the same entities. Each status report shall include a description of Assets sold or otherwise realized upon during the relevant period, gross and net proceeds received, Distributions and payments made, expenses incurred and paid, remaining Wind Down Budget funds and projected Wind Down Budget expenses, and cash on hand, as well as a detailed reporting of claims objections and the status of all contested matters and litigation.

## ARTICLE VII
### Termination of Trust

7.1    *Termination of Trust.* (a)    This Agreement (other than Section 5.4) shall terminate and the Trust shall dissolve and terminate and be of no further force or effect upon the earlier to occur of (i) the final distribution of all monies and other Trust property in accordance with the terms of this Agreement, the Plan and Confirmation Order, or as provided herein, and (ii) five (5) years after the date hereof, provided that a Trustee may terminate the Series for which he is Trustee at such earlier time as he determines that the benefits of further maintaining such Series are outweighed by the costs thereof, or at such time as a final distribution has been made of all property held in such Series, and provided further that the term of a Series may be extended for additional periods of time if such extension(s) are necessary to the liquidating purposes of such Series and the Bankruptcy Court has approved such extension(s) within six (6) months of the commencement of any extended term. Multiple extensions may be obtained so long as Bankruptcy Court approval is obtained within six (6) months after the commencement of each extended term; provided, however, that the aggregate length of all such extensions shall not exceed four (4) years, unless the Trustee seeking such extension receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Trust as a grantor trust for United States federal income tax purposes. The Trustees will not unduly prolong the duration of the Trust and will at all times endeavor to resolve, settle or otherwise dispose of all Claims and the Trust property, to effect distributions to Beneficiaries in accordance with the terms hereof, the Plan and Confirmation Order and to terminate the Trust as soon as practicable. In the event that either Trustee elects to terminate a Series, he shall provide twenty (20) days notice thereof to the other Trustee and to the United States Trustee, and upon such termination, he shall cease to act as a Trustee hereunder and shall have no further duties or responsibilities under this Agreement or otherwise, except as provided in (d) below.

(b)    The bankruptcy, liquidation, dissolution, death or incapacity of any Beneficiary shall not (i) operate to terminate this Agreement or the Trust, (ii) entitle such Beneficiary's legal representatives or heirs to claim an accounting or to take any action or proceeding in any court for a partition or winding up of all or any part of the Trust or the Trust property or (iii) otherwise affect the rights, obligations and liabilities of the parties hereto.

(c)    No Beneficiary shall be entitled to revoke or terminate the Trust.

(d)    After the termination of the Trust and for the purpose of liquidating and winding up the affairs of the Trust, each Trustee shall continue to act as such until his duties have been

20

A-276

fully performed. Upon distribution of the Trust property allocable to his Series, and unless ordered otherwise by the Bankruptcy Court, the Trustees shall retain for a period of five (5) years the books, records, Beneficiary lists and certificates and other documents and files which shall have been delivered to or created by such Trustee. All of such records and documents may, but need not, be destroyed at any time after five (5) years from the completion and winding up of the affairs of the Trust. Except as otherwise specifically provided herein, upon the discharge of all liabilities of the Trust and final distribution of the Trust Property allocable to his Series, the Trustee for such Series shall have no further duties or obligations hereunder. Upon the completion of winding up of the Trust, including the payment or the making reasonable provision for payment of all obligations of the Trust in accordance with Section 3808(e) of the Act, the Trustees shall file a certificate of cancellation with the Delaware Secretary of State in accordance with Section 3810 of the Act (assuming the Trust still constitutes a statutory trust under the Act), at which time the Trust and this Trust Agreement shall terminate.

## ARTICLE VIII
### Amendment

8.1    *Method of Amendment.*    (a) This Agreement may only be amended by written instrument executed by the Trustees, Agent and the chairman of the Plan Oversight Committee which is approved by the Bankruptcy Court if such amendment affects both Series or the Trust generally. To the extent any proposed amendment of this Agreement would affect only a particular Series (and would not have a material adverse affect on the other Series or amend or conflict with the Plan or Confirmation Order), such amendment may be effected by written instrument executed by such Series' Trustee and the Agent or Chairman of the Plan Oversight Committee, as applicable, upon 5 days prior written notice to the other Trustee provided that the amending Trustee may, if he so elects, seek Bankruptcy Court approval of such amendment.

(b)    Promptly after the execution of any amendment to the Certificate of Trust, the Trustees shall cause the filing of such amendment with the Delaware Secretary of State.

## ARTICLE IX
### Miscellaneous Provisions

9.1    *Intention of Parties to Establish Trust.* This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership or joint venture of any kind. It is intended as a trust to be governed and construed in all respects as a trust.

9.2    *Filing Documents.* A copy of this Agreement and all amendments thereof shall be filed in an office or residence of the Trustees and shall be available at all times for inspection by the Beneficiaries or its duly authorized representative.

9.3    *Governing Law.* THIS AGREEMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, WITHOUT REFERENCE TO ITS CONFLICT OF LAW PROVISIONS, AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

9.4    *Separability.* In the event any provision of this Agreement or the application

thereof to any person or circumstances shall be finally determined by a court of proper jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.5     *Notices.* Unless otherwise expressly specified or permitted by the terms hereof, all notices shall be in writing and shall be deemed given upon receipt by the intended recipient or three Business Days after mailing if mailed by certified mail, postage prepaid, if to the Unsecured Creditor Trustee, addressed to Chad J. Shandler, Traxi LLC, 212 West 35th Street, 4th Floor, New York, NY 10001 with a copy to Andrew I. Silfen, Esq., at Arent Fox PLLC, 1675 Broadway, 32nd Floor, New York, NY 10019; and if to the Senior Lender Trustee, addressed to Robert F. Troisio, BTB Associates LLC, #2 Pettinaro Drive, Millville, DE 19970, with a copy to Tricia Carpen, Bank One N.A., Bank One Plaza, 10 South Dearborn, Chicago, IL 60603.

9.6     *Further Assurances.* Each party hereto (and his respective successors and assigns) shall, upon any Trustee's reasonable request, execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered, such further instruments, and do or cause to be done, such further acts, as may be necessary to carry out the purposes of this Agreement and to vest in the Trustee the powers and duties contemplated hereunder.

9.7     *Exculpatory Provisions and Survival Thereof.* Whether or not expressly therein so provided, any and all exculpatory provisions, immunities and indemnities, and any limitations and negations of liability contained in this Agreement, in each case inuring to the benefit of the Trustees, shall survive (i) the termination or revocation of this Agreement, and (ii) as to any person who has served as Trustee, the resignation or removal of such person as Trustee.

9.8     *Separate Counterparts.* This Agreement may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

9.9     *Successors and Assigns.* All covenants and agreements contained herein shall, as applicable, be binding upon, and inure to the benefit of, each of the Beneficiaries and its permitted assignees, the Trustees and their successors and the Debtors and their successors, all as herein provided.

9.10    *Headings.* The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

9.11    *Books and Records.* On the date hereof, the Debtors shall transfer to the Trust all of the books and records of the Debtors in the Debtors' possession, and shall instruct any third parties or professionals possessing such books and records (including computer generated or computer maintained books, records and data, legal and accounting files maintained by any professional of the Debtors and other of the Debtors' books and records maintained by or in the possession of third parties), to turn over or permit access to (at the election of the party to whom the request is made) such books and records as may be reasonably requested by either Trustee, provided that a Trustee shall only request such books and records or access thereto to the extent

A- 278

reasonably necessary to the Trustee's performance of his duties hereunder, provided <u>further</u> that the out of pocket expenses of complying with any such request shall not be borne by the party upon whom the request is made, absent agreement to the contrary.

9.12    *Tax Identification Numbers.* Each Trustee may require any Beneficiary of its Series to furnish to such Trustee, (i) its employer or taxpayer identification number as assigned by the Internal Revenue Service, and (ii) such other information, records or documents necessary to satisfy the Trustee's tax reporting obligations (including certificates of non-foreign status). The Trustees may condition the payment of any distribution to any Beneficiary upon receipt of such identification number and requested documents.

[SIGNATURE PAGE FOLLOWS]

23

A— 279

## ARTICLE X

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Trust Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

INSILCO TECHNOLOGIES, INC.
INSILCO HOLDINGS CO.
INNET TECHNOLOGIES, INC.
INSILCO INTERNATIONAL HOLDINGS, INC.
PRECISION CABLE MFG. CORPORATION
EYELETS FOR INDUSTRY, INC.
EFI METAL FORMING, INC.
STEWART STAMPING CORPORATION
STEWART CONNECTOR SYSTEMS, INC.
SIGNAL CARIBE, INC.
SIGNAL TRANSFORMER CO., INC.

By:_____


ROBERT J. TROISIO, as Trustee
BTB ASSOCIATES, INC.

By:_____


CHAD J. SHANDLER, as Trustee
TRAXI, LLC

By:_____


24

## EXHIBIT A

## CERTIFICATE OF TRUST OF
## INSILCO LIQUIDATING TRUST

THIS Certificate of Trust of Insilco Liquidating Trust (the "Trust"), is being duly executed and filed by the undersigned, as trustees, to form a statutory trust under the Delaware Statutory Trust Act (12 Del. Code, § 3801 et seq.) (the "Act").

1.    Name.  The name of the statutory trust formed hereby is Insilco Liquidating Trust.

2.    Trustee.  The name and business address of the trustee of the Trust in the State of Delaware is [_____].

3.    Series.  Pursuant to Section 3806(b)(2) of the Act, the Trust shall issue one or more series of beneficial interests having the rights and preferences set forth in the governing instrument of the Trust, as the same may be amended from time to time (each a "Series").

4.    Notice of Limitation of Liabilities of each Series.  Pursuant to Section 3804(a) of the Act, there shall be a limitation on liabilities of each Series such that (a) the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to a particular Series shall be enforceable against the assets of such Series only, and not against the assets of the Trust generally or the assets of any other Series thereof and (b) none of the debts, liabilities, obligations and expenses incurred, contracted for or otherwise existing with respect to the Trust generally or any other Series thereof shall be enforceable against the assets of such Series.

5.    Effective Date.  This Certificate of Trust shall be effective upon filing.

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

[_____], as Trustee

By:_____
Name:
Title

[_____], as Trustee

By:_____
Name:
Title

CH1 2971342v7

A- 281