IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
In re                                                       :  Chapter 11
                                                            :  Case No. 02-13672 (KJC)
INSILCO TECHNOLOGIES, INC., *et al.*,                       :  Jointly Administered
                                                            :
            Debtors,                                        :
                                                            :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
CHAD J. SHANDLER, as Trustee to the                         :
Insilco Liquidating Trust,                                  :
                                                            :
            Appellant,                                      :
                                                            :  Case No. 05 CV 795 (GMS)
      - v -                                                 :
                                                            :
                                                            :
DLJ MERCHANT BANKING, INC. n/k/a                            :
CREDIT SUISSE FIRST BOSTON, *et al.*,                       :
                                                            :
            Appellees.                                      :
                                                            :
                                                            :
                                                            :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## APPELLEES' BRIEF

THE BAYARD FIRM
Neil B. Glassman (No. 2087)
Charlene D. Davis (No. 2336)
222 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Tel: (302) 655-5000
Fax: (302) 658-6395

DAVIS POLK & WARDWELL
Karen E. Wagner
James I. McClammy
Russell L. Lippman
A. Brendan Stewart
450 Lexington Avenue
New York, New York 10017
Tel: (212) 450-4000
Fax: (202) 450-4800

Counsel for the DLJ Affiliates
and the DLJ-affiliated Directors

# TABLE OF CONTENTS

PAGE

SUBJECT MATTER AND APPELLATE JURISDICTION ......................................................... 1

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND AND FACTS ................................................................................................. 2

THE DECISION BELOW ......................................................................................................... 3

ARGUMENT .............................................................................................................................. 7

    THE BANKRUPTCY COURT CORRECTLY FOUND
    NO SUBJECT MATTER JURISDICTION ............................................................................. 7

       A.    Under the *Resorts* Case Subject Matter Jurisdiction Is Lacking ............................... 7

       B.    Shandler's Section 1123 Argument Is Irrelevant ..................................................... 12

CONCLUSION .......................................................................................................................... 17

## TABLE OF AUTHORITIES

### CASES

Page

*In re Ampace Corp.*, 279 B.R. 145 (Bankr. D. Del. 2002)................................................ 13

*In re AstroPower Liquidating Trust*, 335 B.R. 309 (Bankr. D. Del. 2005) ................ 11, 14

*In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100 (1st Cir. 2005) ...................................... 16

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)................................................................. 9

*In re Etoys, Inc.*, 331 B.R. 176 (Bankr. D. Del. 2005)...................................................... 11

*In re EXDS, Inc.*, 352 B.R. 731 (Bankr. D. Del. 2006)................................................ 11, 16

*In re Federalpha Steel LLC,* 341 B.R. 872  (Bankr. N.D. Ill. 2006)........................... 10, 15

*In re Haws*, 158 B.R. 965 (Bankr. S.D. Tex. 1993). ........................................................ 13

*In re Insilco Techs., Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005) ................................. *passim*

*In re Insilco Techs., Inc.,* 351 B.R. 313 (Bankr. D. Del. 2006) ........................................ 11

*In re IT Group, Inc.*, Civil Action No. 04-1268-KAJ, 2005 U.S. Dist. LEXIS
    27869 (D. Del. Nov. 15, 2005)...................................................................................... 11

*LaRoche Indus., Inc. v. Orica Nitrogen L.L.C.*, 312 B.R. 249
    (Bankr. D. Del. 2004)................................................................................................... 11

*In re Marconi, Inc.*, Nos. 03-B-11949 (SMB), 06 Civ. 6977 (GEL), 2007 U.S.
    Dist. LEXIS 6947 (S.D.N.Y. Jan. 30, 2007)......................................................... 10, 11

*In re Nw. Corp.*, No. 03-12872 (JLP), Adv. No. 05-52525 (JLP), 2005 Bankr.
    LEXIS 2146 (Bankr D. Del. Oct. 25, 2005) ................................................................ 11

*Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)................................................ 4, 9, 11

*In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005) ............................................... 10

*In re Perry H. Koplik & Sons, Inc*., No. 02-40648 (REG), Adv. No. 05-01136,
    2006 Bankr. LEXIS 2822 (Bankr. S.D.N.Y. Oct. 23, 2006)....................................... 12

*In re Powell*, Civil Action No. 06-4085, 2006 US. Dist. LEXIS 80598 (E.D. Pa.
    Nov. 2, 2006)................................................................................................................... 1

*In re Railworks Corp.*, 325 B.R. 709 (Bankr. D. Md. 2005) ........................................... 14

ii

*In re Resorts Int'l, Inc.*, 372 F.3d 154 (3d Cir. 2004) ................................................. *passim*

*In re Thickstun Bros. Equip. Co.*, 344 B.R. 515 (B.A. 6th Cir. 2006) ............................. 10

*In re U.S. Healthcare, Inc.,* 193 F.3d 151 (3d Cir. 1999) .................................................... 1

*In re USN Commc'ns, Inc.,* 280 B.R. 573 (Bankr. D. Del. 2002) ...................................... 14

## STATUTES AND RULES

11 U.S.C. § 544 ..................................................................................................... 13

11 U.S.C. § 547 ..................................................................................................... 13

11 U.S.C. § 548 ..................................................................................................... 13

11 U.S.C. § 1123 ............................................................................................... 12, 13

11 U.S.C. § 1123(b)(3)(B) ................................................................................ 12, 13

28 U.S.C. § 157 ..................................................................................... 4, 7, 8, 10, 13

28 U.S.C. § 157(b)(1) .............................................................................................. 8

28 U.S.C. § 157(b)(2) .............................................................................................. 9

28 U.S.C. § 158(a)(1) .............................................................................................. 1

28 U.S.C. § 158(a)(3) .............................................................................................. 1

28 U.S.C. § 1291 ..................................................................................................... 1

28 U.S.C. § 1292(b) ................................................................................................ 1

28 U.S.C. § 1334 ............................................................................................. *passim*

Fed. R. Bankr. P. 8003(c) ....................................................................................... 1

iii

## SUBJECT MATTER AND
## APPELLATE JURISDICTION

This appeal arises from an order dismissing the state law claims in a complaint commencing an adversary proceeding in the Bankruptcy Court for the District of Delaware. The only issue raised on this appeal is whether the Bankruptcy Court properly held that bankruptcy subject matter jurisdiction was lacking for these state law claims. That ruling is final, as there will be no further proceedings in the Bankruptcy Court with respect to these state law claims.[1] Jurisdiction to review this final order is granted under 28 U.S.C. § 158(a)(1).

## PRELIMINARY STATEMENT

Appellees DLJ Affiliates[2] and the DLJ-affiliated Directors,[3] (together the "DLJ Appellees") submit this brief in opposition to the brief of Appellant Chad J. Shandler

--------

[1] The complaint asserted many state law claims, as well as three claims under the Bankruptcy Code. The order from which the appeal is taken essentially bifurcated the complaint, dismissing the state law claims for lack of subject matter jurisdiction, and granting leave to replead two of the bankruptcy claims.

The order dismissing the state law claims is final because there will be no further action in the Bankruptcy Court with respect to those claims. *See In re U.S. Healthcare, Inc.,* 193 F.3d 151, 159 (3d Cir. 1999) (where order directing discretionary remand divests a federal court of all control over one count in complaint, order is final and appealable under 28 U.S.C. § 1291). Should this court conclude otherwise, appellate jurisdiction exists under 28 U.S.C. § 158(a)(3). This Court may consider the notice of appeal as a motion for leave to appeal. *See* Fed. R. Bankr. P. 8003(c) ("If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed."); *In re Powell,* Civil Action No. 06-4085, 2006 U.S. Dist. LEXIS 80598, at *5-6 (E.D. Pa. Nov. 2, 2006) (noting that courts asked to grant leave have applied the criteria of 28 U.S.C. § 1292(b), which states that interlocutory appeals from district courts to the courts of appeals may be certified where (1) the decision involves a controlling question of law; (2) there is a substantial ground for difference of opinion; and (3) immediate appeal may materially advance the ultimate termination of the litigation).

[2] The DLJ Affiliates are: (i) DLJ Merchant Banking, Inc. (which is incorrectly described as "n/k/a Credit Suisse First Boston"); (ii) DLJ Merchant Banking Partners, L.P.; (iii) Donaldson, Lufkin & Jenrette Securities Corp.; (iv) Donaldson, Lufkin & Jenrette, Inc.; (v) DLJ Capital Funding, Inc.; (vi) MBP II Plan Investors, L.P.; (vii) DLJ Offshore Partners II, C.V.; (viii) DLJ

("Shandler"), Trustee of the Insilco Liquidating Trust. Shandler appeals from an order

dismissing the state law claims against the DLJ Appellees and others asserted in his

complaint.

The state law claims were properly dismissed for lack of subject matter

jurisdiction. The Bankruptcy Court found that under the decision of the Court of Appeals

for the Third Circuit in *In re Resorts International, Inc.*, 372 F.3d 154, 161 (3d Cir.

2004), no subject matter jurisdiction exists over state law claims filed by a post-

confirmation trust, even where they are preserved by a plan, absent a close nexus to the

bankruptcy plan or proceeding. Shandler's argument to the contrary is without merit.

While Shandler complains that the Bankruptcy Court penalized him by finding a lack of

bankruptcy court jurisdiction, Shandler was free to pursue these state law claims in

another forum.

## BACKGROUND AND FACTS

On December 16, 2002, Insilco and certain affiliates filed voluntary petitions for

relief under Chapter 11 of Title 11, United States Code (the "Bankruptcy Code"). On

February 13, 2004, the debtors filed their amended joint liquidating plan (the "Plan") and

amended disclosure statement. (A-1.) Insilco's liquidating plan was confirmed on June

10, 2004. (A-104.) In its confirmation order, the Bankruptcy Court set forth the factual

background regarding the cause of Insilco's failure.

---

Millennium Partners-A, L.P.; (ix) DLJ Millennium Partners, L.P.; (x) DLJ ESC II, L.P.; (xi) DLJ
EAB Partners, L.P.; (xii) DLJ Merchant Banking Partners II-A, L.P.; (xiii) DLJ Merchant
Banking Partners II, L.P.; (xiv) DLJ Diversified Partners, L.P.; and (xv) DLJ Diversified
Partners-A., L.P. The entities in subparagraphs (vi) through (xv) are the "DLJMB Funds."

[3] The DLJ-affiliated Directors are Thompson Dean, William F. Dawson, Jr., George A.
Peinado and Keith Palumbo.

"Due to the continuing depressed state of the telecommunications industry, many of the Debtors' primary customers significantly reduced the volume of products purchased from the Debtors and the Debtors' revenues failed to reach previous levels. As a result of their diminished cash flow, the Debtors did not have the ability to service their significant long term debt obligations in the ordinary course of business. After examining numerous restructuring alternatives with their investment advisors and consulting with their senior secured lenders, the Debtors determined that it was in the best interest of their creditors, customers and employees to file these chapter 11 proceedings." Confirmation Order at 2, ¶ D. (A-105.)

The Plan became effective on October 6, 2004, at which time the Insilco Liquidating Trust was established under Delaware law. (Docket No. 1328.) Shandler was selected to serve as trustee, and Insilco's unsecured creditors exchanged their bankruptcy claims for interests in the trust. On December 15, 2004, Shandler instituted this adversary proceeding, and on February 17, 2005 filed an amended complaint.[4] On March 18, the DLJ Appellees, with most of the other defendants, moved to dismiss the amended complaint for lack of subject matter jurisdiction and for failure to state a claim.

## THE DECISION BELOW

On September 27, 2005, the Bankruptcy Court issued an opinion and an order dismissing the state law causes of action for lack of subject matter jurisdiction. *In re Insilco Techs., Inc.*, 330 B.R. 512 (Bankr. D. Del. 2005). (A-319.)

The Court's opinion recognized that the order confirming the plan provided generally for continued retention of jurisdiction in the Bankruptcy Court to "determine

---

[4] In addition to the state law claims of fraud, malpractice, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, unjust enrichment, abuse of control, and deepening insolvency, the complaint also asserted Bankruptcy Code claims for equitable subordination, and for preference and fraudulent transfer. The Bankruptcy Court dismissed the equitable subordination claim as to the DLJ Appellees. The preference and fraudulent transfer claims were found to be deficient, as a pleading matter, but leave to replead was granted.

3

any and all motions, adversary proceedings, applications and contested or litigated matters ... that may, pursuant to this Plan, be instituted by the Creditor Trust after the Effective Date." *Insilco*, 330 B.R. at 518. (A-327.) But, citing *In re Resorts International, Inc.*, 372 F.3d 154, 161 (3d Cir. 2004) ("*Resorts*"), the Bankruptcy Court held that "parties cannot 'write their own jurisdictional ticket' and a confirmation order cannot confer jurisdiction upon a bankruptcy court unless jurisdiction exists pursuant to 28 U.S.C. § 1334 or 28 U.S.C. § 157." *Insilco*, 330 B.R. at 519. (A-327.) After examining the jurisdictional basis for each of the claims in the amended complaint, the Court concluded that no jurisdiction existed to adjudicate the state law claims.

Under *Resorts*, jurisdiction must be premised upon 28 U.S.C. §§ 1334 and 157. *Resorts*, 372 F.3d at 161-62. Section 1334 provides for both "core" and "related to" bankruptcy jurisdiction. "Core" bankruptcy jurisdiction includes "cases under title 11" and "civil proceedings arising under title 11," or arising in "cases under title 11." Section 1334's "related to" jurisdiction was initially defined by the Third Circuit in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984), which held that, in an ongoing bankruptcy case, the test is "whether the outcome of [a] proceeding could conceivably have any effect upon the estate being administered in bankruptcy." *Id.* at 994. If the *Pacor* test were applied literally, jurisdiction would never exist after the effective date of a confirmed bankruptcy plan. But, the *Resorts* Court held, post-confirmation jurisdiction may exist where a matter has "a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of a confirmed plan or incorporated litigation trust agreement." *Resorts*, 372 F.3d at 168-69.

4

Here, the Bankruptcy Court concluded that "core" jurisdiction did not exist with respect to the state law claims, as none of them either invoked a substantive right provided by the Bankruptcy Code, nor could any of the state law claims arise only in the context of a bankruptcy case. *Insilco*, 330 B.R. at 521-22. (A-330 to A-332.) Shandler does not dispute this conclusion. The Bankruptcy Court then concluded that "related to" jurisdiction was also lacking.

> "[E]ven though the claims alleged by the Liquidating Trustee in the Amended Complaint arose pre-petition, their resolution does not require interpretation of the Plan and will not affect the bankruptcy estate or the Debtor. The outcome of this adversary proceeding could result in additional assets to distribute to creditors, but *Resorts* rejected the argument that such a result (without more) creates a close nexus to the Plan, writing:
>
>> The potential to increase assets of the Litigation Trust and its beneficiaries does not necessarily create a close nexus sufficient to confer 'related to' bankruptcy court jurisdiction post-confirmation. The Trust beneficiaries here no longer have the same connection to the bankruptcy proceeding as when they were creditors of the estate. For reasons they believed financially prudent, they traded their creditor status as claimants to gain rights to the Litigation Trust's assets. Thus, their connection to the bankruptcy plan or proceeding is more attenuated. Furthermore, if the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts. *Resorts*, 372 F.3d at 170." *Insilco*, 330 B.R. at 524 (A-336 to A-337.)

Shandler had argued that *Resorts* is applicable only to a reorganization case, and does not govern this liquidating case. The Bankruptcy Court disagreed:

> "The jurisdictional statutes apply without differentiating between liquidating and reorganizing debtors. *Resorts* makes no such distinction and holds that post-confirmation 'related to' jurisdiction lies only if the matter at issue affects the interpretation, implementation, consummation,

execution, or administration of a confirmed plan.  I cannot conclude that there exists here a sufficient basis for distinguishing between liquidating and reorganization debtors when considering post-confirmation 'related to' jurisdiction."  *Insilco*, 330 B.R. at 525.  (A-337.)

Finally, the Bankruptcy Court ruled that the general language of the Plan and Disclosure Statement concerning post-confirmation litigation did not demonstrate a "close nexus" between these claims and the concluded bankruptcy plan process.[5]

> "[N]either the Plan nor Disclosure Statement specifically identifies the claims against the defendants as an asset to be liquidated and distributed to creditors.  The general language of the Plan and Disclosure Statement concerning post-confirmation litigation does not provide any notice to creditors (or to the Court, for that matter) as to the importance of this or any particular litigation.  If the litigation is truly so critical to the Plan's implementation, it would have been more specifically described in the Disclosure Statement and Plan so that creditors could have considered its effect when deciding whether to vote in favor of the Plan.  Further, pursuit of these non-core claims does not call for the interpretation of any Plan provision.  I decline to find the requisite 'close nexus' of these non-core claims to the bankruptcy case based solely upon the Plan's creation of the Creditor Trust to pursue generally defined 'Rights of Action,' or to conclude that this particular litigation by the Liquidating Trustee is 'implementation of the plan.'  Such an interpretation would run afoul of *Resorts*."  *Insilco*, 330 B.R. at 525-26.  (A-337 to A-338.)

The Court set a hearing for consideration of the appropriate manner by which to transfer the state law claims to a court having jurisdiction.  *Id.* at 526-27 & n.25.  (A-341.)  Meanwhile, Shandler timely appealed from the Bankruptcy Court's order dismissing the state law claims.

---

[5] The Court noted that general language such as this might suffice to provide notice of the right to pursue matters falling within "core" jurisdiction, such as preference claims, but was not sufficient to preserve claims falling outside the scope of that jurisdiction.  *Insilco*, 330 B.R. at 525 n.23.  (A-338.)

6

**ARGUMENT**

**THE BANKRUPTCY COURT CORRECTLY FOUND
NO SUBJECT MATTER JURISDICTION**

The Bankruptcy Court properly dismissed the state law claims for lack of subject

matter jurisdiction.

The subject matter jurisdiction of Article I bankruptcy courts is limited, deriving

not from the Constitution but from federal statutes, specifically 28 U.S.C. §§ 1334 and

157. During the pendency of a bankruptcy case, these provisions grant comprehensive,

but by no means unlimited, jurisdiction to permit effective administration of a bankruptcy

case. However, after a bankruptcy plan has been confirmed, bankruptcy jurisdiction

narrows greatly. "At the post-confirmation stage, the claim must affect an integral aspect

of the bankruptcy process – there must be a close nexus to the bankruptcy plan or

proceeding." *Resorts,* 372 F.3d at 167.

In this case, the Bankruptcy Court properly held that jurisdiction was lacking over

the trust's state law claims, filed after Insilco's bankruptcy plan was confirmed and

effective. Adjudication of these claims does not involve the "interpretation,

implementation, consummation, execution or administration of a confirmed plan or

incorporated litigation trust agreement." *Resorts,* 372 F.3d at 168-69. Therefore, no

"close nexus" exists between these state law claims and the consummated Insilco

bankruptcy plan. *Id.* at 167.

**A.     Under the *Resorts* Case Subject Matter Jurisdiction Is Lacking**

In *In re Resorts International, Inc.,* 372 F.3d 154 (3d Cir. 2004), a malpractice

claim was brought by a post-confirmation litigation trust against a professional retained

7

by the trust.  The Third Circuit held that bankruptcy subject matter jurisdiction was
lacking with respect to that litigation.  The Court ruled that, after confirmation,
bankruptcy jurisdiction is sharply curtailed, reaching only matters that have "a close
nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation,
implementation, consummation, execution or administration of a confirmed plan or
incorporated litigation trust agreement." *Id.* at 168-69.  Because the bankruptcy case was
essentially over and the malpractice suit did not relate to the terms of the confirmation
order or the plan, the proceeding could not affect the estate or its administration, and
bankruptcy subject matter jurisdiction did not exist. *Id.* at 169-71.

The *Resorts* decision was based upon a close analysis of the sole sources of
bankruptcy jurisdiction, 28 U.S.C. §§ 1334[6] and 157(b)(1).[7] *Id.* at 161.  Section 1334

---

[6] 28 U.S.C. § 1334 states, in relevant part, as follows:

"Except as provided in subsection (b) of this section, the district courts shall have
original and exclusive jurisdiction of all cases under title 11.
. . .

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a
court or courts other than the district courts, the district courts shall have original
but not exclusive jurisdiction of all civil proceedings arising under title 11, or
arising in or related to cases under title 11.
. . ."

[7] 28 U.S.C. § 157 states, in relevant part, as follows:

"(a) Each district court may provide that any or all cases under title 11 and any or
all proceedings arising under title 11 or arising in or related to a case under title
11 shall be referred to the bankruptcy judges for the district.

(b) (1) Bankruptcy judges may hear and determine all cases under title 11 and all
core proceedings arising under title 11, or arising in a case under title 11, referred
under subsection (a) of this section, and may enter appropriate orders and
judgments, subject to review under section 158 of this title.
. . .

8

grants two types of jurisdiction. First is "core" jurisdiction over "cases under title 11," civil proceedings arising under title 11, or arising in "cases under title 11." A list of "core" matters, which generally arise only in the context of bankruptcy, is set forth in Section 157(b)(2). Shandler does not take issue with the Bankruptcy Court's ruling that the state law claims are not "core" matters.

The second type of jurisdiction is "related to" jurisdiction. "With 'related to' jurisdiction Congress intended to grant bankruptcy courts 'comprehensive jurisdiction' so that they could 'deal efficiently and expeditiously' with matters connected with the bankruptcy estate." *Resorts*, 372 F.3d at 163-64 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995)). But, referring to the *Pacor* test, the *Celotex* Court held that "bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor." *Celotex*, 514 U.S. at 308 n.6.

Consequently, post-confirmation "related to" jurisdiction is very narrow. *Resorts*, 372 F.3d at 164 n.7. Indeed, "[a]t the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute, because the debtor's estate ceases to exist once confirmation has occurred." *Id.* at 165. Post-confirmation "related to" jurisdiction may be found under 28 U.S.C. § 1334 only where an action requires consideration of the prior bankruptcy process, such as where a court was asked to construe and enforce plan provisions in a dispute over whether the debtor or the trust was entitled to interest under the plan, or whether attorneys were entitled to contingency fees for litigation brought by the trust. *Resorts*, 372 F.3d at 165. Where, for example, the

---

(c) (1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.
. . ."

9

post-confirmation trust sues non-debtor third parties, or sues the debtor's partner for breach of fiduciary duty, the requisite nexus is lacking. *Id.* at 168. "[T]he essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." *Id.* at 166-67.

No "close nexus" exists where state law claims are asserted by a state law trust, against non-debtor defendants, for the benefit of entities that are no longer creditors.

> "[W]e believe this proceeding lacks a close nexus to the bankruptcy plan or proceeding and affects only matters collateral to the bankruptcy process. The resolution of these malpractice claims will not affect the estate; it will have only incidental effect on the reorganized debtor; it will not interfere with the implementation of the Reorganization Plan; though it will affect the former creditors as Litigation Trust beneficiaries, they no longer have a close nexus to bankruptcy plan or proceeding because they exchanged their creditor status to attain rights to the litigation claims; and as stated, the jurisdictional retention plans cannot confer jurisdiction greater than that granted under 28 U.S.C. § 1334 or 28 U.S.C. § 157. For these reasons, the malpractice claims here lack the requisite close nexus to be within the Bankruptcy Court's 'related to' jurisdiction post-confirmation." *Resorts*, 372 F.3d at 169.

The *Resorts* holding has been adopted in the Ninth Circuit, *see In re Pegasus Gold Corp.,* 394 F.3d 1189, 1194 (9th Cir. 2005) (adopting Third Circuit "close nexus" test for post-confirmation jurisdiction), and followed in the Sixth Circuit, *see In re Thickstun Bros. Equip. Co.,* 344 B.R. 515, 522 n.4 (B.A.P. 6th Cir. 2006) (finding "related to" jurisdiction where bankruptcy court was asked to interpret and enforce a confirmed plan of reorganization).

A similar analysis has been employed in other courts. *See, e.g., In re Federalpha Steel LLC,* 341 B.R. 872, 880-81 (Bankr. N.D. Ill. 2006) (holding that after claims had been transferred to a trust, they no longer belonged to the estate, and bankruptcy jurisdiction over the claims therefore ended); *cf. In re Marconi, Inc.,* Nos. 03-B-11949

10

(SMB), 06 Civ. 6977 (GEL), 2007 U.S. Dist. LEXIS 6947, at *13 (S.D.N.Y. Jan. 30, 2007) (noting that, in Section 304 proceeding, no estate is being administered in bankruptcy; "[a]ccordingly, even under this quite expansive [*Pacor*] test, there [was] no basis for contending that [petitioner's] common law tort and contract claims [were] related to any bankruptcy case").

In this District, courts following *Resorts* have declined to find post-confirmation jurisdiction absent a close connection with the former bankruptcy estate or proceeding. *See, e.g., In re Etoys, Inc.*, 331 B.R. 176, 185-86 (Bankr. D. Del. 2005) (no post-confirmation jurisdiction to hear action seeking to replace professionals appointed by the plan); *LaRoche Indus., Inc. v. Orica Nitrogen L.L.C.*, 312 B.R. 249, 257-58 (Bankr. D. Del. 2004) (no post-confirmation jurisdiction over a matter involving a pre-petition contract where the plan had been consummated and recovery would not inure directly to the benefit of creditors, who now held stock in reorganized entity).[8]

---

[8] Consistent with the rule that jurisdiction is established when a case is commenced, and will not be divested as a consequence of later events, *see, e.g., In re EXDS, Inc.*, 301 B.R. 436, 439 (Bankr. D. Del. 2003), jurisdiction has been found where a litigation was commenced by or on behalf of a debtor while a bankruptcy case was ongoing, and a litigation trust was simply substituted as plaintiff after plan consummation. *See, e.g., In re IT Group, Inc.*, Civil Action No. 04-1268-KAJ, 2005 U.S. Dist. LEXIS 27869, at *15-19 (D. Del. Nov. 15, 2005) (where litigation was commenced by creditors' committee during case, and litigation trust was substituted by stipulation and pursuant to plan, jurisdiction existed for continuation of litigation). Also consistent with well settled precedent, jurisdiction has been found where a court was required to address its prior orders, or to protect the confirmation order. *See, e.g, In re Insilco Techs. Inc.*, 351 B.R. 313, 319-20 (Bankr. D. Del. 2006) (court has jurisdiction to hear and interpret its own sale order); *In re Nw. Corp.*, No. 03-12872 (JLP), Adv. No. 05-52525 (JLP), 2005 Bankr. LEXIS 2146, at *15-17 (Bankr D. Del. Oct. 25, 2005) ("complete nexus" found to preserve plan implementation where one group of creditors sought to assert constructive trust over estate assets prescribed in plan). Finally, jurisdiction has been found where a specific litigation was described in a plan. *See In re AstroPower Liquidating Trust*, 335 B.R. 309, 325 (Bankr. D. Del. 2005) ("[W]here, as here, the Plan specifically describes an action over which the Court had 'related to' jurisdiction pre-confirmation and expressly provides for the retention of such jurisdiction to liquidate that claim for the benefit of the estate's creditors, there is a sufficiently close nexus with the bankruptcy proceeding to support jurisdiction post-confirmation."). In his appellate brief,

11

Here, the Bankruptcy Court found no "related to" jurisdiction for the state law claims because they require no interpretation of the Plan, or the trust agreement, or any order issued during the bankruptcy. *Insilco*, 330 B.R. at 523-26. (A-336 to A-338.) The state law claims arose independently of bankruptcy, were first asserted after consummation of the bankruptcy plan, by a Delaware trust that is not a debtor, and will benefit parties who are no longer creditors of the Insilco estate. To paraphrase *Resorts*:

> "Resolution of this matter will not require a court to interpret or construe the Plan or the incorporated Litigation Trust Agreement. Whether [the defendants are liable] will not be determined by reference to those documents. There is no dispute over their intent. The Trustee's claims are 'ordinary' claims that arise under state common law. Though the Plan and Trust agreement provide the context of the case, this bare factual nexus is insufficient to confer bankruptcy jurisdiction." *Resorts*, 372 F.3d at 170.

### B.    Shandler's Section 1123 Argument Is Irrelevant

On this appeal, Shandler relies principally upon Section 1123 of the Bankruptcy Code and Article VIII § 8.2 of the Plan. He argues that "by appointing the Liquidation Trustee pursuant to Section 1123 of the Bankruptcy Code, the *status quo ante* of all of the Debtors' claims were preserved and thus allowed the Liquidating Trustee to commence the Amended Complaint without losing bankruptcy court jurisdiction through the confirmation of the Liquidation Plan." Appellant's Br. at 14. But Section 1123 has nothing to do with jurisdiction, and *Resorts* makes clear that jurisdiction cannot be created by a plan.

---

Shandler cites and attaches *In re Perry H. Koplik & Sons, In*c., No. 02-40648 (REG), Adv. No. 05-01136, 2006 Bankr. LEXIS 2822 (Bankr. S.D.N.Y. Oct. 23, 2006), a case from a jurisdiction not bound by *Resorts*, which did not address a question of subject matter and concluded only that a claim for failure to pay on a letter of credit was sufficiently subsumed in the description of claims "on account of any debt" and, as a result, was a claim properly retained for enforcement by the trustee under Section 1123(b)(3). *Id.* at *32-36.

Section 1123(b)(3)(B) of the Bankruptcy Code, which sets forth certain permitted provisions that may be included in a plan, states: "a plan *may* – … (3) provide for … (B) the retention and enforcement … by a representative of the estate appointed for such purpose, of any such claim or interest [belonging to the debtor or the estate]." 11 U.S.C. § 1123 (emphasis added). Pursuant to Section 1123, claims owned by a debtor may be preserved, if sufficiently described, so that they are not subject to *res judicata* or other claim preclusion defenses after the confirmation order becomes final.[9] Plainly referring to Section 1123, Article VIII § 8.2 of the Plan states that no defense of "preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) and laches" will apply to any claims that are appropriately set forth as a consequence of the confirmation order. Plan, Art. VII, § 8.2. (A-28.)

But Section 1123 is not a grant of jurisdiction. The fact that a plan is consistent with Section 1123 – which, as Shandler points out, does not mandate *any* description of *any* claims – simply has no bearing on the matter of subject matter jurisdiction. As the *Resorts* Court held, jurisdiction is governed solely by 28 U.S.C. §§ 1334 and 157. Here, by confirming the Plan, the Bankruptcy Court necessarily held that the Plan complied with Section 1123. The same Bankruptcy Court subsequently held that no post-

---

[9] Shandler discusses cases addressing the question of how descriptive the plan documents must be to preserve claims. The analysis is different depending upon whether the claim at issue falls within "core" or "related to" jurisdiction. Claims for preference or fraudulent conveyance arise under the Bankruptcy Code. *See* 11 U.S.C. §§ 544, 547, 548. Courts have held that these bankruptcy claims may be preserved by a general description. *See, e.g., In re Ampace Corp.*, 279 B.R. 145, 161 (Bankr. D. Del. 2002) (holding under Section 1123 a post-confirmation preference claims "is *not* barred by a prior confirmation hearing under the doctrine of *res judicata* where the disclosure statement and plan contain a *general* reservation of the right to pursue preference actions post-confirmation" (emphasis in original)). Courts have held that state law claims against third parties may not be preserved by such a general reference. *See, e.g., In re Haws*, 158 B.R. 965, 970-71 (Bankr. S.D. Tex. 1993). But this debate is irrelevant to subject matter jurisdiction, which is governed by 28 U.S.C. § 1334, not by 11 U.S.C. § 1123.

13

confirmation jurisdiction existed for adjudication of these state law claims, whether or not they were properly preserved.

Shandler appears to contend that a description sufficient to preserve claims is also sufficient to provide the requisite jurisdictional "close nexus," citing *In re AstroPower Liquidating Trust,* 335 B.R. 309, 325 (Bankr. D. Del. 2005). Appellant's Br. at 22-23. That case found that the required nexus could be established where a litigation was very specifically described – there, as "[c]auses of action arising out of or in connection with the Debtor's sale of stock in Xantrex Technology, Inc." *AstroPower,* 335 B.R. at 324. The *AstroPower* court distinguished this case, "where the post-confirmation trustee sought to bring prepetition actions that were not treated specifically in the chapter 11 plan." *Id.* at 324-25.[10]

Whether the *AstroPower* analysis is consistent with *Resorts* is uncertain. Under *Resorts,* the fact that a litigation may be a source of funding for a trust is not a sufficient nexus. "[I]f the mere possibility of a gain or loss of trust assets sufficed to confer bankruptcy court jurisdiction, any lawsuit involving a continuing trust would fall under the 'related to' grant. Such a result would widen the scope of bankruptcy court jurisdiction beyond what Congress intended for non-Article III bankruptcy courts." *Resorts*, 372 F.3d at 170. In any event, even the *AstroPower* test is not met here. Review

---

[10] Shandler also cites *In re Railworks Corp.*, 325 B.R. 709, 719 (Bankr. D. Md. 2005), and *In re USN Commc'ns, Inc.,* 280 B.R. 573, 590 (Bankr. D. Del. 2002), for the proposition that claims need not be precisely defined. Appellant's Br. at 13-14. Neither case addresses jurisdiction, and both concern preference claims that are defined by the Bankruptcy Code and are therefore within "core" bankruptcy jurisdiction. The policy behind the decisions, as expressed in the *USN* case, is: "[I]t is both impractical and unnecessary for a Disclosure Statement and/or Plan to list each and every possible defendant against which a debtor or its representative may bring an avoidance action." *USN*, 280 B.R. at 591. These decisions are of no relevance to the question whether jurisdiction exists over state law claims asserted post-confirmation.

of Shandler's brief will confirm the Bankruptcy Court's conclusion that the Plan and

Disclosure Statement[11] give no hint to the Court, or to any creditor, of the nature of this

litigation, or that it was critical to Plan execution. *See* Appellant's Br. at 7-11.

Shandler's final arguments are equally unavailing. He contends that the

Bankruptcy Court penalized the trust by depriving it of a bankruptcy forum. Appellant's

Br. at 4, 20. Obviously, this argument is not addressed to jurisdiction. And, if the trust

has viable claims, it may assert them in another forum. *See In re Federalpha Steel LLC*,

341 B.R. at 881-82 (noting that depriving a litigation trust of a bankruptcy forum did not

deprive the trust of the claims themselves).

Shandler argues that the holding in *Resorts* is inapplicable because the claim there

arose long after the case was consummated, while the claims here are based upon alleged

pre-petition conduct.[12] Petitioner's Br. at 21-25. This contention ignores the analytical

foundation for the *Resorts* decision: bankruptcy jurisdiction cannot exist for adjudication

of a claim that can have had no effect upon the estate, and does not require reference to

the bankruptcy proceedings or orders themselves. The claims in *Resorts,* and in this case,

are equally removed from their respective bankruptcy cases, and in both cases the nexus

required to establish jurisdiction is lacking.

---

[11] The Disclosure Statement is not part of the record before this Court.

[12] Oddly, Shandler suggests that this case may be distinguished from *Resorts* because the recovery here will not benefit the trustee, personally. Appellant's Br. at 22-24 ("Unlike the Trustee in *Resort*s, the Liquidating Trustee stands to gain no benefit and only commenced the Amended Complaint to carry out his fiduciary and statutory obligations...."). But the situation is the same here as in *Resorts*. In both cases, the beneficiaries were the trusts and their beneficiaries, not the trustees personally.

Finally, Shandler repeats his claim that the *Resorts* analysis is inapplicable to a liquidating Chapter 11 plan. Appellant's Br. at 25-26. Again, he is wrong. The only case to support that proposition is *In re Boston Regional Medical Center, Inc.*, 410 F.3d 100 (1st Cir. 2005), in which the First Circuit held that while in a successful reorganization the emerging company is "emancipated" by confirmation and must perform (like other companies) under non-bankruptcy law, liquidating companies have no post-confirmation life, such that bankruptcy jurisdiction may be employed by them to marshal and distribute assets. *Id.* at 105-106.

In fact, the *Boston Regional* plan vested all of the debtor's assets in the continuing debtor entity, rather than transferring the assets to a trust, so the case does not address the jurisdictional issues surrounding litigation by a post-confirmation trust. *See Boston Regional*, 410 F.3d at 103 n.1; *cf. In re EXDS, Inc.*, 352 B.R. 731, 735-40 (Bankr. D. Del. 2006) (finding jurisdiction where claims were specifically described and were asserted by the debtor, not a trust). But more importantly, the First Circuit's analysis is fundamentally different from the Third Circuit's analysis. The *Resorts* Court, and the Bankruptcy Court below, focused on the grant of jurisdiction under Section 1334. Section 1334 does not differentiate between reorganizing and liquidating companies. The First Circuit believed that, in the case before it, bankruptcy jurisdiction could continue over a debtor that would never be "emancipated" and as to which no trust was appointed. Whether or not the First Circuit's analysis is appropriate, under its different facts, the reasoning of the *Boston Regional* decision is not consistent with the *Resorts* decision.

16

## CONCLUSION

For the reasons set forth herein, the DLJ Appellees respectfully request that this

Court affirm the Bankruptcy Court's dismissal of the state law claims for lack of

bankruptcy subject matter jurisdiction.

Dated:   Wilmington, Delaware
        March 7, 2007

                                 Respectfully submitted,

                                 THE BAYARD FIRM

                                 By: _Charlene D. Davis_

                                 Neil B. Glassman (No. 2087)
                                 Charlene B. Glass (No. 2336)
                                 222 Delaware Avenue, 9th Floor
                                 Wilmington, Delaware  19801
                                 Tel:  (302) 655-5000
                                 Fax:  (302) 658-6395

                                 DAVIS POLK & WARDWELL
                                 Karen E. Wagner
                                 James I. McClammy
                                 Russell L. Lippman
                                 A. Brendan Stewart
                                 450 Lexington Avenue
                                 New York, New York  10017
                                 Tel:    (212) 450-4000
                                 Fax:    (212) 450-3800

                                 Counsel for the DLJ Affiliates
                                 and the DLJ-affiliated Directors