# UNPUBLISHED OPINION

Source: Legal > / . . . / > 3rd Circuit - US Court of Appeals Cases
Terms: name(shandler) and date(geq (2/1/2007) and leq (3/23/07))  (Edit Search | Suggest Terms for My Search)

*2007 U.S. App. LEXIS 6409, **

IN RE: INSILCO TECHNOLOGIES, INC., ET AL., Debtors, CHAD **SHANDLER,** as Trustee to the Insilco Liquidating Trust, Appellant

No. 06-2162

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

2007 U.S. App. LEXIS 6409

March 6, 2007, Argued
**March** 20, 2007, Opinion Filed

**PRIOR HISTORY:** [*1]  Appeal from the United States District Court for the District of Delaware. (D.C. Civil Action No. 04-cv-01567). District Judge: Honorable Gregory M. Sleet.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant trustee appealed from the United States District Court for the District of Delaware which dismissed the trustee's objections to a proof of claim. The appeal arose out of the 11 U.S.C.S. § 502 claim allowance process in debtor's Chapter 11 bankruptcy liquidation and the question was whether the trustee could bring a recharacterization action and an equitable subordination action under 11 U.S.C.S. § 510(c)(1) against certain lenders.

**OVERVIEW:** The trustee asserted both recharacterization and equitable subordination, but the bankruptcy and district courts ruled that he was barred from asserting them by the terms of a previous settlement that the court entered as a consent order (settlement agreement) and the confirmed plan of reorganization. The dispute centered on the meaning of two sections of the settlement agreement. Because certain lenders did not participate in the settlement agreement, their loans were at issue. The court had to determine whether the trustee's actions for recharacterization and equitable subordination were precluded by the agreement. The court found that the debtors and creditors' committee conceded that the debts owed to the certain lenders were allowable claims. Their loans could not be both allowable claims and equity investments. Thus, by agreeing that the certain lenders' loans were allowable claims, the debtors and creditors' committee necessarily agreed that the certain lenders' loans were true loans. Accordingly, under the settlement agreement the action of the trustee for recharacterization was barred. Likewise, equitable subordination was also barred by the settlement agreement.

**OUTCOME:** The appellate court affirmed the ruling of the district court which dismissed the trustee's objections to a proof of claim.

**CORE TERMS:** lender, subordination, equitable, holder, recharacterization, subordinate, allowed claim, shareholders, bankruptcy estate, proof of claim, allowance, allowable claims, inequitable conduct, liquidation, impaired, insolvent, target, modify, causes of action, reorganization, confirmation, contemplates, entity, debtor in possession, equity investment, fiduciary duties, entitled to vote, right to payment, contingent, equitably

**LexisNexis(R) Headnotes** ✦ Hide Headnotes

Bankruptcy Law > Claims > Objections

Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Subordination

**HN1** It is common practice in bankruptcy cases for parties-in-interest to attack the validity and priority of the claims of creditors higher in the pecking order than they. Two of the most common attacks are "recharacterization" (seeking to treat an asserted debt as an equity interest) and "equitable subordination" (seeking to subordinate a claim's priority because of inequitable conduct). These actions, while often asserted in tandem, are distinct.   More Like This Headnote

Bankruptcy Law > Practice & Proceedings > Appeals > Jurisdiction

Bankruptcy Law > Practice & Proceedings > Appeals > Standards of Review > De Novo Review

**HN2** An appellate court has jurisdiction to review the final order of a district court under 28 U.S.C.S. §§ 158(d)(1), 1291. The appellate court reviews the construction of consent orders de novo.   More Like This Headnote

Bankruptcy Law > Claims > Allowance

**HN3** In the Bankruptcy Code, "claim" is a term of art. It is defined as a right to payment or right to an equitable remedy. 11 U.S.C.S. § 101(5). Similarly, "allowed" is a term of art, referring to the bankruptcy court's determination that a claim is valid and in line for distribution. 11 U.S.C.S. § 502. The concept of an "allowed claim" lies at the heart of the bankruptcy process, for only those who possess allowed claims are entitled to distribution from the bankruptcy estate.   More Like This Headnote

Bankruptcy Law > Claims > Objections

Bankruptcy Law > Claims > Types > Unsecured Priority Claims > General Overview

**HN4** In a recharacterization action, someone challenges the assertion of a debt against the bankruptcy estate on the ground that the "loaned" capital is actually an equity investment. Because only parties that hold rights to payment against the estate hold valid bankruptcy claims, 11 U.S.C.S. § 101(5)(a), the assertion that a would-be debt should be treated as an equity investment challenges the debt's status as a claim. In the Bankruptcy Code, the distinction between creditors (who hold "claims" against the estate) and equity investors (who hold "interests" in the estate) is important, for holders of claims receive much more favorable treatment than holders of interests. Equity investment brings not a right to payment, but a share of ownership in the debtor's assets - a share that is subject to all of the debtor's payment obligations. Thus, if a filed claim is rejected on the ground that it is not a claim at all, but an interest, then the holder of that interest is relegated to the end of the line, where any recovery is unlikely.   More Like This Headnote

Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Subordination

**HN5** An action for equitable subordination does not challenge the existence or validity of the underlying debt. Rather, it challenges granting the debt the priority to which it is entitled under applicable law because of the creditor's inequitable conduct. Thus, it is an action in equity to modify the legal treatment of the claim.   More Like This Headnote

Bankruptcy Law > Claims > Types > Unsecured Priority Claims > Subordination

**HN6** The bankruptcy court is not empowered to punish inequitable conduct in the abstract; rather, it allows equitable concerns to modify its treatment of claims. 11 U.S.C.S. § 510(c)(1). Without an underlying claim, equitable subordination is a non-starter.  More Like This Headnote

**COUNSEL:** Michael R. Lastowski, Esquire, Richard W. Riley, Esquire, Duane Morris LLP, Wilmington, DE; Andrew I. Silfen, Esquire (Argued), Michael S. Cryan, Esquire, Heike M. Vogel, Esquire, Arent Fox PLLC, Broadway New York, NY, Counsel for Appellant.

Karen E. Wagner, Esquire (Argued), James I. McClammy, Esquire, Davis, Polk & Wardwell, New York, NY; Neil B. Glassman, Esquire, Charlene D. Davis, Esquire, The Bayard Firm, Wilmington, DE, Counsel for Appellee.

**JUDGES:** Before: SLOVITER and AMBRO, Circuit Judges THOMPSON, * District Judge

* Honorable Anne E. Thompson, Senior United States District Judge for the District of New Jersey, sitting by designation.

**OPINION BY:** AMBRO

**OPINION:** OPINION OF THE COURT

AMBRO, Circuit Judge

This appeal arises out of the claim allowance process in a Chapter 11 bankruptcy liquidation. n1 Specifically, a liquidating trustee appeals an order dismissing his objections to a proof of claim. **HN1** It is common practice in bankruptcy cases for parties-in-interest to attack the validity and priority of the claims of creditors [*2] higher in the pecking order than they. Two of the most common attacks are "recharacterization" (seeking to treat an asserted debt as an equity interest) and "equitable subordination" (seeking to subordinate a claim's priority because of inequitable conduct). These actions, while often asserted in tandem, are distinct. Here, the Trustee asserted both, but the Bankruptcy and District Courts ruled that he is barred from asserting them by the terms of a previous settlement that the Court entered as a consent order (the "Settlement Agreement") and the confirmed plan of reorganization (the "Plan").

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 While we typically think of Chapter 11 as the "reorganization" section of the Bankruptcy Code (as opposed to Chapter 7, the "liquidation" section), it is not uncommon for debtors to use the Chapter 11 process to liquidate. This is because Chapter 11 provides more flexibility and control in determining how to go about selling off the various aspects of the debtor's business and distributing the proceeds. A typical mechanism for effecting a Chapter 11 liquidation is the creation of a "liquidating trust"--a state-law trust managed by a group of creditors that succeeds to the debtor's assets and administers the liquidation and distribution process.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*3]

While we take a slightly different view of the Settlement Agreement than the Bankruptcy and District Courts, we nonetheless affirm.

## I. Facts & Procedural History

The debtors are Insilco Technologies, Inc. and its subsidiaries ("Insilco" or the "Debtors"), an erstwhile manufacturing enterprise and victim of a seemingly ill-advised leveraged buyout ("LBO"). n2 Chad Shandler is Trustee of the Insilco Liquidating Trust (the "Trust"), an entity created by Insilco's creditors that succeeded to all of Insilco's assets on confirmation of its Plan. The Trust exists to sell Insilco's assets and distribute the proceeds in accordance with the Plan. As the successor of both Insilco and the Official Committee of Unsecured Creditors (the "Creditors' Committee"), the Trust may assert either entity's causes of action.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 In an LBO, the buyers use the target corporation's own money to pay the previous owners. Typically, the transaction requires the target corporation to incur secured debt to acquire the cash to pay to the sellers. Problems occur when the target corporation incurs more debt than it can service, thus rendering it insolvent. More than a little bankruptcy litigation stems from these sorts of transactions. In *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991), we noted that LBO transactions can spawn fraudulent conveyance liability and described how this works in more detail at pages 645-46 of that opinion.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*4]

The Term C Lenders are a group of limited partnerships managed by DLJ Merchant Banking Partners II ("DLJ;" thus, the Term C Lenders are known interchangeably as the "DLJ Group"). In 1998, the DLJ Group gained control of Insilco through an LBO. According to the Trustee, the buyout was too leveraged; it, in conjunction with an overly aggressive program of buying and selling subsidiaries, rendered Insilco unable to service the debt it incurred. By 2001, Insilco was in serious financial distress, and the DLJ Group loaned the company an unsecured $15 million. Known as the "Term C Loans," these debts were added to Insilco's omnibus credit facility with the consent of its secured lenders.

Despite the loans, Insilco's financial situation continued to deteriorate. In December 2002, it petitioned for Chapter 11 relief. Only three months later, the Creditors' Committee moved for the appointment of a trustee. n3 The parties resolved that motion through the Settlement Agreement, in which the secured creditors agreed to contribute money to the Trust for payment of the unsecured creditors' claims in return for a full release from the unsecured creditors' challenges to their claims. In addition, [*5] by agreeing to the creation of a liquidating trust controlled by the creditors, the Debtors' management (then acting as debtors in possession) effectively agreed to cede control over the bankruptcy estate.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n3 Unlike in Chapter 7 proceedings, an outside trustee is not typically appointed in Chapter 11 proceedings. Rather, the default rule is that the debtor remains in control of the bankruptcy estate and operates its business as "debtor in possession." When acting as debtor in possession, the debtor is bound by all of the fiduciary duties of a bankruptcy trustee. The Bankruptcy Court oversees the reorganization process and may appoint an outside trustee if it finds that doing so is in the best interest of the parties and the estate. See 11 U.S.C. § 1104(a)(2); *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Following approval of the Settlement Agreement, Insilco filed the Plan. It divides Insilco's creditors into seven classes n4 and provides for [*6] the distribution of proceeds from the sale of Insilco's assets to each class. The Plan "impaired" n5 the claims of four classes of creditors: (1) general unsecured creditors, (2) senior discount noteholders, (3) senior subordinated noteholders, and (4) the Term C Lenders. All four classes of impaired creditors voted to approve the Plan, and the Bankruptcy Court confirmed it over the deemed rejection of the equity holders.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Equity holders are an eighth class in the Plan, but it provides for the cancellation of equity interests upon confirmation of the Plan. Thus, equity holders were not entitled to vote on the Plan, 11 U.S.C. § 1126(g) (providing that any class that receives no recovery is deemed to reject a plan), and, as is typically the case with insolvent debtors, the Plan was approved over their deemed objection, see 11 U.S.C. § 1129(b)(1) (allowing confirmation of a plan over the objection of classes of claims and interests).

n5 Under the Bankruptcy Code, creditors' claims are "impaired" if the plan of reorganization does not provide those creditors with full recovery. 11 U.S.C. § 1124. Classes of creditors whose claims are impaired in Chapter 11 are entitled to vote whether to accept the plan. 11 U.S.C. § 1126(a) & (f).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*7]

In order to recover against a bankruptcy estate, creditors typically must file proofs of claims. n6 See Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship, 507 U.S. 380, 383, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993). Similarly, equity holders file proofs of interests. See 11 U.S.C. § 501 (distinguishing between claims and interests). The Term C Lenders filed proofs of claims for a total of $ 22,221,128.07 in principal and pre-petition interest due under the Term C Loans. The Trustee timely filed an objection to those claims, arguing that they should be recharacterized as equity investments and, if not, they should be subordinated to all other claims. The Bankruptcy and District Courts ruled that section 4C of the Settlement Agreement precluded the Trustee from bringing both actions, and he now appeals to us. n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n6 An exception is that if a creditor's claim is listed on the debtor's schedule of assets and liabilities and is not listed as disputed, contingent, or unliquidated, then filing a proof of claim is not required. See Fed. R. Bankr. P. 3003(c)(2). Even those creditors, however, are entitled to (and often do) file a proof of claim. Fed. R. Bankr. P. 3003(c)(1). [*8]

n7 HN2 We have jurisdiction to review the final order of the District Court under 28 U.S.C. §§ 158(d)(1) and 1291. We review the construction of consent orders de novo. Holland v. N.J. Dep't of Corr., 246 F.3d 267, 277 (3d Cir. 2001).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## II. Discussion

### A. The Settlement Agreement and Plan

This dispute centers on the meaning of two sections of the Settlement Agreement. Its essential bargain is the unsecured creditors' agreement not to seek the appointment of a trustee to administer the estate or to challenge the validity, perfection, or priority of the secured creditors' claims in return for the secured creditors' agreement to remit some of their recovery to the unsecured creditors and to waive any rights to pursue deficiency claims. The Term C Lenders did not participate in the Settlement Agreement as such (though their interests likely were represented by Insilco, as it was still controlled by the DLJ Group at that time).

In section 1 of the Settlement Agreement, the Debtors and unsecured creditors agreed that "[t]he [*9] Senior Lenders' . . . claims against the Debtors . . . are fully and finally allowed in the amount of $ 254,933,571.49." Footnote 1 of the Settlement Agreement stipulates that the Term C Lenders are included as "Senior Lenders" for purposes of section 1. Hence, it was agreed that the Term C Lenders could assert allowable claims against the estate. HN3 In the Bankruptcy Code, "claim" is a term of art. It is defined as a "right to payment" or "right to an equitable remedy." 11 U.S.C. § 101(5). Similarly, "allowed" is a term of art, referring to the Bankruptcy Court's determination that a claim is valid and in line for distribution. See 11 U.S.C. § 502. The concept of an "allowed claim" lies at the heart of the bankruptcy process, for only those who possess allowed claims are entitled to distribution from the bankruptcy estate. In re Johns, 37 F.3d 1021, 1023 n.1 (3d Cir. 1994) ("An 'allowed claim' is one that will serve as the basis for distribution.").

In section 4 of the Settlement Agreement, the Debtors and the Creditors' Committee released the Senior Lenders n8 and Term C Lenders from liability on a variety of actions. [*10] The releases are worded as follows:

> A. Release by the Debtors and Creditors' Committee--The Debtors and the Creditors' Committee, on behalf of themselves and the estates of the Debtors . . . (the "Releasing Estate Parties"), hereby fully waive, release, and forever discharge the . . . Senior Lenders . . . ("Released Lender Parties") from any and all manner of actions, causes of action, in law or in equity, suits, debts, liens, contracts, agreements, promises, liabilities, claims, damages, losses, controversies, trespasses, remedies, defenses, set-offs, surcharges, costs or expenses of any nature whatsoever, known or unknown, fixed or contingent, which the Releasing Estate Parties have had, now have, or may hereafter have against the Released Lender Parties, by reason of any matter, cause or thing whatsoever, from the beginning of time through and to the Settlement Effective Date; provided however, that nothing in this Paragraph 4A releases any Parties' obligations or agreements pursuant to this Settlement Agreement, or bars claims directed solely at enforcing the provisions of this Settlement Agreement.
>
> . . . .
>
> C. Limitation on Release of Term C Lenders--The releases [*11] and waivers contained in Paragraph 4A of this Settlement Agreement for the benefit of the Released Lender Parties shall also apply to the Term C Lenders . . . only in respect of the Term C Loans under the Credit Agreement (as defined therein) and notwithstanding anything herein to the contrary, the Term C Lenders . . . shall

Get a Document - by Party Name - shandler
Page 7 of 11
Case 1:05-cv-00795-GMS    Document 17-2    Filed 03/23/2007    Page 8 of 12

not otherwise be released or deemed released. Nothing contained herein shall be deemed to discharge, impair, or otherwise affect any claim, action, cause of action or right against the Term C Lenders . . . except as specifically set forth in the preceding sentence, provided however, that the reservation of non-released claims, causes of action or rights in this Paragraph shall not extend to the Released Lender Parties.

Boiled down, the Debtors and Creditors' Committee released the Senior Lenders from all manner of actions, while they released the Term C Lenders only from actions "in respect of the Term C Loans."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n8 In a rather confusing act of contract construction, the term "Senior Lenders" includes the Term C Lenders in section 1 of the Settlement Agreement only. Yet, in section 4 the two groups are treated separately.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*12]

On the surface, the "in respect of" language in section 4C seems to preclude any objection to allowing and paying a claim based on the Term C Loans. It is puzzling, though, because the Plan expressly contemplates the Debtors or Creditors' Committee filing an objection to that claim. Section 4.8 of the Plan, which defines a class of claims as the "Claims of the Term C Lenders under the Term C Loans" and provides for the treatment of those claims, prefaces its treatment of the Term C Lenders' claims under the Term C Loans with "[u]nless the Debtors (or the Creditors' Committee on behalf of the Debtors) . . . have commenced an adversary proceeding or contested matter prior to the Confirmation Date seeking to subordinate or reclassify the [claims under the Term C Loans] . . . ." From this it appears that the Plan drafters (a group quite similar to the Settlement Agreement drafters) did not believe that objections to the Term C Claims were barred if filed by the Debtors or Creditors' Committee. On the other hand, the Plan adopts and subordinates itself to the Settlement Agreement; anything in it that conflicts with the Settlement Agreement bows to the latter. The Bankruptcy Court's [*13] order confirming the Plan reiterates this.

### B. The Recharacterization Action

Our task is to determine whether the Trustee's actions for recharacterization and equitable subordination are precluded by the Settlement Agreement. We analyze these actions separately, as they are distinct. _Cohen v. KB Mezzanine Fund, II, LP (In re SubMicron Sys. Corp.), 432 F.3d 448, 454 (3d Cir. 2005)._

HN4 In a recharacterization action, someone challenges the assertion of a debt against the bankruptcy estate on the ground that the "loaned" capital was actually an equity investment. _Bayer Corp. v. Mascotech, Inc. (In re AutoStylePlastics, Inc.), 269 F.3d 726, 749 (6th Cir. 2001)._ Because only parties that hold "right[s] to payment" against the estate hold valid bankruptcy claims, 11 U.S.C. § 101(5)(A), the assertion that a would-be debt should be treated as an equity investment challenges the debt's status as a claim. _In re AutoStyle Plastics, 269 F.3d at 749._ In the Bankruptcy Code, the distinction between creditors (who hold "claims" against the estate) and equity investors (who hold "interests" in the estate) is important, [*14] for holders of claims receive much more favorable treatment than holders of interests. n9 Equity investment brings not a right to payment, but a share of ownership in

the debtor's assets--a share that is subject to all of the debtor's payment obligations. n10 Thus, if a filed claim is rejected on the ground that it is not a claim at all, but an interest, then the holder of that interest is relegated to the end of the line, where any recovery is unlikely.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 As the Bankruptcy Court for the Western District of Tennessee has explained:

> Creditors present their claims to the court by filing a proof of claim, whereas equity security holders assert their rights to distribution of the proceeds of a solvent corporate debtor by filing a proof of interest. While the filing of a proof of claim triggers the process of allowance and disallowance of claims and prompts the restructuring of the debtor-creditor relationship, the filing of a proof of interest, which applies only in Chapter 11 cases, is not recognized in the claims process and becomes significant only when the remaining assets of the solvent corporate debtor are being distributed to shareholders.

Crocker v. Namer (In re AVN Corp.), 235 B.R. 417, 423 (Bankr. W.D. Tenn. 1999). [*15]

n10 Even in the flexible world of Chapter 11 reorganizations, the absolute priority rule, 11 U.S.C. § 1129(b)(2)(B), requires that equity holders receive nothing unless all creditors are paid in full. As the Supreme Court noted in Bank of Am. Nat'l Tr. & Sav. Ass'n v. North LaSalle St. P'ship, 526 U.S. 434, 119 S. Ct. 1411, 143 L. Ed. 2d 607 (1999), this is a long-standing principle of insolvency law. Id. at 444 (acknowledging "the pre-Code judicial response known as the absolute priority rule, that fairness and equity required that 'the creditors . . . be paid before the stockholders could retain [equity interests] for any purpose whatever.'") (quoting Northern P. R. Co. v. Boyd, 228 U.S. 482, 508, 33 S. Ct. 554, 57 L. Ed. 931 (1913)).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Because a recharacterization action implicates the validity of the underlying claim, it is not section 4C of the Settlement Agreement (as the Bankruptcy and District Courts ruled), but section 1 that precludes the Trustee from bringing it against the Term C Lenders. In section 1, the Debtors and Creditors' Committee [*16] conceded that the debts owed to the Term C Lenders are allowable claims. Their loans cannot be both allowable claims *and* equity investments; to repeat, the latter (an interest) is not a claim at all. By agreeing that the Term C Loans are an allowable claims, the Debtors and Creditors' Committee necessarily agreed that the Term C Loans were true loans. Thus, under section 1 of the Settlement Agreement, the action of the Trustee (as successor to the Debtor and Creditors' Committee) for recharacterization is barred.

### C. The Equitable Subordination Claim

Equitable subordination here is slightly more complicated. HN5⚓An action for equitable subordination does not challenge the existence or validity of the underlying debt. Rather, it challenges granting the debt the priority to which it is entitled under applicable law because of the creditor's inequitable conduct. In re SubMicron Sys., 432 F.3d at 454 ("Equitable

subordination is apt when equity demands that the payment priority of claims of an otherwise legitimate creditor be changed to fall behind those of other claimants."). Thus, it is an action in equity to modify the legal treatment of the claim. Because equitable **[*17]** subordination does not affect the allowance of a claim, n11 the action is not barred by section 1 of the Settlement Agreement.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 Indeed, there would be no point in equitably subordinating anything but an allowed claim, as only allowed claims are entitled to distribution from an insolvent debtor's estate in the first place. See *Citicorp Real Estate, Inc. v. PWA, Inc. (In re Georgetown Bldg. Assocs. Ltd. P'ship), 240 B.R. 124, 137 (Bankr. D.D.C. 1999)*.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Turning, then, to section 4C, we must determine what sorts of actions are "in respect of" the Term C Loans, and neither party provides a particularly compelling interpretation. According to the Trustee, the release provision merely means that the Trust cannot challenge the *allowance* of the Term C Lenders' claims. The problem with this argument is that section 1 of the Settlement Agreement provides for the allowance of the Term C Lenders' claims; thus, the Trustee's reading renders paragraph 4C superfluous, which is disfavored under New York **[*18]** law. n12 *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005)*.

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 The Settlement Agreement and Plan contain choice-of-law provisions selecting New York law.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The Term C Lenders, on the other hand, are far more coy in explaining the meaning of paragraph 4C. They contend that a claim to subordinate equitably the debts to the Term C Lenders is clearly "in respect of" the Term C Loans, and so the release applies. Moreover, they note that any claim unrelated to the Term C Loans would not be released--though they do not elaborate as to what such a claim might be.

We believe the best reading of section 4C is that the section 4A release applies to all actions that *relate to* the Term C Loans, as "in respect of" means "as relates to." Oxford English Dictionary 534 (1st ed. 1971). The question, then, is whether the equitable subordination action relates to the Term C Loans. It does, as it seeks to modify the treatment of the allowed claims that arise from the Term **[*19]** C Loans. The Trustee argues that the objections do not relate to the loans themselves but focus on the allegedly inequitable conduct of the Term C Lenders. This is unhelpful, as <sup>HN6</sup>the Bankruptcy Court is not empowered to punish inequitable conduct in the abstract; rather, it allows equitable concerns to modify its treatment *of claims*. See 11 U.S.C. § 510(c)(1) ("[U]nder principles of equitable subordination, [a bankruptcy court may] subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim . . . ."). Without an underlying claim, equitable subordination is a non-starter. The argument that the Bankruptcy Court should apply equitable subordination necessarily relates to the underlying claims on the Term C Loans and is subject to the 4C release.

The Trustee claims that this reading renders the Term C release limitless (because it releases all claims that might actually exist), and thus cannot be correct given that the section heading specifically indicates that the Term C release is limited. Contrary to his assertions, we can imagine claims against the Term C Lenders that are not related to the Term [*20] C Loans. The Term C Lenders were, after all, the Debtors' controlling shareholders. Their conduct in controlling and managing the Debtors--quite apart from the Term C Loans themselves--could give rise to liability to the Debtors. n13 This liability would presumably inure to the benefit of either the creditors or any minority equity stakeholders. Thus, the Trustee's argument that the Term C Lenders' liability could only reasonably arise from the Term C Loans is incorrect, as the Term C Lenders' primary relationship to Insilco was as equity holders and controlling shareholders, not as lenders.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 We note that the debtors here are Delaware corporations. Without getting into the details, the controlling shareholders of a Delaware corporation can owe the entity fiduciary duties--thus giving rise to claims for breaches of those duties. See _Weinstein Enters. v. Orloff, 870 A.2d 499, 507 (Del. 2005)_. We express no opinion as to the potential validity of any such claims in this case, but merely note that a natural reading of the contract--precluding actions on the Term C Loans but allowing actions against the Term C Lenders in their capacity as controlling shareholders--is not absurd, nor does it render the "limitation" on the release of the Term C Lenders meaningless.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*21]

The Trustee next argues that the Bankruptcy Court should have avoided a conflict between the Settlement Agreement and the Plan by construing 4C so that it does not prevent the subordination and reclassification claims that the Plan clearly contemplates. See _Kass v. Kass, 91 N.Y.2d 554, 696 N.E.2d 174, 180-81, 673 N.Y.S.2d 350 (N.Y. 1998)_ (noting that contracts should be read and construed as a whole). While it is true that the most natural reading of the Plan and Settlement Agreement creates a conflict between the two, the parties anticipated that conflicts might exist and provided for them through a subordination clause in the Plan; the Plan defers to the Settlement Agreement in the event of conflict. Moreover, the Trustee overstates the conflict. While the Plan contemplates the Debtors or Creditors' Committee attempting to reclassify or subordinate the Term C Loans claims, it does not explicitly authorize those attempts; rather, it merely assumes that the attempts are permissible (and, indeed, they are for interested parties not bound by the Settlement Agreement). While that assumption conflicts with the Settlement Agreement, it is not as severe a conflict as we would have if the [*22] Settlement Agreement barred the claims while the Plan explicitly allowed them. In any event, while we recognize that the Plan and Settlement Agreement are not entirely in synch, because the agreed-upon prevailing document--the Settlement Agreement--is clear, we follow it. _John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48, 58 (2d Cir. 2001)_ (noting that courts applying New York law must "give effect to the parties' intent as expressed by the plain language of the provision").

In the alternative, the Trustee suggests that, because the language of section 4C is ambiguous, we should remand for discovery or an evidentiary hearing to determine its meaning. This is probably his best argument, but it cannot succeed because the language of section 4C is clear: it bars any actions related to the Term C Loans, and equitable subordination is necessarily related to the loans. No reasonable construction of the phrase "in respect of" would render a different result.

None of this is to say that the Trustee is left without recourse against the Term C Lenders. The 4C release is limited: it does not prevent him from bringing any claims against the Term

C Lenders that do not relate **[*23]** to the Term C Loans.

\* \* \* \* \*

Because the Settlement Agreement prevents the Trustee from bringing recharacterization and equitable subordination actions against the Term C Lenders, we affirm the District Court's order dismissing his objections to the Term C Lenders' claims.

Source: Legal > / . . . / > 3rd Circuit - US Court of Appeals Cases
Terms: **name(shandler) and date(geq (2/1/2007) and leq (3/23/07))**  (Edit Search | Suggest Terms for My Search)
View: Full
Date/Time: Friday, March 23, 2007 - 3:10 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
- Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
- Citing Refs. With Analysis Available
- Citation information available

\* Click on any *Shepard's* signal to *Shepardize®* that case.

 About LexisNexis | Terms & Conditions
Copyright © 2007 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.